UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAMRAN KHODAKHAH,

              *Plaintiff*,

    -against-

MONTEFIORE MEDICINE ACADEMIC
HEALTH SYSTEM, INC., et, al.,

              *Defendants*.

Case No. 1:24-cv-839 (LAK) (RFT)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GORDON TOMASELLI'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**TABLE OF CONTENTS**

**PAGE NO.**

PRELIMINARY STATEMENT ...................................................................................................1

FACTS ......................................................................................................................................2

LEGAL STANDARD...................................................................................................................7

ARGUMENT .............................................................................................................................8

    I.        PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM MUST BE
            DISMISSED BECAUSE PLAINTIFF'S ALLEGATIONS FAIL TO MAKE
            OUT THE CLAIM................................................................................................8

            A.     Plaintiff's Failure to Allege the Existence of a Valid Contract or a Breach
                   Thereof is Fatal to His Tortious Interference Claim.........................................8

            B.     Dean Tomaselli Cannot Be Individually Liable for Conduct Within the
                   Scope of His Employment. .................................................................................9

            C.     Dean Tomaselli Cannot be Liable for Conduct that was Justified and Was
                   Not the "But For" Cause of Any Alleged Breach.............................................12

    II.      PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS MUST BE DISMISSED
            BECAUSE HE DOES NOT ALLEGE DEAN TOMASELLI'S CONDUCT
            WAS BASED ON GENDER......................................................................................13

CONCLUSION..........................................................................................................................16

i

# TABLE OF AUTHORITIES

**PAGE NO.**

## CASES

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
  404 F.3d 566 (2d Cir. 2005)............................................................................ 12

*Amato v. N.Y.C. Dep't of Parks & Recreation*,
  110 A.D.3d 439 (1st Dep't 2013) ...................................................................... 8

*Ashby v. ALM Media, LLC*,
  110 A.D.3d 459 (1st Dep't 2013) .................................................................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................... 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)................................................................................. 7

*Babcock v. N.Y. State Off. of Mental Health*,
  2009 WL 1598796 (S.D.N.Y. Jun. 8, 2009) .................................................... 15

*Baylis v. Marriott Corp.*,
  906 F.2d 874 (2d Cir. 1990)............................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................... 7

*Burrowes v. Combs*, 25 A.D.3d 370 (1st Dep't 2006)................................................ 13

*Casalino v. N.Y. State Cath. Health Plan, Inc.*,
  2012 WL 1079943 (S.D.N.Y. Mar. 30, 2012) ........................................... 14, 16

*Castiblanco v. Allstate Ins. Co.*,
  2024 WL 1532784 (S.D.N.Y. Apr. 9, 2024)....................................................... 7

*Conte v. Emmons*,
  895 F.3d 168 (2d Cir. 2018)............................................................................. 12

*Finley v. Giacobbe*,
  79 F.3d 1285 (2d Cir. 1996)............................................................................... 9

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
  679 F. Supp. 2d 395 (S.D.N.Y. 2009).............................................................. 11

*Israel v. Wood Dolson Co.*,
  1 N.Y.2d 116 (1956) .......................................................................................... 9

*Kartiganer Assocs., P.C. v. Town of New Windsor*,
108 A.D.2d 898 (2d Dep't 1985) ................................................................. 9, 11

*Koret, Inc. v. Christian Dior, S.A.*,
161 A.D.2d 156 (1st Dep't 1990) ..................................................................... 9

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413 (1996) .............................................................................. 8, 12

*Llanos v. City of New York*,
129 A.D.3d 620 (1st Dep't 2015) ................................................................. 16

*Marino v. Vunk*,
39 A.D.3d 339 (1st Dep't 2007) ................................................................... 11

*Mayorga v. Greenberg*,
2023 WL 6307994 (E.D.N.Y. Sept. 28, 2023) .............................................. 14

*Medtech Prod. Inc. v. Ranir, LLC*,
596 F. Supp. 2d 778 (S.D.N.Y. 2008) ............................................................ 9

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013) ............................................................. 14, 15, 16

*New Media Holding Co., LLC v. Kagalovsky*,
118 A.D.3d 68 (1st Dep't 2014) ..................................................................... 9

*Sharma v. Skaarup Ship Mgmt. Corp.*,
916 F.2d 820 (2d Cir. 1990) ......................................................................... 13

*UBS Sec. LLC v. Highland Cap. Mgmt., L.P.*,
86 A.D.3d 469 (1st Dep't 2011) ..................................................................... 9

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015) ........................................................................... 14

**STATUTES**

N.Y. Exec. L. § 296 ..................................................................................... 13

N.Y.C. Admin. Code § 8–107.......................................................................... 13

**RULES**

Fed. R. Civ. P. 12 ...................................................................................... 1, 7

Defendant Dean Gordon Tomaselli submits this memorandum of law in support of his motion to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This lawsuit is no more than Plaintiff Kamran Khodakhah's most recent effort to evade accountability for his own disturbing behavior. Faced with numerous sexual harassment allegations and other misconduct charges, rather than support the Albert Einstein College of Medicine's ("Einstein") investigations, Plaintiff has attempted to thwart Einstein's efforts at every turn. Apparently believing that "the best defense is a good offense," Khodakhah seeks to transform his inappropriate and unprofessional conduct into a lawsuit against Einstein, and then piles on state law claims against Einstein's former dean, Dean Gordon Tomaselli. None of his allegations amounts to a legal claim against Dean Tomaselli under governing state and city law.

Dean Tomaselli oversaw a Neuroscience Department where faculty and students raised serious complaints about then-chair Khodakhah's leadership of the department, where an independent investigation concluded that Dr. Khodakhah's behavior was wrongful and offensive, and where two Title IX complaints were filed against him. As Dr. Khodakhah's complaint itself shows, Dean Tomaselli acted in response to these serious complaints when he suspended, dismissed, and directed Plaintiff to stay off campus.

Putting aside the absurdity of a discriminatory actor weaponizing the courts to attack those who would hold him accountable, Plaintiff's claims against Dean Tomaselli are legally deficient. First, Plaintiff's tortious interference with contract claim fails, for several reasons. Plaintiff has alleged neither the existence of a contract nor a breach thereof. Moreover, Dean Tomaselli cannot be held individually liable for conduct undertaken in his capacity as an Einstein employee. And Plaintiff does not allege that Dean Tomaselli's purportedly tortious

conduct was unjustified. In fact, the complaint supports the opposite inference, that Dean

Tomaselli's conduct was a direct response to the numerous serious complaints he had received

about Plaintiff's (mis)conduct. Second, Plaintiff's discrimination claims against Dean Tomaselli

under the New York City and New York State Human Rights laws also fail. It is fundamental to

sex discrimination claims that the conduct at issue be discriminatory, *i.e.*, based on gender. Fatal

to his claims, Plaintiff does not allege any facts to support an inference of gender animus.

Plaintiff's unavailing legal claims do not hide the true nature of his dispute. His

efforts to avoid accountability by bringing baseless claims in this forum fail as a matter of law

and should not be rewarded. For the reasons set forth below, the Court should dismiss Plaintiff's

claims against Dean Tomaselli.

**FACTS[1]**

Plaintiff's claims against Dean Tomaselli all stem from the Dean's responses to

allegations by Einstein faculty and staff regarding Plaintiff's objectionable, harassing conduct

towards his colleagues.

### *Einstein Faculty Raise Concerns About Plaintiff*

In February 2022, Einstein neuroscience faculty raised concerns about Dr.

Khodakhah, who was at that time the Chair of the Neuroscience Department at Einstein. First

Amended Complaint, ECF No. 48 ("FAC") ¶¶ 119-21. In a letter sent to Dr. Khodakhah, thirteen

faculty members expressed concern about his "demeaning and unprofessional comments" to staff

and his "autocratic behaviors." *Id.* ¶ 110. Plaintiff does not allege that Dean Tomaselli

participated in drafting the letter, though he received it. *See id.* ¶¶ 108, 134. Along with the letter

---

[1] While Dean Tomaselli disputes many of Plaintiff's allegations, consistent with the standard on motions to dismiss, these facts are taken from the First Amended Complaint. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

2

of concern, the head of the Neuroscience Graduate Student Organization, Dr. Jordan, sent to the Associate Dean for Graduate Programs in Biomedical Sciences, Victoria Freedman, a "'student survey' that contained purported anonymous 'student comments,'" with which Plaintiff disagrees as to substance, but in which "students had alleged mistreatment, including discriminatory and sexist comments, by Dr. Khodakhah." *Id.* ¶ 117.

As a result, Einstein launched an independent confidential investigation of these allegations. *Id.* ¶¶ 134-35. The investigation was conducted by an independent third party. *Id.* ¶ 135.

***Dean Tomaselli Suspends Plaintiff as Chair of the Neuroscience Department***

On March 10, 2022, Dean Tomaselli, as Dean of the Albert Einstein School of Medicine, notified Dr. Khodakhah of this investigation and suspended him as department chair pending the results of the investigation. FAC ¶¶ 134-36; Exhibit A (March 10, 2022 Suspension Letter).[2] Dean Tomaselli specified that this decision was because he needed "'to protect all parties from fear of retaliation,' citing a 'power differential.'" *Id.* ¶ 136. He concluded by reminding Dr. Khodakhah of the College's anti-retaliation policy and instructed him "not to communicate with the faculty and students about the investigation." *Id.* ¶ 138.

Later that same day, Dean Tomaselli sent an email to the Einstein Neuroscience Department faculty "to inform them that, based on the 'information received' in a 'letter of concern from faculty and results of student surveys,' Dr. Khodakhah was under 'investigation,' and inviting individuals to contact investigators with 'any information.'" *Id.* ¶ 139. He also

---

[2] Because the FAC relies upon the March 10, 2022 Suspension Letter, FAC ¶¶ 134-38, the July 11, 2022 Chair Dismissal Letter, *id.* ¶¶ 163-167, and the July 13, 2022 Interim Suspension Letter, *id.* ¶¶ 190-191, Dean Tomaselli attaches these documents to his motion. *See, e.g.*, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (holding "the district court was entitled to consider [attached documents] in deciding the motion to dismiss," where plaintiffs relied upon these materials and they were "integral to its complaint"); *see also Int'l Cargo Loss Prevention, Inc. v. Mediterranean Shipping Co. (USA), Inc.*, 2024 WL 37072, at *2 (S.D.N.Y. Jan. 3, 2024) (collecting cases).

explained that, during the investigation, "Dr. Khodakhah will step down from his role as chair." *Id.* ¶ 140.

"Over the next several months, an investigation conducted by an external investigator commissioned by Einstein ensued." *Id.* ¶ 158.

***After the Investigation, Dean Tomaselli Permanently Dismisses Plaintiff as Chair***

On July 11, 2022, Dean Tomaselli notified Dr. Khodakhah that the investigation had concluded and that Dr. Khodakhah "was being immediately dismissed from his appointment as Chair for misconduct." FAC ¶ 163; Exhibit B (July 11, 2022 Chair Dismissal Letter). Dean Tomaselli wrote that Plaintiff's "'behavior' 'violates Einstein policies' and was cause for his dismissal as Chair." *Id.* ¶ 166. The letter further stated that the investigation had confirmed Plaintiff's varied highly disturbing behaviors including:

> 1) Persistent general mistreatment of students;
> 2) Persistent and inappropriate use of discriminatory nicknames;
> 3) Repeated instances of racist, disability, and gender-based comments and insensitive and politically incorrect comments;
> 4) Repeated references to students and others as "morons" in front of both students and faculty;
> 5) Repeated inappropriate and unwanted physical touching, including pulling female students' ponytails, stomach touching, shoulder touching, and pushing;
> 6) Repeated instances of serving alcohol to and drinking alcohol with students in classes and in the lab, which is in direct violation of Einstein's Drug and Alcohol Policy;
> 7) Inappropriate behavior at on- and off-campus Einstein events, believed to be due to intoxication; and
> 8) Persistent mistreatment, intimidation, and abuse of staff, including by threatening the loss of their jobs and privileges such as vacation and personal time.

*Id.* ¶ 164.

*Einstein Commences Two Title IX Investigations*

On July 11, 2022, Einstein notified Dr. Khodakhah that it was commencing a

separate investigation concerning potential Title IX violations concerning two women faculty

members. FAC ¶ 174. As summarized in Plaintiff's allegations:

> 175. [Notice of Investigation] 1 informed Dr. Khodakhah that
> Complainant 1 alleged that, in 2017, during a job interview, Dr.
> Khodakhah had (i) asked her "impermissible questions" about her
> husband's occupation and placed his hand on her bare knee when he
> greeted her and (ii) greeted her with a kiss at a professional social
> gathering. Complainant 1 further alleged that, during her visit to
> campus before she was hired by Einstein, Dr. Khodahah had pointed
> out his house to her after picking her up from the train station and
> offered her wine during dinner with colleagues.

> 176. [Notice of Investigation] 2 informed Dr. Khodakhah that
> Complainant 2 alleged that, during a 2018 professional reception,
> Dr. Khodakhah had (i) placed his hand on her back as they waited
> in line to be served and that, (ii) at a 2018 annual meeting of the
> Society for Neuroscience, while engaged in conversation with
> others, (a) placed his hands on her breastbone and (b) "also called
> her a 'moron' as [he] rushed her and slapped her upper thigh."

*Id.* ¶¶ 175-76. The next day, Dr. Khodakhah reached out to colleagues regarding these

complaints. *Id.* ¶ 188. While Plaintiff does not quote from this email and self-servingly

characterizes it as "reaching out to colleagues who might serve as witnesses," *id.*, the FAC later

acknowledges that this supposedly harmless email prompted an investigation into whether

Plaintiff had violated Einstein's no-retaliation policy by sending it, *see id.* ¶¶ 337, 508.

On December 23, 2023, Plaintiff was found responsible for sexual harassment in

Complainant 2's case, and not responsible for sexual harassment in Complainant 1's case. *Id.*

¶¶ 250-51.

*Dean Tomaselli Removes Plaintiff from Campus After Plaintiff Violates No-Retaliation Policy*

On July 13, 2022, "Dean Tomaselli informed Dr. Khodakhah that, he was being

'immediately removed from campus until final determinations are complete regarding [his]

flagrant disregard of Einstein's no retaliation policy.'" FAC ¶ 190; Exhibit C (July 13, 2022 Interim Suspension Letter). The suspension included deactivating Dr. Khodakhah's active directory, email accounts, and associated linked accounts. *Id.* ¶ 191.

On August 12, 2022, Dean Tomaselli provided a further update to Neuroscience Department faculty by email. His email stated, "in part": "'Following the conclusion of the investigation of Dr. Khodakhah's fitness to serve as chair and his removal from that leadership position, in July 2022, [Einstein] notified Dr. Khodakhah that it was commencing separate investigations of other additional allegations that Dr. Khodakhah had engaged in conduct that may violate additional Einstein policies.'" *Id.* ¶ 211-12.

***Plaintiff Perverts the Title IX Process by Filing His Own Complaint against Dean Tomaselli***

After Dean Tomaselli's August 12, 2022 email to the Neuroscience faculty at Einstein, Dr. Khodakhah filed his own Title IX complaint against Dean Tomaselli on August 17, 2022, alleging that Dean Tomaselli had "breach[ed] his rights of confidentiality and his right not to be retaliated against based on (i) Dean Tomaselli's August 12, 2022 email to the Neuroscience Department; and (ii) Dean Tomaselli's July 13, 2022 decision to suspend him from his faculty position and ban him from campus." FAC ¶ 219.

***Dean Tomaselli Is Found "Not Responsible" for a Title IX Violation***

On May 21, 2024, a third-party adjudicator concluded that "Dean Tomaselli was 'not responsible' for retaliation against Plaintiff." FAC ¶ 334. On June 4, 2024, Plaintiff filed an appeal of that decision, which remains pending. *Id.* ¶ 347.

***Plaintiff Files the Instant Lawsuit***

On February 5, 2024, Plaintiff filed the instant lawsuit. ECF No. 1. Plaintiff amended his complaint on September 23, 2024. ECF No. 48. Plaintiff brings no federal claims

against Dean Tomaselli. Plaintiff alleges that the Dean tortiously interfered with Plaintiff's

employment contract by suspending and ultimately dismissing Plaintiff as Chair of the

Neuroscience Department, and by informing Plaintiff he was to be removed from campus after

he appeared to violate the No-Retaliation Policy. Plaintiff also alleges that this conduct was

discriminatory in violation of the New York State and City Human Rights Laws. These meritless

claims should be dismissed.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly

dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. "Accordingly, a district court

must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences

in the plaintiff's favor." *Castiblanco v. Allstate Ins. Co.*, 2024 WL 1532784, at *2 (S.D.N.Y.

Apr. 9, 2024) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading

that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of

action will not do." *Twombly*, 550 U.S. at 555.

**ARGUMENT**

I.    **PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF'S ALLEGATIONS FAIL TO MAKE OUT THE CLAIM**

   A.    **Plaintiff's Failure to Allege the Existence of a Valid Contract or a Breach Thereof Is Fatal to His Tortious Interference Claim**

   Plaintiff has not adequately alleged all the elements of a tortious interference claim. Under New York law, the elements of tortious interference with contract are: (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996).

   For the reasons set forth in the Einstein Defendants' brief at Section IV.B., incorporated here, Plaintiff has not alleged the existence of a valid contract or a breach thereof. Accordingly, Plaintiff's tortious interference claim must be dismissed. *Amato v. N.Y.C. Dep't of Parks & Recreation*, 110 A.D.3d 439, 440 (1st Dep't 2013) (affirming dismissal of tortious interference claim, concluding that "the complaint does not state a cause of action for tortious interference with contract, since it fails to allege the existence of a contract"); *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990) ("Under traditional principles of New York law, a party may not recover for tortious inducement of breach of a contract without proving that the underlying contract has been breached.").

   Likewise, Plaintiff does not allege Dean Tomaselli "had knowledge" of the "employment contract" he claims was breached. *Lama Holding Co.*, 88 N.Y.2d at 424. The FAC asserts that a number of policies and documents comprise Plaintiff's "employment contract." *See* FAC ¶¶ 472-74. But, not only do these documents fail to create a contract, *see* Einstein Defs.'

Br. at Section IV.B., critically, for purposes of his tortious interference claim, Plaintiff does not allege that Dean Tomaselli had specific knowledge of any of them. *See Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 813 (S.D.N.Y. 2008) ("With regard to the second element, the plaintiff must 'provide specific allegations' of the defendant's knowledge and cannot survive a motion to dismiss by making merely a 'conclusory assertion' of knowledge."). Plaintiff's tortious interference claim must therefore be dismissed.

### B. Dean Tomaselli Cannot Be Individually Liable for Conduct Within the Scope of His Employment

Plaintiff's claim fails for the additional reason that employees cannot be individually liable for tortious interference when the purportedly tortious acts were undertaken within the scope of their employment.

It is axiomatic that "only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract." *Koret, Inc. v. Christian Dior, S.A.*, 161 A.D.2d 156, 157 (1st Dep't 1990); *see also Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996) ("[A] plaintiff bringing a tortious interference claim must show that the defendants *were not parties to the contract*." (citing *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120 (1956)). A party who is "essentially the alter ego of the parties it induced to breach" is not a "'stranger' to the contractual relationship," and there can be no tortious interference claim against such party. *UBS Sec. LLC v. Highland Cap. Mgmt., L.P.*, 86 A.D.3d 469, 477 (1st Dep't 2011); *see also New Media Holding Co., LLC v. Kagalovsky*, 118 A.D.3d 68, 80 (1st Dep't 2014) ("[D]efendants are correct in concluding that they cannot be simultaneously alter egos and tortious intervenors.").

Consistent with this principle, "[a]n agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he is acting on behalf of his principal and within the scope of his authority." *Kartiganer Assocs., P.C. v. Town of New*

*Windsor*, 108 A.D.2d 898, 899 (2d Dep't 1985); *Ashby v. ALM Media, LLC*, 110 A.D.3d 459,

459 (1st Dep't 2013) (affirming dismissal of tortious interference claim where defendant "was

not a stranger to plaintiff's contract with [the employer] as he was one of [the employer's]

executives.").

   Here, the allegations establish that Dean Tomaselli acted within the scope of his

duties as Einstein's agent when he purportedly "interfered" with Plaintiff's employment contract.

Plaintiff alleges that Dean Tomaselli was "formerly the Dean of the School of Medicine at

Einstein," FAC ¶ 17, that he maintained a leadership position and was responsible for securing

funding and overseeing Einstein's budget, *see id.* ¶¶ 65-77, and that he had discretion over

Plaintiff's chairmanship, *id.* ¶¶ 59, 152-53, 497. According to Plaintiff, Dean Tomaselli

tortiously interfered with his employment contract when he "induced the breach of Plaintiff's

employment contract by taking adverse actions against Dr. Khodakhah's employment." *Id.* ¶

539. Specifically, on March 10, 2022, Plaintiff received a letter from Dean Tomaselli suspending

him as chair in response to "concerns from the Neuroscience faculty and students" and

"concerning behavior that borders on student mistreatment." *Id.* ¶ 134. Then, on July 11, 2022,

Plaintiff alleges that Dean Tomaselli sent him a letter dismissing him from his appointment as

chair, explaining that a confidential investigation had confirmed Plaintiff's "[p]ersistent general

mistreatment of students," "[p]ersistent and inappropriate use of discriminatory nicknames,"

"[r]epeated instances of racist, disability, and gender-based comments," and "[r]epeated

inappropriate and unwanted physical touching," among other disturbing conduct. *Id.* ¶ 164.

Lastly, Plaintiff alleges that on July 13, 2022, Dean Tomaselli informed him that "he was being

'immediately removed from campus until final determinations are complete regarding [his]

flagrant disregard of Einstein's no retaliation policy.'" *Id.* ¶ 190.

Rather than make out a tortious interference claim, these allegations establish only that Dean Tomaselli was acting in his leadership role at Einstein when he suspended, dismissed, and removed Plaintiff. According to the FAC, Dean Tomaselli's actions were a response to "concerns from faculty and students," findings of "mistreatment" and "unwanted physical touching," and Plaintiff's own misconduct. *Id.* ¶¶ 134, 164, 190. As alleged in the FAC and common sense confirms, Dean Tomaselli was responding to faculty and students because of his role as Dean of Einstein. Such allegations fail to state a claim because "[a]n agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he is acting on behalf of his principal and within the scope of his authority." *Kartiganer Assocs.*, 108 A.D.2d at 899. Notably, the March 10, 2022 Suspension Letter, the July 11, 2022 Chair Dismissal Letter, and the July 13, 2022 Interim Suspension Letter are all on Einstein letterhead, further indicating these purportedly tortious communications were within the scope of Dean Tomaselli's employment. *See* Exs. A, B, C.

To the limited extent employees may be liable for tortious interference when acting in bad faith and for personal gain, Plaintiff's allegations fall short of meeting the heightened pleading standard required. *See, e.g.*, *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 407-08 (S.D.N.Y. 2009) ("[A] narrow exception exists for officers acting wholly outside the scope of their authority for purely personal gain, but an enhanced pleading standard applies."); *Marino v. Vunk*, 39 A.D.3d 339, 340–41 (1st Dep't 2007) ("Plaintiff's conclusory allegations that the individual defendants acted with malice, without more, are insufficient[.]"). Rather than bad faith or personal gain, the allegations establish that Dean Tomaselli's acts were prompted by Plaintiff's own misconduct. *See, e.g.*, FAC ¶ 173

("Dean Tomaselli dismissed [Plaintiff] as Chair . . . for purported *misconduct*." (emphasis in original)).

C.    **Dean Tomaselli Cannot be Liable for Conduct that Was Justified and Was Not the "But For" Cause of Any Alleged Breach**

Plaintiff's tortious interference claim also fails because Dean Tomaselli's conduct was justified by the legitimate purpose of protecting Einstein students and staff and investigating alleged misconduct. To make out his claim, Plaintiff must allege that Dean Tomaselli intentionally procured "the third-party's breach of the contract *without justification*." *Lama Holding Co.*, 88 N.Y.2d at 424 (emphasis added); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 589 (2d Cir. 2005) ("A claim for tortious interference with contract cannot rest on conduct that is incidental to some other lawful purpose." (internal citations omitted)).

Here, Plaintiff has not alleged that Dean Tomaselli's actions were not justified. Instead, Plaintiff alleges that Dean Tomaselli acted in response to complaints of misconduct. *See, e.g.*, FAC ¶¶ 134-35 (Dean Tomaselli's March 10, 2022 Suspension Letter stated he had "received information on concerns from the Neuroscience faculty and students . . . concerning behavior that borders on student mistreatment"); *id.* ¶ 173 ("Dean Tomaselli dismissed [Plaintiff] . . . for purported *misconduct*."); *id.* ¶ 190 ("Dean Tomaselli informed Dr. Khodakhah that, he was being 'immediately removed from campus until final determinations are complete regarding your flagrant disregard of Einstein's no retaliation policy.'").

These allegations establish that Dean Tomaselli was acting within the bounds of his professional authority and with the justified "intent to get to the bottom of widely reported allegations." *Conte v. Emmons*, 895 F.3d 168, 173 (2d Cir. 2018) (directing judgment in the defendant prosecutor's favor on tortious interference claim where actions of the alleged

tortfeasors reflected aggressive and passionate investigation, and evidence "d[id] not allow for the inference that their intent went beyond their lawful charge").

For the same reasons, Plaintiff does not allege that "the contract would not have been breached 'but for' the defendant's conduct." *Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006) (dismissing tortious interference with contract claim where the plaintiff "has failed to allege that but for defendants' actions Ms. Blige would have continued her contract with plaintiff"). Instead, the FAC makes clear that (i) numerous complaints had been made regarding Plaintiff's "demeaning and unprofessional" conduct, FAC ¶¶ 108-10, (ii) an independent investigation had confirmed Plaintiff had engaged in "general mistreatment," "repeated instances of racist, disability, and gender-based comments," and "repeated inappropriate physical touching," among other conduct, *id.* ¶ 164, and (iii) two Title IX complaints had been filed against him, *id.* ¶¶ 174-76. Given this landscape, Plaintiff has failed to allege that "but for" Dean Tomaselli's tortious interference, Plaintiff would not have been suspended, dismissed, or temporarily removed from campus. *See Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990) ("A plaintiff must allege that 'there would not have been a breach but for the activities of defendants.'").

## II.    PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS MUST BE DISMISSED BECAUSE HE DOES NOT ALLEGE DEAN TOMASELLI'S CONDUCT WAS BASED ON GENDER

Plaintiff's discrimination claims fail because Plaintiff has not alleged that any of Dean Tomaselli's conduct was motivated by Plaintiff's gender. Both the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") prohibit employers from taking adverse action against employees based on gender. N.Y. Exec. L. § 296(1)(a); N.Y.C. Admin. Code § 8–107(1)(a). To state a claim under the NYSHRL, a plaintiff must allege that his protected characteristic "was a motivating factor in the employment

decision." *Mayorga v. Greenberg*, 2023 WL 6307994, at \*6-7 (E.D.N.Y. Sept. 28, 2023) ("A plaintiff pleads an inference of discrimination when she alleges that she suffered an adverse employment action 'because of' her protected characteristics." (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)). Likewise, to state a claim under the NYCHRL, Plaintiff must allege that he "was treated less well than other employees because of [his] gender." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

Crucial to both NYCHRL and NYSHRL claims, Plaintiff must allege that "any adverse actions taken against h[im] were done under circumstances 'giving rise to an inference of discrimination' based on h[is] gender." *Casalino v. N.Y. State Cath. Health Plan, Inc.*, 2012 WL 1079943, at \*18 (S.D.N.Y. Mar. 30, 2012) (citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009)). Plaintiff fails to satisfy this standard.

Plaintiff's allegations here do not give rise to an inference that Dean Tomaselli discriminated against him. Rather, the FAC repeatedly alleges that Dean Tomaselli dismissed Plaintiff, suspended him, and directed his removal from campus because of Plaintiff's misconduct—not his gender. *See, e.g.*, FAC ¶ 134 (Dean Tomaselli's March 10, 2022 letter suspending Plaintiff cited "distressing anonymous feedback from students"); ¶ 163 (Dean Tomaselli's July 11, 2022 letter dismissing Plaintiff as chair explained that an investigation confirmed Plaintiff's "repeated inappropriate and unwanted physical touching," among other things); ¶ 190 (Dean Tomaselli's July 13, 2022 letter noted Plaintiff was to be immediately removed from campus until a final determination as complete "regarding [Plaintiff's] flagrant disregard of Einstein's no retaliation policy."). Nowhere does Plaintiff allege any facts indicating that Dean Tomaselli treated him "less well" because of his gender. *Mihalik*, 715 F.3d at 110

("[Plaintiff] must show that she has been treated less well at least in part *because of* her gender." (internal quotations omitted) (emphasis in original)).

In conclusory fashion, Plaintiff asserts that Dean Tomaselli "knew that accusations against Plaintiff were false, and that Plaintiff had not been afforded the procedural protections provided for in his employer's written sexual harassment policy." FAC ¶¶ 545, 557.[3] Plaintiff also claims that Dean Tomaselli "distorted and deviated from the stated purpose of Defendant Einstein's sexual harassment policy, by deferring to invidious gender and/or sexual stereotypes and crediting malicious accusations against Plaintiff which they knew were false." *Id.* ¶¶ 546, 558. However, even a well-supported allegation (which this is not) that a manager credited knowingly false complaints does not give rise to a gender discrimination claim. *Cf. Babcock v. N.Y. State Off. of Mental Health*, 2009 WL 1598796, at *15 (S.D.N.Y. June 8, 2009) ("The fact that [a plaintiff's employer] may have relied on incorrect information is immaterial to [the plaintiff's] gender-based discrimination claim."). Likewise, Plaintiff's conclusory claim that Dean Tomaselli "deferred to invidious gender and/or sexual stereotypes" is not supported by a single factual allegation. *See* FAC ¶¶ 546, 558. Plaintiff does not allege Dean Tomaselli said anything perpetuating gender stereotypes or even said anything hinting he held stereotypical views.

Plaintiff alleges that the sexual harassment claims against him were false and that he was treated unfairly as Einstein investigated the complaints. But even if true, these allegations do not support a discrimination claim. As New York courts have explained, "the NYCHRL is not a general civility code." *Mihalik*, 715 F.3d at 113. And "[i]t is not enough that a plaintiff has an

---

[3] Paragraph 557 appears to contain a typographical error by not alleging that "Defendants knew that accusations against Plaintiff were false." For purposes of this motion, Dean Tomaselli assumes Plaintiff meant to include this claim as he did in the parallel Paragraph 545.

overbearing or obnoxious boss. [He] must show that [he] has been treated less well at least in part because of [his] gender." *Id*. at 110; *see also Casalino*, 2012 WL 1079943, at *18 ("[I]t is critical that Plaintiff demonstrate that any adverse actions taken against her were done under circumstances giving rise to an inference of discrimination based on her gender."); *Llanos v. City of New York*, 129 A.D.3d 620, 620 (1st Dep't 2015) (affirming dismissal of NYCHRL and NYSHRL claims where "[p]laintiff has not made any factual allegations that she was adversely treated under circumstances giving rise to an inference of discrimination").

Plaintiff's allegations are not just independently insufficient to support his claims; they are an affront to the antidiscrimination laws he cites. These landmark statutes were designed to protect victims of discrimination from people and institutions whose wrongful conduct perpetuates inequality. In a perverse twist, Plaintiff, himself the perpetrator of discriminatory conduct—as an independent Title IX process determined, *see* FAC ¶ 251—would weaponize anti-discrimination law to undermine the Defendants' legitimate efforts to vindicate these rights for others. This is not permitted by the NYSHRL or the NYCHRL, and Plaintiff's claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Gordon Tomaselli respectfully requests the Court grants his motion to dismiss and dismiss the claims against him with prejudice.

16

Dated:  November 15, 2024
         New York, New York

                                        EMERY CELLI BRINCKERHOFF
                                        ABADY WARD & MAAZEL LLP

                                        _____/s_____
                                             Andrew G. Celli, Jr.
                                             Debra Greenberger
                                             Sara Luz Estela

                                        600 Fifth Avenue, 10th Floor
                                        New York, New York 10020
                                        (212) 763-5000

                                        acelli@ecbawm.com
                                        dgreenberger@ecbawm.com
                                        sestela@ecbawm.com

                                        *Attorneys for Defendant Gordon
                                        Tomaselli*