**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**KAMRAN KHODAKHAH,**

***Plaintiff,***

**v.**

**MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC., ALBERT EINSTEIN COLLEGE OF MEDICINE, GORDON TOMASELLI, PABLO CASTILLO, BRYEN JORDAN, JOHN—JANE DOES 1-10,**

***Defendants.***

**Civil Action No. 1:24-cv-00839-LAK-RFT**

# PLAINTIFF KAMRAN KHODAKHAH'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GORDON TOMASELLI'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)

**NESENOFF & MILTENBERG, LLP**
***Attorneys for Plaintiff Kamran Khodakhah***

**Andrew T. Miltenberg, Esq.**
**Stuart Bernstein, Esq.**
**Gabrielle Vinci, Esq.**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**

**Julie A. Sacks, Esq.**
**101 Federal Street, 19th Floor**
**Boston, Massachusetts 02110**
**(617) 209-2188**

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

FACTS ........ 1

A. The terms of Plaintiff's tenured faculty appointment at Einstein. ........ 1

B. Plaintiff is promoted to Interim Chair in 2013, Chair in 2016, and recognized for his exemplary performance. ........ 2

C. 2018-2022: Plaintiff's open criticism of Defendant Tomaselli's failure to perform the budgetary, fiduciary, and infrastructure responsibilities as dean. ........ 2

D. Early 2022: Plaintiff is targeted with false allegations and complains to HR, who advises him the allegations are nonsense. ........ 2

E. March 10, 2022: Defendant Tomaselli orders Plaintiff "suspended" as Chair and announces that he would "step down" as Chair. ........ 3

F. July 11, 2022: Defendant Tomaselli permanently dismisses Plaintiff from his Chairmanship for disciplinary reasons which he has reason to know were false. ........ 4

G. July 11, 2022: Einstein's Title IX Office issues Plaintiff two procedurally irregular Title IX complaints that rehash the false allegations spread by Castillo and Jordan. ........ 5

H. July 13, 2022: Defendant Tomaselli suspends Plaintiff from duty and "removes" him from campus after Plaintiff attempts to secure witnesses in his Title IX case, charging Plaintiff with an inapposite policy violation. ........ 7

I. Ramirez issues a procedurally irregular decision in Plaintiff's Title IX case. ........ 8

1. Ramirez applies Einstein's obsolete 2018 Title IX Policy ........ 8

2. Ramirez considers anonymous and unsubstantiated allegations outside Plaintiff's Title IX process when imposing sanctions. ........ 10

J. February 2024: In an answer filed in a New York state court case, Einstein denies that Plaintiff engaged in incidents of misconduct that are the same as those Defendant Tomaselli cited when he dismissed Plaintiff from his chairmanship. ........ 10

K. May 17, 2024: After being suspended and "removed" from campus for nearly two years, Plaintiff is determined not responsible for purported "retaliation." ........ 11

ARGUMENT ........ 12

I. Standard of Review ........ 12

II. Dr. Khodakhah Has Sufficiently Alleged a Tortious Interference Claim ........ 13

A. Plaintiff has alleged the existence of a valid contract. ........ 13

B. Plaintiff has alleged that Defendant Tomaselli had knowledge of the contract. ........ 15

C. Plaintiff has sufficiently alleged Defendant Tomaselli intentionally procured Einstein's breach of the contract "without justification." .......... 17

1. Intentional procurement of Einstein's breach .......... 17

2. Defendant Tomaselli's conduct was "without justification" and outside the scope of his authority, making him a stranger to the contract .......... 17

3. Defendant Tomaselli had no authority to dismiss Plaintiff as Chair based on allegations that he knew or had reason to know were false. .......... 20

4. Defendant Tomaselli had no authority to impose upon Plaintiff a disciplinary demotion as *punishment*. .......... 20

5. Defendant had no authority to "remove" Plaintiff from campus based on a bad faith charge of "retaliation." .......... 22

D. Plaintiff has sufficiently alleged "actual breach of the contract." .......... 22

1. Plaintiff has sufficiently alleged Defendant Tomaselli is the but-for cause of Einstein's breach. .......... 23

E. Plaintiff has sufficiently alleged damages from the breach. .......... 23

III. Plaintiff Has Sufficiently Alleged Claims for Sex Discrimination Under the New York State Human Rights Law and the New York City Human Rights Law. .......... 24

A. Plaintiff has plausibly alleged discrimination by Einstein on the basis of official action and deliberate indifference. .......... 25

1. Deliberate Indifference .......... 26

2. Official Action Theory and Indicia of Gender Bias .......... 28

B. Defendant Tomaselli Is Liable as an Aider and Abettor of Einstein's Unlawful Discrimination Under the NYSHRL and NYCHRL. .......... 29

CONCLUSION .......... 31

**TABLE OF AUTHORITIES**

**Cases**

*Adia v. Grandeur Mgmt., Inc.*,
933 F.3d 89 (2d Cir. 2019) ........ 12
*Albert v. Loksen,*
239 F.3d 256 (2d Cir. 2001) ........ 20
*Amato v. New York City Dep't of Parks & Recreation*,
110 A.D.3d 439, 973 N.Y.S.2d 29 (2013) ........ 15
*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ........ 12
*Baylis v. Marriott Corp*.,
906 F.2d 874 (2d Cir. 1990) ........ 15
*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........ 12
*Carruthers v. Flaum*,
388 F. Supp. 2d 360 (S.D.N.Y. 2005) ........ 13, 20
*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004) ........ 24
*Finley v. Giacobbe*,
79 F.3d 1285 (2d Cir. 1996) ........ 17, 18
*Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*,
241 F. Supp. 2d 246 (S.D.N.Y. 2002) ........ 16
*Holm v. Ithaca Coll*.,
175 Misc. 2d 717, 669 N.Y.S.2d 483, (Sup. Ct. Tompkins Co. 1998) ........ 14
*In re Lehman Bros. Sec. & Erisa Litig*.,
799 F. Supp. 2d 258 (S.D.N.Y. 2011) ........ 12
*Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*,
450 F. Supp. 3d 358 (S.D.N.Y. 2020) ........ 13
*Joshi v. Trustees of Columbia Univ. in City of New York*,
No. 17-CV-4112 (JGK), 2018 WL 2417846 (S.D.N.Y. May 29, 2018) ........ 14
*Kaloyeros v. Rsch. Found. of State Univ. of New York*,
71 Misc. 3d 1219(A), 144 N.Y.S.3d 557 (N.Y. Sup. Ct. 2021) ........ 13, 15
*Kartiganer Assocs., P.C. v. Town of New Windsor,*
108 A.D.2d 898, 485 N.Y.S.2d 782 (1985) ........ 18
*Kirch v. Liberty Media Corp.,*
449 F.3d 388 (2d Cir. 2006) ........ 13
*Klinge v. Ithaca Coll*.,
167 Misc. 2d 458, 634 N.Y.S.2d 1000 (Sup. Ct. 1995) ........ 14, 15, 21

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996) ........ 13

*Langenkamp v. Olson*,
628 F. App'x 50 (2d Cir. 2015) ........ 13, 22

*Leibowitz v. Cornell Univ*.,
584 F.3d 487 (2d Cir. 2009) ........ 15

*Lynch v. City of New York*,
952 F.3d 67 (2d Cir. 2020) ........ 12

*Menaker v. Hofstra Univ*.,
935 F.3d 20 (2d Cir. 2019) ........ 25, 26

*Monaco v. New York Univ.*,
204 A.D.3d 51, 164 N.Y.S.3d 87, 401 Ed. Law Rep. 563 (1st Dep't 2022) ........ 14, 21

*Nezaj v. PS450 Bar & Rest.*,
719 F. Supp. 3d 318 (S.D.N.Y. 2024) ........ 24, 29

*Novio v. New York Acad. of Art*,
286 F. Supp. 3d 566 (S.D.N.Y. 2017) ........ 29

*O'Neill v. New York Univ*.,
944 N.Y.S.2d 503 (App. Div. 2012) ........ 14, 23

*Pearson v. Walden Univ*.,
144 F. Supp. 3d 503 (S.D.N.Y. 2015) ........ 14

*Riddell Sports Inc. v. Brooks*,
872 F. Supp. 73 (S.D.N.Y. 1995) ........ 18

*Roulette Recs., Inc. v. Princess Prod. Corp*.,
15 A.D.2d 335, 224 N.Y.S.2d 204, aff'd, 12 N.Y.2d 815, 187 N.E.2d 132 (1962) ........ 16

*Schiebel v. Schoharie Cent. Sch. Dist*.,
120 F.4th 1082 (2d Cir. 2024) ........ 25, 26, 28

*Seagrape Invs. LLC v. Tuzman*,
No. 21-CV-7517 (RA), 2024 WL 4337448 (S.D.N.Y. Sept. 26, 2024) ........ 16, 22

*Stacy Roundabush v. Albert Einstein College of Medicine of Yeshiva University and Kamran Khodakhah*,
Index No. 807857/2023E (May 19, 2023) ........ 10

*Syeed v. Bloomberg L.P.*,
568 F. Supp. 3d 314 (S.D.N.Y. 2021) ........ 24

*Trahan v. Lazar*,
457 F. Supp. 3d 323 (S.D.N.Y. 2020) ........ 17

*Union Carbide Corp. v. Montell N.V*.,
944 F. Supp. 1119 (S.D.N.Y. 1996) ........ 23

*Vega v. Hempstead Union Free Sch. Dist*.,
801 F.3d 72 (2d Cir. 2015) ........ 30

*Vengalattore v. Cornell Univ.*,
36 F.4th 87 (2d Cir. 2022) ........................................................................................ 25

*Xiang v. Eagle Enterprises, LLC*,
No. 19 CIV. 1752 (PAE), 2020 WL 248941 (S.D.N.Y. Jan. 16, 2020) .................................... 24

## INTRODUCTION

Plaintiff Kamran Khodakhah ("Plaintiff" or "Dr. Khodakhah") respectfully submits this Memorandum of Law in Opposition to Defendant Gordon Tomaselli's ("Dean Tomaselli" or "Defendant"), Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). As Plaintiff has plausibly alleged entitlement to relief on his claims, Defendant's Motion should be denied in its entirety.

## FACTS[1]

### A. The terms of Plaintiff's tenured faculty appointment at Einstein.

Plaintiff is a renowned neuroscientist and medical researcher who is employed as a tenured professor of neuroscience, psychiatry and behavioral sciences, and neurology at Albert Einstein College of Medicine ("Einstein"), FAC ¶¶ 1, 35, a subsidiary of Defendant Montefiore Medicine Academic Health System, Inc. ("Montefiore" and, together with Einstein, "Einstein-Montefiore"). *Id.* ¶¶ 12-13. In his November 1, 2000 offer letter, Dr. Khodakhah was made an offer of a faculty position with Einstein, with the understanding that his faculty appointment would be "subject to the terms outlined in [this] letter and to the provisions of [Einstein's] System of Appointments" and "other policies of [Einstein] applicable to faculty." *Id.* ¶ 37; ECF 58-1.

Plaintiff's 2001 appointment letter ("2001 Appointment Letter") guaranteed that his faculty appointment at Einstein would be "in accordance" with the terms outlined in the appointment letter and Einstein's "Faculty Handbook" and "policies," incorporated therein. *Id.* ¶ 30; ECF 58-2. On September 11, 2012, Einstein granted Plaintiff tenure. FAC ¶ 44.

[1] A full recitation of the facts can be found in the First Amended Complaint ("FAC"), ECF 48.

**B.     Plaintiff is promoted to Interim Chair in 2013, Chair in 2016, and recognized for his exemplary performance.**

In 2013, Plaintiff was appointed Interim Chair of Einstein's Neuroscience Department ("Department"). FAC ¶ 46. In 2016, Plaintiff was appointed Chair of the Department, with the unanimous support of the Department, notably, absent one, Dr. Pablo Castillo, M.D. ( "Castillo"), who was widely known to hold a grudge against Plaintiff for his appointment as Interim Chair, and later Chair. *Id.* ¶¶ 56-58.

Plaintiff's appointment letter to the Chairmanship (the "2016 Promotional Letter") promised that Plaintiff's appointment as Chair was "for an indefinite term," with "continuation . . . subject to performance as determined by the Dean." *Id.* ¶ 59; ECF 58-4. At all relevant times, Plaintiff's performance as Chair was exemplary, earning himself and the Department national recognition. *Id.* ¶¶ 61-63.

**C.     2018-2022: Plaintiff's open criticism of Defendant Tomaselli's failure to perform the budgetary, fiduciary, and infrastructure responsibilities as dean.**

In 2018, Defendant Tomaselli was appointed dean of Einstein. FAC ¶ 66. In his capacity as Chair, Plaintiff was openly critical of Dean Tomaselli's failure to perform the budgetary, fiduciary, and infrastructure responsibilities as dean, which Dean Tomaselli resented and caused him to feel threatened by Plaintiff. *Id.* ¶¶ 66-83.

**D.     Early 2022: Plaintiff is targeted with false allegations and complains to HR, who advises him the allegations are nonsense.**

In early 2022, Plaintiff became the target of false allegations instigated by two senior male professors in the Department, Castillo and Dr. Bryan Jordan ("Jordan"). *Id.* ¶¶ 107-121. Upon learning of the allegations on February 24, 2022, Plaintiff promptly sought assistance from Yvonne Ramirez ("Ramirez"), who served as both Einstein's Title IX Coordinator and Einstein's VP of Human Resources. *Id.* ¶¶ 122-123. Both Ramirez and Einstein's Executive Dean, Dr. Edward

Burns ("Burns") advised Plaintiff that they believed the allegations were baseless, but suggested that he "step down" as Chair, given the "climate" in the wake of the #MeToo movement,[2] an option Plaintiff rejected because the allegations against him were an obvious sham. *Id.* ¶¶ 124-132.

**E.    March 10, 2022: Defendant Tomaselli orders Plaintiff "suspended" as Chair and announces that he would "step down" as Chair.**

Though no formal complaint had been filed against Plaintiff and no investigation into the veracity of the allegations was conducted, on March 10, 2022, Defendant Tomaselli notified Plaintiff that he was immediately "suspending" Plaintiff from his appointment as Chair, pending the outcome of an investigation into "distressing anonymous feedback of students." Defendant Tomaselli asserted that he was taking this action "to protect all parties from fear of retaliation," "actual or perceived." *Id.* ¶¶ 133-136; ECF 54-1. Within minutes, Defendant Tomaselli emailed the Department that Plaintiff was under investigation and would "step down" as Chair, and that he (Defendant Tomaselli) would choose an Interim Chair to replace Plaintiff. *Id.* ¶¶ 139-140.[3]

Einstein's then applicable policies, specifically, its "Title IX Gender-Based Misconduct, Discrimination and Harassment Policy and Complaint Procedures for Employees and Non-Students," dated August 14, 2020 (the "2020 Title IX Policy"), ECF 58-8, and the "Discrimination and Harassment Policy (Non-Title IX)," dated August 14, 2020 (the "Discrimination/Harassment Policy"), did not permit disciplining an accused faculty member *prior* to an adjudication and proof of responsibility by clear and convincing evidence, or demoting Plaintiff as a purported "interim protective measure." FAC ¶¶ 92-94, 96-102, 145-149, 150-151, 304, 401; 2020 Title IX Policy at §§ III.G, III.I; ECF 58-8 at 10-20, 23.

---

[2] At the time, Einstein was facing ongoing internal and external pressures to aggressively pursue and resolve allegations of sexual harassment, particularly allegations of females. FAC ¶¶ 374- 382, 392-398.

[3] Tomaselli did not identify any alleged violation of any specific employment policy. ECF 54-1.

Since February 2022, Jordan and Castillo had been spreading false allegations and innuendo that Plaintiff was involved in sexual misconduct with female members of the junior faculty. FAC ¶ 142. Following Defendant Tomaselli's March 10, 2022 announcement to the Department that Plaintiff would be "stepping down" as Chair, multiple persons complained to Defendant Tomaselli, Ramirez, and Burns that Jordan and Castillo had instigated false allegations against Plaintiff. *Id.* ¶¶ 154-156. Faculty members also reported to the external investigator commissioned by Einstein to look into the allegations that the allegations against Plaintiff were false and instigated by a handful of senior male faculty members. *Id.* ¶ 159.[4]

**F. July 11, 2022: Defendant Tomaselli permanently dismisses Plaintiff from his Chairmanship for disciplinary reasons which he has reason to know were false.**

In a letter dated July 11, 2022, Plaintiff was notified by Defendant Tomaselli that "the investigation" was concluded and that he (Plaintiff) was being dismissed from his appointment as Chair, effective "immediately," based on allegations that Defendant Tomaselli asserted had been "confirmed" by a "confidential investigation report (the "Report")." FAC ¶¶ 163-165; ECF 54-2. The letter listed purported "serious concerns" about Plaintiff's "behavior," including "inappropriate and unwanted physical touching, including pulling females students' ponytails, stomach touching, shoulder touching, and pushing." FAC ¶ 163, ECF 54-2. The allegations were false, and Plaintiff had never been formally charged or adjudicated responsible for any of the alleged misconduct described in Defendant Tomaselli's letter. *Id.* ¶ 165.

Both Einstein's 2022 Title IX Policy and the Discrimination/Harassment Policy specifically required that Einstein (i) provide an accused faculty member a fair and impartial investigative report, with any findings and outcome and (ii) prove by a "clear and convincing"

[4] The external investigator, himself, shared with faculty that he was personally puzzled by the sanctions Einstein had imposed upon Plaintiff based on what appeared to be baseless allegations. FAC ¶ 160.

standard of evidence that the accused had committed the alleged violation *prior* to the imposition of discipline. FAC ¶¶ 94-96, 98, 102, 488-489; *see* 2022 Title IX Policy at §§ III.H.1, III.I; ECF 58-9 at 19-21, 23.

Defendant Tomaselli imposed this disciplinary demotion upon Plaintiff though Plaintiff: (i) had not been the subject of a formal complaint, (ii) had not been apprised of the identities of his alleged accusers or provided notice of the charges, (iii) had not been adjudicated responsible for any misconduct by clear and convincing evidence (or any other permissible standard), and (iv) had not been provided a copy of any final investigation report prior to the imposition of discipline (and, to this day, Plaintiff has not been provided a copy of any purported investigation report). *Id.* ¶¶ 90-102, 163-173, 486-489. In addition to these blatant policy violations, when Defendant Tomaselli dismissed Plaintiff, he had reason to know that the allegations against Plaintiff were false. *Id.* ¶¶ 125, 154-156, 159-160.

**G.    July 11, 2022: Einstein's Title IX Office issues Plaintiff two procedurally irregular Title IX complaints that rehash the false allegations spread by Castillo and Jordan.**

Also on July 11, 2022, Plaintiff received two notices of investigation (together, the "NOIAs") from Einstein's Title IX Coordinator, Ramirez, notifying him of two Title IX complaints based on erroneous allegations of two female junior professors which rehashed the false allegations instigated by Castillo and Jordan. FAC, ¶¶ 174-181.

Procedurally irregular, each of the NOIAs informed Plaintiff that his alleged behavior met the definition for "sexual harassment" contained in Einstein's then-*obsolete* 2018 Title IX Policy, and each NOIA included a footnote indicating that Einstein intended to apply its obsolete 2018 Title IX Policy to the complaint against Plaintiff. *Id.* ¶¶ 182-183. Notably, on August 14, 2020, Einstein had replaced the 2018 Title IX Policy in its entirety with its 2020 Title IX Policy, as

required by federal regulations. FAC ¶¶ 90-94, 184-185, 387-391.[5] As of the date of the NOIAs, July 11, 2022, the scope of Einstein's then-current 2022 Title IX Policy unambiguously applied to govern the conduct of all Einstein faculty, (without regard to the date of the occurrence of the alleged violation). *Id.* ¶ 186; 2022 Title IX Policy at § II; ECF 58-9 at 5.

The 2018 Title IX Policy that Einstein chose to apply to Plaintiff's case contained a far broader definition of "sexual harassment" than did the 2022 Title IX Policy, covering a veritably limitless range of "unwelcome" or "unwanted" conduct that a "victim" subjectively perceived to constitute "conduct" of a "sexual nature." FAC ¶¶ 86, 91; 2018 Title IX Policy at § IV; ECF 58-7 at 19; 2020 Title IX Policy at § III.C.2.; ECF 58-8 at 10.

Under the 2018 Title IX Policy, the burden of proof to hold an accused responsible for alleged misconduct was a mere preponderance of the evidence standard, FAC ¶ 89, and the accused had:

a. no right to a presumption of innocence;
b. no right to confront the complainant or question witnesses;
c. no right to an impartial decision-maker;
d. no right to exculpatory evidence, including the final investigation "report," and
e. no right to appeal from a finding of responsibility.

FAC ¶ 88; ECF 58-7 at 35-38.

In contrast, Einstein's 2020 Title IX Policy, that Einstein renewed without modification in 2022, (the "2022 Title IX Policy"), afforded an accused*:*

a. a presumption of innocence;
b. a hearing and a right to confront the complainant and question witnesses;
c. a right to an independent, impartial decision-maker, and an explicit prohibition against a Title IX coordinator from serving as investigator and/or decision-maker;
d. a "clear and convincing" standard of evidence; and
e. a right to appeal a finding of "responsibility" and sanctions imposed.

FAC ¶¶ 94-95; 2022 Title IX Policy; ECF 58-9 at 22-25.

[5] Einstein renewed its 2020 Title IX Policy without modification on March 18, 2022 (the "2022 Title IX Policy"). FAC ¶¶ 95, 478.

**H.    July 13, 2022: Defendant Tomaselli suspends Plaintiff from duty and "removes" him from campus after Plaintiff attempts to secure witnesses in his Title IX case, charging Plaintiff with an inapposite policy violation.**

On July 12, 2022, Plaintiff reached out to persons who might serve as witnesses in the investigation into the erroneous Title IX Complaints, as was his right under the 2022 Title IX Policy. FAC ¶¶ 188-180. On July 13, 2022, Defendant Tomaselli ordered Plaintiff summarily suspended from his duties and "removed" from campus. *Id.* ¶¶ 192-199; ECF 54-3. Asserting that Plaintiff had committed a "flagrant disregard of Einstein's no-retaliation policy," Defendant Tomaselli cited to an inapplicable employment policy as authority for his action. FAC ¶¶ 194-197; ECF 54-3.[6]

Einstein's 2022 Title IX Policy prohibits retaliating against a respondent for participating in a Title IX proceeding. FAC ¶¶ 200-204; 2022 Title IX Policy at § III.N; ECF 58-9 at 28-29.[7] After Defendant Tomaselli ordered Plaintiff suspended and removed from campus, Ramirez implemented Defendant Tomaselli's order by filing a formal Title IX complaint against Plaintiff for purported "retaliation." FAC ¶¶ 327-328. Plaintiff had never been adjudicated "responsible" for retaliation as required under Einstein's Title IX Policy, but he remained suspended and "removed" from campus for nearly two years, during which time he was precluded from working in-person on campus, including in his research laboratory, resulting in damage to Plaintiff's career and capacity to perform his scholarly duties. *Id.* ¶¶ 40-41, 326-332, 371.

---

[6] Tomaselli cited Section III.H of Einstein's Appointments Policy, a provision that provides for the summary paid suspension of an employee against whom written charges of *for cause* dismissal have been made, "pending final action upon such charges," and "continuance of the Faculty member in his duties threatens immediate harm," conditions that were blatantly inapplicable to Plaintiff's case. FAC ¶ 196; ECF 54-3.

[7] In addition, under Einstein's 2022 Title IX Policy, a respondent is "presumed to be not responsible for the alleged conduct unless and until proven otherwise under a clear and convincing standard of evidence at the conclusion of the process." FAC ¶ 94; 2022 Title IX Policy at § III.I; ECF 58-9 at 23.

Following Plaintiff's suspension and removal from campus, in late July and August 2022, multiple individuals reported to Einstein's Title IX Office, Defendant Tomaselli, and other senior management that they had reason to believe that the allegations against Plaintiff were false and motivated by grudges held by Castillo and Jordan. FAC ¶¶ 206, 223-230. However, Einstein did not reopen the allegations against Plaintiff for which Defendant Tomaselli had purportedly dismissed him from his appointed Chairmanship on July 11, 2022, and for which Einstein had opened two Title IX claims that same day. *Id.* ¶¶ 231-233.

**I.    Ramirez issues a procedurally irregular decision in Plaintiff's Title IX case.**

**1.    Ramirez applies Einstein's obsolete 2018 Title IX Policy**

On December 18, 2023, Ramirez, issued two decisions on Plaintiff's two pending Title IX cases, and applied Einstein's 2018 Title IX policy and procedures. FAC ¶ 249. In Complainant 1's case, Ramirez adopted a male investigator's finding that Plaintiff was not responsible for "sexual harassment," but in Complainant 2's case, Ramirez adopted the finding of a demonstrably biased female investigator that Plaintiff was responsible for "sexual harassment." *Id.* ¶¶ 250-251,255-264, 289-292, 294.

Complainant 2's complaint involved two purported incidents, the first allegedly occurring at a Graduate Student reception hosted by the Department ("Allegation #1"), and the second allegedly involving two separate occurrences at the annual meeting of the Society for Neuroscience ("Allegation #2(a)-(b)"). *Id.* ¶ 265.

With respect to Allegation # 1, the gist of Complainant 2's allegation was that Plaintiff had tapped her twice briefly on the shoulder while they were both waiting in line to be served at the reception. *Id.* ¶¶ 266—270.

With respect to Allegation #2(a), Complainant 2 claimed that Plaintiff forcefully touched her "breastbone" with both hands. *Id.* ¶ 272. Plaintiff recalled that he was walking toward

Complainant 2, with his right-hand index finger pointing in the direction of her necklace, and that he tripped, and his finger landed on her necklace. *Id.* ¶ 273. It was undisputed that Plaintiff tripped while walking toward Complainant 2, and that he was saying, "what's this?" *Id.* ¶ 274. It was also undisputed that Plaintiff never touched Complainant 2's bare skin. *Id.* ¶ 275. The only fact in dispute was whether Complainant 2 was wearing a necklace. *Id.* ¶ 276. Complainant 2 asserted that she was not wearing a necklace, and that Plaintiff's finger landed near her neckline (collar) area, over her clothing. *Id*. No witness corroborated Complainant 2's account, but one of Complainant 2's witnesses corroborated Plaintiff's account. *Id.* ¶¶ 277-278.

With respect to Allegation #2(b), Complainant 2 falsely claimed that, following the breastbone incident, Plaintiff slapped her on her thigh while they were outside on the patio. Complainant 2 further told the investigator that Dr. S.C. had to come to Complainant 2's "rescue" by pulling Plaintiff away. *Id.* ¶ 283. Plaintiff denied the allegations completely, stating that the alleged incident never happened. *Id.* 284. Complainant 2's own witness stated that he was nowhere near Plaintiff during the purported incident and had no recollection of the alleged incident. *Id.* ¶ 285.

Even if Complainant 2's allegations were proven true, which they were not, they did not allege conduct meeting the definition of "sexual harassment" under the 2022 Title IX Policy. *Id.* ¶¶ 266-282. However, Ramirez adopted the biased investigator's finding in Complainant 2's case that the "instances of touching, taken in their totality, were sexual in nature as defined by the [2018 Title IX Policy]." *Id.* ¶¶ 287-293.

**2. Ramirez considers anonymous and unsubstantiated allegations outside Plaintiff's Title IX process when imposing sanctions.**

Under Einstein's 2022 Title IX Policy, Ramirez was prohibited from considering allegations of alleged misconduct *outside* the Title IX grievance process. *Id.* ¶¶ 301-305.[8] However, in her written decision, Ramirez indicated that, in arriving at the sanctions, she considered Complainant 2's case to be a *"second offense"* and that she took into account the anonymous allegations of misconduct for which Defendant Tomaselli had purportedly dismissed Plaintiff as Chair on July 11, 2022, *Id.* ¶ 300, for which Plaintiff had never been formally charged or found responsible. *Id.* ¶¶ 107-132, 154-156, 158-160, 206-210, 223-230, 316-325. Ramirez's decision announced onerous sanctions that included barring Plaintiff "from teaching, mentoring, or advising students for three (3) years following the end of the suspension (referring to Defendant Tomaselli's suspension order imposed on Plaintiff on July 13, 2022). *Id.* ¶ 306. Because Einstein chose to apply the 2018 Title IX Policy, Plaintiff had no right to appeal. *Id.* ¶¶ 314-315.

**J. February 2024: In an answer filed in a New York state court case, Einstein denies that Plaintiff engaged in incidents of misconduct that are the same as those Defendant Tomaselli cited when he dismissed Plaintiff from his chairmanship.**

In May of 2023, a former Einstein graduate student filed a Complaint in the New York State Supreme Court, captioned *Stacy Roundabush v. Albert Einstein College of Medicine of Yeshiva University and Kamran Khodakhah*, Index No. 807857/2023E (May 19, 2023) ("*Roundabush* Complaint"), alleging that Plaintiff subjected her and other students to mistreatment. FAC ¶ 316. The *Roundabush* Complaint's allegations mirror the false allegations that Defendant Tomaselli listed in his July 11, 2022 letter, when he dismissed Plaintiff as

[8] *See* 2022 Title IX Policy at §§ III.F.5, III.H, and III.I; ECF 58-9 at 17 (entitling a respondent to "notice of the allegations"); *id.* at 20 ("If, in the course of an investigation of a Complaint, Einstein decides to investigate allegations of Title IX Violations that were not included in the notice regarding the original Complaint allegations (as discussed in Section III.F.5), Einstein will provide notice of the additional allegations to all parties whose identities are known, pursuant to the process set forth In Section III.F.5."); *id.* at 23 (entitling a respondent to a presumption that he is "not responsible unless and until proven otherwise under a clear and convincing standard of evidence").

Department Chair. *Id.* ¶¶ 164-165, 317-320; ECF 54-2 at 2-3. In its Answer, filed on February 6, 2024 (hereinafter "*Roundabush* Answer"), Einstein either denied the allegations outright or denied having knowledge or information sufficient to form a belief as to their truth. *Id.* ¶¶ 318-320. In the *Roundabush* Answer, Einstein (i) denied Roundabush's allegations that Plaintiff had subjected her and other women to mistreatment, including pulling hair and "sexually inappropriate comments"; (ii) denied having knowledge or information sufficient to form a belief as to allegations that Plaintiff had used inappropriate "nicknames" for students; and (iii) denied allegations that Plaintiff had subjected her to a discriminatory or abusive environment, or caused her "unwanted physical contact." ¶¶ 318-320.[9]

### K. May 17, 2024: After being suspended and "removed" from campus for nearly two years, Plaintiff is determined not responsible for purported "retaliation."

Nearly two years after Defendant Tomaselli ordered Plaintiff suspended and "removed" from campus on July 13, 2022 for a purported "flagrant disregard of Einstein's no retaliation policy," (ECF 54-3) on May 17, 2024, Plaintiff was finally afforded a grievance process and was determined "not responsible" for the purported acts that served as the basis for his suspension and removal. FAC ¶ 326.[10] At the hearing, Defendant Tomaselli and Ramirez admitted that Plaintiff was allowed to reach out to witnesses under the 2022 Title IX Policy, thereby tacitly conceding that the 2022 Title IX Policy should have applied to Plaintiff's Title IX Investigations, and Ramirez was unable to identify any Einstein policy that Plaintiff had allegedly violated to warrant Defendant Tomaselli's order to suspend and "remove" him from campus on July 13, 2022. *Id.* ¶¶ 329-330; ECF 54-3.[11]

---

[9] Notably, Einstein admitted that, on or about March 23, 2021, Roundabush spoke with Dr. Bryen Jordan. FAC ¶ 48.

[10] After Tomaselli ordered Plaintiff suspended and removed from campus on July 13, 2022, Ramirez implemented Tomaselli's order by filing a formal Title IX complaint against Plaintiff for purported "retaliation." FAC ¶¶ 327-328.

[11] In a related hearing (on Plaintiff's own retaliation claim against Defendant Tomaselli), Ramirez conceded that, although she had characterized Plaintiff's July 13, 2022 suspension and "removal" from campus as an "interim

# ARGUMENT[12]

## I. Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, the court must "take all of the factual allegations in the complaint as true," and all reasonable inferences are drawn in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("*Iqbal*"). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Adia v. Grandeur Mgmt., Inc*., 933 F.3d 89, 92 (2d Cir. 2019) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) ("*Twombly*"). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

"The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Thus, the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch*, 952 F.3d at 75.

The Court may consider documents attached to the complaint as exhibits or incorporated in it by reference, but not for the truth of the matters asserted therein. *In re Lehman Bros. Sec. & Erisa Litig*., 799 F. Supp. 2d 258, 273 (S.D.N.Y. 2011). However, the court "may take judicial

---

measure," Plaintiff was never afforded the "prompt review" of the purported "interim measure," as required by Einstein's 2022 Title IX Policy at § III.G. FAC ¶ 338; ECF 58-9 at 19.

[12] Unless indicated otherwise, internal quotation marks and citations are omitted and emphasis is added.

notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005).

**II. Dr. Khodakhah Has Sufficiently Alleged a Tortious Interference Claim.**

Under New York law, to state a claim for tortious interference with contract, a plaintiff must allege (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citing *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 1375, 646 N.Y.S.2d 76, 82 (1996)); *see Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 372 (S.D.N.Y. 2020).

Here, Plaintiff has alleged that Defendant Tomaselli has tortiously interfered with his employment contract by inducing Einstein-Montefiore to breach the terms of Einstein's applicable Title IX Policy when he (1) ordered Plaintiff's suspension and subsequent permanent dismissal of Plaintiff from his appointment as Department Chair and (ii) suspended Plaintiff from duty and removed him from Einstein's campus for nearly two years based on a meritless charge of "retaliation." FAC ¶ 539. As discussed *infra*, Plaintiff has sufficiently pled all five elements of his claim.

**A. Plaintiff has alleged the existence of a valid contract.**

Under New York law, it is well settled that policies in a personnel manual specifying the employer's practices with respect to the employment relationship become a part of the employment contract. *Langenkamp v. Olson,* 628 F. App'x 50, 52 (2d Cir. 2015); *Kaloyeros v. Rsch. Found. of State Univ. of New York*, 71 Misc. 3d 1219(A), 144 N.Y.S.3d 557 (N.Y. Sup. Ct. 2021) (same)

*Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 509 (S.D.N.Y. 2015) (citing *Holm v. Ithaca Coll.*, 175 Misc. 2d 717, 720, 669 N.Y.S.2d 483, 485 (Sup. Ct. Tompkins Co. 1998)) (holding that university's policies, if duly authorized, are contractual in nature and binding on both the school and faculty); *Joshi v. Trustees of Columbia Univ. in City of New York*, No. 17-CV-4112 (JGK), 2018 WL 2417846, at *5 (S.D.N.Y. May 29, 2018) ("New York cases make clear . . . that workplace policies—including those that govern a university's relationship with its faculty—can create binding contracts.") (citing *O'Neill v. New York Univ*., 944 N.Y.S.2d 503, 512-13 (App. Div. 2012)).

As a New York State appellate court has recently made clear, "[t]he policies contained in the Faculty Handbook form part of the essential employment understandings between a member of the Faculty and the University, and have the force of contract. Those policies, without a doubt, include the disciplinary procedures." *Monaco v. New York Univ.,* 204 A.D.3d 51, 62, 164 N.Y.S.3d 87, 98, 401 Ed. Law Rep. 563 (1st Dep't 2022); *see also Klinge v. Ithaca Coll*., 167 Misc. 2d 458, 461, 634 N.Y.S.2d 1000, 1002 (Sup. Ct. 1995).

Here, Plaintiff, a tenured professor, has alleged the existence of a valid employment contract between himself and Einstein-Montefiore based on a series of documents: Plaintiff's 2000 offer letter (ECF 58-1), Plaintiff's 2001 appointment letter (FAC ¶ 37; ECF 58-2[13]), his 2012 appointment letter granting tenure (FAC ¶ 44), a 2014 retention agreement (FAC ¶¶ 50-53; ECF 58-3), Plaintiff's 2016 promotional letter, appointing him as Chair (FAC ¶¶ 59-60; ECF 58-4), in addition to Einstein's published policies, including its Title IX and Discrimination Policies, which set forth Einstein's specific procedures and policies for the adjudication of complaints brought for

[13] Paragraph 37 of the FAC conflates the November 1, 2000 offer letter, ECF 58-1, with Plaintiff's September 11, 2001 appointment letter, ECF 58-2.

sexual harassment and non-Title IX discrimination. *Id.* ¶¶ 84-95; ECF 58-8; ECF 58-9.[14] Together, these documents evidence a mutual assent and intent to be bound. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009).

With respect to Einstein's Title IX Policy, which governed the imposition of discipline in Plaintiff's case, Einstein adopted it pursuant to federal regulations, FAC ¶ 95, and the policy was authorized by Einstein's Human Resources Department and chief executives. ECF 58-7 at 23; ECF 58-8 at 30; ECF 58-9 at 29. Plaintiff has alleged that Einstein's Title IX Policy is incorporated by reference in his appointment letter, FAC ¶ 474, but even if were not, it would still be valid and enforceable as an implied contract. *See Klinge*, 167 Misc. 2d at 462, 634 N.Y.S.2d 1000 ("a court may take notice of implicitly accepted customs and practices to fill the gaps and, thereby, to allow the actual intentions of the parties to be fully understood"); *Kaloyeros,* 71 Misc. 3d 1219(A), 144 N.Y.S.3d 557 (same). Accordingly, Plaintiff has sufficiently alleged the existence of a valid employment contract.[15]

**B. Plaintiff has alleged that Defendant Tomaselli had knowledge of the contract.**

With respect to the second element of Plaintiff's tortious interference claim, Plaintiff has sufficiently alleged that Defendant Tomaselli had knowledge of Plaintiff's employment contract which Defendant Tomaselli induced Einstein to breach. Under New York law, a plaintiff need only prove that the defendant "knew about" the contract; a plaintiff is not required to prove "perfect or

[14] As a tenured Professor, Plaintiff's appointment is also governed by the "Rules and Regulations Governing Appointments, Titles, and Compensation" ("Appointments Policy") and the Tenure and Compensation Policy, which, together, cover disciplinary procedures for termination of tenured faculty for "neglect of duty" or "for cause." FAC ¶¶ 103-106.

[15] In his memorandum, Defendant Tomaselli cites to inapposite cases to contend that Plaintiff had no valid contract. *See Amato v. New York City Dep't of Parks & Recreation*, 110 A.D.3d 439, 440, 973 N.Y.S.2d 29 (2013) (a case involving a potential city contractor whose eligibility for city contracts was never approved and who therefore had no valid contract with the city); *Baylis v. Marriott Corp*., 906 F.2d 874 (2d Cir. 1990) (where the court concluded that a state-law claim of tortious interference with contract was preempted by the "Railway Labor Act). *See* ECF 55 at 8.

precise knowledge of the legal particulars of the contract." *Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*, 241 F. Supp. 2d 246, 279 (S.D.N.Y. 2002).

Here, Defendant Tomaselli allegedly took a *direct role* in Plaintiff's personnel and disciplinary decisions. Notably, Defendant Tomaselli purported to suspend, and later dismiss, Plaintiff from his appointment as Department Chair to prevent or correct sexually harassing, discriminatory, and retaliatory behavior under Einstein's *"policies."* FAC ¶¶ 134-135, 163, 166; ECF 54-1, ECF 54-2. As alleged in the FAC, Defendant Tomaselli also communicated with Plaintiff concerning purported violations of Einstein's *"policies."* FAC ¶¶ 134-135, 193-197, and in his March 10, 2022 letter to Plaintiff, Defendant Tomaselli indicated he would "suspend" Plaintiff from his appointment as Chair based on purported violations of the **"***College's policies against harassment, discrimination, bullying or other prohibited conduct." Id.* ¶¶ 134-135, ECF 54-1. Defendant Tomaselli's knowledge of the contract is also demonstrated by the documents themselves, which show that Defendant Tomaselli approved of and signed off on both Einstein's 2020 Title IX Policy and 2022 Title IX Policy, in his capacity as dean, and was identified as the "Responsible Executive" for "the management" of Einstein's Title IX Policy. ECF 58-8 at 30; ECF 58-9 at 29.

At this stage, this is sufficient to establish Defendant Tomaselli's "knowledge" of the contract. *See Roulette Recs., Inc. v. Princess Prod. Corp.*, 15 A.D.2d 335, 338, 224 N.Y.S.2d 204, aff'd, 12 N.Y.2d 815, 187 N.E.2d 132 (1962) ("proof of actual knowledge may be predicated upon circumstantial evidence"); *see, e.g., Seagrape Invs. LLC v. Tuzman*, No. 21-CV-7517 (RA), 2024 WL 4337448, at *12 (S.D.N.Y. Sept. 26, 2024) (defendant had "knowledge" of the contract where complaint alleged he "received copies of it").

**C. Plaintiff has sufficiently alleged Defendant Tomaselli intentionally procured Einstein's breach of the contract "without justification."**

**1. Intentional procurement of Einstein's breach**

With respect to the third element, Plaintiff has sufficiently alleged Defendant Tomaselli intentionally procured Einstein's breach of Plaintiff's employment contract without justification in at least two respects. First, the FAC alleges that Defendant Tomaselli intentionally procured Einstein's breach of Plaintiff's employment contract by ordering Plaintiff "suspended" from his Chairmanship on March 10, 2022, and later permanently dismissing Plaintiff as Chair on July 11, 2022, for purported disciplinary reasons, causing Einstein to withhold the procedural protections required under Einstein's Title IX policy. FAC at ¶¶ 134-136, 163-170, 479-489.

Second, Plaintiff alleges that, on July 13, 2022, Defendant Tomaselli sought to procure Einstein's breach of Plaintiff's employment contract by ordering him suspended from duty and "removed" from campus for purported "retaliation," without an adjudication, as required under Einstein's Title IX policy, and despite that his conduct was not prohibited under Einstein's Title IX Policy. *Id.* ¶¶ 508-511. At this stage, read in a light most favorable to Plaintiff, it is reasonable to infer from these allegations that Defendant Tomaselli's objective in these actions was, at least in part, to prevent Einstein from affording Plaintiff his procedural rights under Einstein's disciplinary policies.

**2. Defendant Tomaselli's conduct was "without justification" and outside the scope of his authority, making him a stranger to the contract**

A plaintiff bringing a tortious interference claim must show that a defendant is not, himself, a party to the contract. *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996). Accordingly, where, as here, the defendant is the plaintiff's co-employee or supervisor, to show that the defendant-employee is a stranger to the contract, a plaintiff must show that the defendant "exceeded the bounds of his or her authority." *Trahan v. Lazar,* 457 F. Supp. 3d 323, 359 (S.D.N.Y. 2020). "A

supervisor is considered to have acted outside the scope of his employment if there is evidence that the supervisor's manner of interference involved independent tortious acts such as fraud or misrepresentations, or that he acted purely from malice or self-interest." *Id.*

Because a defendant's motivation is a question of fact, at the 12(b)(6) stage, courts have found it unnecessary to determine whether the defendant's interference was outside the scope of employment or with improper motive or malice. *See, e.g., Riddell Sports Inc. v. Brooks,* 872 F. Supp. 73, 78 (S.D.N.Y. 1995).[16] To the extent that Plaintiff is required to plead improper motive or malice at the 12(b)(6) stage, he has done so.

Specifically, the FAC alleges that, despite Plaintiff's exemplary performance as Department Chair, Defendant Tomaselli resented Plaintiff and felt threatened by him because of Plaintiff's criticism of Defendant Tomaselli's performance as dean. *Id.* ¶ 83. Thus, when Plaintiff became the subject of false rumors and innuendo, despite that both Ramirez and Burns informed Plaintiff that they believed the allegations were baseless, Defendant Tomaselli acted quickly to "suspend" Plaintiff from his Chairmanship, and chose to stigmatize Plaintiff with a gratuitous departmental announcement that Plaintiff was under an "investigation" and "stepping down" as Chair. *Id.* ¶ 107-125, 134, 139.

During the ensuing months, Defendant Tomaselli ignored persistent reports from multiple persons that the allegations for which he "suspended" Plaintiff from his Chairmanship were false. *Id.* ¶ 154-156, 159-160, 206. Yet, in a July 11, 2022 letter to Plaintiff, Defendant Tomaselli permanently dismissed Plaintiff from his Chair appointment for purported disciplinary reasons, listing purported "serious concerns" with Plaintiff's "behavior," and asserting they were

---

[16] In his Memorandum, Defendant cites to distinguishable cases in which, at the summary judgment stage and on a fully developed record, the court determined the issue of whether the defendant acted within the scope of his authority, *Kartiganer Assocs., P.C. v. Town of New Windsor,* 108 A.D.2d 898, 899, 485 N.Y.S.2d 782 (1985) ("there is no proof in this record"); *Finley*, 79 F.3d at 1288. *See* ECF 55 at 13.

"confirmed" by an investigation "report," which Defendant Tomaselli falsely represented to faculty had been provided to Plaintiff. *Id.* ¶¶ 163-170.

The FAC also details how, nearly two years after Defendant Tomaselli permanently dismissed Plaintiff as Chair for purported violations of "policies," Einstein filed the *Roundabush* Answer in response to the *Roundabush* Complaint, and denied the veracity of factual allegations that were substantially the same as those which Defendant Tomaselli cited in his July 11, 2022 letter to Plaintiff as the reason to demote Plaintiff from his Department Chair appointment. *Id.* ¶¶ 316-321, ECF 54-2. Thus, admitting that Defendant Tomaselli, and by extension Einstein, did *not* have sufficient knowledge or cause to justify Defendant Tomaselli's adverse actions against Plaintiff, and establishing that such actions were instead the result of Defendant Tomaselli's subjective negative feelings towards Dr. Khodakhah.

The FAC also details how, on July 13, 2022, Defendant Tomaselli ordered Plaintiff suspended and "removed" from campus based on an erroneous charge of "retaliation" after Plaintiff sought to secure witnesses to defend himself in his Title IX process. FAC ¶¶ 174, 188-191, 193-205. Although Ramirez, in her capacity as Einstein's Title IX Coordinator, implemented Defendant Tomaselli's retaliatory suspension and removal order by filing a formal complaint against Plaintiff for alleged "retaliation," *Id.* ¶ 328, she later admitted under oath that the 2022 Title IX Policy did not prohibit Plaintiff from contacting potential witnesses in his Title IX case. *Id.* ¶¶ 329-330. The FAC also alleges that, after Defendant Tomaselli caused Plaintiff to be banned from campus for nearly two years without an adjudication, as required under Einstein's policies, an independent hearing officer determined that Plaintiff was "not responsible" for "retaliation" under any Einstein policy. *Id.* ¶ 332.[17]

[17] Despite that Plaintiff was found not responsible for "retaliation" by a hearing officer on May 17, 2024, Einstein did not lift the Plaintiff's "suspension" and "removal" order that Tomaselli put in place on July 13, 2022. FAC ¶ 326.

At the pleadings stage, Plaintiff's allegations are more than sufficient to demonstrate that Defendant Tomaselli acted with malice, self-interest, and outside the scope of his employment. *See Albert v. Loksen,* 239 F.3d 256, 266 (2d Cir. 2001) (whether defendant acted with an improper motive and "was a third-party to [plaintiff's] employment relationship was a "factual dispute" that "precluded summary judgment").

**3. Defendant Tomaselli had no authority to dismiss Plaintiff as Chair based on allegations that he knew or had reason to know were false.**

In his Memorandum, Defendant Tomaselli contends that he acted within the scope of his authority to dismiss Plaintiff from his Chair appointment to respond to "confirmed" "student mistreatment." ECF 55 at 14 (citing to July 13, 2022 letter, ECF 54-2). While, in general, a dean may have authority to act to protect university students, Defendant Tomaselli acted outside the scope of his authority by dismissing Plaintiff from his appointment based on allegations that Defendant Tomaselli knew or had reason to know were false. The FAC contains non-conclusory, specific allegations of fact from which it is reasonable to infer that Defendant Tomaselli knew or had reason to know the allegations against Plaintiff were false, including that (i) Defendant Tomaselli ignored reports by multiple individuals concerning the falsity of the allegations and (ii) the denials contained in the *Roundabush* Answer that Einstein filed in response to the *Roundabush* Complaint, of which this Court may take judicial notice.[18]

**4. Defendant Tomaselli had no authority to impose upon Plaintiff a disciplinary demotion as *punishment.***

The allegations of misconduct in Defendant Tomaselli's March 10, 2022 and July 11, 2022 communications to Plaintiff were plainly covered under either the 2022 Title IX Policy and/or the

[18] *See Carruthers*, 388 F. Supp. at 370.

Discrimination/Harassment Policy, if not both.[19] Defendant Tomaselli's March 10, 2022 letter suspending Plaintiff references alleged violations of "policies against 'harassment' and 'discrimination.'" ECF 54-1. Defendant Tomaselli's July 11, 2022 letter dismissing Plaintiff from his Chairmanship referred to "repeated instances of racist, disability, and gender-based comments" and "inappropriate and unwanted physical touching, including pulling female students' ponytails, stomach touching." ECF 54-2.

Plaintiff's 2016 Appointment letter stated that Plaintiff's continued appointment was "subject to performance as determined by the dean." FAC ¶ 59, ECF 58-4. While Defendant Tomaselli may argue that the allegations against Plaintiff relate to Plaintiff's performance, that does not divest Plaintiff of his rights under his various contracts with Einstein as listed above. Whether or not the alleged misconduct related in any way to Plaintiff's performance, the fact remains that due to the nature of the allegations, Defendant Tomaselli had no authority to impose a *disciplinary demotion* upon Plaintiff for alleged misconduct, discriminatory and sexually harassing "behavior" without *first* affording Plaintiff the procedures required under Einstein's workplace policies, i.e., the Title IX and Discrimination Policies. FAC ¶¶ 59, 84-95, 98, 152-153, 173, 497-500. *See Monaco v. New York Univ.*, 204 A.D.3d at 63–64, 164 N.Y.S.3d at 97 ("'Discipline' refers 'not merely to action that has an adverse impact, but adverse action that is motivated by a punitive intent'"); *Klinge v. Ithaca Coll.*, 167 Misc. 2d at 463–64N.Y.S.2d 1000 ("Where a college has adopted a rule, the law requires substantial compliance.").

---

[19] The Discrimination/Harassment Policy provides procedures for complaints of alleged discrimination and harassment based on an individual's protected characteristics, including, sexual misconduct that does not arise to a Title IX violation. FAC ¶ 97. The 2022 Title IX Policy states that, "if the Discrimination and Harassment Policy (Non-Title IX) might also apply to the conduct alleged, the principles and procedures in this policy will control." *See* 2022 Title IX Policy at §§ II at 3, ECF 58-9 at 5; FAC ¶ 98.

**5. Defendant had no authority to "remove" Plaintiff from campus based on a bad faith charge of "retaliation."**

In his Memorandum, Defendant Tomaselli contends that he "was acting in his leadership role at Einstein" when he "removed" Plaintiff from campus. ECF-55 at 15. Defendant Tomaselli's blanket assertion of authority does not defeat the FAC's well-pleaded and non-conclusory facts.

As alleged in the FAC and *supra*, Defendant Tomaselli's "removal" order violated Plaintiff's rights under Einstein's Title IX and non-discrimination Policies and under Title IX. *Id.* ¶ 193-205. *See Seagrape Invs. LLC v. Tuzman*, 2024 WL 4337448, at *12–13 ("Conduct specifically in violation of statutory provisions or contrary to established public policy may for that reason make an interference improper.") (applying factors set forth in the Restatement (Second) of Torts § 767 to determine whether defendant's interference was "without justification"). Indeed, even after Plaintiff was banned for more than two years from campus, neither Defendant Tomaselli nor Ramirez were able to identify a single provision of Einstein's 2022 Title IX Policy that prohibited Plaintiff from sending the communications on July 12, 2022, which had been the purported reason for Defendant Tomaselli's July 13, 2022 decision to have Plaintiff "removed." FAC ¶ 337, ECF 54-3. Accordingly, Plaintiff has sufficiently alleged that defendant Tomaselli lacked authority to take the subject adverse actions against Plaintiff.

**D. Plaintiff has sufficiently alleged "actual breach of the contract."**

New York courts have held that, "an employee alleging a breach of implied contract [on the basis of employment policies] must prove that (1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment." *Langenkamp*, 628 F. App'x at 52.

Plaintiff has adequately alleged an actual breach of his employment contract on the basis of Einstein's written policies. Relevant to the first element, as discussed *supra,* under New York law, the FAC alleges the existence of a valid contract based on Einstein's workplace policies that specified Einstein's practices and procedures concerning discipline and adjudication of complaints of alleged sexual harassment and discrimination. FAC ¶¶ 96-106. As to the second element, the FAC alleges that Plaintiff understood that his rights and responsibilities were defined in Einstein's employment policies. FAC ¶ 475.

As to the third element, at this stage Plaintiff has adequately alleged detrimental reliance by alleging that he complied with Einstein's policies, and that he has sought to contest the false allegations against him through Einstein's published grievance procedures. *Id*. ¶¶ 219, 326-348. *See O'Neill v. New York Univ*., 97 A.D.3d 199, 210–12, 944 N.Y.S.2d 503 (2012).

**1. Plaintiff has sufficiently alleged Defendant Tomaselli is the but-for cause of Einstein's breach.**

Contrary to Defendant Tomaselli's contentions, New York state courts hold that there is no requirement that explicit 'but for' language is necessary to withstand a motion to dismiss" and it is sufficient to allege facts from which an inference of but-for causation can be made. *Union Carbide Corp. v. Montell N.V*., 944 F. Supp. 1119, 1138 (S.D.N.Y. 1996).

As discussed in detail *supra,* the FAC details numerous breaches of specific provisions of Einstein's workplace policies, specifically its Title IX Policy, that were directly caused by Defendant Tomaselli's acts, demonstrating that Defendant Tomaselli was the but-for cause of Einstein's breach. FAC ¶¶ 479-489, 497-500.

**E. Plaintiff has sufficiently alleged damages from the breach.**

Notably, Defendant Tomaselli has raised no argument to contest that Plaintiff has suffered damages from Einstein's breach of his employment contract. Even if Defendant Tomaselli had

raised such arguments, which he did not and now cannot properly do so on reply, the FAC does adequately allege that Plaintiff suffered damages as a result of the breach. FAC ¶ 517.

## III. Plaintiff Has Sufficiently Alleged Claims for Sex Discrimination Under the New York State Human Rights Law and the New York City Human Rights Law.

Plaintiff has adequately pled sex discrimination claims under the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") against Defendant Tomaselli, which provide more lenient pleading standards than those used to evaluate discrimination claims under Title VII. *See Syeed v. Bloomberg L.P.,* 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) ("The NYCHRL must be construed broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."); *Xiang v. Eagle Enterprises, LLC*, 2020 WL 248941, at *6 (S.D.N.Y. Jan. 16, 2020) ("To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender.").[20]

Both the NYSHRL and the NYCHRL "prohibit 'aid[ing], abet[ting], incit[ing], compel[ing] or coerc[ing] the doing' of any unlawful acts of discrimination under either title[.]" *Nezaj v. PS450 Bar & Rest.,* 719 F. Supp. 3d 318, 333 (S.D.N.Y. 2024)*; see Feingold v. New York*, 366 F.3d 138, 158–59 (2d Cir. 2004) ("The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is 'virtually identical.'").

[20] *See* N.Y. Exec. Law § 300 (instructing courts to construe the NYSHL "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed.").

**A. Plaintiff has plausibly alleged discrimination by Einstein on the basis of official action and deliberate indifference.**

A plaintiff may establish a prima facie case for sex discrimination based on adverse employment actions taken on the basis of allegations of sexual misconduct. *Menaker v. Hofstra Univ*., 935 F.3d 20, 32 (2d Cir. 2019). The Second Circuit has recently explained that a person accused of sexual misconduct who alleges the university discriminated on the basis of the plaintiff's sex when disciplining the plaintiff, may allege an "official action" claim or a "deliberate indifference" claim. *Schiebel v. Schoharie Cent. Sch. Dist*., 120 F.4th 1082, 1096-1097 (2d Cir. 2024).

In an official action claim, (e.g., "erroneous outcome" or "selective enforcement"), the plaintiff must allege both procedural irregularity that suggests "some form of bias," as well as "facts suggesting that the bias was on account of sex." *Id.* (quoting *Vengalattore v. Cornell Univ*., 36 F.4th 87, 107 (2d Cir. 2022)).

In a deliberate indifference claim, the plaintiff "must show that the [school] was deliberately indifferent to the truth or falsity of the accusations of sexual misconduct made against him." *Id.* at 1097. A plaintiff may state a claim for deliberate indifference claim by showing "the grievance process was so clearly irregular as to indicate that the process was a "sham." *See id.* at 1095. "Procedural irregularities such as the recipient's failure to comply with its own grievance policies or with applicable Title IX regulations provide probative evidence of deliberate indifference, and a wholesale failure to employ established procedures for investigating sexual harassment complaints might establish it." *Id.*

Likewise, "[i]f a respondent plausibly alleges that he was targeted by a discriminatory accusation, and the recipient imposed discipline or sanctions under circumstances that indicate deliberate indifference to the truth or falsity of the accusation, the respondent has stated a deliberate

indifference claim under Title IX." *Id.* at 1097; *see also Menaker v. Hofstra Univ*., 935 F.3d 20, 34 (2d Cir. 2019) (analyzing sex discrimination under Title VII).

Here, Plaintiff has plausibly alleged that Einstein-Montefiore discriminated against him based on sex under both an official action theory and a deliberate indifference theory. Under either theory, Plaintiff has also plausibly alleged that Defendant Tomaselli aided and abetted the discrimination.

**1. Deliberate Indifference**

Plaintiff has plausibly alleged a deliberate indifference claim of discrimination on the basis of clearly deficient procedures, the deliberate indifference to reports that the accusations against Plaintiff were false, and a Title IX decision that was so unreasonable it would "lead a reasonable factfinder to conclude that Einstein ran a "sham process because it was deliberately indifferent to the truth or falsity of the accusation." *See Schiebel,* 120 F.4th at 1104.

Here, as in *Schiebel* and *Menaker,* Einstein ignored and acted on reports of false information that it had reason to know were false. As alleged in the FAC in February 2022, Einstein's administrators, Ramirez and Burns, were both aware that Plaintiff had been the target of false allegations and told Plaintiff that they, themselves, believed the allegations against him were baseless. FAC ¶¶ 107-125. In the subsequent months, multiple persons, including faculty, reported to Einstein's Title IX Office that Plaintiff had been targeted by false allegations of sexual misconduct, and identified Castillo and Jordan as instigators of the allegations. *Id.* ¶¶ 154-156, 159-160, 206. However, the Title IX Office failed to follow-up on the reports of false information. Instead, Defendant Tomaselli, supported by Einstein, suspended then dismissed Plaintiff from his Chairmanship based on the false and/or unsubstantiated allegations. *Id.* ¶¶ 133-136, 163-164; ECF 54-1; ECF 54-2.

Clear procedural irregularities in Einstein's handling of the allegations also include Einstein's failure to provide Plaintiff *any* procedural due process, although required under Einstein's written policies, with respect to the allegations of sexual misconduct for which Defendant Tomaselli purported to suspend and then dismiss Plaintiff as Chair. FAC ¶¶ 92-94, 96-102, 145-149, 150-151, 304, 401, 488-489; *see* 2020 Title IX Policy at §§ III.G, III.I; ECF 58-8 at 10-20, 23; 2022 Title IX Policy at §§ III.H.1, III.I; ECF 58-9 at 19-21, 23.

Other clear procedural irregularities include Einstein's decision to evaluate Plaintiff's two Title IX complaints under Einstein's obsolete 2018 Title IX Policy, although Einstein had *entirely replaced* its 2018 Title IX Policy on August 14, 2020 with its 2020 Title IX Policy, which it republished and renewed, without modification, on March 18, 2022. FAC ¶¶ 90-94, 182-183, 397-391. Einstein was aware of its obligations under the federal regulations to afford respondents in grievance proceedings basic fairness in adjudicating sexual misconduct cases, yet its decision-makers consciously chose to apply Einstein's obsolete 2018 Title IX policy, which lacked the 2020 Title IX Policy's procedural protections (for both parties), and that policy's narrower and clearer definition of "sexual harassment." *Id.* ¶¶ 86, 88, 91, 94-95; 2018 Title IX Policy at § IV, ECF 58-7 at 19; 2020 Title IX Policy at § III.C.2; ECF 58-8 at 10.

This decision to apply the 2018 policy enabled Einstein to more easily hold Plaintiff responsible for the erroneous allegations and to deny him any right of appeal of a finding of responsibility and any sanctions. FAC ¶¶ 314-315.

Another clear procedural irregularity was that Ramirez inappropriately served as both the Title IX Coordinator and the decision-maker in Plaintiff's Title IX case. *Id.* ¶ 297. In addition, in her decision, Ramirez inexplicably determined that Plaintiff's brief instances of unintended touching, including an instance of unintended touch while he was falling, constituted "sexual

harassment" which suggests that Ramirez "manipulated the policy to fit the evidence rather than [that she] impartially applied the policy." *See Schiebel.,* 120 F.4th at 1103. Moreover, when Ramirez imposed sanctions upon Plaintiff, her decision indicates that she improperly considered the anonymous and unsubstantiated "behavior," allegations for which Defendant Tomaselli had purported to dismiss Plaintiff from his Chair appointment on July 11, 2022, and for which Plaintiff had never been formally charged or adjudicated responsible. FAC ¶¶ 107-132, 154-156, 158-160, 206-210, 223-230, 300, 316-325. This lack of fundamental due process deprived Plaintiff of notice (including notice of the identity of his accusers) and a meaningful opportunity to respond to the evidence against him. *Id*.

Another clear procedural irregularity is Defendant Tomaselli's order, suspending and dismissing Plaintiff from campus on July 13, 2022—resulting in Plaintiff's ban from campus for nearly two years—based on an erroneous charge of "retaliation". *Id*. ¶¶ 194-197; ECF 54-3. Defendant Tomaselli's suspension and dismissal order, which severely impacted Plaintiff and his laboratory, constitutes discipline without due process, in violation of Einstein's written Title IX Policy. *Id.* ¶¶ 200-204; 2022 Title IX Policy at § III.N; ECF 58-9 at 28-29.

**2. Official Action Theory and Indicia of Gender Bias**

Plaintiff can also state an official action theory on the basis of the clear procedural irregularities alleged in the FAC, including those listed above, in addition to plausible allegations of bias based on his sex.

With respect to bias, Plaintiff has alleged that, although Ramirez knew the allegations against Plaintiff were false, she was concerned about the appearance of not being responsive to allegations of sexual harassment in light of the #MeToo movement, and that both she and Burns suggested Plaintiff "step-down" as Chair. FAC ¶¶ 126-127. In addition, the FAC alleges that

Einstein had concerns that a failure to respond to sexual harassment allegations had the potential to revoke federal funding. *Id.* ¶ 381.

Plaintiff has further alleged that Einstein faced internal pressures to appear "responsive" to allegations of sexual harassment, highlighted by a "Works in Progress" meeting at which a female graduate student raised concerns about Einstein's perceived failure to appropriately resolve female graduate students' complaints of sexual harassment. *Id.* ¶¶ 392-393, 397-398. Einstein was also under pressure by the LCME accreditation body to appropriately resolve allegations of sexual harassment. *Id.* ¶¶ 394-396.

Given the clear procedural irregularities, which themselves suggest bias, at the pleadings stage, Plaintiff has adequately stated a claim of discrimination under an official action theory, i.e., erroneous outcome or selective enforcement. *See Novio v. New York Acad. of Art,* 286 F. Supp. 3d 566, 578 (S.D.N.Y. 2017) ("[A]t the pleading stage, a plaintiff need not plead facts giving plausible support to the 'ultimate question' of whether an adverse action was attributable to the discrimination; rather, the facts need only give plausible support to a 'minimal inference' of discriminatory motivation.").

### B. Defendant Tomaselli Is Liable as an Aider and Abettor of Einstein's Unlawful Discrimination Under the NYSHRL and NYCHRL.

To state a claim for aiding and abetting unlawful discrimination or retaliation, a plaintiff must plead that the defendant "actually participate[d] in the unlawful conduct of the principal actor. The aider and abettor must also share the intent or purpose of the principal actor." *Nezaj v. PS450 Bar & Rest.,* 719 F. Supp. 3d at 333.

As a threshold matter, Plaintiff has adequately alleged claims of sex discrimination against Einstein, the predicate to claiming aiding and abetting discrimination by Defendant Tomaselli. *See* Part III(A)(1)-(2), *supra*.

Plaintiff has also met his "minimal burden" of pleading a plausible inference that Tomaselli aided and abetted in Einstein's discrimination. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). Plaintiff has sufficiently alleged that Defendant Tomaselli participated as the principal decision-maker in his adverse employment actions. Defendant Tomaselli knew or had reason to know that the accusations against Plaintiff were false, FAC ¶¶ 125-133, 159, 207, 224-233, yet he swiftly initiated adverse employment actions against Plaintiff on the basis of the false and unsubstantiated accusations. Defendant Tomaselli subjected Plaintiff to a disciplinary demotion and "removal" from campus, without the required procedural protections under his employer's written sexual misconduct policy. *Id.* ¶¶ 303-305, 404-407. And although Plaintiff denied the allegations, and both Ramirez and Burns believed the allegations were "nonsense," Defendant Tomaselli chose to credit the anonymous accusers. *Id.* ¶¶ 124-136; ECF 54-1.

After "suspending" Plaintiff from the Chairmanship on March 10, 2022, during the ensuing months, Defendant Tomaselli chose to disregard reports by multiple persons to himself and other senior leadership that the allegations against Plaintiff were false, and he permanently dismissed Plaintiff on July 11, 2022 from his Chairmanship. *Id.* ¶¶ 154-156, 159, 163-165.

Lacking in basic due process, Defendant Tomaselli's notifications to Plaintiff cited a list of anonymous allegations, and a vague reference to "policies"; Defendant Tomaselli never provided Plaintiff a formal notice of charges or a copy of any investigation "report," although it was alluded to in Defendant Tomaselli's July 11, 2022 letter. *Id.* ¶¶ 163-165; ECF 54-2.

On July 12, 2022, when Plaintiff attempted to secure witnesses in a Title IX process on two Title IX complaints, which were, themselves, a rehash of false rumors and innuendo spread by Jordan and Castillo, Defendant Tomaselli erroneously charged Plaintiff with "retaliation" and ordered Plaintiff "removed" from campus. *Id.* ¶¶ 192-199; ECF 54-3.

Taken together, and affording Plaintiff every reasonable inference, the FAC plausibly alleges a claim against Defendant Tomaselli for aiding and abetting Einstein's discriminatory actions against Plaintiff under the NYSHRL and the NYCHRL.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Tomaselli's Rule 12(b)(6) motion, along with such other and further relief as the Court deems just and proper.

Dated: December 13, 2024

**Respectfully submitted,**

**NESENOFF & MILTENBERG, LLP**
***Attorneys for Plaintiff Kamran Khodakhah***

**By:** **/s/** *Andrew T. Miltenberg*
**Andrew T. Miltenberg, Esq.**
**Stuart Bernstein, Esq.**
**Gabrielle Vinci, Esq.**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**amiltenberg@nmllplaw.com**
**sbernstein@nmllplaw.com**
**gvinci@nmllplaw.com**

**By:** **/s/** *Julie A. Sacks*
**Julie A. Sacks, Esq.**
**(*pro hac vice* forthcoming)**
**101 Federal Street, 19th Floor**
**Boston, Massachusetts 02110**
**(617) 209-2188**
**jsacks@nmllplaw.com**