UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAMRAN KHODAKHAH,

       *Plaintiff,*

    v.

MONTEFIORE MEDICINE ACADEMIC
HEALTH SYSTEM, INC., ALBERT
EINSTEIN COLLEGE OF MEDICINE,
GORDON TOMASELLI, PABLO
CASTILLO, BRYEN JORDAN, and
JOHN and JANE DOES 1-10,

       *Defendants.*

Civil Action No. 1:24-cv-00839-LAK-RFT

**PLAINTIFF KAMRAN KHODAKHAH'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC.,
ALBERT EINSTEIN COLLEGE OF MEDICINE, GORDON TOMASELLI, PABLO
CASTILLO, BRYEN JORDAN'S MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT PURSUANT TO RULE 12(b)(6)**

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff Kamran Khodakhah*

**Andrew T. Miltenberg, Esq.**
**Stuart Bernstein, Esq.**
**Gabrielle Vinci, Esq.**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**

**Julie A. Sacks, Esq.**
**101 Federal Street, 19th Floor**
**Boston, Massachusetts 02110**
**(617) 209-2188**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

FACTS ............................................................................................................................. 1

A.  The terms of Plaintiff's tenured faculty appointment at Einstein. ........................... 1

B.  Plaintiff's 2014 Retention Agreement. .................................................................... 2

C.  Plaintiff' is promoted to Interim Chair in 2013, Chair in 2016, and is recognized for his exemplary performance. ............................................................................... 2

D.  Early 2022: Plaintiff is targeted with false allegations and complains to HR, who advises him the allegations are nonsense. ................................................................ 3

E.  March 10: 2022: Dean Tomaselli orders Plaintiff "suspended" as Chair and announces he would "step down" as Chair. ............................................................. 3

F.  July 11, 2022: Dean Tomaselli permanently dismisses Plaintiff from his Chairmanship for disciplinary reasons which he had reason to know were false. ................................. 5

G.  July 11, 2022: Einstein's Title IX Office issues Plaintiff two procedurally irregular Title IX complaints that rehash the false allegations spread by Castillo and Jordan. ........................... 6

H.  July 13, 2022: Dean Tomaselli suspends Plaintiff from duty and "removes" him from campus after Plaintiff attempts to exercise his rights under the 2022 Title IX Policy. ......................... 7

I.  Ramirez issues a procedurally irregular decision in Plaintiff's Title IX case ........................... 8

    1.  Ramirez applies Einstein's obsolete 2018 Title IX Policy ........................... 8

    2.  Ramirez considers anonymous and unsubstantiated allegations outside Plaintiff's Title IX process when imposing sanctions. ............................................... 10

J.  February 2024: In an answer filed in a New York state court case, Einstein denies that Plaintiff engaged in incidents of misconduct that are the same as those Dean Tomaselli cited when he dismissed Plaintiff from his chairmanship. ......................... 11

K.  May 17, 2024: After being suspended and "removed" from campus for nearly two years, Plaintiff is determined not responsible for purported "retaliation." ....................... 12

STANDARD OF REVIEW ............................................................................................. 12

ARGUMENT .................................................................................................................. 13

I.  Plaintiff's Claims Against Defendant Montefiore Should Not Be Dismissed. ....................... 13

II.  Plaintiff Has Sufficiently Alleged Title IX Erroneous Outcome and Deliberate Indifference Claims. 15

    A.  Deliberate Indifference ............................................................................... 16

    B.  Erroneous Outcome and Indicia of Gender Bias ........................................ 20

III. Plaintiff Has Sufficiently Alleged a Title IX Retaliation Claim. ............................................ 21

IV. Plaintiff's State Law Claims Should Not Be Dismissed........................................................ 23

    A.  Plaintiff Has Sufficiently Alleged NYSHRL and NYCHRL Claims............................ 23

    B.  Plaintiff Has Sufficiently Alleged a Claim for Breach of Contract. ............................ 25

        1.  Einstein's Title IX Policies are valid and enforceable as implied contracts ............ 25

        2.  Defendants' imposition of a disciplinary demotion upon Plaintiff, without adhering to the procedures required by Defendant Einstein's written policies, was a breach of Plaintiff's employment contract.................................................................................. 28

        3.  Plaintiff alleges a breach of contract with respect to Defendants violations of the terms of the 2014 Interim Agreement .................................................................. 29

    C.  Plaintiff's Claims for Breach of the Implied Covenant and Promissory Estoppel are Not Duplicative and Should Not Be Dismissed.................................................................... 31

    D.  Plaintiff Has Sufficiently Plead Tortious Interference with Contractual Relations Against Defendants Castillo and Jordan. ...................................................................... 33

    CONCLUSION................................................................................................................ 34

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*25 Bay Terrace Assocs., L.P. v. Pub. Serv. Mut. Ins. Co.*,
    144 A.D.3d 665, 40 N.Y.S.3d 469 .......................................................................... 31

*Adia v. Grandeur Mgmt., Inc.*,
    933 F.3d 89 (2d Cir. 2019) ...................................................................................... 12

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................. 12, 13

*Baguer v. Spanish Broad. Sys., Inc.*,
    No. 04-CV-8393 (KMK), 2007 WL 2780390 (S.D.N.Y. Sept. 20, 2007) ............... 33

*Bautista v. PR Gramercy Square Condo.*,
    642 F. Supp. 3d 411 (S.D.N.Y. 2022) ................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ..................................... 12, 14

*Brown v. Daikin Am. Inc.*,
    756 F.3d 219 (2d Cir. 2014) .................................................................................. 14

*Carruthers v. Flaum*,
    388 F. Supp. 2d 360 (S.D.N.Y. 2005) ................................................................... 13

*Dalton v. Educ. Testing Serv.*,
    87 N.Y.2d 384, 663 N.E.2d 289 (1995) ................................................................ 31

*Doe v. Hobart & William Smith Colleges,*
    546 F. Supp. 3d 250 (W.D.N.Y. 2021) .................................................................. 33

*Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. at 292, 118 S.Ct. 1989 ................... 19

*Griffin v. Sirva Inc.*,
    835 F.3d 283 (2d Cir. 2016) .................................................................................. 13

*Holm v. Ithaca Coll.*,
    175 Misc. 2d 717, 669 N.Y.S.2d 483 (Sup. Ct.) ............................................... 26, 27

*In re Lehman Bros. Sec. & Erisa Litig.*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011) ................................................................... 13

*Jackson v. Birmingham Bd. Of Educ.*,
    544 U.S. 167 (2005) ............................................................................................... 21

*Joshi v. Trustees of Columbia Univ. in City of New York*,
    No. 17-CV-4112 (JGK), 2018 WL 2417846 (S.D.N.Y. May 29, 2018) .................. 26

*Kaloyeros v. Rsch. Found. of State Univ. of New York*,
    71 Misc. 3d 1219(A), 144 N.Y.S.3d 557 (N.Y. Sup. Ct. 2021) ........................ 25, 27

*Kirke La Shelle Co. v. Paul Armstrong Co.*,
    263 N.Y. 79, 188 N.E. 163 (1933) ........................................................................ 31

*Klinge v. Ithaca Coll.*,
    167 Misc. 2d 458, 634 N.Y.S.2d 1000 (Sup. Ct. 1995) ................................ 26, 27, 29

*Lamoureux v. Trustco Bank*,
  592 F. Supp. 3d 14 (N.D.N.Y. 2022) .................................................................. 30

*Langenkamp v. Olson*,
  628 F. App'x 50 (2d Cir. 2015) ......................................................................... 25

*Leibowitz v. Cornell Univ.*,
  584 F.3d 487 (2d Cir. 2009) ............................................................................. 27

*Lynch v. City of New York*,
  952 F.3d 67 (2d Cir. 2020) ............................................................................... 13

*Maas v. Cornell Univ.*,
  94 N.Y.2d 87, 721 N.E.2d 966 (1999) .............................................................. 27

*Monaco v. New York Univ.*,
  204 A.D.3d 51, 164 N.Y.S.3d 87, 401 Ed. Law Rep. 563 (1st Dep't 2022) ...... 26, 29

*Novio v. New York Acad. of Art*,
  286 F. Supp. 3d 566 (S.D.N.Y. 2017) ............................................................... 21

*O'Neill v. New York Univ.*,
  944 N.Y.S.2d 503 (App. Div. 2012) .................................................................. 26

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
  633 F.3d 81 (2d Cir. 2011) ............................................................................... 21

*Pearson v. Walden Univ.*,
  144 F. Supp. 3d 503 (S.D.N.Y. 2015) ............................................................... 25

*Pryor v. Jaffe & Asher, LLP.*,
  992 F.Supp.2d 252 (S.D.N.Y. 2014) ................................................................. 25

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*,
  309 A.D.2d 288, 765 N.Y.S.2d 575 (2003) ....................................................... 31

*Riddell Sports  Inc. v. Brooks*,
  872 F. Supp. 73 (S.D.N.Y. 1995) ...................................................................... 34

*Schiebel v. Schoharie Cent. Sch. Dist.*,
  120 F.4th 1082 (2d Cir. 2024) .................................................................... passim

*Stacy Roundabush v. Albert Einstein College of Medicine of Yeshiva University and Kamran
  Khodakhah*,
  Index No. 807857/2023E (May 19, 2023) ........................................................ 11

*Stadt v. Fox News Network LLC*,
  719 F. Supp. 2d 312 (S.D.N.Y. 2010) ............................................................... 25

*Syeed v. Bloomberg L.P.*,
  568 F. Supp. 3d 314 (S.D.N.Y. 2021) ............................................................... 24

*Trahan v. Lazar*,
  457 F. Supp. 3d 323 (S.D.N.Y. 2020) ............................................................... 34

*Vengalattore v. Cornell Univ.*,
  36 F.4th 87 (2d Cir. 2022) ......................................................................... 15, 19

*Winston v. Verizon Servs. Corp.*,
   633 F.Supp.2d 42 (S.D.N.Y. 2009) ............................................................................ 25
*Wood v. Lucy, Lady Duff-Gordon*,
   222 N.Y. 88, 118 N.E. 214 (1917)............................................................................ 31
*Xiang v. Eagle Enterprises, LLC*,
   No. 19 CIV. 1752 (PAE), 2020 WL 248941 (S.D.N.Y. Jan. 16, 2020) ................... 24

**Rules**

34 C.F.R. § 106.45 ........................................................................................................ 22
34 C.F.R. § 106.71 ........................................................................................................ 22

## INTRODUCTION

Plaintiff Kamran Khodakhah ("Plaintiff" or "Dr. Khodakhah"), respectfully submits this Memorandum of Law in Opposition to Defendants' Montefiore Academic Health System, Inc. ("Montefiore"), Albert Einstein College of Medicine ("Einstein"), Dr. Pablo Castillo ("Castillo"), and Dr. Bryen Jordan ("Jordan") (collectively, "Defendants"), Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). As Plaintiff has plausibly alleged entitlement to relief on all of his claims, Defendants' Motion should be denied in its entirety.

## FACTS[1]

### A.    The terms of Plaintiff's tenured faculty appointment at Einstein.

Plaintiff is a renowned neuroscientist and medical researcher who is employed as a tenured professor of neuroscience, psychiatry and behavioral sciences, and neurology at Albert Einstein College of Medicine ("Einstein"), a subsidiary of Defendant Montefiore Medicine Academic Health System, Inc. ("Montefiore" and, together with Einstein, "Einstein-Montefiore"). FAC ¶¶ 1, 12-13, 35.  In his November 1, 2000 offer letter, Dr. Khodakhah was made an offer of a faculty position with Einstein, with the understanding that his faculty appointment would be "subject to the terms outlined in [this] letter and to the provisions of [Einstein's] System of Appointments" and "other policies of [Einstein] applicable to faculty." *Id.* ¶ 37; ECF 58-1.

Plaintiff's  2001 appointment letter (the "2001 Appointment Letter") guaranteed that his faculty appointment at Einstein would be "in accordance" with the terms outlined in the appointment letter and Einstein's "Faculty Handbook"  and the "policies" incorporated therein. FAC ¶ 30; ECF 58-2.  On September 11, 2012, Einstein granted Plaintiff tenure. FAC ¶ 44.

---

[1] A full recitation of the facts can be found in the First Amended Complaint ("FAC"), ECF 48.

**B.      Plaintiff's 2014 Retention Agreement.**

In 2014, Plaintiff was recruited by another institution which offered Plaintiff a faculty position with a large endowment to support his research. *Id.* ¶ 48. Einstein made Plaintiff a counter-offer to keep him at Einstein, which Plaintiff accepted. *Id.* ¶¶ 49-51. Plaintiff and Einstein jointly signed a second appointment letter dated June 9, 2014, memorializing the terms of Einstein's counteroffer (the "2014 Retention Agreement"). *Id.* ¶ 52. The 2014 Retention Agreement specified that "should one or more of [Plaintiff's] R01 grants not be renewed, [Einstein was] committed to providing generous interim support (equivalent to the direct costs of the R01.)" *Id.* ¶ 53.

**C.      Plaintiff' is promoted to Interim Chair in 2013, Chair in 2016, and is recognized for his exemplary performance.**

In 2013, Plaintiff was appointed Interim Chair of Einstein's Neuroscience Department (the "Department"). *Id.* ¶ 46. In 2016, Plaintiff was appointed Chair of the Department, with the unanimous support of the Department, notably, absent one, Dr. Pablo Castillo, M.D. ("Castillo"), who was widely known to hold a grudge against Plaintiff for his appointment as Interim Chair, and later Chair. *Id.* ¶¶ 56-58.

Plaintiff's appointment letter to the Chairmanship (the "2016 Promotional Letter") promised that Plaintiff's appointment as Chair was "for an indefinite term," with "continuation . . . subject to performance as determined by the Dean." *Id.* ¶ 59; ECF 58-4. At all relevant times, Plaintiff's performance as Chair was exemplary, earning himself and the Department national recognition. FAC ¶¶ 61-63. The 2016 Promotional Letter also reaffirmed Einstein's "Commitment to Interim Support" as outlined in the 2014 Retention Agreement. *Id.* ¶ 350.

In 2018, Gordon Tomaselli ("Dean Tomaselli") was appointed dean of Einstein. *Id.* ¶ 66. In his capacity as Chair, Plaintiff was openly critical of Dean Tomaselli's failure to perform the

budgetary, fiduciary, and infrastructure responsibilities as dean, which Dean Tomaselli resented and caused him to feel threatened by Plaintiff. *Id.* ¶¶ 66-83.

**D.    Early 2022: Plaintiff is targeted with false allegations and complains to HR, who advises him the allegations are nonsense.**

In early 2022, Plaintiff became the target of false allegations instigated by two senior male professors in the Department, Castillo and Dr. Bryen Jordan ("Jordan"). *Id.* ¶¶ 107-121. Upon learning of the allegations on February 24, 2022, Plaintiff promptly sought assistance from Yvonne Ramirez ("Ramirez"), who served as both Einstein's Title IX Coordinator and Einstein's VP of Human Resources. *Id.* ¶¶ 122-123.

Both Ramirez and Einstein's Executive Dean, Dr. Edward Burns ("Burns") advised Plaintiff that they believed the allegations were baseless, but suggested that Plaintiff "step down" as Chair, given the "climate" in the wake of the #MeToo movement,[2] an option Plaintiff rejected because the allegations against him were an obvious sham. *Id.* ¶¶ 124-132.

**E.    March 10: 2022: Dean Tomaselli orders Plaintiff "suspended" as Chair and announces he would "step down" as Chair.**

Though no formal complaint had been filed against Plaintiff and no investigation into the veracity of the allegations had been conducted, on March 10, 2022, Dean Tomaselli notified Plaintiff that he was immediately "suspending" Plaintiff from his appointment as Chair, pending the outcome of an investigation into "distressing anonymous feedback of students." Dean Tomaselli asserted that he was taking this action "to protect all parties from fear of retaliation," "actual or perceived." *Id.* ¶¶ 133-136; ECF 54-1. Within minutes, Dean Tomaselli emailed the

---

[2] At the time, Einstein was facing ongoing internal and external pressures to aggressively pursue and resolve allegations of sexual harassment, particularly allegations of females, FAC ¶¶ 374- 382, 392-398.

Department that Plaintiff was under investigation and would "step down" as Chair, and that he (Dean Tomaselli) would choose an Interim Chair to replace Plaintiff. *Id.* ¶¶ 139-140.[3]

Einstein's then applicable policies, specifically, its "Title IX Gender-Based Misconduct, Discrimination and Harassment Policy and Complaint Procedures for Employees and Non-Students," dated August 14, 2020 (the "2020 Title IX Policy"), and the "Discrimination and Harassment Policy (Non-Title IX)," dated August 14, 2020, (the "Discrimination/Harassment Policy"), did not permit disciplining an accused faculty member *prior* to an adjudication and proof of responsibility by clear and convincing evidence, or demoting Plaintiff as a purported "interim protective measure." *Id.* ¶¶ 92-94, 96-102, 145-149, 150-151, 304, 401; 2020 Title IX Policy at §§ III.G, III.I; ECF 58-8 at 10-20, 23.

Since February 2022, Jordan and Castillo had been spreading false allegations and innuendo that Plaintiff was involved in sexual misconduct with female members of the junior faculty. FAC ¶ 142. Following Dean Tomaselli's March 10, 2022 announcement to the Department that Plaintiff would be "stepping down" as Chair, multiple persons complained to Dean Tomaselli, Ramirez, and Burns that Jordan and Castillo had instigated false allegations against Plaintiff. *Id.* ¶¶154-156. Faculty members also reported to the external investigator commissioned by Einstein to look into the allegations that the allegations against Plaintiff were false and instigated by a handful of senior male faculty members. *Id.* ¶ 159.[4]

---

[3] Dean Tomaselli did not identify any alleged violation of any specific employment policy. *See* ECF 54-1.
[4] The external investigator, himself, shared with faculty that he was personally puzzled by the sanctions Einstein had imposed upon Plaintiff based on what appeared to be baseless allegations. FAC ¶ 160.

**F.    July 11, 2022: Dean Tomaselli permanently dismisses Plaintiff from his Chairmanship for disciplinary reasons which he had reason to know were false.**

However, in a letter dated July 11, 2022, Plaintiff was notified by Dean Tomaselli that "the investigation" was concluded and that he (Plaintiff) was being dismissed from his appointment as Chair, effective "immediately," based on allegations that Dean Tomaselli asserted had been "confirmed" by a "confidential investigation report (the "Report")." FAC ¶¶ 163-165; ECF 54-2. The letter listed purported "serious concerns" about Plaintiff's "behavior," including "inappropriate and unwanted physical touching, including pulling females students' ponytails, stomach touching, shoulder touching, and pushing." FAC ¶ 163; ECF 54-2.The allegations were false, and Plaintiff had never been formally charged or adjudicated responsible for any of the alleged misconduct described in Tomaselli's letter. FAC ¶ 165.

Both Einstein's 2022 Title IX Policy and the Discrimination/Harassment Policy specifically required that Einstein (i) provide an accused faculty member a fair and impartial investigative report, with any findings and outcome and (ii) prove by a "clear and convincing" standard of evidence that the accused had committed the alleged violation *prior* to the imposition of discipline, FAC ¶ 94-96, 98, 102, 488-489; *see* 2022 Title IX Policy at §§ III.H.1, III.I; ECF 58-9 at 19-21, 23.

Dean Tomaselli imposed this disciplinary demotion upon Plaintiff though Plaintiff: (i) had not been the subject of a formal complaint, (ii) had not been apprised of the identities of his alleged accusers or provided notice of the charges, (iii) had not been adjudicated responsible for any misconduct by clear and convincing evidence (or any other permissible standard), and (iv) had not been provided a copy of any final investigation report prior to the imposition of discipline (and, to this day, Plaintiff has not been provided a copy of any purported investigation report). FAC ¶¶ 90-102, 163-173. 486-489. In addition to these blatant policy violations, when Dean Tomaselli

dismissed Plaintiff, he had reason to know that the allegations against Plaintiff were false. *Id.* ¶¶ 125, 154-156, 159-160.

**G.    July 11, 2022: Einstein's Title IX Office issues Plaintiff two procedurally irregular Title IX complaints that rehash the false allegations spread by Castillo and Jordan.**

Also on July 11, 2022, Plaintiff received two notices of investigation (together, the "NOIAs" and each an "NOIA") from Einstein's Title IX Coordinator, Ramirez, notifying him of two Title IX complaints against him based on erroneous allegations of two female junior professors which rehashed the false allegations instigated by Castillo and Jordan. FAC ¶¶ 174-181.

Procedurally irregular, each of the NOIAs informed Plaintiff that his alleged behavior met the definition for "sexual harassment" contained in Einstein's then-*obsolete* 2018 Title IX Policy, and each NOIA included a footnote indicating that Einstein intended to apply its obsolete 2018 Title IX Policy to the complaint against Plaintiff. *Id.* ¶¶ 182-183. Notably, on August 14, 2020, Einstein replaced the 2018 Title IX Policy in its entirety with the 2020 Title IX Policy, as required by federal regulations. *Id.* ¶¶ 90-94, 184-185, 387-391. Einstein renewed its 2020 Title IX Policy without modification on March 18, 2022 (the "2022 Title IX Policy"). *Id.* ¶¶ 95, 478. As of July 11, 2022, the date of the NOIAs, the scope of Einstein's then-current and applicable 2022 Title IX Policy unambiguously applied to govern the conduct of all Einstein faculty, without regard to the date of the occurrence of the alleged violation. *Id.* ¶ 186; 2022 Title IX Policy at § II; ECF 58-9 at 5.

The 2018 Title IX Policy that Einstein chose to apply to Plaintiff's case contained a far broader definition of "sexual harassment" than did the 2022 Title IX Policy, covering a veritably limitless range of "unwelcome" or "unwanted" conduct that a "victim" subjectively perceived to constitute "conduct" of a "sexual nature." FAC ¶¶ 86, 91; 2018 Title IX Policy at § IV, ECF 58-7 at 19; 2020 Title IX Policy at § III.C.2; ECF 58-8 at 10.

Under the 2018 Title IX Policy, the burden of proof to hold an accused responsible for alleged misconduct was a mere preponderance of the evidence standard. FAC ¶ 89. Further under the 2018 Title IX Policy, the accused had:

      a.  no right to a presumption of innocence;
      b.  no right to confront the complainant or question witnesses;
      c.  no right to an impartial decision-maker;
      d.  no right to exculpatory evidence, including the final investigation "report," and
      e.  no right to appeal from a finding of responsibility.

*Id.* ¶ 88; ECF 58-7 at 35-38.

In contrast, Einstein's 2022 Title IX Policy, which renewed, without modification, Einstein's 2020 Title IX Policy, afforded an accused:

      a.  a presumption of innocence;
      b.  a hearing and a right to confront the complainant and question witnesses;
      c.  a right to an independent, impartial decision-maker, and an explicit prohibition against a Title IX coordinator from serving as investigator and/or decision-maker;
      d.  a "clear and convincing" standard of evidence; and
      e.  a right to appeal a finding of "responsibility" and sanctions imposed.

FAC ¶¶ 94-95; 2022 Title IX Policy; ECF 58-9 at 22-25.

**H.    July 13, 2022: Dean Tomaselli suspends Plaintiff from duty and "removes" him from campus after Plaintiff attempts to exercise his rights under the 2022 Title IX Policy.**

On July 12, 2022, Plaintiff reached out to persons who might serve as witnesses in the investigation into the erroneous Title IX Complaints, as was his right under the 2022 Title IX Policy. FAC ¶¶ 188-180. On July 13, 2022, Dean Tomaselli ordered Plaintiff summarily suspended from his duties and "removed" from campus. *Id.* ¶¶ 192-199; ECF 54-3. Asserting that Plaintiff had committed a "flagrant disregard of Einstein's no-retaliation policy," Dean Tomaselli cited to an inapplicable employment policy as authority for his action. FAC ¶¶ 194-197; ECF 54-3.[5]

---

[5] Tomaselli cited Section III.H of Einstein's Appointments Policy, a provision that provides for the summary paid suspension of an employee against whom written charges of *for cause* dismissal have been made, "pending final action upon such charges," and "continuance of the Faculty member in his duties threatens immediate harm," conditions that were blatantly inapplicable to Plaintiff's case.  FAC ¶ 196; ECF 54-3.

Einstein's 2022 Title IX Policy prohibits retaliating against a respondent for participating in a Title IX proceeding. FAC ¶¶ 200-204; 2022 Title IX Policy at § III.N; ECF 58-9 at 28-29.[6] After Dean Tomaselli ordered Plaintiff suspended and removed from campus, Ramirez implemented Dean Tomaselli's order by filing a formal Title IX complaint against Plaintiff for purported "retaliation." FAC ¶¶ 327-328. Plaintiff had never been adjudicated "responsible" for retaliation as required under Einstein's 2022 Title IX Policy, or any other policy, but he remained suspended and "removed" from campus for nearly two years, during which time he was precluded from working in-person on campus, including in his research laboratory, resulting in damage to Plaintiff's career and capacity to perform his scholarly duties. *Id.* ¶¶ 40-41, 326-332, 371.

Following Plaintiff's suspension and removal from campus, in late July and August 2022, multiple individuals reported to Einstein's Title IX Office, Dean Tomaselli, and other senior management that they had reason to believe that the allegations against Plaintiff were false and motivated by grudges held by Castillo and Jordan.  *Id.* ¶¶ 206, 223-230. However, Einstein did not reopen the allegations against Plaintiff for which Dean Tomaselli had purportedly dismissed him from his appointed Chairmanship on July 11, 2022, and for which Einstein had opened two Title IX claims that same day. *Id.* ¶¶ 231-233.

**I.    Ramirez issues a procedurally irregular decision in Plaintiff's Title IX case**

   **1.   Ramirez applies Einstein's obsolete 2018 Title IX Policy**

On December 18, 2023, improperly applying Einstein's 2018 Title IX policy and procedures, Ramirez issued two decisions on Plaintiff's two pending Title IX cases. *Id.* ¶ 249. In Complainant 1's case, Ramirez adopted a male investigator's finding that Plaintiff was not

---

[6] In addition, under Einstein's 2022 Title IX Policy, a respondent is "presumed to be not responsible for the alleged conduct unless and until proven otherwise under a clear and convincing standard of evidence at the conclusion of the process." FAC ¶ 94; 2022 Title IX Policy at § III.I; ECF 58-9 at 23.

responsible for "sexual harassment," but in Complainant 2's case, Ramirez adopted the finding of a demonstrably biased female investigator that Plaintiff was responsible for "sexual harassment." *Id.* ¶¶ 250-251,255-264, 289-292, 294.

Complainant 2's complaint involved two purported incidents, the first allegedly occurring at a Graduate Student reception hosted by the Department ("Allegation #1"), and the second allegedly involving two separate occurrences at the annual meeting of the Society for Neuroscience ("Allegation #2(a)-(b)"). *Id.* ¶ 265.

With respect to Allegation #1, the gist of Complainant 2's allegation was that Plaintiff had tapped her twice briefly on the shoulder while they were both waiting in line to be served at the reception. *Id.* ¶¶ 266—270.

With respect to Allegation #2(a), Complainant 2 claimed that Plaintiff forcefully touched her "breastbone" with both hands. *Id.* ¶ 272. Plaintiff recalled that he was walking toward Complainant 2, with his right-hand index finger pointing in the direction of her necklace, and that he tripped, and his finger landed on her necklace. *Id.* ¶ 273. It was undisputed that Plaintiff tripped while walking toward Complainant 2, and that he was saying, "what's this?" *Id.* ¶ 274. It was also undisputed that Plaintiff never touched Complainant 2's bare skin. *Id.* ¶ 275. The only fact in dispute was whether Complainant 2 was wearing a necklace. *Id.* ¶ 276. Complainant 2 asserted that she was not wearing a necklace, and that Plaintiff's finger landed near her neckline (collar) area, over her clothing. *Id.* No witness corroborated Complainant 2's account, but one of Complainant 2's witnesses corroborated Plaintiff's account. *Id.* ¶¶ 277-278.

With respect to Allegation #2(b), Complainant 2 falsely claimed that, following the breastbone incident, Plaintiff slapped her on her thigh while they were outside on the patio. Complainant 2 further told the investigator that Dr. S.C. had to come to Complainant 2's "rescue"

by pulling Plaintiff away. *Id.* ¶ 283. Plaintiff denied the allegations completely, stating that the alleged incident never happened. *Id.* ¶ 284. Complainant 2's own witness stated that he was nowhere near Plaintiff during the purported incident and had no recollection of the alleged incident. *Id.* ¶ 285.

Even if Complainant 2's allegations were proven true, which they were not, they did not allege conduct meeting the definition of "sexual harassment" under the 2022 Title IX Policy. *Id.* ¶¶ 266-282. However, Ramirez adopted the biased investigator's finding in Complainant 2's case that "the instances of touching, taken in their totality, were sexual in nature as defined by the [2018 Title IX Policy]." *Id.* ¶¶ 287-293.

### 2. Ramirez considers anonymous and unsubstantiated allegations outside Plaintiff's Title IX process when imposing sanctions.

Under Einstein's 2022 Title IX Policy, Ramirez was prohibited from considering allegations of alleged misconduct *outside* the Title IX grievance process. *Id.* ¶¶ 301-305.[7] However, in her written decision, Ramirez indicated that, in arriving at the sanctions, she considered Complainant 2's case to be a *"second offense"* and that she took into account the anonymous allegations of misconduct for which Dean Tomaselli had purportedly dismissed Plaintiff as Chair on July 11, 2022 and for which Plaintiff had never been formally charged or found responsible. *Id.* ¶¶ 107-132, 154-156, 158-160, 206-210, 223-230, 300, 316-325. Ramirez's decision announced onerous sanctions that included barring Plaintiff "from teaching, mentoring, or advising students for three (3) years following the end of the suspension (referring to Dean

---

[7] *See* 2022 Title IX Policy at §§ III.F.5, III.H, and III.I; ECF 58-9 at 17 (entitling a respondent to "notice of the allegations"); *id.* at 20 ("If, in the course of an investigation of a Complaint, Einstein decides to investigate allegations of Title IX Violations that were not included in the notice regarding the original Complaint allegations (as discussed in Section III.F.5), Einstein will provide notice of the additional allegations to all parties whose identities are known, pursuant to the process set forth In Section III.F.5."); *id.* at 23 (entitling a respondent to a presumption that he is "not responsible unless and until proven otherwise under a clear and convincing standard of evidence").

Tomaselli's suspension order imposed on Plaintiff on July 13, 2022). *Id.* ¶ 306. Because Einstein

chose to apply the 2018 Title IX Policy, Plaintiff had no right to appeal. *Id.* ¶¶ 314-315.

**J.      February 2024: In an answer filed in a New York state court case, Einstein denies that Plaintiff engaged in incidents of misconduct that are the same as those Dean Tomaselli cited when he dismissed Plaintiff from his chairmanship.**

In May of 2023, a former Einstein graduate student filed a Complaint in the New York

State Supreme Court, captioned *Stacy Roundabush v. Albert Einstein College of Medicine of*

*Yeshiva University and Kamran Khodakhah*, Index No. 807857/2023E (May 19, 2023) (the

"*Roundabush* Complaint"), alleging that Plaintiff subjected her and other students to mistreatment.

FAC ¶ 316.  The *Roundabush* Complaint's allegations  mirror the false allegations that Dean

Tomaselli listed in his July 11, 2022 letter, when he dismissed Plaintiff as Department Chair. *Id.*

¶¶ 164-165, 317-320; ECF 54-2 at 2-3. In its Answer, filed on February 6, 2024 (the "*Roundabush*

Answer"), Einstein either denied the allegations outright or denied having knowledge or

information sufficient to form a belief as to their truth. *Id.* ¶¶ 318-321.

Specifically, Einstein (i) denied Roundabush's allegations that Plaintiff had subjected her

and other women to mistreatment, including pulling hair and "sexually inappropriate comments";

(ii) denied having knowledge or information sufficient to form a belief as to allegations that

Plaintiff had used inappropriate "nicknames" for students; and (iii) denied allegations that Plaintiff

had subjected her to a discriminatory or abusive environment, or caused her "unwanted physical

contact." *Id.* ¶¶ 318-320.[8]  In essence, Einstein denied that Plaintiff engaged in any of the

wrongdoing comprising Einstein's bases for taking adverse actions against Plaintiff. *Id.*

---

[8] Notably, Einstein admitted that, on or about March 23, 2021, Roundabush spoke with Dr. Bryen Jordan. FAC ¶ 48.

**K.**     **May 17, 2024: After being suspended and "removed" from campus for nearly two years, Plaintiff is determined not responsible for purported "retaliation."**

Nearly two years after Dean Tomaselli ordered Plaintiff suspended and "removed" from campus on July 13, 2022 for a purported "flagrant disregard of Einstein's no retaliation policy," (ECF 54-3), on May 17, 2024, Plaintiff was finally afforded a grievance process and was determined "not responsible" for the purported acts that served as the basis for his suspension and removal. FAC ¶ 326.[9] At the hearing, Dean Tomaselli and Ramirez admitted that Plaintiff was allowed to reach out to witnesses under the 2022 Title IX Policy, thereby tacitly conceding that the 2022 Title IX Policy should have applied to Plaintiff's Title IX Investigations, and Ramirez was unable to identify any Einstein policy that Plaintiff had allegedly violated to warrant Dean Tomaselli's order to suspend and "remove" Plaintiff from campus on July 13, 2022. *Id.* ¶¶ 329-330; ECF 54-3.[10]

## STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, the court must "take all of the factual allegations in the complaint as true," and all reasonable inferences are drawn in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("*Iqbal*"). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Adia v. Grandeur Mgmt., Inc*., 933 F.3d 89, 92 (2d Cir. 2019) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) ("*Twombly*"). A claim is plausible "when the plaintiff pleads factual content

---

[9] After Tomaselli ordered Plaintiff suspended and removed from campus on July 13, 2022, Ramirez implemented Tomaselli's order by filing a formal Title IX complaint against Plaintiff for purported "retaliation."  FAC ¶¶ 327-328.
[10] Despite that Plaintiff was found not responsible for  "retaliation" by a hearing officer on May 17, 2024, Einstein did not lift the Plaintiff's "suspension" and "removal" order that Tomaselli put in place on July 13, 2022. FAC ¶ 326.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

"The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief "'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Thus, the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch*, 952 F.3d at 75.

The Court may consider documents attached to the complaint as exhibits or incorporated in it by reference, but not for the truth of the matters asserted therein. *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 273 (S.D.N.Y. 2011). However, the court "may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005).

## ARGUMENT[11]

### I.    Plaintiff's Claims Against Defendant Montefiore Should Not Be Dismissed.

Plaintiff's claims against Defendant Montefiore should not be dismissed. Plaintiff's claims against Defendant Montefiore are premised on Defendant Montefiore's employment relationship with Plaintiff's direct employer, Defendant Einstein. *See Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) (Two doctrines have been developed—the "joint employer" doctrine and the "single employer"—"to allow a plaintiff to assert employer liability in the employment discrimination

---

[11] Unless indicated otherwise, internal quotation marks and citations are omitted and emphasis is added.

context against entities that are not her formal, direct employer."); *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 421 (S.D.N.Y. 2022).[12]

Importantly, a determination of a joint or single employer status is a factual question that is made on summary judgment, after discovery. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) ("Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss.").

Here, Plaintiff has alleged facts from which it is reasonable to infer that Defendant Montefiore had a joint employer or a single employer relationship with Defendant Einstein. The FAC alleges that Defendant Montefiore's chief legal counsel had oversight over Plaintiff's disciplinary decisions (FAC ¶ 25), that Defendant Montefiore managed benefits of both Montefiore and Einstein's employees (*Id.* 26-27), that Defendant Montefiore's President and CEO "is the ultimate decision-maker for hiring and firing decisions at Einstein" (*Id.* ¶ 28), and that Defendant Montefiore has discretion over Einstein's budget and resources (*Id.* ¶¶ 29-31). *See Bautista,* 642 F. Supp. 3d at 421-422.

Plaintiff's well-pled FAC also undoubtedly put Defendant Montefiore on notice of what the claims are about and the grounds for those claims. *See  Bautista* at 423 ("Although the SAC does engage in group pleading, it still puts the [defendant] on notice" of what the claim is and the ground upon which it rests") (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

Accordingly, Defendants' motion to dismiss claims against Defendant Montefiore should be denied, and discovery allowed to commence.

---

[12] Notably, in support of their argument, Defendants cite inapposite commercial law cases rather than acknowledge the ample case law in support of Plaintiff's allegations in the employment discrimination context.

**II.     Plaintiff Has Sufficiently Alleged Title IX Erroneous Outcome and Deliberate Indifference Claims.**

As discussed *infra*, Plaintiff has sufficiently alleged both Title IX erroneous outcome and deliberate indifference claims. *See Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1096-1097 (2d Cir. 2024) (clarifying that a person accused of sexual misconduct who alleges the university discriminated on the basis of the plaintiff's sex when disciplining the plaintiff, may allege both an "official action" claim or a deliberate indifference" claim). In an official action claim, (i.e., "erroneous outcome" or "selective enforcement"), the plaintiff must allege both procedural irregularity that suggests "some form of bias," as well as "facts suggesting that the bias was on account of sex." *Id.* (quoting *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 107 (2d Cir. 2022)).

Alternatively, in a deliberate indifference claim, the plaintiff must show that the [school] was deliberately indifferent to the truth or falsity of the accusations of sexual misconduct made against him." *Id.* at 1096-1097. A plaintiff may state a deliberate indifference claim by showing "the grievance process was so clearly irregular as to indicate that the process was a "sham." *Id.* at 1095. "Procedural irregularities such as the recipient's failure to comply with its own grievance policies or with applicable Title IX regulations provide probative evidence of deliberate indifference, and a wholesale failure to employ established procedures for investigating sexual harassment complaints might establish it." *Id.*

"If a respondent plausibly alleges that he was targeted by a discriminatory accusation, and the recipient imposed discipline or sanctions under circumstances that indicate deliberate indifference to the truth or falsity of the accusation, the respondent has stated a deliberate indifference claim under Title IX." *Id.* at 1097; *see also Menaker v. Hofstra Univ.*, 935 F.3d 20, 34 (2d Cir. 2019) (analyzing discrimination under Title VII).

The Second Circuit has made clear:

> As with a deliberate indifference claim by a complainant, a respondent may show deliberate indifference through allegations that the recipient's grievance process was so "objectively deficient" that it cannot be said to have aimed at uncovering the truth or that its decision was so "inexplicable" that the same inference could be drawn. A respondent states a deliberate indifference claim when he plausibly alleges facts that raise 'grave doubts as to the merits of the decision itself, and that the recipient knowingly "shut[ ] [its] eyes to [the] risk" that it was imposing sanctions based on a malicious and therefore                  discriminatory                  accusation.

*Schiebel*, 120 F.4th at 1097–98 (internal citations omitted).

### A.    Deliberate Indifference

Plaintiff states a claim for deliberate indifference on the basis of clearly deficient procedures, the deliberate indifference to reports that the accusations against Plaintiff were false, and a Title IX decision that was so unreasonable it would "lead a reasonable factfinder to conclude that Einstein ran a "sham process because it was deliberately indifferent to the truth or falsity of the accusation." *See id.* at 1104.

Like the plaintiffs in *Schiebel* and *Menaker,* Plaintiff has plausibly alleged that Einstein ignored and acted on reports of false information that it had reason to know were false. In February 2022, Einstein's administrators, Ramirez and Burns, were both aware that Plaintiff had been the target of false allegations and told Plaintiff that they, themselves, believed the allegations against Plaintiff were baseless. FAC ¶¶ 107-125. In the subsequent months, multiple persons, including faculty, reported to Einstein's Title IX Office that Plaintiff had been targeted by false allegations of sexual misconduct, and that Defendants Castillo and Jordan, were identified as instigators of the allegations. *Id.* ¶¶ 154-156, 159-160, 206. However, the Title IX Office failed to follow-up on the reports of false information. Instead, Dean Tomaselli suspended then dismissed Plaintiff from his Chairmanship based on the false and/or unsubstantiated allegations. *Id.* ¶¶ 133-136, 163-164; ECF 54-1; ECF-54-2.

Clear procedural irregularities in Einstein's handling of the allegations also include Einstein's failure to provide Plaintiff *any* procedural due process, although required under Einstein's written policies, with respect to the allegations of sexual misconduct for which Dean Tomaselli purported to suspend and then dismiss Plaintiff as Chair. FAC ¶¶ 92-94, 96-102, 145-149, 150-151, 304, 401, 488-489; *see* 2020 Title IX Policy at §§ III.G, III.I; ECF 58-8 at 10-20, 23; 2022 Title IX Policy at §§ III.H.1, III.I; ECF 58-9 at 19-21, 23.

Other clear procedural irregularities include Einstein's decision to evaluate Plaintiff's two Title IX complaints under Einstein's obsolete 2018 Title IX Policy, although Einstein had *entirely replaced* its 2018 Title IX Policy on August 14, 2020 with its 2020 Title IX Policy and subsequently its 2022 Title IX Policy. FAC ¶¶ 90-94, 182-183, 397-391.  Einstein was aware of its obligations under the federal regulations to afford respondents in grievance proceedings basic fairness in adjudicating sexual misconduct cases, yet its decision-makers consciously chose to apply Einstein's obsolete 2018 Title IX policy, which lacked those very principles of basic fairness and due process mandated by federal law, and applied a much broader and malleable definition of "sexual harassment." *Id.* ¶¶ 86, 88, 91, 94-95; 2018 Title IX Policy at § IV, ECF 58-7 at 19; 2020 Title IX Policy at § III.C.2; ECF 58-8 at 10.

This decision to apply the 2018 Title IX Policy enabled Einstein to more easily hold Plaintiff responsible for the erroneous allegations and to deny him any right of appeal of a finding of responsibility and any sanctions. FAC ¶¶ 314-315.

Another clear procedural irregularity was that Ramirez inappropriately served as both the Title IX Coordinator and the decision-maker in Plaintiff's Title IX case. *Id.* at 297. In addition, in her decision, Ramirez determination that Plaintiff's brief instances of unintended touching, including an instance of unintended touch Plaintiff he was falling constituted "sexual harassment"

suggests that Ramirez "manipulated the policy to fit the evidence rather than impartially applied the policy." *See Schiebel.,* 120 F.4th at 1103. Moreover, when Ramirez imposed sanctions upon Plaintiff, her decision indicates that she improperly considered the anonymous and unsubstantiated "behavior," allegations for which Dean Tomaselli had purported to dismiss Plaintiff from his Chair appointment on July 11, 2022, and for which Plaintiff had never been formally charged or adjudicated responsible. This lack of fundamental due process deprived Plaintiff of notice (including notice of the identity of his accusers) and a meaningful opportunity to respond to the evidence against him, as well as any right to appeal. FAC ¶¶ 107-132, 154-156, 158-160, 206-210, 223-230, 316-325.

Another clear procedural irregularity is Dean Tomaselli's July 13, 2022 suspension and dismissal order---which resulted in Plaintiff's ban from campus for nearly two years—based on an erroneous charge of  "retaliation." *Id*. ¶¶ 194-197; ECF 54-3. Dean Tomaselli's suspension and dismissal, which severely impacted Plaintiff and his laboratory, constitutes discipline without due process, in violation of Einstein's written Title IX Policy. FAC ¶¶ 200-204; 2022 Title IX Policy at § III.N; ECF 58-9 at 28-29.

Despite Defendants' contentions otherwise, Einstein's application of the 2018 Policy to Plaintiff's Title IX case was clearly procedurally irregular. Defendants point to an agency *guidance* document as authority for the application of the 2018 Title IX Policy. ECF 57-25. However, an agency guidance document does not trump federal regulations.

Moreover, Einstein's decision to withhold from Plaintiff the then-current 2022 Title IX Policy was a decision not to afford Plaintiff a presumption of innocence and fundamental due process. Defendants ignore the possibility that Einstein's decision was motivated, at least in part, on the basis of Plaintiff's sex. Indeed, even if Einstein had sought to regulate more *conduct* covered

18

under the broader definition of "sexual harassment" set forth in the 2018 Title IX Policy, that would

not explain Einstein's motive for choosing to withhold from Plaintiff the *procedural protections*

under the 2022 Title IX Policy, which included a *presumption of innocence*.

As the Second Circuit has explained, the Title IX regulations effectuate Title IX's

"nondiscrimination mandate," and the withholding of the procedural protections provided under

the regulations can, itself, be evidence of bias:

> The Title IX regulations required SCSD [the defendant] to comply with certain procedural
> requirements for addressing complaints of sexual harassment. *See* 34 C.F.R. §§ 106.44,
> 106.45 (effective August 14, 2020, to July 31, 2024).11 The Title IX regulatory
> 'requirements do not purport to represent a definition of discrimination under the statute'
> but the requirements nevertheless 'effectuate the statute's nondiscrimination mandate.'
> *Gebser,* 524 U.S. at 292, 118 S.Ct. 1989. That is because a grievance process 'lacking
> principles of due process risks bias that in the context of sexual harassment allegations is
> likely to involve bias based on stereotypes and generalizations on the basis of sex.' . . .
>
> While the failure to follow a regulatory requirement does not automatically establish that
> a recipient has contravened Title IX, the violation of a procedural requirement is a
> "procedural irregularity" that "may suggest some form of bias." *Vengalattore,* 36 F.4th at
> 107.

*Schiebel*, 120 F.4th at 1098–99.

Defendants' contentions also ignore the plain language in the 2022 Policy, which is not, in

fact, helpful to their position (*see* ECF 57-25) as neither the 2020 Title IX Policy nor the 2022 Title

IX Policy makes any mention of applying an earlier policy depending on the date of an alleged

violation.

Defendants also fail to address Einstein's *complete disregard* of Plaintiff's procedural

rights under Einstein's sexual misconduct policies, the 2022 Title IX Policy and the

Discrimination/Harassment Policy, when Dean Tomaselli suspended and removed Plaintiff from

his Chairmanship, on March 10, 2022 and July 11, 2022, respectively, and later suspended and

"removed" him from campus, on July 12, 2022. Neither Einstein's 2022 Title IX Policy nor

Einstein's Discrimination/Harassment Policy permitted the imposition of discipline prior to an adjudication. FAC ¶ 488. *See Schiebel*, 120 F.4th at 1097–98 (wholesale disregard of the school's own policies is a clear procedural irregularity).

Defendants also fail to apprehend that it was fundamentally unfair and clearly procedurally irregular for Ramirez to consider allegations for which Plaintiff had never been formally charged, when she deemed his Title IX case a "second offense" and used that to justify draconian sanctions upon Plaintiff. FAC ¶¶ 300-305.[13] It is rudimentary due process that an accused be given notice of the charges and a meaningful opportunity to respond prior to the imposition of sanctions. *Schiebel*, 120 F.4th at 1098. (holding that plaintiff stated a deliberate indifference claim where he plausibly alleged he had not been provided "the rudiments of due process, such as timely notice of the specific allegations against him, an opportunity to review or to present evidence, and an unbiased decisionmaker").

Accordingly, Plaintiff has plausibly alleged a violation of Title IX based upon Defendants' deliberate indifference and Defendants' Motion to Dismiss should be denied.

### B.    Erroneous Outcome and Indicia of Gender Bias

Plaintiff also states an erroneous outcome claim on the basis of the clear procedural irregularities alleged in the FAC, including those listed above, in addition to plausible allegations of bias based on his sex.

With respect to bias, Plaintiff has alleged that, although Ramirez knew the allegations against Plaintiff were false, she was concerned about the appearance of not being responsive to allegations of sexual harassment in light of the #MeToo movement, and that both she and Burns suggested Plaintiff "step-down" as Chair. FAC ¶¶ 126-127. In addition, the FAC alleges that

---

[13] See Defendants' Memorandum at ECF 57-27 n. 14.

Einstein had concerns that a failure to respond to sexual harassment allegations had the potential to revoke federal funding. *Id.* ¶ 381.

Plaintiff has further alleged that Einstein faced internal pressures to appear "responsive" to allegations of sexual harassment, highlighted by a "Works in Progress" meeting at which a female graduate student raised concerns about Einstein's perceived failure to appropriately resolve female graduate students' complaints of sexual harassment. *Id.* ¶¶ 392-393, 397-398. Einstein was also under pressure by the LCME accreditation body to appropriately resolve allegations of sexual harassment. *Id.* ¶¶ 394-396.

Given the clear procedural irregularities, which, with respect to the withholding of the 2022 Title IX Policy, themselves suggest bias at the pleadings stage, Plaintiff has more than adequately stated a claim of discrimination under an erroneous outcome theory, as well as under a theory of deliberate indifference. *See Novio v. New York Acad. of Art,* 286 F. Supp. 3d 566, 578 (S.D.N.Y. 2017) "[A]t the pleading stage, a plaintiff need not plead facts giving plausible support to the 'ultimate question' of whether an adverse action was attributable to the discrimination; rather, the facts need only give plausible support to a 'minimal inference' of discriminatory motivation."). Accordingly, Defendants' Motion to Dismiss should be denied.

### III.    Plaintiff Has Sufficiently Alleged a Title IX Retaliation Claim.

Plaintiff has stated a claim for Title IX retaliation. Retaliation by an educational program receiving federal funds against a person for engaging in protected activity under Title IX is actionable. *See Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167 (2005). To state a claim for retaliation, a plaintiff must allege: "(1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011).

21

As alleged in the FAC, on July 12, 2022, Dr. Khodakhah engaged in Title IX protected activity when he responded to allegations that he engaged in sexual misconduct as the named respondent in two Title IX complaints, by reaching out to secure potential witnesses in his case. FAC ¶ 188.

Title IX regulations and Einstein's then-current 2022 Title IX Policy both entitle a respondent to secure potential witnesses and speak with them about the allegations in preparing a response to a complaint of an alleged Title IX violation. *See* 34 CFR § 106.45. Participation by *"any individual"* in any manner in a Title IX investigation or proceeding constitutes protected activity under Title IX. *See* 34 C.F.R. § 106.71. Prohibited retaliation against any such individual includes charging the individual  with a code of conduct violation for the purpose of interfering with any right or privilege secured by Title IX. *See Id.*

On July 13, 2023, just one day after Dr. Khodakhah sought to secure potential witnesses in his Title IX proceedings, Einstein erroneously charged Plaintiff with a violation of Einstein's so-called "no retaliation policy" and ordered Dr. Khodakhah to be suspended from his faculty position and immediately removed from campus, including the Kennedy building (where Plaintiff's scientific laboratory is located), and deactivated Dr. Khodakhah's active directory email accounts. Dr. Khodakhah suffered damages as a result of Defendant Einstein's suspension and removal order, which remained in effect for nearly two years. As a result of Defendant Einstein's retaliatory actions, Dr. Khodakhah was unable to conduct research in his lab, supervise the students who work in his lab, and administer his grant-funded research. FAC ¶¶ 190-191, 409-410, 430, 432.

On May 17, 2024, after being banned for *nearly two years* from campus, an independent hearing officer found that Plaintiff was not responsible for "retaliation." *Id.* ¶ 463.

Defendants contend that a respondent cannot bring a claim for retaliation. While there is a split in the circuits, the law of other circuits is not binding on this case. As discussed *supra,* while the regulations are not statute, the Second Circuit has noted that the regulations "effectuate the statute's nondiscrimination mandate." *See Schiebel*, 120 F.4th at 1098–99. Contrary to what Defendants appear to argue, ensuring the rights of both respondents and complainants to fully and equitably participate in the Title IX process is consistent with the statute's mandate. *See Id.*

The close temporal proximity between Plaintiff's protected activity and the unwarranted sanction Plaintiff received is evidence of Defendant Einstein's retaliatory motive. Defendant Einstein's retaliatory motivation against Dr. Khodakhah is also demonstrated by the overly harsh and punitive sanctions that Einstein imposed on Dr. Khodakhah in its December 18, 2023 Title IX decision, which essentially extended Dean Tomaselli's suspension order. FAC ¶¶ 300-302, 306.

For all of these reasons, Plaintiff's claim for Title IX retaliation should not be dismissed.

## IV. Plaintiff's State Law Claims Should Not Be Dismissed.

Defendants rely on nothing more than their arguments for dismissal of Plaintiff's Title IX claims to support their request that Plaintiff's NYSHRL and NYCHRL claims also be dismissed. Defendants' lack of an argument is unavailing.

### A. Plaintiff Has Sufficiently Alleged NYSHRL and NYCHRL Claims.

For the same reasons that Plaintiff has adequately pleaded claims for discrimination under Title IX, he has also sufficiently pled sex discrimination under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") against Defendants Einstein and Montefiore. *See Menaker*, 935 F.3d at 33-34 (explaining the elements of a prima facie case of sex discrimination under Title VII claim in a university context).

In *Menaker*, the Second Circuit explained:

     [W]e emphasize that the holding of *Doe v. Columbia* is not limited to Title IX claims rather than Title VII claims. We apply similar principles in both Title VII and Title IX when seeking to identify discriminatory intent. Indeed, our holding in *Doe v. Columbia* was expressly based on Title VII principles. . . . [T]he very same pressures that may drive a university to discriminate against male students accused of sexual misconduct may drive a university to discriminate against male employees accused of the same. . . . [O]nce a university has promised procedural protections to employees, the disregard or abuse of those procedures may raise an inference of bias.

*Id.* (referencing *Doe v. Columbia,* 831 F.3d 46 (2d Cir. 2016)).

     Under *Menaker*, a case related to claims under Title VII of the Civil Rights Act of 1964, Plaintiff has sufficiently alleged a *prima facie* case of discrimination. 935 F.3d at 33. Plaintiff has (i) clearly alleged he suffered adverse employment actions, (2) that the adverse employment action was in response to alleged sexual misconduct, (3) following a clearly irregular investigation or adjudicative process, and (4) amid criticism for responding inadequately to female graduate students' complaints of sexual harassment. *See* Point II, *supra*. The Second Circuit has ruled that such allegations are sufficient, at the pleading stage, to defeat a motion to dismiss. *See Menaker* at 33-34.

     Since Plaintiff has met her minimal pleading burden under Title IX (and the analogous statute Title VII), he has naturally met her the pleading standard for his NYSHRL and NYCHRL claims. The NYSHRL and the NYCHRL provide more lenient pleading standards than those used to evaluate discrimination claims under Title VII. *See Syeed v. Bloomberg L.P.,* 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) ("The NYCHRL must be construed broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.") (internal quotation marks omitted); *Xiang v. Eagle Enterprises, LLC*, No. 19 CIV. 1752 (PAE), 2020 WL 248941, at *6 (S.D.N.Y. Jan. 16, 2020) ("To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less

well than other employees because of her gender.") (internal citations and quotation marks omitted)).

It is well-settled that a plaintiff who sufficiently states a claim of discrimination under federal, or other higher standard law, also establishes a claim for discrimination under the more lenient standards of the NYCHRL and post-amendment NYSHRL. *See Pryor v. Jaffe & Asher, LLP.*, 992 F.Supp.2d 252, 260 (S.D.N.Y. 2014) (finding plaintiff stated a claim under the CHRL because she adequately pled a claim under the SHRL, which then implemented a higher standard akin to that of federal law); *Winston v. Verizon Servs. Corp.*, 633 F.Supp.2d 42, 48 (S.D.N.Y. 2009).

Accordingly, at this early state in the pleadings, Plaintiff's discrimination claims should not be dismissed.

**B.    Plaintiff Has Sufficiently Alleged a Claim for Breach of Contract.**

Plaintiff has sufficiently alleged his claim for breach of contact. Under New York law, to establish a breach of contract, a plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the [claimant], (3) breach of contract by the [accused], and (4) damages." *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 318 (S.D.N.Y. 2010).

**1.    Einstein's Title IX Policies are valid and enforceable as implied contracts**

Contrary to Defendants' contentions, Einstein's Title IX Policy and other policies governing Plaintiff's contractual relationship with his employer, are valid and enforceable as implied contracts. Under New York law, it is well settled that policies in a personnel manual specifying the employer's practices with respect to the employment relationship become a part of the employment contract. *Langenkamp v. Olson,* 628 F. App'x 50, 52 (2d Cir. 2015); *Kaloyeros v. Rsch. Found. of State Univ. of New York*, 71 Misc. 3d 1219(A), 144 N.Y.S.3d 557 (N.Y. Sup. Ct. 2021) (same) *Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 509 (S.D.N.Y. 2015) (citing *Holm v. Ithaca Coll.*,

175 Misc. 2d 717, 720, 669 N.Y.S.2d 483, 485 (Sup. Ct.)) (holding that university's policies, if duly authorized, are contractual in nature and binding on both the school and faculty); *Joshi v. Trustees of Columbia Univ. in City of New York*, No. 17-CV-4112 (JGK), 2018 WL 2417846, at *5 (S.D.N.Y. May 29, 2018) ("New York cases make clear . . . that workplace policies—including those that govern a university's relationship with its faculty—can create binding contracts.") (citing *O'Neill v. New York Univ.*, 944 N.Y.S.2d 503, 512-13 (App. Div. 2012)).

As a New York State appellate court has recently made clear, "[t]he policies contained in the Faculty Handbook form part of the essential employment understandings between a member of the Faculty and the University, and have the force of contract. Those policies, without a doubt, include the disciplinary procedures." *Monaco v. New York Univ.*, 204 A.D.3d 51, 62, 164 N.Y.S.3d 87, 98, 401 Ed. Law Rep. 563 (1st Dep't 2022); *see also Klinge v. Ithaca Coll.*, 167 Misc. 2d 458, 461, 634 N.Y.S.2d 1000, 1002 (Sup. Ct. 1995).

Here, Plaintiff, a tenured professor, has alleged the existence of a valid employment contract between himself and Defendants Einstein and Montefiore based on a series of documents: Plaintiff's 2000 offer letter, ECF 58-1, Plaintiff's 2001 appointment letter, ECF 58-2, FAC ¶ 37,[14] his 2012 appointment letter granting tenure, FAC ¶ 44, a 2014 retention agreement, FAC ¶¶ 50-53, ECF 58-3, Plaintiff's 2016 promotional letter, appointing him as Chair, FAC ¶¶ 59-60, ECF 58-4, in addition to Einstein's published policies, including the Title IX and Discrimination Policies, which set forth Einstein's specific procedures and policies for the adjudication of complaints brought for sexual harassment and non-Title IX discrimination. *Id.* ¶¶ 84-95, ECF 58-8, ECF 58-

---

[14] Paragraph 37 of the FAC conflates the November 1, 2000 offer letter, ECF 58-1, with Plaintiff's September 11, 2001 appointment letter, ECF 58-2.

9.[15] Together, these documents evidence a mutual assent and intent to be bound. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009).

Einstein's Title IX Policy, which governed the imposition of discipline in Plaintiff's case, was adopted by Einstein pursuant to federal regulations, FAC ¶ 95, and duly authorized by Einstein's Human Resources Department and chief executives. ECF 58-7 at 23, ECF 58-8 at 30, ECF 58-9 at 29. As such, the policy is valid and enforceable. *See Holm*, 175 Misc. 2d at 721–22, 669 N.Y.S.2d at 486.

Defendants contend that the Title IX Policy is not incorporated by reference in Plaintiff's appointment letter. ECF-57-32. However, even if Einstein's Title IX Policy is not incorporated by reference in Plaintiff's appointment letters, the Title IX Policy is still valid and enforceable as an implied contract. *See Klinge*, 167 Misc. 2d at 462, 634 N.Y.S.2d 1000 ("a court may take notice of implicitly accepted customs and practices to fill the gaps and, thereby, to allow the actual intentions of the parties to be fully understood"); *Kaloyeros,* 71 Misc. 3d 1219(A), 144 N.Y.S.3d 557 (same).[16]

Defendants have made no arguments concerning Defendant Einstein's Title IX Policy warranting dismissal of Plaintiff's breach of contract claim, and their motion to dismiss should be denied.

---

[15] As a tenured Professor, Plaintiff's appointment is also governed by the "Rules and Regulations Governing Appointments, Titles, and Compensation" ("Appointments Policy") and the Tenure and Compensation Policy, which, together, cover disciplinary procedures for termination of tenured faculty for "neglect of duty" or "for cause," FAC ¶¶ 103-106.

[16] Defendants cite *Maas v. Cornell Univ.*, a case whose reasoning is unclear, to contend that, because Einstein could revise its Title IX Policy, the policy creates no contractual rights. However, in *Mass*, the Court suggested that the plaintiff in that case was unaware of the policy at issue, and noted that "an employee's action against an employer based on its written policies may not be maintained unless the employer "made the employee aware of its express written policy and that employee detrimentally relied on that policy in accepting the employment. . . . None of these prerequisites is present or operative in the relationship at issue in this case." 94 N.Y.2d 87, 721 N.E.2d 966 (1999). *Mass* appears to have been an outlier and limited to its particular facts.

### 2. Defendants' imposition of a disciplinary demotion upon Plaintiff, without adhering to the procedures required by Defendant Einstein's written policies, was a breach of Plaintiff's employment contract.

While the terms of Plaintiff's 2016 promotional letter, appointing him as Chair, FAC ¶¶ 59-60, ECF 58-4, gave Dean Tomaselli discretion to dismiss Plaintiff for performance, that discretion did not abrogate Plaintiff's rights under Defendant Einstein's written discipline policies, including notice of the charge, including the identities of his accusers and the nature of the allegations, and a meaningful opportunity to review and respond to the evidence, and an adjudication and finding of responsibility prior to the imposition of discipline..

Contrary to Defendants contentions, (see ECF 57-35), the allegations of misconduct in Dean Tomaselli's March 10, 2022 and July 11, 2022 communications to Plaintiff were plainly covered under either the 2022 Title IX Policy and/or the Discrimination/Harassment Policy or both.[17] Tomaselli's March 10, 2022 letter suspending Plaintiff references alleged violations of "policies against "harassment" and "discrimination." ECF 54-1. Tomaselli's July 11, 2022 letter dismissing Plaintiff from his Chairmanship referred to "repeated instances of racist, disability, and gender-based comments" and "inappropriate and unwanted physical touching, including pulling female students' ponytails, stomach touching." ECF 54-2.

Plaintiff's 2016 Appointment letter stated that Plaintiff's continued appointment was "subject to performance as determined by the dean," FAC ¶ 59, ECF 58-4. Neither Defendant Einstein nor Dean Tomaselli had authority to impose a *disciplinary demotion* upon Plaintiff for alleged misconduct, discriminatory and sexually harassing "behavior," ECF 54-2, without

---

[17] The Discrimination/Harassment Policy provides procedures for complaints of alleged discrimination and harassment based on an individual's protected characteristics, including, sexual misconduct that does not arise to a Title IX violation. FAC ¶ 97. The 2022 Title IX Policy states that, "if the Discrimination and Harassment Policy (Non-Title IX) might also apply to the conduct alleged, the principles and procedures in this policy will control. See 2022 Title IX Policy at §§ II at 3, ECF 58-9 at 5; FAC ¶ 98.

affording Plaintiff the procedures required under Einstein's workplace policies, i.e., the Title IX and Discrimination Policies. FAC ¶¶ 59, 84-95, 98, 152-153, 173, 497-500. *See Monaco v. New York Univ.*, 204 A.D.3d at 63–64, 164 N.Y.S.3d at 97 ("'Discipline' refers 'not merely to action that has an adverse impact, but adverse action that is motivated by a punitive intent'"); *Klinge v. Ithaca Coll.*, 167 Misc. 2d at 463–64N.Y.S.2d 1000  ("Where a college has adopted a rule, the law requires substantial compliance.").

### 3.    Plaintiff alleges a breach of contract with respect to Defendants violations of the terms of the 2014 Interim Agreement

Plaintiff has sufficiently alleged a breach of contract based on Defendants' failure to provide the agreed-upon interim support for Plaintiff's laboratory, pursuant to the terms of the June 9, 2014 Retention Agreement. FAC ¶¶ 48-53, 52-53-60, 349-351, 355-358.  As alleged in the FAC, on June 14, 2014, Einstein committed to providing Plaintiff ongoing interim support for his laboratory, and reiterated this commitment in 2016, in appointment letters that both parties signed, and which predated Einstein's 2018 Interim Support Policy. *Id.*  ¶¶ 52-53, 60.  The interim support commitment that Einstein promised Plaintiff was made in its 2014 Retention Letter as a counter-offer to a large endowment which Plaintiff had been offered by Northwestern University after it tried to recruit him. *Id.* ¶¶ 48-53.

As further alleged in the FAC, Defendant Einstein and Plaintiff mutually understood and agreed that, under the terms of Plaintiff's 2014 Retention Agreement and the 2016 Promotional Letter, Defendant Einstein had committed to provide interim support equivalent to the direct costs of Plaintiff's R01s (federal grants) indefinitely, subject to Plaintiff's retirement or the termination of his tenured employment. *Id.*  ¶¶ 349-351, 355-358.

As alleged in the FAC, Plaintiff has performed his obligations as an academic researcher under the terms of his various appointment and promotional letters. *Id.* ¶¶ 38-44, 61-63. In breach

of this agreement, Defendant Einstein has failed to provide the agreed-upon interim support. *Id.* ¶¶ 352-354, 362-363, 372-373. Einstein's failure to provide the agreed-upon interim support for Dr. Khodakhah's laboratory has resulted in damages to his laboratory, with lack of funding for personnel appointed in positions as training, and threatens to make it impossible for Plaintiff to continue to conduct research in his laboratory, furthering the damage Defendants have already caused to Plaintiff's reputation and stature in the scientific community, and making it impossible for him to perform his academic obligations as a tenured professor. *Id.* ¶¶ 364, 372-373.

"New York law follows the common law rule that in interpreting a contract, the intent of the parties governs, and therefore, a contract should be construed so as to give full meaning and effect to all of its provisions*." Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 27 (N.D.N.Y. 2022). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Id.*

Defendants self-servingly contend that the term "interim" is "unambiguous," and that it means "temporary." ECF 57 at 36. However, Defendants' own explanation of "interim" is itself subject to interpretation. What is temporary? Is it a week? A day? 3 Months? 5 years? Defendants' contentions themselves raise more questions than provide clarity, and only highlight that there is more than reasonable interpretation of the term "interim." Accordingly, it would be improper to dismiss Plaintiff's breach of contract claim. *Lamoureux v. Trustco Bank*, 592 F. Supp. 3d at 31.

Notably, Defendants also mischaracterize the facts pled in the FAC to suggest that Defendant Einstein has not failed to fund Plaintiff's lab. ECF-57 at 37. This is incorrect. Just last week, Plaintiff was informed by Defendant Einstein that his request to transition a fifth-year post-doc in his laboratory to a position as staff scientist was denied due to lack of funding because of Defendants' breach of the agreement.

**C.** **Plaintiff's Claims for Breach of the Implied Covenant and Promissory Estoppel are Not Duplicative and Should Not Be Dismissed.**

"In every contract there exists an implied covenant of good faith and fair dealing, that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Kirke La Shelle Co. v. Paul Armstrong Co.,* 263 N.Y. 79, 79, 188 N.E. 163 (1933); *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 90–91, 118 N.E. 214 (1917) ("A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed."). The implied covenant of good faith includes "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Dalton v. Educ. Testing Serv*., 87 N.Y.2d 384, 389, 663 N.E.2d 289 (1995) (citation and quotation marks omitted).

"Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Dalton v. Educ. Testing Serv*., 87 N.Y.2d 384, 389, 663 N.E.2d 289 (1995); *see also Richbell Info. Servs., Inc. v. Jupiter Partners, L.P*., 309 A.D.2d 288, 302, 765 N.Y.S.2d 575 (2003) ("even an explicitly discretionary contract right may not be exercised in bad faith so as to frustrate the other party's right to the benefit under the agreement"). When a party to a contract engages in deceit to destroy the right of the other party to receive the fruits of the contract, that party breaches the covenant of good faith and fair dealing. *25 Bay Terrace Assocs., L.P. v. Pub. Serv. Mut. Ins. Co*., 144 A.D.3d 665, 667, 40 N.Y.S.3d 469.

Here, Defendants Einstein and Montefiore breached the implied covenant of good faith and fair dealing by, *inter alia*:

a. Ordering Dr. Khodakhah suspended and barred from campus on July 13, 2022, and continuing to suspend and bar him for nearly two years, an action designed to prevent Dr. Khodakhah from fulfilling his academic obligations as a tenured professor, pursuant to § III.A.4 of the Tenure and Compensation Policy, which require that he be "engaged full time

31

in activities that contribute to the mission of the College of Medicine [Einstein] and fulfill the usual requirements of the Department for full time membership in the Department," such as "grant supported research" and student mentoring, or else be subject to dismissal for "neglect of duties."

b.  In its December 18, 2023 decision on the Title IX complaint, imposing overly harsh and punitive sanctions, lacking any remedial or disciplinary purpose, that are designed to prevent Plaintiff from performing his academic obligations, as required under the terms of his tenured employment, and to perpetuate Dean Tomaselli's retaliatory suspension and removal order of July 13, 2022.

c.  Failing to look into numerous reports, including by faculty members, that allegations against Dr. Khodakhah were false and made in bad faith, despite widespread knowledge that Defendants Castello and Jordan held personal grudges against Plaintiff.

d.  "Suspending" Plaintiff from his Chairmanship on March 10, 2022, and characterizing it as a purported protective measure, when it was unnecessary to protect the health and safety of anyone on campus and was inherently punitive and disciplinary in nature.

e.  Knowingly relying on false, bad faith allegations contained in a purported "Letter of Concern" and falsified "Student Survey" to suspend and then permanently dismiss Plaintiff from his Chairmanship on July 11, 2022. That Einstein knew the allegations against Plaintiff were false is evidenced by its recent Answer filed in the state court matter, captioned *Stacy Roundabush against Albert Einstein College of Medicine of Yeshiva University and Kamran Khodakhah*, Index No. 807857/2023E (May 19, 2023).

f.  Dismissing Plaintiff from his Chairmanship for purported disciplinary reasons rather than job performance, without an adjudication, thereby frustrating Plaintiff's reasonable expectations on the terms of his appointment as Chair, described in the 2016 Promotional Letter.

g.  Failing to abide by *any* of the procedural and substantive requirements of Einstein's own disciplinary and Title IX policies by imposing discipline without a prior adjudication and finding of responsibility.

h.  Choosing to apply Einstein's obsolete 2018 Title IX Policy for the purpose of ensuring Einstein could hold Plaintiff responsible for alleged sexual harassment and deprive him of a right to an appeal.

i.  Notifying Plaintiff of the purported reasons for the various adverse actions taken against his employment, (i.e., the suspension of his Chairmanship on March 10, 2022, the dismissal of his Chairmanship on July 11, 2022, and his suspension and removal from campus on July 13, 2022), in purposefully vague language that did not clearly identify any actual and applicable Einstein employment policy, such that Plaintiff could not be certain what policy or procedure applied, if any.

j.  Unreasonably delaying the timely adjudication of Dr. Khodakah's claim for retaliation, which he filed in August 2022, based on Dean Tomaselli's retaliatory decision to suspend and remove him from campus on July 13, 2022, despite knowing the severe negative impact of the suspension and ban from campus on both Plaintiff and his laboratory.

k.  Rendering a Title IX decision on December 18, 2023 in bad faith, by relying on allegations that Einstein demonstrably knew were false, as evidenced by the Answer Einstein filed on February 6, 2024, in the state court matter, *Stacy Roundabush against Albert Einstein College of Medicine of Yeshiva University and Kamran Khodakhah*, Index No. 807857/2023E (May 19, 2023), to impose overly harsh sanctions.

l.  Seeking to effectively shut down Dr. Khodakah's laboratory by (a) failing to provide Dr. Khodakah interim support for his research, as required under the terms of the 2014 Retention Letter, (b) suspending and barring him from campus for no legitimate disciplinary or remedial reason, (c) imposing unwarranted sanctions upon Plaintiff, including barring him from working with students for three years and ordering him to relocate his custom-designed laboratory to another building.

Here, Plaintiff states a claim for breach of the implied covenant where, as alleged in the FAC, Defendants have acted in a manner that is not expressly, forbidden by any contractual provision, but undermine Plaintiff's rights to receive the benefits of the parties' agreement, including his rights as a tenured professor under the Tenure and Compensation Policy. *Baguer v. Spanish Broad. Sys., Inc.*, No. 04-CV-8393 (KMK), 2007 WL 2780390, at *8 (S.D.N.Y. Sept. 20, 2007).

Plaintiff's claim for promissory estoppel should also not be dismissed at this stage. A plaintiff is allowed to plead a breach of contract claim and a promissory estoppel claim in the alternative. *See Id.; Doe v. Hobart & William Smith Colleges,* 546 F. Supp. 3d 250, 274 (W.D.N.Y. 2021).

### D.    Plaintiff Has Sufficiently Plead Tortious Interference with Contractual Relations Against Defendants Castillo and Jordan.

Plaintiff has sufficiently plead claims for tortious interference with contract against Defendants Castillo and Jordan. As discussed infra, Plaintiff has alleged a valid contract on the basis of his employer's written disciplinary policies. Plaintiff has also alleged that Defendants

33

Castillo and Jordan acted outside the scope of their employment. *See Trahan v. Lazar,* 457 F. Supp. 3d 323, 359 (S.D.N.Y. 2020). "A supervisor is considered to have acted outside the scope of his employment if there is evidence that the supervisor's manner of interference involved independent tortious acts such as fraud or misrepresentations, or that he acted purely from malice or self-interest." *Id.*

Plaintiff has alleged that Defendants abused their positions by obtaining signatures to a "letter of concern" on false pretenses, out of their own self-interest. FAC ¶¶ 107-116, and that Defendant Jordan exploited his position working with graduate students to fabricate a purported "student survey," with false and misleading information. *Id.* ¶¶ 117-118.

Because a defendant's motivation is a question of fact, at the 12(b)(6) stage, courts have found it unnecessary to determine whether the defendant's interference was outside the scope of employment or with improper motive or malice. *See, e.g., Riddell Sports  Inc. v. Brooks,* 872 F. Supp. 73, 78 (S.D.N.Y. 1995). To the extent that Plaintiff is required to plead improper motive or malice at the 12(b)(6) stage, he has done so.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants Rule 12(b)(6) motion, along with such other and further relief as the Court deems just and proper.

Dated:  December 13, 2024

**Respectfully submitted,**

**NESENOFF & MILTENBERG, LLP**
***Attorneys for Plaintiff Kamran Khodakhah***

By: /**s**/ *Andrew T. Miltenberg*         By: /**s**/ *Julie A. Sacks*
**Andrew T. Miltenberg, Esq.**          **Julie A. Sacks, Esq.**
**Stuart Bernstein, Esq.**              **(*pro hac vice* forthcoming)**
**Gabrielle Vinci, Esq.**               **101 Federal Street, 19th Floor**
**363 Seventh Avenue, Fifth Floor**      **Boston, Massachusetts 02110**

34

New York, New York 10001                          (617) 209-2188
(212) 736-4500                                    jsacks@nmllplaw.com
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
gvinci@nmllplaw.com