UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAMRAN KHODAKHAH,<br><br>               *Plaintiff*,<br><br>    v.<br><br>MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC., ALBERT EINSTEIN COLLEGE OF MEDICINE, GORDAN TOMASELLI, PABLO CASTILLO, BRYEN JORDAN, and JOHN-JANE DOES 1-10,<br><br>               *Defendants*. | No. 1:24-cv-00839-LAK-RFT |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC., ALBERT EINSTEIN COLLEGE OF MEDICINE, PABLO CASTILLO, AND BRYEN JORDAN'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Roberta A. Kaplan
Michele C. Materni
KAPLAN MARTIN LLP
1133 Avenue of the Americas
Suite 1500
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
mmaterni@kaplanmartin.com

Gabrielle E. Tenzer
Anna Collins Peterson
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
gtenzer@heckerfink.com
apeterson@heckerfink.com

January 17, 2025

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

I.    Plaintiff Fails to Plead Claims Against Montefiore ............................................................ 2

II.   Plaintiff Fails to Plead a Title IX Discrimination Claim .................................................... 3

      A.    Plaintiff Cannot Plead a Deliberate Indifference Claim for the First Time in His Opposition and the Claim Fails in Any Event ....................................................... 3

      B.    Plaintiff Fails to Plead an Erroneous Outcome Claim ................................................. 5

III.  Plaintiff Does Not Plead Retaliation in Violation of Title IX ............................................. 6

IV.  Plaintiff's State Law Claims Should Be Dismissed ............................................................ 7

      A.    Plaintiff's NYSHRL and NYCHRL Claims Fail ......................................................... 7

      B.    Plaintiff Fails to Plead Breach of Contract ................................................................... 7

      C.    Plaintiff's Claims for Breach of the Implied Covenant and Promissory Estoppel Are Duplicative and Should Be Dismissed ................................................... 9

      D.    Plaintiff Fails to Plead Tortious Interference with Contractual Relations Against Drs. Castillo and Jordan ................................................................................ 11

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*Abuladze v. Apple Commuter Inc.*,
  No. 22-cv-8684, 2024 WL 1073121 (S.D.N.Y. Jan 23, 2024) ............................................. 3

*Bader v. Wells Fargo Home Mortg. Inc.*,
  773 F. Supp. 2d 397 (S.D.N.Y. 2011)................................................................................. 7

*Baguer v. Spanish Broad. Sys., Inc.*,
  No. 04-cv-8393, 2007 WL 2780390 (S.D.N.Y. Sept. 20, 2007) ........................................ 10

*Barker v. Bancorp*,
  No. 21-cv-869, 2022 WL 595954 (S.D.N.Y. Feb. 5, 2022) ................................................. 8

*Bautista v. PR Gramercy Square Condo.*,
  642 F. Supp. 3d 411 (S.D.N.Y. 2022).................................................................................. 2

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988).............................................................................................................. 5

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
  No. 16-cv-7014, 2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) .......................................... 8

*Cook v. Arrowsmith Shelburne, Inc.*,
  69 F.3d 1235 (2d Cir. 1995).................................................................................................. 2

*De Petris v. Union Settlement Ass'n*,
  657 N.E.2d 269 (N.Y. 1995).................................................................................................. 8

*Doe v. Columbia Univ.*,
  551 F. Supp. 3d 433 (S.D.N.Y. 2021).................................................................................. 3

*Doe v. Hobart & William Smith Colls.*,
  546 F. Supp. 3d 250 (W.D.N.Y. 2021) ............................................................................... 10

*Doheny v. Int'l Bus. Machs., Corp.*,
  714 F. Supp. 3d 342 (S.D.N.Y. 2024)............................................................................. 2, 3

*Eisenberg v. Advance Relocation & Storage, Inc.*,
  237 F.3d 111 (2d Cir. 2000)................................................................................................ 3

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998).............................................................................................................. 3

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) .................................................................................................... 6

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
    29 F.4th 118 (2d Cir. 2022) ...................................................................................... 10

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
    507 F. Supp. 3d 490 (S.D.N.Y. 2020) ........................................................................ 9

*Kaloyeros v. Rsch. Found. of State Univ. of N.Y.*,
    144 N.Y.S.3d 557 (N.Y. Sup. Ct. 2021) .................................................................... 8

*Klinge v. Ithaca Coll.*,
    634 N.Y.S.2d 1000 (N.Y. Sup. Ct. 1995) .................................................................. 7

*Langenkamp v. Olson*,
    628 F. App'x 50 (2d Cir. 2015) .................................................................................. 7

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010) ...................................................................................... 9

*Maas v. Cornell Univ.*,
    721 N.E.2d 966 (N.Y. 1999) ...................................................................................... 8

*Monaco v. NYU*,
    164 N.Y.S.3d 87 (1st Dep't 2022) .............................................................................. 7

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
    633 F.3d 81 (2d Cir. 2011) ........................................................................................ 6

*Quirk v. Katz*,
    No. 20-cv-9910, 2022 WL 4226124 (S.D.N.Y. Sept. 13, 2022) ............................... 1

*Roe v. St. John's Univ.*,
    No. 19-cv-4694, 2021 WL 1224895 (E.D.N.Y. Mar. 31, 2021) ............................... 5

*Schiebel v. Schoharie Central School District*,
    120 F.4th 1082 (2d Cir. 2024) ........................................................................... 4, 5, 6

*TCA Television Corp. v. McCollum*,
    839 F.3d 168 (2d Cir. 2016) ...................................................................................... 9

*Wilkov v. Ameriprise Fin. Servs., Inc.*,
    753 F. App'x 44 (2d Cir. 2018) .................................................................................. 8

*Xiang v. Eagle Enters., LLC*,
  No. 19-cv-1752, 2020 WL 248941 (S.D.N.Y. Jan. 16, 2020) .............................................. 7

**STATUTES**

20 U.S.C. § 1682 ............................................................................................................................ 5

Defendants Montefiore, Einstein, Dr. Castillo, and Dr. Jordan (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss the FAC with prejudice.[1]

## PRELIMINARY STATEMENT

In his opposition, rather than engage with the fatal defects in the FAC identified by Defendants, Plaintiff instead improperly attempts to amend his pleading. But "[i]t is 'axiomatic' that a plaintiff cannot amend his complaint through briefing in opposition to a motion to dismiss." *Quirk v. Katz*, No. 20-cv-9910, 2022 WL 4226124, at *7 (S.D.N.Y. Sept. 13, 2022) (Kaplan, J.).

For example, in response to the lack of alleged wrongful acts by Montefiore, Plaintiff claims that either a "single" or "joint" employer theory may apply, although neither theory is pleaded in the FAC. In response to his failure to allege a plausible inference of gender bias despite Title IX providing the basis for his sole federal claim, Plaintiff advances a new theory—similarly absent from the FAC—of Title IX deliberate indifference, which by Plaintiff's telling somehow does not require gender bias at all. The retaliation argument in his opposition does not and cannot remedy the FAC's fundamental shortcoming of failing to allege that Plaintiff engaged in protected activity. Further, Plaintiff fails to engage at all with Defendants' arguments on his contract and quasi-contract claims and even forgoes addressing, and thereby concedes, his failure to plead a requisite element of his tortious interference claim.

Plaintiff's grievances simply do not amount to actionable legal claims, which is why he has been unable to plead them. Accordingly, the FAC should be dismissed with prejudice.

---

[1] All capitalizations, abbreviations, and citations to "¶ _" and "Ex. _" retain their meanings from Defendants' opening memorandum of law ("Br.," ECF 57) and Plaintiff's opposition ("Opp.," ECF 60).

1

**ARGUMENT**

I.   **Plaintiff Fails to Plead Claims Against Montefiore**

Plaintiff has not alleged that Montefiore took *any* specific actions against him. *See* Br. 10-11. Unable to identify allegations of any wrongful act by Montefiore, Plaintiff instead seeks to salvage his claims with new theories of "single" or "joint" employer. Opp. 13-14. But nothing in the FAC alleges that Montefiore—rather than Einstein—was Plaintiff's employer. *See, e.g.*, ¶ 35 ("For the past 20 years, [Plaintiff] has been employed at Einstein."); ¶ 36 ("[Plaintiff] was appointed as a member of Einstein's faculty."); ¶ 44 ("Einstein granted [Plaintiff] tenure.").

Indeed, not only is neither the "single" nor "joint" employer theory mentioned in the FAC, but the elements of neither theory are pleaded. For starters, "group pleading is not sufficient to hold an entity liable under [either] doctrine[]; concrete allegations against specific entities are required in order to create a plausible inference of an employment relationship among them." *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 422 (S.D.N.Y. 2022). In the FAC, Plaintiff offers no "concrete allegations" of any sort against Montefiore.

Moreover, to plead a single employer theory, Plaintiff must allege, *inter alia*, "centralized control over labor relations." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240-41 (2d Cir. 1995). For this "most important factor," the key inquiry is "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination." *Doheny v. Int'l Bus. Machs., Corp.*, 714 F. Supp. 3d 342, 376 (S.D.N.Y. 2024); *see also Bautista*, 642 F. Supp. 3d at 423. Here, Plaintiff's conclusory allegations about Montefiore's involvement are contradicted by his specific allegations. *See* Br. 11. Plaintiff alleges it was *Einstein*—not Montefiore—that offered him employment, granted him tenure, appointed him Chair, investigated allegations of his misconduct, removed him as Chair, and disciplined him. *Id.*

2

Under a joint employer theory, the key inquiry is the "extent to which the hiring party controls the manner and means by which the worker completes" tasks. *Doheny*, 714 F. Supp. 3d at 377 (quoting *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000)). Allegations that an entity "has been involved in, and is behind . . . discriminatory [actions]" are insufficient. *Id*. Here, again, Plaintiff fails to allege, or explain in his opposition, that Montefiore exerts any control whatsoever over how Plaintiff completes his tasks. *See* Opp. 14.

Even if Plaintiff's allegations were sufficient to support either theory (and they are not), Plaintiff does not explain how the single or joint employer doctrines, which he describes as relevant in the "employment discrimination context," *id.* at 13-14, apply to his claims. It is not surprising that Plaintiff cites no authority for applying these doctrines to his Title IX claim, *see id.*, since in contrast to Title VII, the Supreme Court has explicitly rejected theories of respondeat superior in private actions for damages under Title IX, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998). Nor do these doctrines apply to his contract and quasi-contract claims. *See, e.g.*, *Abuladze v. Apple Commuter Inc.*, No. 22-cv-8684, 2024 WL 1073121, at *17-18 (S.D.N.Y. Jan 23, 2024) (Tarnofsky, M.J.) (dismissing breach of contract claim against alleged joint employers because "[p]laintiffs never allege that the [defendants] were parties to their employment contracts"), *report and recommendation adopted,* 2024 WL 1073155 (S.D.N.Y. Feb. 7, 2024).

**II.     Plaintiff Fails to Plead a Title IX Discrimination Claim**

    **A.     Plaintiff Cannot Plead a Deliberate Indifference Claim for the First Time in His Opposition and the Claim Fails in Any Event**

"It is well established in this district that a plaintiff cannot amend his pleadings in his opposition briefs." *Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 458 (S.D.N.Y. 2021) (dismissing "theory . . . [when] it [was] only presented in the opposition brief"). Yet in his opposition here, Plaintiff, much like he did in his doomed effort to salvage his claims against Montefiore, offers for

3

the first time an entirely new Title IX claim—a deliberate indifference claim—that is nowhere in the FAC. Opp. 16-20. In fact, in the FAC, Plaintiff explicitly pleads an erroneous outcome claim, labeling his Title IX claim, "Erroneous Outcome – Intentional Sex Discrimination." FAC at 70. The phrase "deliberate indifference," on the other hand, appears nowhere in the FAC. *See generally id.*

Even putting aside the impropriety of Plaintiff's unpleaded deliberate indifference claim, Plaintiff's allegations are nothing like the facts of *Schiebel v. Schoharie Central School District*, 120 F.4th 1082 (2d Cir. 2024), on which he relies. *First*, Plaintiff fails to allege that his Title IX proceeding was so "objectively deficient" as to constitute deliberate indifference. *Id.* at 1097. In *Schiebel*, the defendant school district "did not provide [the plaintiff] with even the rudiments of due process." *Id.* at 1098. The school district did not inform the plaintiff that it was investigating, did not allow him to present witnesses, and conducted only one interview with a student who stated "she had not seen anything like" the alleged misconduct. *Id.* at 1100-01. The Title IX coordinator in *Schiebel* was "hostile and accusatory at her first and only meeting" with the plaintiff, and served as both the investigator and ultimate decision-maker. *Id*.

Here, by contrast, Plaintiff concedes that Einstein provided him with numerous procedural protections in accordance with the 2018 Title IX Policy. *See* Ex. G. Plaintiff was informed of the investigation, submitted names of witnesses who were interviewed, and reviewed and responded to a Preliminary Investigative Report. ¶¶ 252-253, 258-260. In further contrast, Einstein employed an *external* investigator, and the Title IX Coordinator's decision was based on that external investigator's findings and recommendations. ¶¶ 134-135, 251, 255, 293.

Despite Plaintiff's contentions, it was not irregular or deficient for Einstein to apply its 2018 Title IX Policy, the Policy in force at the time of the underlying conduct, rather than later

4

iterations of the Policy following regulatory changes. Plaintiff cites no authority for his position that the 2020 regulations operate retroactively. *See* Opp. 17. And such a position ignores black-letter law that agencies may only create retroactive rules where the authorizing statute expressly grants such authority, which Title IX does not. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 U.S.C. § 1682; Br. 17-18. In any event, Plaintiff fails to plead that Einstein applied the 2018 Title IX Policy with the "sham" purpose of finding Plaintiff responsible. *Schiebel*, 120 F.4th at 1095. Although Plaintiff cites paragraphs 314-315 of the FAC for this proposition, Opp. 17, those paragraphs merely state that there is no appeal under the 2018 Title IX Policy, but make no mention of improper motivation.[2]

*Second*, Plaintiff fails to allege that Einstein's finding of responsibility was "inexplicable." *Schiebel,* 120 F.4th at 1097. In *Schiebel*, the Title IX Coordinator's decision "was so unconvincing as to render [it] inexplicable" because it treated the plaintiff's statement that he "may have reached around the Student" as "an admission of guilt." *Id.* at 1101-02. Far from inexplicable, here, Einstein disciplined Plaintiff following an external investigation, including interviews of both parties and additional witnesses, resulting in the external investigator's recommendation that Plaintiff be found responsible for sexual harassment. ¶¶ 251, 293.

### B. Plaintiff Fails to Plead an Erroneous Outcome Claim

Having unsuccessfully attempted to salvage his Title IX claim by pursuing a missing deliberate indifference claim, it is unsurprising that Plaintiff's efforts to otherwise resuscitate the

---

[2] Plaintiff's argument that considering prior misconduct was "clearly procedurally irregular," Opp. 20, defies both common sense and Einstein's Policies. *See* Br. 18-19; *see also Roe v. St. John's Univ.*, No. 19-cv-4694, 2021 WL 1224895, at *1,*10-11 (E.D.N.Y. Mar. 31, 2021) (dismissing complaint challenging expulsion, which was based in part on plaintiff's disciplinary history), *aff'd*, 91 F.4th 643 (2d Cir. 2024). His argument that Einstein "ignored and acted on reports of false information" concerning his conduct as Chair, Opp. 16, is implausible given Plaintiff's own allegation that Einstein retained an external investigator specifically to determine the veracity of the reports, *see* Ex. E; ¶ 164. And neither Plaintiff's argument, Opp. 18, nor his allegations show that Plaintiff's interim suspension was either gender-based or a deliberately indifferent response to discriminatory accusations. Ex. F; ¶¶ 188-190.

erroneous outcome claim in his FAC also fall short. For all the same reasons that Plaintiff fails to allege the requisite procedural deficiency for a deliberate indifference claim, he fails to plead an erroneous outcome claim. *See supra* Section II.A; Br. 16-20. And Plaintiff does not (because he cannot) seriously contest his failure to allege a minimal plausible inference of gender bias. Rather, Plaintiff merely restates his deficient allegations, *see* Opp. 20-21, and, in so doing, fails to address a single case cited by Defendants explaining why those allegations do not establish an inference of gender bias, *see* Br. 13-15.

### III.  Plaintiff Does Not Plead Retaliation in Violation of Title IX

Plaintiff contends that for purposes of his Title IX retaliation claim, "reaching out to secure witnesses," ¶ 456, is a protected activity because both Einstein's 2022 Title IX Policy and federal regulations purportedly entitle him to engage in such conduct, Opp. 22. But as explained in Defendants' opening brief (yet unaddressed in Plaintiff's opposition), the Supreme Court was clear that to make out a retaliation claim under Title IX, a plaintiff must allege retaliation "because he has complained about sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005); *accord Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011). Neither in his FAC nor in his opposition does Plaintiff make any such allegation.

Plaintiff's own interpretation of federal regulations, Opp. 22-23, obviously cannot overcome controlling law, which holds that regulations extending beyond Title IX's text are not privately enforceable. *See* Br. 21-22. And *Schiebel*, which did not involve a retaliation claim, does not alter the analysis. *See* Opp. 23; *Schiebel*, 120 F.4th at 1098 ("[T]he failure to follow a regulatory requirement does not automatically establish that a recipient has contravened Title IX.").

6

## IV. Plaintiff's State Law Claims Should Be Dismissed

### A. Plaintiff's NYSHRL and NYCHRL Claims Fail

Although NYSHRL and NYCHRL claims may be subject to a more lenient standard than Title IX claims, *see* Br. 23; Opp. 23-25, to plead those claims, Plaintiff must still allege facts giving rise to an inference that he was discriminated against "because of [his] gender." *Xiang v. Eagle Enters., LLC*, No. 19-cv-1752, 2020 WL 248941, at *6 (S.D.N.Y. Jan. 16, 2020) (cleaned up); Br. 23. Here, Plaintiff's Title VII discussion does nothing to fix the fatal flaw in his NYSHRL and NYCHRL claims—namely, that he fails to plead gender discrimination. *See supra* Section II.B.

### B. Plaintiff Fails to Plead Breach of Contract

#### 1. Einstein's Title IX Policies Are Not Enforceable Contracts

Plaintiff argues that Einstein's policies, including its Title IX Policy, "are valid and enforceable as implied contracts." Opp. 25. Under New York law, however, "a contract cannot be implied in fact . . . where there is an express contract covering the subject-matter involved." *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 413 (S.D.N.Y. 2011). Here, Plaintiff alleges the parties had a written contract governing his employment. Opp. 26. That alone is reason to reject Plaintiff's implied contract theory, and the Court need not look to Einstein's "customs and practices" to fill any "gaps." Opp. 27; *cf. Klinge v. Ithaca Coll.*, 634 N.Y.S.2d 1000, 1002 (N.Y. Sup. Ct. 1995). Moreover, Plaintiff offers no allegations about Einstein's "customs and practices" that would suggest its Title IX Policies were part of Plaintiff's employment contract, implied or otherwise. To the contrary, the written contract itself shows that the parties incorporated certain Einstein policies—but not the Title IX Policies—into the contract. *See* Br. 24-25; *cf. Langenkamp v. Olson,* 628 F. App'x 50, 52 (2d Cir. 2015) (offer letter incorporated faculty handbook); *see also Monaco v. NYU*, 164 N.Y.S.3d 87, 98 (1st Dep't 2022) (employment was

7

subject to terms of faculty handbook).

Further, the Title IX Policies themselves reflect that they are not intended to be contractual. Einstein's Title IX Policies do not give rise to "affirmative, reciprocal obligations of a mandatory nature," *Kaloyeros v. Rsch. Found. of State Univ. of N.Y.*, 144 N.Y.S.3d 557, 557 (N.Y. Sup. Ct. 2021), because they allow Einstein to modify any provision, at any time, *see* Br. 25. Plaintiff's claim that the case of *Maas v. Cornell University*, 721 N.E.2d 966, 970 (N.Y. 1999), is somehow an outlier on this point, Opp. 27 n.16, lacks merit. *See, e.g.*, *De Petris v. Union Settlement Ass'n*, 657 N.E.2d 269, 271 (N.Y. 1995) (no contract when "respondent expressly reserved the right to revise the Manual"); *Barker v. Bancorp,* No. 21-cv-869, 2022 WL 595954, at *6 (S.D.N.Y. Feb. 5, 2022) (no contract when employee handbook gave employer "sole[] . . . discretion" to "chang[e] or eliminate[] [a key provision] at any time").[3]

### 2. Plaintiff Fails to Plead that Einstein Violated Any Contract in Suspending and Removing Him as Chair

Plaintiff argues that neither "Defendant Einstein nor Dean Tomaselli had authority to impose a disciplinary demotion upon Plaintiff for alleged misconduct, discriminatory and sexually harassing 'behavior,' [] without affording Plaintiff the procedures required under Einstein's workplace policies." Opp. 28-29 (emphasis omitted). But Plaintiff cites nothing in his contract that required Einstein to deploy those Policies under the circumstances. The only employment action Plaintiff faced because of the Chair Investigation was his removal as Chair, a position he held "subject to performance as determined by the Dean." Ex. D at 1; *see* Opp. 28 (acknowledging his

---

[3] Even if Plaintiff's interpretation of his alleged employment contract were correct (and it is not), he fails to address, and therefore concedes, that the cited employment letters long ago expired. *See Cole v. Blackwell Fuller Music Publ'g, LLC,* No. 16-cv-7014, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) (finding "a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument," and dismissing claim); *Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 46 n.1 (2d Cir. 2018); Br. 25.

appointment "gave Dean Tomaselli discretion to dismiss Plaintiff for performance"). Plaintiff offers no justification for any extracontractual limitation on the Dean's discretion to remove him as Chair.

### 3. Plaintiff Fails to Plead Breach of Contract Related to Interim Funding for His Lab

Plaintiff next argues that the word "interim" in Einstein's offer to provide "interim support . . . to better enable [Plaintiff] to recapture [a] grant," Ex. C at 2, is ambiguous and therefore communications regarding the 2014 Retention Letter should be considered by the Court, Opp. 30. "Language whose meaning is otherwise plain" only becomes ambiguous, however, when "the parties urge different interpretations in the litigation" and "each is a *reasonable* interpretation." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (cleaned up and emphasis added). But it would be unreasonable here to interpret "interim" to mean "indefinite," as Plaintiff suggests. Opp. 29; *see JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490, 500 (S.D.N.Y. 2020) ("Absurd results [in contract interpretation] should be avoided."), *aff'd*, 29 F.4th 118 (2d Cir. 2022). The language of the 2014 Retention Letter is plain and unambiguous that Plaintiff was offered support for an *interim* period for the purpose of recapturing a grant. Ex. C at 2. Plaintiff's argument that anything less than unlimited funding in perpetuity breaches his contract is contrary to the language of the contract itself.[4]

### C. Plaintiff's Claims for Breach of the Implied Covenant and Promissory Estoppel Are Duplicative and Should Be Dismissed

Although Plaintiff airs a litany of alleged breaches of the implied covenant of good faith

---

[4] Even if the Court were to consider extrinsic evidence (which it should not), Plaintiff still fails to allege breach of the 2014 Retention Letter. Plaintiff claims that Dean Spiegel failed to respond about the support being "in perpetuity," and that Dean Burns told him use of the term "interim support" was a "semantic point." ¶¶ 356, 358. Neither allegation establishes a "mutual intent of the parties" for "indefinite" funding. *See TCA Television Corp. v. McCollum*, 839 F.3d 168, 188 (2d Cir. 2016); Opp. 30. Plaintiff's argument regarding a request related to a post-doc, *see* Opp. 30, is unsupported by the FAC. It illustrates, however, that even if Plaintiff is dissatisfied with the *amount* of interim funding, he nevertheless concedes that he is still receiving it. ¶¶ 361-362.

9

and fair dealing, Opp. 31-33, he fails to explain how they are "based on allegations different from those underlying the breach of contract claim," *JN Contemp. Art LLC*, 29 F.4th at 128. Most of the ways Plaintiff alleges Einstein breached the covenant are based on the same factual allegations as Plaintiff's claim that Einstein violated its Title IX or Disciplinary/Harassment Policies. *Compare* ¶ 523(a)-(e), (g)-(l), *with* ¶¶ 484-496, 508-516; *see also* Opp. 31-33. Several others are based on the same allegations as Plaintiff's claim that Einstein violated the 2016 Chair Appointment Letter. *Compare* ¶ 523(c)-(g), *with* ¶¶ 479-490, 497-500; *see also* Opp. 32. Finally, others are based on the same allegations as Plaintiff's claim that Einstein violated the 2014 Retention Letter. *Compare* ¶ 523(m), *with* ¶¶ 501-507; *see also* Opp. 33. Even if the implied covenant claims were based on allegations different from those underlying the breach of contract claims, the claims should still be dismissed because Plaintiff does not even attempt to explain how "the relief sought [in those claims] is not intrinsically tied to the damages that flow from the breach of contract." *JN Contemp. Art LLC*, 29 F.4th at 128.

Likewise, Plaintiff's promissory estoppel claim should be dismissed because it is duplicative of his breach of contract claim. *See* Br. 29. Plaintiff's alternative pleading theory is without merit, and neither case he cites supports his argument in any event. *See* Opp. 33 (citing *Baguer v. Spanish Broad. Sys., Inc.*, No. 04-cv-8393, 2007 WL 2780390, at *6-8 (S.D.N.Y. Sept. 20, 2007) (dismissing promissory estoppel claim and denying leave to amend because generally, "changing, or failing to change, one's employment is insufficient to establish the injury requisite to a promissory estoppel claim"), and *Doe v. Hobart & William Smith Colls.*, 546 F. Supp. 3d 250, 274 (W.D.N.Y. 2021) (dismissing promissory estoppel claim because "[w]here an enforceable contract exists, the doctrine of promissory estoppel is inapplicable")).

**D.    Plaintiff Fails to Plead Tortious Interference with Contractual Relations Against Drs. Castillo and Jordan**

Once again, Plaintiff fails to respond to Defendants' arguments or plead the elements of his claim for tortious interference with contract. Plaintiff does not respond to the argument that he has omitted the requisite allegation of Drs. Castillo and Jordan's actual knowledge of the terms of the purportedly interfered-with contract. *See* Br. 30. Having therefore conceded this point, the claim should be dismissed. *See supra* note 3. The claim also fails for the additional reasons explained in Defendants' opening brief. *See* Br. 30-31; *supra* Section IV.B.

## CONCLUSION

For the foregoing reasons, as well as those set forth in their opening brief, Defendants respectfully request that the Court grant their motion to dismiss the FAC in its entirety with prejudice.

Dated:   January 17, 2025

Respectfully submitted,

By: _____
Gabrielle E. Tenzer
Anna Collins Peterson
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
gtenzer@heckerfink.com
apeterson@heckerfink.com

Roberta A. Kaplan
Michele C. Materni
KAPLAN MARTIN LLP
1133 Avenue of the Americas
Suite 1500
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com

11

mmaterni@kaplanmartin.com

*Counsel for Defendants Montefiore Medicine Academic Health System, Inc., Albert Einstein College of Medicine, Pablo Castillo, and Bryen Jordan*

## CERTIFICATE OF COMPLIANCE

    I, Gabrielle E. Tenzer, hereby certify that this memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and contains 3,495 words, exclusive of the caption, the table of contents, the table of authorities, the signature blocks, and this certificate.

Dated: January 17, 2025
       New York, New York

                                                Gabrielle E. Tenzer