UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAMRAN KHODAKHAH, | |
| *Plaintiff*, | |
| v. | Case No.: 1:24-cv-00839-LAK-RFT |
| MONTEFIORE HEALTH SYSTEM, INC., MONTEFIORE MEDICAL CENTER, MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC., ALBERT EINSTEIN COLLEGE OF MEDICINE, GORDAN TOMASELLI, PABLO CASTILLO, BRYEN JORDAN, JOHN—JANE DOES 1-10, | |
| *Defendants*. | |

**PLAINTIFF KAMRAN KHODAKHAH'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS**

**NESENOFF & MILTENBERG, LLP**
**363 Seventh Avenue, Fifth Floor**
**New York, New York**
**(212) 736-4500**

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

STANDARDS OF REVIEW ................................................................................................. 1

   A.   **Review of a Report and Recommendation** ................................................................. 1

PLAINTIFF'S OBJECTIONS................................................................................................ 2

   I.   The R&R erroneously concludes that the applicable policy for Defendants' "chair investigation" was Defendants' 2018 Title IX policy. ............................................................ 2

   II.   The R&R erroneously concludes that the applicable policy for Defendants' "Title IX Investigations" was Einstein's 2018 Title IX policy. ............................................................ 4

   III.  The R&R erroneously concludes that the Einstein Defendants' use of the 2018 Title IX Policy "does not support an erroneous outcome." ................................................................. 6

   IV.  The R&R erroneously concludes that Defendants' application of Einstein's 2018 Title IX Policy does not support a claim for discrimination under an erroneous outcome theory "due to a lack of causal connection." ..................................................................................... 7

   V.   The R&R erroneously concludes that sanctions imposed by Einstein in the course of Plaintiff's "Title IX Investigations" were not procedurally irregular ..................................... 7

   VI.  The R&R erroneously concludes that Plaintiff has failed to allege "that the Title IX Investigations were conducted in a clearly procedurally irregular way." ............................ 10

   VII.   The R&R erroneously concludes that Plaintiff "has not adequately alleged a deliberate indifference claim under Title IX based on the Title IX Investigations or the Retaliation Investigation into Tomaselli's conduct." ............................................................11

   VIII.  The R&R erroneously concludes that Plaintiff's claim for Title IX retaliation should be dismissed because Plaintiff did not adequately allege "protected activity." .................... 13

   IX.  The R&R erroneously concludes that Plaintiff's claims against Montefiore and Einstein for sex discrimination under the NYSHRL and the NYCHRL should be dismissed because Plaintiff has "not pleaded that he was treated less well than similarly situated employees with respect to Title IX investigations" ................................................................. 13

   X.   The R&R erroneously concludes that Plaintiff's claims against Tomaselli for aiding and abetting unlawful discrimination should be dismissed ....................................................... 14

   XI.  The R&R Erroneously concludes that Plaintiff has not plausibly pled participation in protected activity to sustain Plaintiff's NYSHRL and NYCHRL Claims of Retaliation ...... 15

   XII.   The R&R erroneously concludes that Plaintiff fails to state a claim for breach of contract based on Defendants' breaches of Einstein's Title IX policies. .............................. 16

   XIII.   The R&R erroneously concludes that Plaintiff fails to state a claim for breach of contract based on the 2014 Retention Letter. ....................................................................... 17

   XIV.   The R&R erroneously concludes that Plaintiff has failed to allege claims for breach of the implied covenant of good faith and fair dealing and for promissory estoppel. ........... 17

   XV.   The R&R erroneously concludes that Plaintiff fails to state a claim for tortious interference against Tomaselli, Castillo, and Jordan because Plaintiff has failed to allege a breach of contract. .............................................................................................................. 18

XVI.   The R&R erroneously concludes that Plaintiff's claim against Tomaselli for tortious interference with contract should be dismissed. ................................................................ 18

**CONCLUSION** ........................................................................................................................ **20**

# TABLE OF CONTENTS

## Cases

*Albert v. Loksen,*
   239 F.3d 256 (2d Cir. 2001) ................................................................................................1, 19

*Baguer v. Spanish Broad. Sys., Inc*.,
   No. 04-CV-8393 (KMK), 2007 WL 2780390
   (S.D.N.Y. Sept. 20, 2007)................................................................................................18

*Caldwell v. Crosset,*
   2017 WL 236330 (N.D.N.Y. June 9, 2010) ......................................................................2

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ*.,
   526 U.S. 629 (1999).........................................................................................................12

*Doe 1 v. State Univ. of New York at Buffalo,*
   219 A.D.3d 1663 (2023) ...................................................................................................6

*Doe v. Hobart & William Smith Colleges,*
   546 F. Supp. 3d 250 (W.D.N.Y. 2021)............................................................................18

*Doe v. Rensselaer Polytechnic Inst.,*
   No. 1:20-CV-1185, 2020 WL 6118492
   (N.D.N.Y. Oct. 16, 2020) ..................................................................................................5

*Doe v. Trs. of Columbia Univ. in City of New York,*
   No. 21 CIV. 5839 (ER), 2022 WL 3666997 (S.D.N.Y. Aug. 25, 2022) ...........................5

*Hatounian v. Colvin,*
   2017 WL 605294 (N.D.N.Y. Feb. 15, 2017)......................................................................2

*Hernandez v. Kaisman,*
   103 A.D.3d 106 (1st Dep't 2012) ....................................................................................15

*Hicks v. IBM,*
   44 F.Supp.2d 593 (S.D.N.Y. 1999) .................................................................................14

*Jackson v. Birmingham Bd. Of Educ.,*
   544 U.S. 161 (2005).........................................................................................................13

*Joshi v. Trs. of Columbia Univ. in City of New York,*
   No. 17-CV-4112 (JGK), 2018 WL 2417846 (S.D.N.Y. May 29, 2018) ....................16, 18

*Kaplan v. Lebanese Canadian Bank, SAL*,
   999 F.3d 842 (2d Cir. 2021) ............................................................................................11

*Klinge v. Ithaca Coll*.,
   167 Misc. 2d 458, 634 N.Y.S.2d 1000 (Sup. Ct. 1995) ..................................................16

*Lamoureux v. Trustco Bank*,
   592 F. Supp. 3d 14 (N.D.N.Y. 2022)...............................................................................17

*Langenkamp v. Olson,*
   628 F. App'x 50 (2d Cir. 2015) .......................................................................................16

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).........................15

*Maas v. Cornell Univ.,*
   94 N.Y.2d 87 (1999) ........................................................................................................16

*Menaker v. Hofstra Univ.,*
   935 F.3d 20 (2d Cir. 2019) ..............................................................................7, 8, 10, 14

*Monaco v. New York Univ.,*
   204 A.D.3d 51 (1st Dep't 2022)......................................................................................17

*Nezaj v. PS450 Bar and Restaurant*,
   719 F.Supp.3d 318 (S.D.N.Y. 2024) ................................................................. 14
*Pearson v. Walden Univ.*,
   144 F. Supp. 3d 503 (S.D.N.Y. 2015) ................................................................ 17
*Schiebel v. Schoharie Cent. Sch. Dist.*,
   120 F.4th 1082 (2d Cir. 2024) ............................................................................ 6
*Syeed v. Bloomberg L.P.*,
   568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) ....................................................... 13
*Vengalattore v. Cornell Univ.*,
   36 F.4th 87 (2d Cir. 2022) ................................................................................... 7
*Ware v. Univ. of Vermont & State Agric. Coll.*,
   722 F. Supp. 3d 379 (D. Vt. 2024) ..................................................................... 12
*Xiang v. Eagle Enterprises, LLC*,
   2020 WL 248941 (S.D.N.Y. Jan. 16, 2020) ................................................. 13, 15

## Statutes

28 U.S.C. § 636(b)(1)(C) ........................................................................................ 2
NY Exec. Law § 300 ............................................................................................. 13

## Rules

Fed. R. Civ. P. 72(b)(2) .......................................................................................... 2

## Regulations

34 C.F.R. § 106.45 ............................................................................................. 4, 6

iv

## INTRODUCTION

Plaintiff Kamran Khodakhah ("Plaintiff") respectfully submits this memorandum of law in support of Plaintiff's Objections to the Report and Recommendation ("R&R") of the Honorable Robyn F. Tarnofsky (hereafter "Magistrate Judge" or "Judge Tarnofsky"), entered July 31, 2025 (*see* ECF 79).

Plaintiff has alleged claims against Defendants Albert Einstein College of Medicine ("Einstein") and Montefiore Medicine Academic Health System, Inc. ("Montefiore") for Title IX discrimination (Count I) and retaliation (Count II), breach of contract (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), and promissory estoppel (Count V). Plaintiff has also alleged claims against Defendants Pablo Castillo ("Castillo"), Bryen Jordan ("Jordan"), and Gordon Tomaselli ("Tomaselli") for tortious interference with contractual relations (Count VI) and claims against Tomaselli, Einstein, and Montefiore for sex discrimination under the New York State Human Rights Law ("NYSHRL") (Count VII) and the New York City Human Rights Law (Count VIII).

The R&R recommends that Defendants' motions to dismiss Plaintiff's claims should be granted, with the exception of Count I, and then, only to the extent that Plaintiff's Title IX discrimination claim is predicated on claims relating to Plaintiff's disciplinary demotion from his position as Department Chair, and then, only under an erroneous outcome theory. R&R at 21. As fully explained below, the R&R's partial grant of Defendants' 12(b)(6) motions was based on erroneous findings and conclusions. Accordingly, the R&R should be modified to deny, *in toto*, Defendants' motions to dismiss.

## STANDARDS OF REVIEW

### A. Review of a Report and Recommendation

When reviewing a Magistrate Judge's Report and Recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *Hatounian v. Colvin*, 2017 WL 605294, at *2 (N.D.N.Y. Feb. 15,

1

2017). Where an objection is made to a magistrate's judge's recommendation, the district judge "shall make a *de novo* determination of those portions of the report and recommendation to which objection is made.'" 28 U.S.C. § 636(b)(1)(C); accord Fed. R. Civ. P. 72(b)(2). "Where, however, an objecting party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Hatounian*, 2017 WL 605294, at *2 (quoting *Caldwell v. Crosset*, 2017 WL 236330, at *1 (N.D.N.Y. June 9, 2010)) (internal quotation marks omitted). Consistent with the practice contemplated by Fed. R. Civ. P. 72, these objections supplement, but do not repeat, the facts and legal arguments set forth in Plaintiff's moving papers.

## PLAINTIFF'S OBJECTIONS

I.  **The R&R erroneously concludes that the applicable policy for Defendants' "chair investigation" was Defendants' 2018 Title IX policy.**

Although the R&R correctly found that Defendants' failure to apply *any* Title IX policy with respect to Plaintiff's disciplinary dismissal from his position as Department Chair states a Title IX claim for discrimination under an erroneous outcome theory, R&R at 23, the R&R erroneously concludes that the applicable policy for Defendants' "chair investigation" was Defendants' 2018 Title IX policy. *See* R&R at 27-8.  The R&R's conclusion is contrary to both the FAC's factual allegations and the specific provisions in Einstein's Title IX Policies, incorporated in the FAC.

In early 2022, Plaintiff was targeted with false allegations of misconduct, including allegations that he had engaged in sexual misconduct involving female junior faculty members, as well as allegations that he had subjected students to "discriminatory and sexist comments."  FAC ¶¶ 107-121, 164 ECF 58 Ex. E-July 11, 2022 Chair Dismissal Letter.

In March of 2022, before Tomaselli "suspended" Plaintiff from his Chair position, Einstein had in place its 2020/2022 Title IX Policy. FAC ¶ 96. Einstein also had in place its "Discrimination/Harassment Policy" to address complaints of alleged discrimination and harassment

2

based on a person's protected characteristics.  FAC ¶ 97. Under Einstein's then-applicable 2020/2022 Title IX Policy, to the extent that a faculty member's alleged misconduct implicated both Einstein's 2020/2022 Title IX Policy *and* its Discrimination/Harassment Policy, if the "principles and procedures" in the two policies differed, the procedures in the 2020 Title IX Policy controlled. *See* FAC ¶ 98; ECF 58 Ex. H 2020 Title IX Policy at § II at 1; ECF 58 Ex. I 2022 Title IX Policy at §§ II at 3. Accordingly, the R&R's conclusion is erroneous as it is contrary to the required procedures of Einstein's then-applicable 2020/2022 Title IX Policy.

The R&R's conclusion improperly presumes that the dates of alleged misconduct precede August 14, 2020.  The dates of the alleged misconduct are still unknown to Plaintiff.  *See* FAC ¶¶ 170, 324. Plaintiff has never been informed of any of the particulars of the allegations for which he was purportedly dismissed from his Chairmanship, including the names of his alleged accusers and the dates of alleged misconduct, FAC ¶ 170; ECF 58 Ex. E-July 11, 2022 Chair Dismissal Letter. Moreover, contrary to Tomaselli's representations, Plaintiff was never provided an investigative report, although both Einstein's 2020/2022 Title IX Policy and Einstein's Discrimination/Harassment Policy required Einstein to provide Plaintiff an investigative report before terminating him from his Chairmanship. FAC ¶¶ 94, 102; ECF 58 Ex. H - 2020 Title IX Policy, §§ III.H.1 at 18, III.I at 19; ECF 58 Ex. I - 2022 Title IX Policy, §§ III.H.1 at 19.  To conclude that the dates of the alleged misconduct occurred prior to August 14, 2020 would require an interpretation of Tomaselli's letter in favor of Defendants, an impermissible task at the motion to dismiss stage.

The R&R's conclusion that a so-called "interim sanction of demoting Plaintiff from his position as Chair during the pendency of the investigation was permissible under the 2018 Title IX Policy" is erroneous. R&R at 28 n. 7. Einstein was prohibited under federal regulations and Einstein's Title IX policies from imposing a so-called "interim sanction" upon Plaintiff. FAC ¶¶ 134-135. Under the

regulations, there is no such thing as an "interim *sanctions.*" *See* 34 C.F.R. § 106.45(d). Einstein was not permitted to subject Plaintiff to a disciplinary demotion from his Chair position prior to an adjudication and finding of responsibility. *See* 34 C.F.R. § 106.30; § 106.45.

## II. The R&R erroneously concludes that the applicable policy for Defendants' "Title IX Investigations" was Einstein's 2018 Title IX policy.

The R&R erroneously accepts Defendants' arguments that Einstein was entitled to apply its 2018 Title IX Policy to Plaintiff's Title IX investigations, in conformance with Einstein's interpretation of guidance documents published by the Department of Education's Office of Civil Rights ("OCR") and the preamble to the new 2020 Title IX rules, which suggested to Defendants that the 2020 amendments "were not retroactive." *See* R&R at 30 (citing ECF 57 at 17-18).

The R&R erroneously asserts that Plaintiff "has not pleaded facts supporting a conclusion that the use of the 2018 Title IX Policy to govern the Title IX Investigations demonstrated that the school failed to comply with its internal Title IX policies." R&R at 30. This assertion is contradicted by the facts alleged in the FAC, which demonstrate that Plaintiff had no reason to expect—either from the plain language of Einstein's 2020/2022 Title IX Policy or the parties' practice—that Einstein would apply its 2018 Title IX policy to his Title IX investigations.

The "scope" provision of Einstein's 2022 Title IX Policy provided that:

This Policy governs the conduct of all College of Medicine faculty, . . . and covers their treatment of each other and of students, as well as others with whom they come into contact at or near the College of Medicine and/or at College of Medicine sponsored and affiliated activities and events. *See* ECF 58 Ex. I 2022 Title IX Policy § II at 3-4; see FAC ¶ 186.

To the extent this provision was silent on the subject of the timing of the alleged violation, such silence did not render the 2020/2022 Title Policy ambiguous. *See Feder Kaszovitz LLP v. Rosen,* No. 17-CV-2954 (CM), 2018 WL 3708662, at *7 (S.D.N.Y. Aug. 3, 2018) ("Silence, or omission of a term . . . does not generally create ambiguity.").

4

The R&R's conclusion is also contrary to the FAC's factual allegations that application of the 2018 Title IX Policy was non-compliant with Einstein's procedures. As alleged in the FAC, pursuant to Department of Education regulations, Einstein had replaced its 2018 Title IX Policy, in its entirety, on August 14, 2020, with the 2020 Title IX Policy, which was subsequently renewed, without modification, on March 18, 2022. FAC ¶¶ 90-95, 185, 401.

The R&R's conclusion improperly relies on the Einstein Defendants' own interpretation of the OCR guidance (which is contrary to the well-known standard on a motion to dismiss to resolve all inferences and ambiguities in the plaintiff's favor) and the preamble to the 2020 Title IX Final Rule, none of which have the force of law. *See Doe v. Rensselaer Polytechnic Inst.,* No. 1:20-CV-1185, 2020 WL 6118492, at *9-10 (N.D.N.Y. Oct. 16, 2020).

The R&R's conclusion also erroneously relies on a factually inapposite, unreported case, *Doe v. Trs. of Columbia Univ. in City of New York,* No. 21 CIV. 5839 (ER), 2022 WL 3666997, at *12 (S.D.N.Y. Aug. 25, 2022). Unlike Plaintiff, who was notified that he was the respondent in two Title IX investigations in July of 2022, nearly two years *after* the 2020 Title IX regulations had gone into effect, FAC ¶ 174, Doe had filed her Title IX claim with the school and her investigation was ongoing *before* the rules took effect on August 14, 2020. *See id.* at *7. Further, unlike Plaintiff, who alleges that Defendants' decision to apply Einstein's 2018 Title IX Policy was discriminatory, FAC ¶ 447, Doe did not assert that her university's decision to apply its older policy was discriminatory. *See Doe,* 2022 WL 3666997, at *12.

Plaintiff's case is analogous to *Doe v. Rensselaer Polytechnic Inst.,* No. 1:20-CV-1185, 2020 WL 6118492, at *1 (N.D.N.Y. Oct. 16, 2020), in which Renssalaer Polytechnic Institute argued that RPI was entitled to apply its 2018 Title IX policy to Doe's Title IX case because the alleged misconduct pre-dated August 14, 2020. Like Defendants, RPI asserted that OCR guidance and the preamble to the 2020

Title IX Final Rule suggested that the new 2020 Title IX rules did not apply "retroactively." *Id.* However, the court declined to find that RPI was entitled to insist on the application of its 2018 Title IX policy to Doe's case, explaining that even if the preamble to the 2020 Title IX Final Rule were entitled to judicial deference, it was unclear as to the meaning of "retroactivity," and that the OCR post was not entitled to judicial deference. *Id.*, at *10.

**III.    The R&R erroneously concludes that the Einstein Defendants' use of the 2018 Title IX Policy "does not support an erroneous outcome."**

The R&R 's conclusion that Defendants' use of the 2018 Title IX Policy "does not support an erroneous outcome claim" is contradicted by the case law of this circuit, *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1099 (2d Cir. 2024) (explaining that the Title IX regulations effectuate Title IX's "nondiscrimination mandate")."[A] grievance process lacking principles of due process risks bias that in the context of sexual harassment allegations is likely to involve bias based on stereotypes and generalizations on the basis of sex" *Id.* Accordingly, the *withholding* of the procedural protections provided under the regulations is evidence of bias for purposes of a Title IX claim of discrimination.  *Id.*

Einstein's 2020/2022 Title IX Policy was established pursuant to the 2020 Title IX regulations promulgated by the United States Department of Education. FAC ¶¶ 90-95. The regulations required Einstein to meet "basic requirements" with respect to its grievance procedures. *See, e.g.,* 34 C.F.R. § 106.45(b). Defendant's decision to "apply" its 2018 Title IX Policy to Plaintiff's Title IX investigations meant that Defendants made a conscious choice *to withhold* from Plaintiff the procedural rights to which he was entitled.

When a school deliberately departs from its published Title IX Policy, established pursuant to federal regulation, that departure is procedurally irregular.  *See, e.g., Rensselaer Polytechnic Inst.*, 2020 WL 6118492, at *3; *Doe 1 v. State Univ. of New York at Buffalo,* 219 A.D.3d 1663, (2023). The clear procedural irregularities alleged with respect to Defendants' application of the 2018 Title IX Policy to

6

Plaintiff's case are sufficient at the pleadings stage to support the minimal inference of bias under either Title IX theory of liability.

**IV.    The R&R erroneously concludes that Defendants' application of Einstein's 2018 Title IX Policy does not support a claim for discrimination under an erroneous outcome theory "due to a lack of causal connection."**

The R&R's conclusion that the application of the 2018 Title IX policy is insufficient to support an erroneous outcome claim is erroneous because it improperly seeks to impose upon Plaintiff a heightened burden at the pleadings stage to plead ultimate facts or causation. The plaintiff's burden to plead bias or causation at the pleadings stage is minimal. *Schiebel*, 120 F.4th at 1092.

At the pleadings stage, a plaintiff alleging a violation of Title IX need only allege facts sufficient to state a prima facie case of discrimination under the *McDonnell Douglas* framework. *Menaker*, 935 F.3d at 33; *see Schiebel*, 120 F.4th at 1092 (on a 12(b)(6) motion to dismiss, the *McDonnell Douglas* framework affords the Plaintiff an "initial temporary presumption of discriminatory motivation" that reduces the Plaintiff's burden to pleading facts that support "only a minimal inference of bias"). Here, Plaintiff has plausibly alleged clear procedural irregularities on the basis of Defendants' decision to deprive him of the procedural rights of Einstein's 2020/2022 Title IX Policy. These allegations are sufficient to allege the required minimal inference of bias to defeat a motion to dismiss. *See Vengalattore v. Cornell Univ.*, 36 F.4th 87, 106–07 (2d Cir. 2022).

**V.    The R&R erroneously concludes that sanctions imposed by Einstein in the course of Plaintiff's "Title IX Investigations" were not procedurally irregular**

The R&R's erroneous conclusion that sanctions imposed upon Plaintiff were not procedurally irregular improperly seeks to minimize and diminish the procedural irregularities of both (a) Plaintiff's "immediate removal" from the Einstein campus on July 13, 2022, and (b) the sanctions imposed upon Plaintiff on December 18, 2023, after he was purportedly found responsible for misconduct under Einstein's 2018 Title X Policy, an act rejected by the Second Circuit on a motion to dismiss. *See Menaker*

7

*v. Hofstra Univ.,* 935 F.3d 20, 35 (2d Cir. 2019) ("The district court sought to minimize or explain away these clear procedural irregularities. In doing so, however, it failed to draw all reasonable inferences in Menaker's favor and made improper findings of fact.").

    a.    **Plaintiff's "suspension and removal" from campus on July 12, 2022 was clearly procedurally irregular1**

With respect to Plaintiff's ban from campus on July 12, 2022, as alleged in the FAC, on July 11, 2022 Plaintiff received notification that he was the subject of two Title IX complaints, FAC ¶ 178. On July 12, 2022, Plaintiff reached out to colleagues who might serve as witnesses concerning the Title IX complaints, as he was entitled to do under the 2022 Title IX Policy. *See* FAC ¶¶ 188-89; ECF 58 - Ex. I 2022 Title IX Policy § III.H.1 at 19.

However, in a letter dated July 13, 2022, Tomaselli informed Plaintiff that he was being "immediately removed from campus…" *See* FAC ¶¶ 190-191. Tomaselli's July 13, 2022 letter erroneously cited Section III.H of the Appointments Policy as the authority for his removal action, although this policy was obviously inapplicable to Plaintiff's Title IX case. FAC ¶¶ 194-197. Although Einstein's Title IX Coordinator, "Ramirez" later admitted that no Einstein policy prohibited Plaintiff from reaching out to potential witnesses, *id.* ¶ 329, she assisted Tomaselli by filing a formal Title IX complaint against Plaintiff for alleged "retaliation". *id.* ¶ 328.

On August 17, 2022, Plaintiff filed a formal Title IX complaint for retaliation against Tomaselli with Einstein's Title IX Office based on Tomaselli's July 13, 2022 decision to ban him from campus. *Id.* ¶ 219. Contrary to the requirements set by Einstein's own grievance procedures, *see id.* ¶ 222; ECF 58 Ex. G 2022 Title IX Policy, § III.N at 27 and § III.I at 24, Einstein did not adjudicate Plaintiff's

---

[1] As a threshold matter, as discussed *supra,* contrary to the R&R's conclusion, which refers to so-called "interim sanctions," there is no such thing as an "interim sanction," either under federal regulations or under Einstein's 2022 Title IX Policy. *See* ECF 58 ECF 58 - Ex. I 2022 Title IX Policy. The applicable 2022 Title IX Policy speaks of "interim protective measures," in accordance with federal regulations, not "interim sanctions."

retaliation claim for *nearly two years*, while Plaintiff remained banned from campus. FAC ¶ 333. Ultimately, Plaintiff was found not responsible for retaliation, or any other violation.  FAC ¶ 222, 331-332.[2] Plaintiff has thus stated clear procedural irregularities with respect to his so-called "suspension and removal" from campus on July 12, 2022.

### b.   The sanctions imposed in Plaintiff's Title IX process were clearly procedurally irregular

Contrary to the R&R's conclusion, Plaintiff has stated clear procedural irregularities with respect to the sanctions imposed by Ramirez against him. On December 18, 2023, Ramirez issued a decision on each of Plaintiff's Title IX complaints. *See* FAC ¶ 322.  Under Einstein's 2022 Title IX Policy, Ramirez was prohibited from considering allegations of alleged misconduct *outside* the Title IX grievance process. FAC ¶¶ 301-305.[3]  However, in her written decision, Ramirez admitted that, in arriving at the sanctions, she considered previous anonymous allegations of misconduct for which Plaintiff had never been formally charged or found responsible. *Id.* ¶¶ 107-132, 154-156, 158-160, 206-210, 223-230, 300, 316-325.

Ramirez imposed onerous sanctions that included barring Plaintiff "from teaching, mentoring, or advising students for three (3) years following the end of the "suspension"—a reference to Tomaselli's procedurally irregular suspension order imposed on July 13, 2022. FAC ¶ 306. And, because the Einstein Defendants chose to apply Einstein's 2018 Title IX Policy rather than Einstein's 2020/2022 Title IX Policy, Plaintiff had no right to appeal. *Id.* ¶¶ 314-315.

---

[2] The neutral hearing officer also found that Plaintiff was not responsible for retaliation under Einstein's "Code of Conduct" and had not violated any "no contact orders."

[3] *See* ECF 58 – Exhibit I – 2022 Title IX Policy at §§ III.F.5, III.H, and III.I; *id.* at 17 (entitling a respondent to "notice of the allegations"); *id.* at 20 ("If, in the course of an investigation of a Complaint, Einstein decides to investigate allegations of Title IX Violations that were not included in the notice regarding the original Complaint allegations (as discussed in Section III.F.5), Einstein will provide notice of the additional allegations to all parties whose identities are known, pursuant to the process set forth In Section III.F.5."); *id.* at 23 (entitling a respondent to a presumption that he is "not responsible unless and until proven otherwise under a clear and convincing standard of evidence").

The sanctions imposed were in violation of Einstein's Title IX Policy as well as notions of fundamental due process. Lacking any remedial or disciplinary purpose, the sanctions also served to extend Tomaselli's retaliatory suspension and removal order which both Tomaselli and Ramirez knew was unwarranted under Einstein's Title IX Policy.  FAC ¶¶ 307-312.

The R&R erroneously concludes that there was nothing procedurally irregular about Ramirez's consideration of anonymous, unsubstantiated allegations to "enhance the sanctions". R&R at 33.  This conclusion is contrary to the FAC's factual allegations. *See Menaker,* 935 F.3d 35. Plaintiff has denied the allegations for which he was purportedly dismissed as Chair. FAC ¶¶ 107-121. Moreover, as alleged in the FAC, both Ramirez and Tomaselli had reason to know the allegations were false. FAC ¶¶ 122-123, 125, 127, 164-165, 206-210, 223-230, 233, 316-320.

The R&R also erroneously concludes that the allegations for which Plaintiff was dismissed from his Chairmanship "did not require the process set out in any Einstein Title IX Policy."  R&R at 33. This conclusion is refuted by Einstein's policies, which required Einstein to provide Plaintiff a grievance process pursuant to Einstein's 2022 Title IX Policy. FAC ¶¶ 98, 163-165. This conclusion is also inconsistent with the R&R's correct conclusion that Defendants' "failure to apply Title IX procedures to the Chair investigation . . . reflected procedural irregularities, in that the school failed to comply with its internal Title IX policies." R&R at 27-28.

## VI.    The R&R erroneously concludes that Plaintiff has failed to allege "that the Title IX Investigations were conducted in a clearly procedurally irregular way."

The R&R's conclusion that Plaintiff failed to allege the Title IX Investigation was conducted in a clearly procedurally irregular way is improper, based on select allegations related to the Title IX investigator's "handling of witnesses." It fails to consider the entirety of the FAC, and all of the allegations related to Plaintiff's Title IX investigation and the grievance procedure that demonstrate procedural irregularity. *See e.g.*, FAC ¶ 206-210, 223-233, 265-270, 272, 278-279, 283-285, 287-293.

The R&R's piece-meal approach is inconsistent with the appropriate standard of review. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021).

**VII.    The R&R erroneously concludes that Plaintiff "has not adequately alleged a deliberate indifference claim under Title IX based on the Title IX Investigations or the Retaliation Investigation into Tomaselli's conduct."**

The R&R's conclusion that Plaintiff has failed to adequately allege a deliberate indifference claim is improper because (i) it rests on erroneous assumptions, (ii) fails to consider all of the FAC's allegations in their entirety, and (iii) improperly seeks to minimize and diminish allegations sufficient to show that Einstein ran a sham grievance process.

**(a) Plaintiff plausibly alleges a deliberate indifference claim with respect to the "Title IX Investigations"**

The R&R states three reasons for its erroneous conclusion that Plaintiff fails to state a deliberate indifference claim. First the R&R erroneously concludes that Defendants' application of Einstein's 2018 Title IX Policy to Plaintiff's Title IX process was "appropriate." R&R at 38. However, as discussed in detail *supra*, application of the 2018 Title IX Policy to Plaintiff's Title IX claims was clearly procedurally irregular and done with the intent to withhold vital procedural and due process protections from Plaintiff. FAC ¶¶ 86, 88, 91, 94-95; 2018 Title IX Policy at § IV, ECF 58-7 at 19; 2020 Title IX Policy at § III.C.2; ECF 58-8 at 10.

Second, the R&R erroneously concludes that Plaintiff had received "prompt notice" of the allegations. R&R at 38. However, when Ramirez imposed sanctions upon Plaintiff, she improperly considered the anonymous and unsubstantiated allegations for which Plaintiff had been purportedly dismissed as Chair, for which Plaintiff had never been formally charged or adjudicated responsible. This lack of fundamental due process deprived Plaintiff of notice and a meaningful opportunity to respond to the evidence against him. FAC ¶¶ 107-132, 154-156, 158-160, 206-210, 223-230, 316-325.

11

Third, the R&R erroneously concludes that Plaintiff's allegations reflect only Plaintiff's "disagreement with the outcome of an investigation." R&R at 40. Plaintiff has alleged that Ramirez rendered an inexplicable decision in which she determined that brief instances of non-sexual and inadvertent touching constituted "sexual harassment." FAC ¶¶ 266-270, 272-278, 287-293. The R&R's conclusion improperly seeks to diminish and dismiss Plaintiff's allegations that demonstrate that Einstein rendered a decision in his Title IX case from which "a reasonable fact finder could infer that Einstein ran a "sham process." *See Schiebel.*, 120 F.4th at 1104.

Fourth, the R&R erroneously concludes that Plaintiff's "factual allegations do not suggest Einstein was "deliberately indifferent to the truth or falsity of the accusations of sexual misconduct made against him." R&R at 42. However, read holistically, the allegations in the FAC plausibly allege that Tomaselli and Ramirez received multiple reports from numerous individuals indicating that Plaintiff had been the target of false allegations, and that they unreasonably took no action. *See* FAC ¶¶ 122-135, 154-156, 159-160, 206-209, 223-230, 232-233, 316-319.

**(b) Plaintiff plausibly alleged a deliberate indifference claim with respect to the "Retaliation Investigation" into Tomaselli's conduct**

The R&R erroneously concludes that the investigation into Plaintiff's Title IX retaliation claim against Tomaselli does not support a claim for deliberate indifference. *See* R&R at 40-1. The R&R's conclusion is improper because it seeks to minimize, diminish, and dismiss Plaintiff's plausible allegations showing that the "Retaliation Investigation" was a sham. *See* FAC ¶¶ 190-191, 326-348. The R&R's conclusion is also contradicted by the case law, which holds that an unreasonable delay in adjudication can qualify as deliberate indifference. *See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649 (1999); *Ware v. Univ. of Vermont & State Agric. Coll.*, 722 F. Supp. 3d 379, 426 (D. Vt. 2024).

VIII. **The R&R erroneously concludes that Plaintiff's claim for Title IX retaliation should be dismissed because Plaintiff did not adequately allege "protected activity."**

The R&R erroneously concludes that Plaintiff fails to state a *prima facie* case of retaliation because Plaintiff did not adequately allege "protected activity." R&R at 47-48. This conclusion is contradicted by *Jackson v. Birmingham Bd. Of Educ.,* 544 U.S. 161, 171 (2005 ("there is a 'private right of action implied by Title IX' that "encompasses claims of retaliation"). Under *Jackson,* "[d]iscrimination" is a term that covers a wide range of intentional unequal treatment." *Id.* at 167. The court emphasized that finding an implied right for a retaliation claim was consistent with "the import of [the Court's] repeated holdings construing 'discrimination' under Title IX broadly." *Id.* at 167. The R&R's conclusion is also inconsistent with Title IX regulations which broadly protect both parties in a Title IX grievance process from retaliation. *See* 34 CFR § 106.45.

IX. **The R&R erroneously concludes that Plaintiff's claims against Montefiore and Einstein for sex discrimination under the NYSHRL and the NYCHRL should be dismissed because Plaintiff has "not pleaded that he was treated less well than similarly situated employees with respect to Title IX investigations"**

Relying on the analysis underlying the recommendation to dismiss Plaintiff's Title IX claims as predicated on the Title IX Investigation, the R&R erroneously concludes that Plaintiff has failed to allege facts "supporting an inference that the process he was afforded in the Title IX Investigation was irregular." R&R at 54. In so doing, the R&R improperly equates the standard of proof applicable to claims under Title IX to that applicable to claims under the NYSHRL and the NYCHRL. This conclusion is contrary to New York law interpreting the NYSHRL and the NYCHRL. *See Syeed v. Bloomberg L.P.,* 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021 ("The NYCHRL must be construed broadly in favor of discrimination plaintiffs to the extent reasonably possible."); *Xiang v. Eagle Enterprises, LLC*, 2020 WL 248941, at *6 (S.D.N.Y. Jan. 16, 2020); *see* NY Exec. Law § 300 (instructing courts to construe the NYSHL "liberally for the accomplishment of the remedial purposes thereof, regardless of whether

13

federal civil rights laws, including those laws with provisions worded comparatively to the provisions of this article, have been so construed.").

As the Second Circuit has made clear, "once a university has promised procedural protections to employees, the disregard or abuse of those procedures may raise an inference of bias." *Menaker*, 935 F.3d 33-34. As stated, *supra*, Plaintiff has alleged procedural irregularities in the Title IX Investigation and adjudications sufficient to raise an inference of discrimination at this early pleading stage. *See supra* Objection IV. These procedural irregularities, even if insufficient to sustain Plaintiff's Title IX claim (which Plaintiff does not concede), are sufficient under the much more lenient standards necessarily applied to Plaintiff's NYSHRL and NYCHRL sex discrimination claims. *See Menaker*, 935 F.3d at 34; *Nezaj v. PS450 Bar and Restaurant*, 719 F.Supp.3d 318, 330-31 (S.D.N.Y. 2024) ("to state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment *of any degree*…") (emphasis added).

## X.  The R&R erroneously concludes that Plaintiff's claims against Tomaselli for aiding and abetting unlawful discrimination should be dismissed

Employees of a corporate defendant may be held liable for aiding and abetting discrimination under both the NYSHRL and the NYCHRL. *See Nezaj v. PS450 Bar and Restaurant*, 719 F.Supp.3d at 329-30. A motion to dismiss an aiding and abetting claim should be denied where, as here, the plaintiff has pled an individual defendant "actually participated in the unlawful conduct" and "share[d] the intent or purpose of the principal actor," *Nezaj*, at 333, or "failed to take adequate action to correct the discrimination." *Hicks v. IBM*, 44 F.Supp.2d 593, 600 (S.D.N.Y. 1999).

The R&R erroneously finds that Plaintiff failed to plead that Tomaselli participated in Einstein's discriminatory conduct. Indeed, Plaintiff has alleged facts demonstrating Tomaselli's participation and/or failure to prevent the discriminatory actions taken against Plaintiff, including, *inter alia:*

- Tomaselli suspended Plaintiff as Chair pending the investigation against him based on allegations Einstein knew and/or reasonably believed were false, FAC ¶¶ 133-139;
- Tomaselli tacitly and/or directly endorsed the use of the 2018 Title IX Policy in the investigation against Plaintiff by, *inter alia*, relying on and providing that policy to Plaintiff in his suspension notification, FAC ¶¶ 137;
- Tomaselli subjected Plaintiff to a disciplinary demotion and "removal" from campus, without the required procedural protections under his employer's written sexual misconduct policy, FAC ¶¶ 303-05, 404-07;
- Tomaselli ignored reports by multiple persons to himself and other senior leadership that the allegations against Plaintiff were false, and he permanently dismissed Plaintiff on July 11, 2022 from his Chairmanship, FAC ¶¶ 163-165;
- Tomaselli seemingly withheld Plaintiff's access to vital Title IX materials and investigative documents during the pendency of the investigations against Plaintiff, FAC ¶¶ 163-65; and
- Tomaselli, without any consideration or acknowledgment of Plaintiff's due process and contract rights, removed Plaintiff from campus under a now formally unsubstantiated claim of "retaliation." FAC ¶¶ 192-99.

The R&R failed to take into account the above allegations and further failed to view Plaintiff's allegations in their "overall context," *see Hernandez v. Kaisman*, 103 A.D.3d 106 (1st Dep't 2012), leading to the erroneous finding that Tomaselli did not aid and abet Einstein's discriminatory conduct.

## XI.  The R&R Erroneously concludes that Plaintiff has not plausibly pled participation in protected activity to sustain Plaintiff's NYSHRL and NYCHRL Claims of Retaliation

Both the NYSHRL and the NYCHRL each protect an individual employee's right to participate in "any proceeding." Notably, although the standards to demonstrate a retaliation claim under the NYSHRL may be the same as under federal law (*see McHenry v. Fox News Network, LLC*, 510 F.Supp.3d 51, 66 (S.D.N.Y. 2020), the NYCHRL applies a "broader standard" and requires only that the plaintiff plausibly plead "that something happened that was reasonably likely to deter a person from engaging in protected activity." *Xiang v. Eagle Enters., LLC.*, 2020 WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020); *see also*, *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

As stated, *supra*, Plaintiff has sufficiently alleged engagement in protected activity by, at a minimum, participating in the biased Title IX proceedings against him by, *inter alia*, exerting his right to engage witnesses in the process. This activity, even if insufficient to amount to protected activity under

15

Title IX (which Plaintiff does not concede), is sufficient to meet the broader definition of protected

activity under the NYCHRL.

**XII.    The R&R erroneously concludes that Plaintiff fails to state a claim for breach of contract based on Defendants' breaches of Einstein's Title IX policies.**

The R&R erroneously concludes that Plaintiff fails to state a claim for breach of contract based on breaches of Einstein's Title IX Policies. R&R at 62-64. The basis for the R&R's conclusion is contradicted by decades of New York case law.  **First,** to the extent Einstein's Title IX Policy is not incorporated by reference in Plaintiff's various appointment letters, the Title IX Policy is still valid and enforceable as an implied contract. *See Klinge v. Ithaca Coll.*, 167 Misc. 2d 458, 462, 634 N.Y.S.2d 1000, 1002 (Sup. Ct. 1995) ("a court may take notice of implicitly accepted customs and practices to fill the gaps and, thereby, to allow the actual intentions of the parties to be fully understood").

**Second**, the R&R erroneously relies on *Maas v. Cornell Univ.,* 94 N.Y.2d 87, 94 (1999), a case limited to its facts, to erroneously conclude that Einstein's Title IX policies create no contractual rights. However, the plaintiff in *Mass* had alleged a breach of contract "[w]ithout reference to any express contractual source." *Maas*, 94 N.Y.2d 87.  Unlike the plaintiff in *Mass,* Plaintiff has identified specific provisions of the applicable Title IX Policies at issue, and his breach of contract claim should not be dismissed. *See Joshi v. Trs. of Columbia Univ. in City of New York,* No. 17-CV-4112 (JGK), 2018 WL 2417846, at *5 (S.D.N.Y. May 29, 2018).

**Third,** the R&R's conclusion that Einstein's Title IX policies are not implied contracts because they "speak about "general provisions and make no specific promises" is incorrect. Einstein's Title IX Policy is valid and enforceable as an implied contract. Under New York law, policies in a personnel manual specifying the employer's practices with respect to the employment relationship become a part of the employment contract. *See, e.g., Langenkamp v. Olson,* 628 F. App'x 50, 52 (2d Cir. 2015); *Kaloyeros v. Rsch. Found. of State Univ. of New York*, 71 Misc. 3d 1219(A), 144 N.Y.S.3d 557 (N.Y. Sup. Ct. 2021)

16

(same) *Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 509 (S.D.N.Y. 2015); *Monaco v. New York Univ.,* 204 A.D.3d 51, 62, (1st Dep't 2022).

### XIII.    The R&R erroneously concludes that Plaintiff fails to state a claim for breach of contract based on the 2014 Retention Letter.

The R&R erroneously concludes that Plaintiff cannot state a breach of contract claim based on the 2014 Retention letter because the "plain meaning" of the term "interim" is, as Defendants urge, temporary. R&R at 65-6. However, Plaintiff has plausibly alleged that the parties mutually understood and agreed that Einstein had committed to provide interim support equivalent to the direct costs of Plaintiff's R01s (federal grants) indefinitely, subject to Plaintiff's retirement or the termination of his tenured employment. *Id.* ¶¶ 349-351, 355-358.

"New York law follows the common law rule that in interpreting a contract, the intent of the parties governs, and therefore, a contract should be construed so as to give full meaning and effect to all of its provisions*." Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 27 (N.D.N.Y. 2022). "At this stage, the R&R's conclusion improperly accepts Defendants' self-serving interpretation of the term "interim" in favor of Plaintiff's. The R&R's conclusion also erroneously mischaracterizes the FAC's factual allegations., stating incorrectly that "the FAC never actually alleges that Einstein stopped funding Plaintiff's lab." R&R at 66.  This is wrong. *See* FAC ¶ 351.

### XIV.    The R&R erroneously concludes that Plaintiff has failed to allege claims for breach of the implied covenant of good faith and fair dealing and for promissory estoppel.

The R&R erroneously concludes that claims for alleged breaches of the implied covenant should be dismissed, and states as reasons: (1) they are duplicative of Plaintiff's breach of contract claims, and (2) Plaintiff has "not adequately alleged that Einstein's policies . . . are valid contracts." R&R at 71 n. 18. This conclusion is improper.  First, Plaintiff's good faith claims are not duplicative of his breach of contract claims.    The focus of Plaintiff's claims for breach of the implied covenant is acts or omissions

that amount to an abuse of Defendants' discretion, acts that, although not expressly, forbidden by any contractual provision, undermine Plaintiff's rights to receive the benefits of the parties' agreement. *See Baguer v. Spanish Broad. Sys., Inc.*, No. 04-CV-8393 (KMK), 2007 WL 2780390, at *8 (S.D.N.Y. Sept. 20, 2007); *see also Joshi v. Trs. of Columbia Univ. in City of New York*, 2018 WL 2417846, at *7.

Second, as discussed in *supra* Objection XII, this conclusion is also erroneous because, under New York law, Plaintiff has adequately alleged that his workplace policies are enforceable implied contracts. Finally, the R&R also erroneously concludes that claims for "promissory estoppel are duplicative of a plaintiff's claim for breach of contract." R&R at 69. However, Plaintiff's claim for promissory estoppel should not be dismissed at this stage. A plaintiff is allowed to plead a breach of contract claim and a promissory estoppel claim in the alternative. *Doe v. Hobart & William Smith Colleges,* 546 F. Supp. 3d 250, 274 (W.D.N.Y. 2021).

## XV.    The R&R erroneously concludes that Plaintiff fails to state a claim for tortious interference against Tomaselli, Castillo, and Jordan because Plaintiff has failed to allege a breach of contract.

The R&R erroneously concludes that Plaintiff fails to state a claim for tortious interference against Tomaselli, Castillo, and Jordan on the basis that Plaintiff has failed to adequately plead breach of "any contract." R&R at 72. However, as discussed *supra*, this conclusion is contradicted by decades of New York case law holding otherwise.

## XVI.    The R&R erroneously concludes that Plaintiff's claim against Tomaselli for tortious interference with contract should be dismissed.

The R&R erroneously concludes that, to the extent Plaintiff states a claim for breach of contract, Plaintiff could still not allege a claim for tortious interference with contract against Tomaselli, R&R at 73, because Plaintiff has failed to adequately plead facts showing that (1) Tomaselli was acting within the scope of his employment, R&R at 75, or that (2) Tomaselli procured a breach of contract without justification. R&R at 77.

18

First, the R&R improperly seeks to impose a heightened burden of proof of motive at the pleadings stage. At this stage, Plaintiff's allegations are more than sufficient to demonstrate that Defendant Tomaselli acted with malice, self-interest, and outside the scope of his employment. *See Albert v. Loksen*, 239 F.3d 256, 266 (2d Cir. 2001).

Second, the R&R's conclusion fails to consider all of the relevant allegations in the FAC, and improperly assumes that Tomaselli was appropriately acting within his scope when he suspended and then dismissed Plaintiff as Chair. Drawing impermissible inferences favoring Defendant, the R&R asserts:

> Tomaselli's suspension and then dismissal of Plaintiff as Chair in response to concerns raised by faculty and students, later confirmed by confidential investigation, and Tomaselli's removal of Plaintiff from campus following what Tomaselli viewed as Plaintiff's violation of Einstein's policy against retaliation (*see id* ¶ 136) fell within the scope of Tomaselli's employment responsibilities.

R&R at 75.

The R&R fails to consider that Plaintiff disputes the veracity of the allegations in Tomaselli's March 11, 2022 letter, ¶ 136, and accepts Tomaselli's self-serving characterization of his "behavior," *s*ee R&R at 77 ("Tomaselli correctly argues that his behavior was incidental to a lawful purpose, naming investigating alleged misconduct and protecting students and staff) (citing ECF 55, Tomaselli Mem. at 12). However, the R&R's conclusion that Tomaselli's conduct was "incidental to a lawful purpose" is contradicted by the allegations in the FAC, including, *inter alia*, that, on March 10, 2022, (i) Tomaselli falsely told staff that Plaintiff was stepping down from his Chair, *id.* ¶ 154, and (ii) failed to follow the applicable employment policies to investigate the supposed allegations against Plaintiff. *See id.* ¶ 151,

Plaintiff has also alleged that, on July 11, 2022, Tomaselli notified Plaintiff that the "investigation" was concluded and that Plaintiff was being immediately dismissed from his Chairmanship. FAC ¶¶ 163-164; ECF 58 Ex. E-July 11, 2022 Chair Dismissal Letter. Although the

allegations implicated both Einstein's Title 2022 IX Policy and its Discrimination/Harassment Policy, to this day, Plaintiff has never received notice of the identities of his purported accusers or a copy of an investigative report, and has never been afforded a hearing or grievance procedure in which he was adjudicated responsible. *Id.* ¶ 170.

The R&R's conclusion fails to consider plausible allegations showing that Tomaselli acted outside the scope of his authority by dismissing Plaintiff from his appointment based on allegations that Tomaselli knew or had reason to know were false. The R&R failed to consider, for example, allegations relating to a complaint filed by a former graduate student in the Supreme Court of the State of New York, County of Bronx, captioned: *Stacy Roundabush against Albert Einstein College of Medicine of Yeshiva University and Kamran Khodakhah,* Index No. 807857/2023E (May 19, 2023) ("Roundabush Complaint"), FAC ¶¶ 163-164, 316-319; ECF 58 Ex. E-July 11, 2022 Chair Dismissal Letter. Plaintiff has plausibly alleged that in the Answer Einstein filed, Einstein denied outright or denied having knowledge sufficient to form a belief as to the truth of allegations that were the same or substantially as the allegations for which Tomaselli purportedly dismissed Plaintiff from his position as Chair. *See* FAC ¶¶ 163-164; ECF 58 Ex. E-July 11, 2022 Chair Dismissal Letter.

The R&R improperly concludes that Tomaselli acted within the scope of his employment when it is evident that he failed to adhere to the applicable employment policies. Tomaselli's March 10, 2022 and July 11, 2022 communications to Plaintiff were plainly covered under either the 2022 Title IX Discrimination/Harassment Policy, if not both. FAC ¶ 164, ECF-58-Ex. E – July 11, 2022 Chair Dismissal Letter.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Kamran Khodakhah respectfully request that the Court reject the Report's recommendation.

Dated: August 14, 2025
      New York, New York

Respectfully submitted,

NESENOFF & MILTENBERG, LLP
*Attorneys for Plaintiff*

By: */s/ Andrew T. Miltenberg*
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Gabrielle Vinci, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
gvinci@nmllplaw.com