UNITED STATES DISTRICT COURT                    **NOT FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KAMRAN KHODAKHAH,

                    Plaintiff,

          -against-                                    24-cv-839 (LAK)


MONTEFIORE MEDICINE ACADEMIC HEALTH
SYSTEM, INC., et al.,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __09/16/2025__
```

### MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

          This action arises from investigations conducted and sanctions imposed by Albert
Einstein College of Medicine ("Einstein") against plaintiff Kamran Khodakhah, the now-former
chair of Einstein's Department of Neuroscience. Plaintiff alleges that he was discriminated and
retaliated against in violation of Title IX of the Education Amendments of 1972, among other
claims. Defendants Einstein, Montefiore Medicine Academic Health System, Inc. ("Montefiore"),
Pablo Castillo, and Bryen Jordan (the "Einstein Defendants") and defendant Gordon Tomaselli filed
respective motions to dismiss.

          In a thorough report and recommendation ("R&R"),[1] Magistrate Judge Robin
Tarnofsky recommended that the Court (1) grant in part and deny in part the motion to dismiss the
claims against Einstein and Montefiore, and (2) dismiss the claims against Castillo, Jordan, and
Tomaselli. With respect to Einstein and Montefiore, the R&R concluded that plaintiff alleged

----

[1] Dkt 79.

adequately claims related to the "chair investigation" — which regarded plaintiff's fitness to serve as chair of the Department of Neuroscience — but that he did not allege adequately his remaining claims, including those related to two Title IX investigations into plaintiff's conduct.

Plaintiff raises myriad objections to the R&R, which broadly concern four categories: (1) alleged procedural irregularities, (2) deliberate indifference, (3) retaliation, and (4) plaintiffs' remaining state and local law claims.  The Court addresses each in turn.

## I.    *Alleged Procedural Irregularities*

### A.    *Application of 2018 Title IX Policy*

The R&R concluded that plaintiff alleged adequately that the chair investigation implicated conduct governed by Title IX.  That investigation — which was not conducted under the procedures required by the applicable Title IX policy — therefore should have been conducted pursuant to that policy.  The R&R concluded also that plaintiff did not allege adequately that the Title IX investigations of plaintiff were conducted in a procedurally irregular way, and therefore plaintiffs' claims arising from those investigations should be dismissed.

First, plaintiff argues that the R&R erred in determining that  Einstein's 2018 Title IX policy — as opposed to its later-adopted 2020 and 2022 Title IX policies — should have been applied to the chair investigation.  However, the R&R's preliminary determination on this point is not essential to the disposition of the motion.  The R&R recommended that the Court not dismiss

claims related to the chair investigation.[2]  Whether the 2018 Title IX policy or another policy should have applied to the chair investigation will be determined conclusively at a later stage.[3]

Second, plaintiff argues that the R&R erred in determining that defendants correctly applied Einstein's 2018 Title IX policy to the Title IX investigations.

The R&R concluded that plaintiff "has not pleaded facts supporting a conclusion that the use of the 2018 Title IX Policy to govern the Title IX Investigations demonstrated that the school failed to comply with its internal Title IX policies."[4]  Plaintiff argues first that he "had no reason to expect . . . that Einstein would apply its 2018 policy to his Title IX investigations."[5]  But he has not demonstrated how his expectations regarding which policy would apply are relevant.

Plaintiff argues also that the R&R erred because application of the 2018 Title IX Policy was non-compliant with Einstein's procedures.  But the facts alleged do not support that conclusion.  As set forth in the R&R, "procedural changes in [Einstein's] 2022 Title IX Policy derived from changes in the Title IX regulations in 2020, which the Department of Education ["DOE"] indicated were not retroactive: '[T]he 2020 amendments do not apply to alleged sexual harassment occurring before August 14, 2020. This is true even if the school's response was on or

---

[2]      Dkt 79 at 35.

[3]      *See id.* at 27 ("*At this stage of the litigation,* . . . I conclude that the applicable policy was the 2018 Title IX policy . . . ." (emphasis added)).  Because plaintiff has alleged adequately procedural irregularities related to the chair investigation, the Court need not decide whether plaintiff has alleged adequately that events giving rise to that investigation took place after August 14, 2020, such that the 2018 Title IX policy was not applicable.

[4]      Dkt 79 at 30.

[5]      Dkt 82 at 4.

4

after this date.'"[6]  The Title IX investigations concerned alleged conduct from 2017 and 2018.[7]  Einstein's application of the 2018 Title IX Policy to those investigations therefore was consistent with DOE guidance.[8]  Plaintiff did not provide any substantive response to this argument before the Magistrate Judge,[9] and his arguments raised for the first time in his objection to the R&R are waived.

In any event, plaintiff's rebuttal to the R&R is unavailing.  Plaintiff cites *Doe v. Rensselaer Polytechnic Institute*,[10] for the proposition that the DOE guidance is unclear.  But that decision predated subsequent DOE guidance, which clarified that 2020 changes in Title IX regulations "do not apply to alleged sexual harassment occurring before August 14, 2020."[11]  As another court in this District held following the issuance of the guidance,"a school must follow the requirements of the Title IX statute and the regulations that were in place *at the time of the alleged incident*; the 2020 Title IX Rule does not apply to alleged sexual harassment occurring before August 14, 2020, and this is true even if the school's response was on or after this date."[12]

---

[6]     Dkt 79 at 30 (citation omitted) (quoting Department of Education Office for Civil Rights, Questions and Answers on the Title IX Regulations on Sexual Harassment ("DOE Q&A") 10 (2021)).

[7]     *See* Dkt 48 ("Am. Compl.") at ¶¶ 175–76.

[8]     Dkt 79 at 30.

[9]     *Id.* ("Plaintiff provides no substantive response to this argument.").

[10]     No. 1:20-CV-1185 (DNH), 2020 WL 6118492 (N.D.N.Y. Oct. 16, 2020).

[11]     *See* DOE Q&A at 10.

[12]     *Doe v. Trs. of Columbia Univ. in City of New York*, No. 21-cv-5839 (ER), 2022 WL 3666997, at *11 (S.D.N.Y. Aug. 25, 2022).  Plaintiff's attempts to distinguish the facts of

5

Accordingly, the R&R correctly concluded that (1) the 2018 Title IX policy applied to the Title IX investigations, and (2) that application does not support plaintiff's erroneous outcome claim.

B.      Sanctions

The R&R concluded that interim sanctions imposed against plaintiff during the Title IX investigations do not support plaintiff's erroneous outcome claim because Einstein's Title IX policies permitted those sanctions.  Plaintiff does not dispute that the policies authorized the imposition of interim sanctions.  Instead, he argues that the interim sanction barring him from campus was "clearly procedurally irregular."[13] Plaintiff did not raise this argument before the Magistrate Judge,[14] and therefore it is waived.  Further, plaintiff has not alleged any facts supporting an inference that imposition of that sanction was irregular.

Plaintiff argues also that the consideration of alleged misconduct outside the Title IX grievance process was procedurally irregular.  He alleges that defendants relied on the findings from the chair investigation when levying sanctions related to the Title IX investigations.  Plaintiff argues that this reliance was impermissible because the chair investigation was not conducted pursuant to procedures required by the applicable Title IX policy.  The R&R rejected this argument, concluding that "Einstein's failure to apply the 2018 Title IX Policy to the Chair Investigation [did

---

this case are inapposite because they do not implicate the proposition that the university at issue there "acted in compliance with Department of Education regulations when it applied its 2019 [gender-based misconduct] Policy to [the plaintiff]'s complaint, which arose from a sexual assault she alleges took place on January 8, 2019." *Id.*

[13]    Dkt 82 at 8.

[14]    *See* Dkt 60 at 17–20.

6

not] so taint[] that investigation that it was improper for Einstein to have relied on that investigation's findings to enhance the sanctions imposed on Plaintiff following the Title IX Investigations."[15]

        The Court agrees, based on the facts alleged, that consideration of the chair investigation findings was not improper.[16]

## II.    *Deliberate Indifference*

        The R&R concluded that plaintiff did not allege adequately a deliberate indifference claim based on (1) the Title IX investigations, or (2) a separate investigation regarding a retaliation claim filed by plaintiff.

        With respect to the Title IX investigations, the arguments raised in plaintiff's objection largely rehash those regarding procedural irregularities, and the Court rejects them for the reasons set forth above.  Plaintiff argues also that "read holistically, the allegations in the [amended complaint] plausibly allege that [Einstein officials] received multiple reports from numerous individuals indicating that Plaintiff had been the target of false allegations, and that they unreasonably took no action."[17]  But as set forth in the R&R, "[t]here is a difference between

---

[15] Dkt 79 at 33.

[16] *See id.* ("While there is no way to know to what extent the findings in the Chair Investigation were based on conduct falling within as opposed to outside the scope of Title IX, Plaintiff was found to have engaged in significant misconduct that was unrelated to gender (or any other protected class) discrimination: student mistreatment and name-calling, violations of Einstein's Drug and Alcohol Policy, intimidation and abuse of staff, and inappropriate behavior at Einstein events, believed to be due to intoxication.  Those findings did not require the process set out in any Einstein Title IX Policy.").

[17] Dkt 82 at 12.

ignoring a plaintiff's allegations that the accuser has lied and considering such allegations but concluding that the weight of the evidence indicates that the accuser was truthful. . . . Plaintiff here has not alleged facts suggesting that the investigator ignored witness statements that the allegations against him were false."[18]

With respect to the retaliation investigation, plaintiff argues that the delay in resolving it supports a reasonable inference that it was a sham. Plaintiff points to case law that, he contends, "holds that an unreasonable delay in adjudication can qualify as deliberate indifference."[19] But, as pointed out in the R&R, those authorities do not so hold. Those cases respectively involved a school board that "fail[ed] to respond in any way over a period of five months to complaints of . . . misconduct"[20] and a delay attributable to a university misinforming the plaintiff of her options for making a complaint.[21] As set forth in the R&R, unlike in those cases, "[p]laintiff here has not alleged that the school failed to apprise him of his right to lodge a complaint or delayed opening an investigation into [his complaint]."[22]

Accordingly, the R&R correctly concluded that plaintiff failed to allege deliberate indifference.

---

[18] Dkt 79 at 42.

[19] Dkt 82 at 12 (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649 (1999); *Ware v. Univ. of Vermont & State Agric. Coll.*, 722 F. Supp. 3d 379, 426 (D. Vt. 2024)).

[20] *Davis Next Friend LaShonda D.,* 526 U.S. at 649.

[21] *Ware*, 722 F. Supp. 3d at 426.

[22] Dkt 79 at 41.

### III.    Retaliation

The R&R concluded that plaintiff did not allege adequate retaliation claims under Title IX and the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") because he did not allege that he engaged in a protected activity. Plaintiff's bare claim to the contrary does not overcome the R&R's thorough and well-reasoned analysis.[23]

### IV.    State and Local Law Claims

#### A.    NYSHRL and NYCHRL Claims Against Einstein and Montefiore

The R&R concluded that plaintiff (1) alleged adequately claims against Einstein and Montefiore under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") based on the chair investigation, but that those claims otherwise should be dismissed. Plaintiff argues that the R&R "improperly equate[d] the standard of proof applicable to claims under Title IX to that applicable to claims under the NYSHRL and the NYCHRL."[24] The R&R recognized, however, that "the standard for pleading a Title IX claim differs from the standard for pleading claims under the NYSHRL and NYCHRL."[25] The R&R nevertheless concluded that plaintiff did not allege adequately claims under the applicable standard because he did not allege that

---

[23]      *See id.* at 44–48; 58–60.

[24]      Dkt 82 at 13.

[25]      Dkt 79 at 53.

Einstein and Montefiore treated him less well than similarly situated employees.[26]  Plaintiff raises no argument to the contrary and instead reiterates his contentions regarding procedural irregularities.

Accordingly,  the R&R correctly concluded that plaintiff failed to allege adequately NYSHRL and NYCHRL claims against Einstein and Montefiore.

B.    *NYSHLR and NYCHRL Claims Against Tomaselli*

The R&R concluded that plaintiff did not allege adequately aiding and abetting claims against Tomaselli[27] under the NYSHRL and NYCHRL.  The R&R recognized that those claims should be dismissed to the extent they arose from the Title IX investigations because plaintiff failed to allege discrimination by a principal — *i.e.*, Einstein or Montefiore — in relation to those investigations.[28]  With respect to the chair investigation, the R&R recommended that the aiding and abetting claims against Tomaselli should be dismissed because plaintiff did not allege that Tomaselli actually participated in the allegedly discriminatory conduct — the decision not to conduct the chair investigation pursuant to a Title IX policy.[29]  Plaintiff argues that Tomaselli aided and abetted Einstein's discriminatory conduct by, *inter alia*, imposing interim sanctions against plaintiff, applying the 2018 Title IX policy to the Title IX investigations, and ignoring purportedly

---

[26]
      *Id.* at 53–55.

[27]
      Bio XX.

[28]
      Dkt 79 at 55.

[29]
      Dkt 79 at 56–57.

exculpatory witness statements.[30]  But, as set forth above, none of those actions gave rise to liability by a principal, and therefore no liability may attach for aiding and abetting that conduct.[31]

Accordingly, the R&R correctly concluded that plaintiff failed to allege adequately NYSHRL and NYCHRL claims against Tomaselli.

### C.    Breach of Contract

The R&R concluded that plaintiff did not allege adequately claims for breach of contract.  Plaintiff argues that Einstein and Montefiore breached plaintiff's employment contract by violating the terms of Einstein's Title IX policies.  Setting aside whether Einstein and Montefiore in fact breached the Title IX policies, for the reasons set forth in the R&R, those policies were not incorporated by reference into the employment contract, nor were they implied contracts.[32]  Plaintiff argues next that Einstein breached its obligations pursuant to a letter in which Einstein agreed to provide plaintiff with funding for his lab.  That letter stated that Einstein was "committed to providing generous interim support" to plaintiff in the event that certain grants were not renewed.[33]  Plaintiff has not alleged a breach of that interim commitment.[34]

---

[30]      Dkt 82 at 15.

[31]      *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 333 (S.D.N.Y. 2024) ("[A]s a predicate to claiming aiding and abetting discrimination, a plaintiff must have pled discrimination by a principal.").

[32]      *See* Dkt 79 at 61–64.

[33]      Am. Compl. ¶ 53.

[34]      Dkt 79 at 65–66.

Accordingly, the R&R correctly concluded that plaintiff failed to allege adequately breach of contract claims against Einstein and Montefiore.  Plaintiff's claims for tortious interference against defendants Tomaselli, Castillo, and Jordan likewise fail because he has not alleged an underlying breach of contract.[35]

### D.    Breach of Implied Covenant of Good Faith and Promissory Estoppel

The R&R concluded that plaintiff's claims for breach of the implied covenant of good faith and fair dealing and for promissory estoppel are duplicative of the breach of contract claims and therefore should be dismissed.  Plaintiff objects to this conclusion, but he does not contend with the R&R's well-reasoned conclusion on this score[36] or specifically set forth how these claims are distinct from his contract claims.  Nor does he object to the alternate bases for dismissal set forth in the R&R — that plaintiff did not allege adequately that (1) Einstein's policies are valid contracts, or (2) Einstein or Montefiore sought to prevent performance of a contract or to withhold benefits from plaintiff.[37]

Accordingly, the R&R correctly concluded that plaintiff failed to allege adequately claims against Einstein and Montefiore for breach of the implied covenant of good faith and fair dealing and for promissory estoppel.

---

[35]

*Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990) ("Under traditional principles of New York law, a party may not recover for tortious inducement of breach of a contract without proving that the underlying contract has been breached.").  Having ruled that dismissal is proper on this basis, the Court need not reach the additional bases for dismissal of these claims set forth in the R&R.  *See* Dkt 79 at 73–78.

[36]

*See* Dkt 79 at 67–72.

[37]

*Id.* at 71 n.18.

*IV.    Leave to Amend*

        The R&R recommended that plaintiff be granted leave to replead the dismissed claims because amendment would not be necessarily futile.  The Einstein Defendants object that leave should not be granted because plaintiff has already amended his complaint with the benefit of defendants' arguments for dismissal.[38]  The Court agrees with the R&R that amendment would not be necessarily futile.  On the other hand, it cannot conclude that such amendment would not be futile because plaintiff has not specified how amendment would cure the pleading deficiencies set forth above.

        Accordingly, the Court will afford plaintiff an opportunity to move for leave to amend the complaint, provided that such motion includes a version of the proposed amended complaint showing all changes and a memorandum addressing why the amendments would not be futile.

***Conclusion***

        For the foregoing reasons, the Einstein Defendants' motion to dismiss (Dkt 56) is granted to the extent that (1) the Title IX discrimination, New York State Human Rights Law, and New York City Human Rights Law claims against Einstein and Montefiore are dismissed, except to the extent that those claims arise out of the chair investigation, and (2) all other claims are dismissed.  Gordon Tomaselli's motion to dismiss (Dkt 53) is granted.  These rulings are without prejudice to a motion, filed no later than October 1, 2025, for leave to amend the complaint. Any

---

[38]    Dkt 81 at 3.

13

such motion must include (1) a clean copy of the proposed amended complaint, (2) a redlined

version of the proposed amended complaint showing all changes from the first amended complaint,

and (3) a memorandum addressing why the amendments would not be futile.


        SO ORDERED.

Dated:        September 16, 2025

                                        _____
                                                Lewis A. Kaplan
                                        United States District Judge