UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAMRAN KHODAKHAH,

     *Plaintiff,*

v.                                                                    Civil Action No. 1:24-cv-00839

MONTEFIORE HEALTH SYSTEM,
INC., MONTEFIORE MEDICAL
CENTER, MONTEFIORE MEDICINE
ACADEMIC HEALTH SYSTEM, INC.,
ALBERT EINSTEIN COLLEGE OF
MEDICINE, GORDON TOMASELLI,
PABLO CASTILLO, BRYEN JORDAN,
and JOHN and JANE DOES 1-10,

     *Defendants.*


**PLAINTIFF KAMRAN KHODAKHAH'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

NESENOFF & MILTENBERG, LLP
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Gabrielle M. Vinci, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
gvinci@nmllplaw.com

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD ........................................................................................................ 2

ARGUMENT ...................................................................................................................... 2

I.  Plaintiff Should be Permitted to File his Second Amended Complaint ............................. 2

   i.  Counsel's Pre-Motion Meet and Confer Does Not Make Amendment of Plaintiff's Pleading Futile ................................................................................................................. 3

   ii.  The Amendments to Plaintiff's Pleading Adequately Address Deficiencies Identified by the Court and should be Permitted ..................................................................................... 4

   iii.  Title IX Claims Against Einstein and Montefiore ................................................... 4

      a.  Deliberate Indifference Claim ................................................................................ 5

      b.  Retaliation Claims ................................................................................................. 8

   iv.  NYSHRL and NYCHRL Claims ............................................................................ 10

      a.  Einstein and Montefiore ...................................................................................... 10

      b.  Tomaselli ............................................................................................................. 12

   v.  Breach of Contract Claims against Einstein and Montefiore ....................................... 13

   vi.  Claims for Tortious Interference Against Defendants Tomaselli, Castillo, and Jordan 14

   vii.  Claims Against Einstein and Montefiore for Breach of the Implied Covenant of Good Faith and Fair Dealing and For Promissory Estoppel ................................................. 15

CONCLUSION ................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Adler v. Pataki,*
   185 F.3d (2d Cir. 1999) ........................................................................................ 16

*Ashcroft v. Iqbal,*
   556 U.S. (2009) .................................................................................................... 3

*Atane Eng'rs, Architects & Land Surveyors, D.P.C. v. Nassau Cnty.,*
   227 A.D.3d (2d Dep't 2024) ................................................................................. 13

*Baylis v. Marriott Corp.,*
   906 F.2d (2d Cir. 1990) ........................................................................................ 14

*Bell Atl. Corp. v. Twombly,*
   550 U.S. (2007) .................................................................................................... 3

*Beth Israel Medical Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.,*
   448 F.3d (2d Cir. 2006) ........................................................................................ 16

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
   98 F.3d (2d Cir. 1996) .......................................................................................... 16

*Cardwell v. Davis Polk & Wardwell LLP,*
   No. 19-CV-10256 (GHW), 2021 WL 4434935 (S.D.N.Y. Sept. 23, 2021) ........................10, 11

*Crowley v. Billboard Mag.,*
   576 F. Supp. 3d (S.D.N.Y. 2021) ......................................................................... 10

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.,*
   47 F.3d (2d Cir. 1995) .......................................................................................... 15

*Dalton v. Educ. Testing Serv.,*
   87 N.Y.2d (1995).................................................................................................. 15

*Davis v. Monroe County Bd. of Educ.,*
   526 U.S. (1999)..................................................................................................... 5, 6

*Deravin v. Kerik,*
   335 F.3d (2d Cir. 2003) .......................................................................................... 9

*Doe v. Columbia Univ.,*
   831 F.3d (2d Cir. 2016) .......................................................................................... 9

*Doe v. New York Univ.,*
   No. 20-CV-1343 (GHW), 2021 WL 1226384 (S.D.N.Y. Mar. 31, 2021). ...........................10, 11

*Doe v. Vassar Coll.,*
   No. 19-CV-9601 (NSR), 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019).................................... 6

*Feingold v. New York,*
   366 F.3d (2d Cir. 2004) ........................................................................................ 12

*Foman v. Davis,*
   371 U.S. (1963)..................................................................................................... 2

*Gant ex rel. Gant v Wallingford Bd. of Educ.*,
    195 F.3d (2d Cir 1999) ................................................................................ 5
*Goldberg v. Cablevision Sys. Corp.*,
    193 F. Supp. 2d (E.D.N.Y. 2002) ................................................................ 3
*Gurary v. Winehouse*,
    235 F.3d (2d Cir. 2000) .............................................................................. 2
*Hayut v. State Univ. of New York*,
    352 F.3d (2d Cir. 2003) ........................................................................... 5, 7
*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. (2005) ........................................................................................... 8
*John Doe v. New York Univ.*,
    No. 158628/2024 (N.Y. Sup. Ct. Feb. 25, 2025) ...................................... 5
*Joshi v. Trs. of Columbia Univ. in City of New York*,
    No. 17-CV-4112 (JGK), 2018 WL 2417846 (S.D.N.Y. May 29, 2018) ................ 13
*Lama Holding Co. v. Smith Barney Inc.*,
    88 N.Y.2d (1996) ...................................................................................... 14
*Lamberson v. Six West Retail Acquisition, Inc.*,
    122 F.Supp.2d (S.D.N.Y. 2000) ............................................................... 13
*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC.*,
    797 F.3d (2d Cir. 2015) ........................................................................... 2, 4
*McDonnell Douglas Corp. v. Green*,
    411 U.S. (1973) ......................................................................................... 10
*Medical Research Assocs., P.C. v. Medcon Fin. Servs., Inc.*,
    253 F.Supp.2d (S.D.N.Y. 2003) ............................................................... 16
*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    681 F.3d (2d Cir. 2012) ........................................................................... 2, 3
*Ricciuti v. N.Y.C. Transit Auth.*,
    941 F.2d (2d Cir. 1991) .............................................................................. 3
*Roskin-Frazee v Columbia Univ.*,
    474 F Supp 3d (SDNY 2019) ..................................................................... 5
*Rukoro v. Fed. Republic of Germany*,
    976 F.3d (2d Cir. 2020) .............................................................................. 2
*Ruotolo v. City of N.Y.*,
    514 F.3d (2d Cir. 2008) .............................................................................. 2
*Schiebel v Schoharie Cent. School Dist.*,
    120 F4th (2d Cir 2024) ........................................................................... 6, 8
*St. John's Univ., New York v. Bolton*,
    757 F. Supp. 2d (E.D.N.Y. 2010) ..................................................... 14, 15, 16
*State Tchrs. Ret. Bd. v. Fluor Corp.*,
    654 F.2d (2d Cir. 1981) .............................................................................. 2

*Trump v. Simon & Schustern Inc.*,

    No. 23-cv-6883 (PGG), 2025 WL 2017888 (S.D.N.Y. July 18, 2025) ........................................ 2

*Uttarwar v. Lazard Asset Mgmt. LLC*,

    No. 24-1085-CV, 2025 WL 704278 (2d Cir. Mar. 5, 2025) .................................................... 10

*Ware v. Univ. of Vermont & State Agric. Coll.*,

    722 F. Supp. 3d (D. Vt. 2024) ........................................................................................................ 7

*Yusuf v. Vassar Coll.*,

    35 F.3d (2d Cir. 1994) ..................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................................ 3

Fed. R. Civ. P. 15 ..................................................................................................................................... 2

## INTRODUCTION

Plaintiff Kamran Khodakhah ("Plaintiff") respectfully submits this memorandum of law in support of his Motion for Leave to File a Second Amended Complaint.  In his First Amended Complaint, Plaintiff alleged that he was discriminated and retaliated against in violation of Title IX of the Education Amendments of 1972 ("Title IX") related to investigations and sanctions imposed by Albert Einstein College of Medicine ("Einstein").  Defendants Einstein, Montefiore Medicine Academic Health System, Inc. ("Montefiore"), Pablo Castillo, and Bryen Jordan (the "Einstein Defendants"), and Gordon Tomaselli each moved to dismiss the claims against them, respectively. Magistrate Judge Robin Tarnofsky issued a Report and Recommendation ("R&R") that the Court (1) grant in part and deny in part the motion to dismiss the claims against Einstein and Montefiore and (2) dismiss the claims against Castillo, Jordan, and Tomaselli. (ECF No. 79 at 1-2.)

Despite Hon. Judge Tarnofsky recommending that Plaintiff should be granted leave to amend because such an amendment would not necessarily be futile.  (ECF No. 79 at 79), in their objections to the R&R, the Einstein Defendants argued that leave to amend should be denied because Plaintiff was already privy to their arguments for dismissal (ECF No. 81).   Ultimately, Hon. Judge Lewis Kaplan ruled that Plaintiff would be granted leave to file a motion to amend address with specificity how the proposed amendments would cure the deficiencies identified in the Court's order. (ECF No. 88 at p. 12.)

Plaintiff contends that amendment here would not be futile and there is no basis to depart from this Circuit's long-held practice of permitting amendment following dismissal on a motion

to dismiss. As such, Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Amend for leave to file the Proposed Second Amended Complaint[1].

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 15, the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This "liberal" and "permissive standard" is consistent with the court's "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC.*, 797 F.3d 160, 190 (2d Cir. 2015). District Courts have "broad discretion in determining whether to grant leave to amend." *Trump v. Simon & Schustern Inc.*, No. 23-cv-6883 (PGG), 2025 WL 2017888, at *29 (S.D.N.Y. July 18, 2025) (citing *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000)). However, leave to amend is not guaranteed; circumstances such as "undue delay, bad faith, futility of the amendment, and . . . the resulting prejudice to the opposing party" justifies denial of leave to amend. *See State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1963)); *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008).

## ARGUMENT

### I. Plaintiff Should be Permitted to File his Second Amended Complaint

Hon. Judge Kaplan instructed Plaintiff to file the instant motion to address why the changes in Plaintiff's proposed amended pleadings would not be futile. (ECF 88 at p. 12). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies." *Rukoro v. Fed. Republic of Germany*, 976 F.3d 218, 228 (2d Cir. 2020) (cleaned up); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Where a plaintiff's

---

[1] A true and accurate copy of Plaintiff's proposed second amended complaint is attached to the Affirmation of Stuart Bernstein at Exhibit A. A redlined copy detailing the changes between the First Amended Complaint and Proposed Second Amended Complaint is attached to the Affirmation of Stuart Bernstein at Exhibit B.

motion for leave to amend is filed in response to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Goldberg v. Cablevision Sys. Corp.*, 193 F. Supp. 2d 588, 598 (E.D.N.Y. 2002); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). The Court must take Plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the question is whether Plaintiff has alleged sufficient facts to state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Leave to amend is futile if "it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners, Inc. v. Ikanos Commc'ns., Inc.*, 347 Fed. Appx. 617, 622 (2d Cir. 2009). In determining whether amendment would be futile, courts may consider all possible amendments that could be made to the pleading. *See id.*

   i.    **Counsel's Pre-Motion Meet and Confer Does Not Make Amendment of Plaintiff's Pleading Futile**

In their objection to the R&R, Defendants contended that Plaintiff's proposed amendments would be futile because Plaintiff already had an opportunity to address Defendants' then-unfiled motion to dismiss arguments in the First Amended Complaint and failed to cure deficiencies in the pleadings. (ECF 81). As stated in Plaintiff's opposition to Defendants' objections to the R&R, Defendant's argument is unavailing and contrary to this Circuit's precedent. (ECF 85).

To briefly re-iterate, despite Defendants' assertions that Plaintiff was already afforded the opportunity to amend with the benefit of their arguments for dismissal, the discussions among counsel at the meet and confer only referenced general deficiencies that Defendants claimed were

in Plaintiff's pleadings. (ECF 85-1). For instance, the parties discussed the identification of the appropriate parties, the employer-employee relationship between Defendants and Plaintiff, and the availability of damages sought in the Complaint. Defendants' counsel did not discuss other alleged deficiencies at the meet and confer. (*Id.*). In fact, the changes Plaintiff made as a result of the meet and confer, to address the specific issues raised by Einstein's counsel, led to the denial of Defendants' motion on this point.

Even if counsel's meet and confer discussions had included a detailed explanation of the basis for Defendants' then-anticipated motion to dismiss, the Second Circuit has ruled that participation in such pre-motion procedures does not forfeit a plaintiff's right to replead following a substantive ruling on the later motion. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC.*, 797 F.3d at 190 (reversing District Court's decision to deny leave to amend in light of plaintiff's participation in pre-motion conferences and letters and opining that the District Court acted improperly in "present[ing] Plaintiffs with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead.").

Accordingly, any argument that amendment would automatically be futile in light of counsel's meet and confer should be steadfastly rejected.

### ii. The Amendments to Plaintiff's Pleading Adequately Address Deficiencies Identified by the Court and should be Permitted

In the Proposed Second Amended Complaint, Plaintiff has adequately addressed the deficiencies raised by the Court in its determination on Defendants' Motions to Dismiss. Accordingly, for the reasons set forth herein, Plaintiff should be granted leave to amend.

### iii. Title IX Claims Against Einstein and Montefiore

On Plaintiff's claims against Einstein and Montefiore, the R&R concluded that Plaintiff had adequately pleaded his allegations related to the investigation as to his fitness to serve as chair

4

of the Department of Neuroscience, but that he did not adequately allege his claims relating to the two Title IX investigations into his conduct. (ECF No. 79 at 30.)

### a. Deliberate Indifference Claim

Regarding Plaintiff's deliberate inference claim, the R&R concluded that plaintiff did not allege adequately a claim under Title IX based upon the Title IX Investigations or the Retaliation Investigation into Tomaselli's conduct. (ECF No. 79 at 37.)

To state a plausible claim for deliberate indifference under Title IX, a plaintiff must demonstrate that they were subject to harassment or discrimination on the basis of sex; that someone with the authority to address the conduct had actual knowledge of the harassment or discrimination; and that the institution responded with deliberate indifference. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, at 648 (1999). The Second Circuit has clarified that deliberate indifference may be found "when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances," and when remedial action only follows after "a lengthy and unjustified delay." *Hayut v. State Univ. of New York*, 352 F.3d 733, 751 (2d Cir. 2003) (cleaned up).

"Deliberate indifference to discrimination can be shown from a defendant's actions or inaction in light of known circumstances" *Gant ex rel. Gant v Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir 1999). To comply, "a university must respond to known student harassment in a manner that is not clearly unreasonable" *Roskin-Frazee v Columbia Univ.*, 474 F Supp 3d 618, 624 (SDNY 2019). "The 'clearly unreasonable' standard ensures that a university is only held liable for their own official decisions rather than another individual's actions." *John Doe v. New York Univ.*, No. 158628/2024 (N.Y. Sup. Ct. Feb. 25, 2025) (Goetz, J.); *see also Davis*, 526 US at 648 (explaining that "courts should refrain from second-guessing the disciplinary decisions made by

school administrators"). To plausibly allege a claim for deliberate indifference, a plaintiff must show "that the recipient knowingly refused to take any action in response to the behavior, such as investigating or putting an end to the harassment." *Schiebel v Schoharie Cent. School Dist.*, 120 F4th 1082, 1095 (2d Cir 2024). A plaintiff may also allege deliberate indifference by demonstrating that the grievance process undertook by the university was so irregular, that the process was a sham. *Id.*

Plaintiff's proposed amendments to his deliberate indifference claim are not futile. The Second Amended Complaint sets forth additional factual allegations that, taken in the light most favorable to Plaintiff, demonstrate that the Title IX grievance process was a "sham." *Schiebel*, 120 F.4th at 1095. First, the proposed amendment clarifies that the 2018 Title IX policy was inapplicable to the Title IX complaints filed by the Title IX office on July 11, 2022. This clarification is based on the language of the policy and the parties' custom interpretation and practice.

Second, had the Title IX investigator interviewed the witnesses identified by Plaintiff, those witnesses would have provided information refuting the allegations in the Title IX complaints and could have resulted in a different outcome. While disagreement with the outcome of an investigation is insufficient to establish that the process was a sham, Plaintiff has plausibly alleged that the investigator's failure to interview additional identified witnesses, and open bias against Plaintiff in favor of his female accuser, prevented a fair and thorough inquiry into the allegations against him. *See Doe v. Vassar Coll.*, No. 19-CV-9601 (NSR), 2019 WL 6222918, at *8 (S.D.N.Y. Nov. 21, 2019); *see also Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

Third, Plaintiff's proposed amendments make clear that several members of Einstein's Title IX Office, as well as the individual defendants, orchestrated and/or knew of the falsity of the

6

allegations against Plaintiff yet continued with the Title IX procedure against him with the intent to cause the most professional, personal, and reputational damage possible to Plaintiff.

Fourth, Plaintiff's proposed amendments further demonstrate that Einstein had no valid reason for its two-year delay in investigating and adjudicating Plaintiff's retaliation complaint. (Second Amend. Compl. ¶ 265.) Einstein failed to provide any rational basis for its failure to take any investigative steps in response to Plaintiff's retaliation complaint within the sixty (60) day time frame called for by Title IX and Einstein's own policies. *Id.* Instead, Einstein permitted the complaint to languish while Plaintiff remained banned from campus without justification. *Id.* ¶ 268. In fact, by the time Einstein investigated Plaintiff's complaint, Ms. Ramirez and Dean Tomaselli both admitted that at the time of Plaintiff's removal, there was no evidence of retaliation. *Id.* ¶ 269. Thus, while mere delay may not necessarily constitute deliberate indifference, Plaintiff's proposed amendments clearly demonstrate that the delay here was lengthy and unjustified under the circumstances, particularly because the delay made it impossible to properly investigate Plaintiff's claim. *See Ware v. Univ. of Vermont & State Agric. Coll.*, 722 F. Supp. 3d 379, 426 (D. Vt. 2024) ("While delayed investigation does not necessarily qualify as deliberate indifference, it can when that delay is lengthy and unjustified."); *see also Hayut,* 352 F.3d at 751 (concluding that deliberate indifference may be found after "a lengthy and unjustified delay"). Plaintiff has plausibly alleged deliberate indifference based on Einstein's unreasonable delay.

Moreover, the Second Amended Complaint sets forth additional factual allegations to demonstrate that the investigation itself was fundamentally flawed due to procedural irregularities. These irregularities, including the prohibition on Plaintiff to engage witnesses or gather evidence in his defense, go beyond mere disagreement about the credibility determinations—Plaintiff's allegations taken together plausibly demonstrate that Einstein's Title IX process was a sham

because it failed to interview additional witnesses, prohibited a fair adjudication of the allegations against Plaintiff, prohibited Plaintiff from mounting a sufficient and fulsome defense to the claims, and was conducted with the knowledge and understanding that the allegations against Plaintiff were false.

When viewed in the light most favorable to Plaintiff, the Second Amended Complaint states a plausible claim that Einstein acted with deliberate indifference and Plaintiff should be granted leave to amend. *See Schiebel v Schoharie Cent. School Dist.*, 120 F4th 1082 (2d Cir 2024).

### b. Retaliation Claims

On Plaintiff's retaliation claims, the R&R reasoned that Plaintiff did not adequately allege retaliation claims under Title IX, the NYSHRL or the NYCHRL because he did not allege that he engaged in a protected activity. (ECF No. 79 at 47-48.) Under Title IX, a plaintiff engages in a protected activity when they report or otherwise complain about sex-based discrimination or harassment, including formal or informal complaints, participation in a Title IX investigation, or request for adherence to Title IX procedures. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) ("[W]hen a funding recipient retaliates against a person because he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX").

In the R&R Magistrate Judge Tarnofsky reasoned that under some circumstances, "efforts by a respondent to defend himself should perhaps be viewed as protected activity" particularly when the plaintiff clearly alleges that "his defense encompasses a complaint about sex discrimination."  (ECF No. 79 at 45.)  Here, Plaintiff sought to identify and secure potential witnesses in his Title IX investigations. Einstein charged him with a violation of Einstein's so-called "no retaliation policy", without any reference to the actual policy allegedly being violated

and ordered Plaintiff to be suspended from his faculty position, his university e-mail cut off, and immediately removed from campus. As a result of Einstein's retaliatory actions, Plaintiff was unable to conduct research in his lab, supervise the students who work in his lab, and administer his grant-funded research. (Second Amend. Compl. ¶¶ 190-191, 409-410, 430, 432.) Plaintiff maintains that these actions were taken to hinder his ability to gather information and secure witnesses in the Title IX proceeding. *Id.* ¶¶ 188-190, 194-205. *See also* Brake, Retaliation, 90 Minn. L.Rev. 18, 20 (2005) ("Fear of retaliation is the leading reason why people stay silent instead of voicing their concerns about bias and discrimination.").

Moreover, the Second Circuit has held an employee's act of defending himself against charges of discrimination qualifies as protected activity in the Title VII context[2]. *See Deravin v. Kerik*, 335 F.3d 195, 205 (2d Cir. 2003) (holding that that defending oneself against charges of discrimination by testifying in a Title VII proceeding qualifies as protected activity under 42 U.S.C. § 2000e–3(a)). Similarly, here, Plaintiff has plausibly alleged that his efforts to defend himself and secure witnesses in the Title IX process constitute protected activity under Title IX anti-retaliation provisions. Einstein's subsequent actions, including suspending Plaintiff, cutting off his Einstein e-mail address, removing him from campus, and interfering with his research reasonably support an inference of retaliation related to the underlying allegations.

Moreover, Plaintiff's amendments further plead that in addition to mounting a defense against the false allegations against him, he also engaged in protected activity by filing a title IX

---

[2] *See Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (explaining that "claims [under Title VII and Title IX] have so much in common that, at least on certain sorts of facts, rules the Supreme Court established for Title VII litigation appear to apply also to such similar claims of sex discrimination under Title IX."); *Yusuf v. Vassar Coll.,* 35 F.3d 709, 714 (2d Cir. 1994) (internal citation omitted) ("Because the statutes share the same goals and because Title IX mirrors the substantive provisions of Title VI . . . courts have interpreted Title IX by looking to the body of law developed under Title VI, as well as the caselaw interpreting Title VII.").

Complaint himself against Dean Tomaselli.  Accordingly, Plaintiff's proposed amendments to his retaliation claims are not futile.[3]

### iv.    NYSHRL and NYCHRL Claims

Claims brought under NYSHRL and NYCHRL are "analyzed using the three-step burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Uttarwar v. Lazard Asset Mgmt. LLC*, No. 24-1085-CV, 2025 WL 704278, at *2 (2d Cir. Mar. 5, 2025). The question under NYSHRL and NYCHRL is whether the plaintiff can demonstrate that their employer treated them "less well, at least in part of a discriminatory reason." *Crowley v. Billboard Mag.*, 576 F. Supp. 3d 132, 142 (S.D.N.Y. 2021).  Courts have held that procedural irregularities can be sufficient for an employee to show that they were subject to disparate treatment based on their protected characteristic. *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256 (GHW), 2021 WL 4434935, at *27 (S.D.N.Y. Sept. 23, 2021); *Doe v. New York Univ.*, No. 20-CV-1343 (GHW), 2021 WL 1226384, at *25 (S.D.N.Y. Mar. 31, 2021).

#### a.  Einstein and Montefiore

The R&R concluded that plaintiff stated a claim against Einstein and Montefiore under the NYSHR and NYCHRL based on the chair investigation, but that those claims otherwise should dismissed as Plaintiff had not alleged that Einstein and Montefiore treated him less well than other similarly situated employees. (ECF No. 79 at 53—55.).

Plaintiff's proposed amendments to his claims under NYSHR and NYCHRL are not futile as the Second Amended Complaint clarifies that similarly situated female respondents were treated

---

[3] The R&R recognized that if the Court determines that Plaintiff adequately alleged a protected activity, "there can be no dispute that Plaintiff has pleaded the other elements of a prima facie retaliation claim" as Defendants were aware of Plaintiff's allegedly protected activity given that Tomaselli conceded that Plaintiff's outreach to potential witnesses was the reason for the sanctions. (ECF No. 79 at 48.)

more favorably than Plaintiff in other cases. For example, no female faculty member named as a respondent in a Title IX complaint had ever been removed from campus because she discussed the allegations with potential witnesses or otherwise attempted to defend herself of the charges. Similarly, unlike Plaintiff, who was subject to a gag order, Plaintiff's female accusers could speak freely with the campus community regarding their complaints. Moreover, the Second Amended Complaint alleges that Plaintiff was treated less well than his similarly situated female complainants in that unlike Plaintiff, the female complainants, when they themselves became respondents, did not have their e-mail access cut off and were not subject to suspension or removal. (Second Amend. Compl. ¶¶ 639, 652.).

Furthermore, procedural irregularities are sufficient to establish that an employee was discriminated against due to a protected characteristic. *See Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256 (GHW), 2021 WL 4434935, at *27 (S.D.N.Y. Sept. 23, 2021); *Doe v. New York Univ.*, No. 20-CV-1343 (GHW), 2021 WL 1226384, at *25 (S.D.N.Y. Mar. 31, 2021) (plaintiff's allegations of procedural irregularities gave rise "to a minimal inference of discriminatory intent"). Plaintiff maintains that he has adequately alleged that the Title IX process was irregular. Plaintiff's proposed amendments clearly demonstrate that the delay was lengthy and unjustified under the circumstances and that the investigation itself was fundamentally flawed due to procedural irregularities and the investigator's failure to interview key witnesses whose testimony could have refuted the allegations.

Accordingly, Plaintiff's proposed amendments to the claims under NYSHR and NYCHRL are not futile as Plaintiff has plausibly alleged that Einstein and Montefiore treated him less well than other similarly situated employees.

11

### b. Tomaselli

With respect to the NYSHLR and NYCHRL claims against Tomaselli, the R&R reasoned that Plaintiff failed to state a claim for aiding and abetting because plaintiff failed to allege discrimination by a principal such as Einstein or Montefiore, in relation to those investigations. (ECF No. 79 at 55.) On Plaintiff's claims related to the chair investigation, the R&R recommended that the aiding and abetting claims against Tomaselli under NYSHLR and NYCHRL should be dismissed because Plaintiff did not allege that Tomaselli had actually participated in the allegedly discriminatory conduct—the decision not to conduct the chair investigation pursuant to a Title IX policy. *Id.* at 56—57.

Plaintiff's proposed amendments to his claim for aiding and abetting against Tomaselli are not futile as it demonstrates that Tomaselli used the power and authority of the Title IX Office as a weapon against Plaintiff to better serve his interests. *See* Second Amend. Compl. ¶ 353. For example, Ms. Ramirez routinely endorsed and enabled Dean Tomaselli's weaponization of the Title IX Office and procedures to target and harm Plaintiff. *Id.* ¶ 368. Tomaselli was identified as the "Responsible Executive" for "the management" of Einstein's Title IX Policy. *See* ECF 58-8 at 30; ECF 58-9 at 29.

In sum, Plaintiff submits that the proposed amendments sufficiently allege Tomaselli's active participation in and facilitation of discriminatory conduct through his misuse of the Title IX office. By weaponizing the Office's procedures, Tomaselli directly aided and abetted the discriminatory conduct against Plaintiff. These actions go beyond mere supervisory inaction and establish an affirmative pattern of misconduct which states a claim under NYSHRL and NYCHRL. *See Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) ("The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the

12

NYCHRL because the language of the two laws is 'virtually identical.'"); *see also Lamberson v. Six West Retail Acquisition, Inc.*, 122 F.Supp.2d 502, 513 (S.D.N.Y. 2000) (applying the "aider and abetter standard" to claims under the NYSHRL and the NYCHRL).

     **v.  Breach of Contract Claims against Einstein and Montefiore**

Regarding Plaintiff's breach of contract claims, the R&R concluded that Plaintiff did not adequately allege breach of contract claims against Einstein and Montefiore. (ECF No. 79 at 73—78.) Under New York law, a breach of contract claim requires that a plaintiff must allege "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and resulting damages." *Atane Eng'rs, Architects & Land Surveyors, D.P.C. v. Nassau Cnty.*, 227 A.D.3d 708, 709-10 (2d Dep't 2024).

On the contract claim arising from Einstein's Title IX policies, Plaintiff's proposed amendments make clear that Einstein and Montefiore breached his employment contract by violating the Title IX policies, and even if not explicitly incorporated, it was an implied contract. Einstein's Title IX policies made specific promises as to procedure, not just general principles. *See Joshi v. Trs. of Columbia Univ. in City of New York*, No. 17-CV-4112 (JGK), 2018 WL 2417846 (S.D.N.Y. May 29, 2018).

On the contract claim arising out of 2016 Chair Appointment Letter, Plaintiff's proposed amendments are not futile. In the first instance (misconduct), an employee is entitled to any required due process protections surrounding discipline, whereas demotion based on "performance" is typically based on the university's discretion (as indicated in Plaintiff's 2016 Chair Appointment letter).

Here, Tomaselli informed Plaintiff in the July 11, 2022 letter that his performance was great, but that he was being demoted from Chairmanship for disciplinary reasons. As such, Plaintiff

was entitled to the required procedures promised him, including notice of the allegations, a copy of the investigation report, and an adjudication.

Regarding the contract claim arising out of 2014 Retention Letter, the R&R reasoned that the plain meaning of "interim" is temporary, however, Plaintiff's second amended complaint makes clear that the agreement is not ambiguous and that the parties understood the funding would be indefinite at the time the agreement was made and never changed thereafter.

In sum, at this stage, dismissal of Plaintiff's contract claims would be premature. Plaintiff has plausibly alleged the existence of a valid and enforceable contract—arising from Einstein's Title IX policies, the 2016 Chair Appointment Letter, and the 2014 Retention Letter—and breach based on Defendants' conduct. Moreover, to the extent that Defendants dispute the existence, validity, or scope of the agreements at issue, Plaintiff maintains that these factual issues are inappropriate for resolution at this stage given that the terms are ambiguous. *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010). As such, the case must proceed to discovery to properly ascertain whether a contract exists, its validity, and its scope.

### vi. Claims for Tortious Interference Against Defendants Tomaselli, Castillo, and Jordan

The Court dismissed Plaintiff's tortious interference claim against defendants Tomaselli, Castillo, and Jordan due to its finding that Plaintiff failed to allege a breach of contract claim. (ECF No. 88 at 11).

A claim for tortious interference requires a plaintiff to allege (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996). A party may not recover for tortious

interference with contract without proving that the underlying contract has been breached." *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990). Here, as discussed above, Plaintiff's amendments adequately plead the existence of a contract and breach. Accordingly, amendment to address dismissal of Plaintiff's tortious interference claim would not be futile.

### vii.  Claims Against Einstein and Montefiore for Breach of the Implied Covenant of Good Faith and Fair Dealing and For Promissory Estoppel

On Plaintiff's claims for breach of the implied covenant of good faith and fair dealing—related to the Tenure and Compensation Policy, the Title IX Policy, the 2016 Chair Appointment Letter, and the 2014 Retention Letter—and for promissory estoppel, the R&R reasoned that plaintiff failed to state a claim against Einstein and Montefiore as the claims were duplicative of the breach of contract claims. (ECF No. 79 at 79.)

Under New York Law, to adequately plead a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) the existence of a contract between the parties; (2) that the defendant acted in a manner that, although not expressly forbidden by the contract, deprived the plaintiff of the benefit of the bargain; and (3) that damages resulted from that conduct. *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995). A claim for promissory estoppel in New York requires (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the plaintiff on that promise; and (3) injury or detriment suffered because of the plaintiff's reliance. *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995).

While the Einstein Defendants argued that Plaintiff's claims are duplicative of his contract claims (ECF No. 57 at 29), it is premature to dismiss claims merely because they are duplicative of a plaintiff's other claims. Fed. R. Civ. P. 8(d)(2)—(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.") "At the pleading stage, Plaintiff is not

15

required to guess whether it will be successful on its contract, tort, or quasi-contract claims." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010). Furthermore, the Second Circuit has explained that "[Rule 8(d)] offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as we must do in reviewing orders granting motions to dismiss." *Adler v. Pataki,* 185 F.3d 35, 41 (2d Cir. 1999).

Whether Plaintiff's asserted claims result in duplicative damages is better reserved for a later stage of the proceedings, after discovery clarifies the extent of Plaintiff's losses and the appropriate remedies. Where courts have dismissed unjust enrichment claims as duplicative of contract claims, it was on a motion for summary judgment, "with the benefit of a full factual record." *Bolton*, 757 F. Supp. 2d at 184. *See, e.g., Beth Israel Medical Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc*., 448 F.3d 573, 578–579 (2d Cir. 2006) (appeal from summary judgment); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 16–17 (2d Cir. 1996); *Medical Research Assocs., P.C. v. Medcon Fin. Servs., Inc.*, 253 F.Supp.2d 643, 649–50 (S.D.N.Y. 2003) ( holding that plaintiff's fiduciary duty and tortious interference claims were duplicative on motion for summary judgment). Moreover, there is a dispute as to whether a valid and enforceable contract exists, making it critical that Plaintiff assert additional theories of liability. *See Bolton*, 757 F. Supp. 2d at 184 ("the threshold question is whether an enforceable contract exists that governs the subject matter underlying the unjust enrichment claim"). While Plaintiff cannot recover damages under multiple theories of liability, it is premature to dismiss Plaintiff's claims as duplicative merely because the claims may overlap in theory or damages without the benefit of a full factual record. *See id.*

## CONCLUSION

Based on the foregoing, the Court should grant Plaintiff's Motion to Amend and for leave to file the Proposed Second Amended Complaint.

**Dated: October 24, 2025**

        **Respectfully submitted,**

        **NESENOFF & MILTENBERG, LLP**

        **By: /s/ _Stuart Bernstein_**
        **Stuart Bernstein, Esq.**
        **Andrew T. Miltenberg, Esq.**
        **Gabrielle M. Vinci, Esq.**
        **363 Seventh Avenue, Fifth Floor**
        **New York, New York 10001**
        **(212) 736-4500**
        **amiltenberg@nmllplaw.com**
        **sbernstein@nmllplaw.com**
        **gvinci@nmllplaw.com**

## CERTIFICATE OF SERVICE

I certify that on October 24, 2025, this document was filed through the ECF System of the United States District Court for the Southern District of New York and will be served electronically on the Registered Participants in the notice of Electronic Filing.

        /s/ _Stuart Bernstein_
        Stuart Bernstein, Esq.