

1133 Avenue of the Americas
Suite 1500
New York, New York 10036

(212) 316-9500
rkaplan@kaplanmartin.com

November 26, 2025

**BY ECF**

The Honorable Robyn F. Tarnofsky
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

          Re:    *Khodakhah v. Montefiore Medicine Academic Health System, Inc.,
et al.*, No. 1:24-cv-00839-LAK-RFT

Dear Judge Tarnofsky:

      We represent Defendants Montefiore Medicine Academic Health System, Inc., and Albert Einstein College of Medicine (collectively, "Einstein") in the above-referenced matter. By order dated November 3, 2025 (ECF No. 101), Your Honor directed the parties to "complete the Report of Rule 26(f) Meeting and Proposed Case Management Plan . . . and to file it on the docket by November 26, 2025." The order further directed that, "[i]n the event that the parties disagree about the dates or other terms of the proposed scheduling order, they shall file on the docket a joint letter briefly explaining the dispute(s) and competing proposal(s) by November 26, 2025."

      The parties have met and conferred, as required by Rule II(A) of your case management procedures. While we generally agree on the relevant dates in connection with a proposed scheduling order,[1] there is material disagreement on two issues involving the proper scope of discovery in what is now a much smaller case: (1) the number of fact depositions; and (2) whether expert testimony requiring there to be expert discovery would be appropriate.[2] Both of these issues relate to the scope of permissible discovery now that the only claims left in this case relate solely to one question – what policy (Title IX or some other policy) should have been applied to the

---

[1] Given the limited scope of what's remaining in this case, Defendants initially proposed a schedule under which discovery closed in April. We have agreed to the dates in the attached proposed case management plan, under which discovery would close in May, in order to accommodate Plaintiff's counsel's obligations in other matters. Nevertheless, we remain eager to move this case forward as efficiently as possible.

[2] *Cf. Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, 2019 WL 6117533, at *2, *6 (S.D.N.Y. Nov. 18, 2019) (denying expert discovery at the outset as "not proportional to the needs of the case" and refusing to require parties to "expend hundreds of thousands of dollars" on expert work of uncertain value).

investigation as to whether Plaintiff should have remained as Chair of Einstein's Neuroscience Department (the "Chair Investigation"). Accordingly, we respectfully submit this joint letter to explain the parties' positions on these issues.

**Plaintiff's Position**

Following the Court's order on Defendants' motion to dismiss, Plaintiff's remaining claims in this matter are for gender discrimination in violation of Title IX of the Education Amendments of 1972 ("Title IX"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") with respect to Defendants' handling of the Chair Investigation against Plaintiff.[3] *See* ECF 79; ECF 88.Defendants argue that the court's ruling limits the issues in this case to a singular question: whether or not the Chair Investigation should have been handled under Einstein's Title IX policy. *See infra*. However, this limitation ignores the fact that Plaintiff's claims sound in *discrimination*, not simply a procedural defect. Thus, in order to prevail on his remaining claims, Plaintiff will have to prove, at a minimum, that he was treated less well than others on the basis of his sex/gender and suffered damages as a result.

Federal Rule of Civil Procedure 26 permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 20(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an *extremely* broad concept." *Mandarin Oriental, Inc. v. HDI Global Ins. Co.*, No. 23-cv-4951 (JPC)(SLC), 2025 WL 1638071, at *2 (S.D.N.Y. June 10, 2025) (citing *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)) (emphasis added). Under Rule 26, "relevancy" is to construed broadly to "encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in th[e] case." *Lively v. Wayfarer Studios, LLC.*, No. 24-cv-10049, 2025 WL 1397047, at *1 (S.D.N.Y. May 14, 2025) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

In Plaintiff's view, Defendant's requested narrowing of discovery is premature and only serves to hinder the parties' opportunity to develop a full and appropriate record in this matter. With respect to the arbitrary limitation of depositions to five per side--half that permitted under the Federal Rules--the only basis Defendant offers for this limitation is that, in Defendant's view, there is only a small group of individuals who potentially have knowledge relevant to Plaintiff's claims. However, Plaintiff is not in a position to determine who comprises this "small group of individuals" that Defendants have identified in their own minds. As of the date of this filing, and without the benefit of any discovery or disclosures from Defendants, Plaintiff is able to determine at least three individuals who would potentially have information relevant to the issues remaining in this matter and who Plaintiff anticipates deposing as part of discovery. While Defendants represent that should circumstances change, they are willing to meet and confer regarding additional discovery or a change to these arbitrary limitations, that only invites further delay and debate regarding discovery. To limit depositions now with an understanding that the parties will confer if more are needed only opens the need for what would otherwise be unnecessary meet and confer discussions and motion practice should the parties not agree. This process and potential

---

[3] Plaintiff notes that currently pending before the Court is Plaintiff's motion for leave to file a Second Amended Complaint asserting a number of additional claims including, but not limited to, claims against Gordon Tomaselli, breach of contract, and additional claims under Title IX, the NYSHRL, and the NYCHRL stemming from Defendants' actions beyond the Chair Investigation. To the extent any additional claims survive in Plaintiff's Second Amended Complaint, following anticipated motion practice, the instant limiting of discovery at this premature juncture would result in a second discovery schedule being ordered, thereby delaying the case even further.

future strain on the Court's time and resources can be avoided by simply permitting the parties their rights to depositions as contemplated by the Federal Rules. Plaintiff is in no way interested in unnecessarily delaying discovery in this matter or otherwise engaging in an inefficient or unnecessarily costly discovery process. However, Plaintiff is not in a position to agree to the premature and prejudicial limiting of discovery based solely on Defendants' assertion that Plaintiff should not need any more than Defendants are willing to give.

With respect to the need for expert discovery, Defendants again ask the court to limit Plaintiff's opportunity to engage in expert discovery based solely on Defendants' position that Plaintiff is not entitled to any damages, despite also acknowledging that Plaintiff's claims under the NHYSRL and the NYCHRL entitle Plaintiff to recovery of compensatory damages. *See Bethel v. Royal Leaf NY LLC D/B/A Statis Cannabis Dispensary*, No. 24-CV-9073 (DLC) (KHP), 2025 WL 3216640, at *8 (S.D.N.Y. Oct. 9, 2025), report and recommendation adopted sub nom. *Bethel v. Royal Leaf NY, LLC.*, No. 24CV9073 (DLC), 2025 WL 3216413 (S.D.N.Y. Nov. 18, 2025). Plaintiff's position is that the remaining claims in this action are not simply remedied by a do-over Chair Investigation; Plaintiff is entitled to recover damages for the harm done by Defendants' initial violation of his statutory rights which damages will necessarily be supported by expert discovery. To wholesale accept Defendants' position, before any discovery is even exchanged, and preclude Plaintiff from even exploring the potential use of experts prejudices Plaintiff's ability to recover the full breadth of damages available to him under the applicable law. Notably, Defendants cite *Cf. Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, 2019 WL 6117533, at *2, *6 (S.D.N.Y. Nov. 18, 2019) for the proposition that the court can and should preclude expert discovery at the outset of this case as not proportion to Defendants' assessment of the needs of this case. However, this precedent is inapposite as the Court there found that "sampling-related expert discovery" was not proportional to the needs of the Plaintiff's case as the issues turned on an individual analysis of individual loans. *See* 2019 WL 6117533, at *4. Here, Plaintiff seeks to engage, if determined necessary, in expert discovery directly related to his claim of damages.

**Defendants' Position**

This case, which is now significantly streamlined as a result of Your Honor and Judge Kaplan's orders on Einstein's motion to dismiss, requires only limited, streamlined discovery. (ECF Nos. 79, 88) As a result of those rulings, there is only one discrete question left in this case: whether the Chair Investigation should have been conducted pursuant to Einstein's Title IX policy.[4] *See* ECF 79 at 27-28; ECF 88 at 2-3.

In Einstein's view, given the narrowness of this sole remaining issue, five fact depositions per side is not only more than sufficient, but would be proportional to the needs of this much narrower case. Plaintiff has not (and cannot) provide any credible explanation for why he needs to depose as many as 10 people. That number far exceeds the small group of individuals who could possibly have knowledge about the decision as to what policy to apply to the Chair Investigation. More specifically, to the extent Plaintiff seeks to depose individuals who were interviewed as fact witnesses as part of the Chair Investigation or individuals at the outside third-party investigator T&M who conducted those interviews, it is hard to see how that testimony could possibly be relevant to the limited question of whether the Title IX policy should have been applied in the first place. *See* Fed. R. Civ. P. 26(b) (discovery must be "relevant to any party's claim or

---

[4] As permitted by Judge Kaplan's order, Plaintiff has moved for leave to amend his complaint for the second time. (ECF Nos. 93-95). The deadline for Einstein to oppose Plaintiff's motion is December 8, 2025. (ECF Nos. 98, 100).

3

defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"). In fact, the only evidence that conceivably would be relevant to the question of what policy should have been applied would be records pertaining to the Chair Investigation itself as well as the person(s) at Einstein who decided what policy to apply. In the unlikely event that Plaintiff is able to come up with a credible reason to expand the number of fact depositions later based on discovery obtained in this case, we would of course be happy to revisit this issue.

Nor can Plaintiff justify his request for expert discovery with respect to the calculation of monetary damages. The main problem for Plaintiff here would be proximate causation. In other words, in order to recover monetary damages, Plaintiff would have to prove a counterfactual: that Plaintiff would not have been removed as Chair had the Title IX policy been applied to the Chair Investigation. But there is no way to recreate what might have happened if a different policy had been applied especially since, as Plaintiff admits in his proposed Second Amended Complaint (ECF No. 94-2, ¶ 147), the decision whether to remove Plaintiff as Chair was at the sole discretion of Dean Tomaselli. All that Plaintiff would be entitled to, should he prevail, is a "do-over" by Einstein of the Chair Investigation using the Title IX policy. *See Doe v. Hobart & William Smith Colleges*, 750 F. Supp. 3d 79, 114 (W.D.N.Y. 2024) ("It is not th[e] Court's job to relitigate the underlying claims."). *See also Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994) (Congress did not intend Title IX to "impair the independence of universities" in imposing discipline); *Bailey v. New York L. Sch.*, 2021 WL 5500078, at *3 (2d Cir. Nov. 24, 2021) (judicial review under Title IX must accord "sufficient deference to the decisions of school disciplinarians"). In fact, it would be hard to imagine anything more disproportionate to the needs of what is left in this case than to recreate through discovery the evidence actually obtained and evaluated by T&M as part of the Chair Investigation, which involved interviews of more than 50 different individuals.[5] Assuming summary judgment is not granted (and we think it will be), the presentation of such evidence would not only be an exercise in futility, but would convert a trial that would almost certainly not last more than a week to a trial that could well last longer than a month.

For similar reasons, Plaintiff has no need for a so-called "Title IX expert." First, as Your Honor surely knows, courts in this District have long disfavored the admission of expert testimony about areas of the law like Title IX. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("This Court has repeatedly held that the testimony of an expert on matters of domestic law is inadmissible for *any* purpose."); *see also Sacerdote v. New York Univ.*, 2019 WL 2763922, at *3 (S.D.N.Y. July 1, 2019) (granting motion to strike expert declarations because they "impermissibly seek to offer expert testimony on a legal conclusion"; the prohibition on legal opinions is "a kind of axiomatic principle"). Moreover, forcing Einstein to go through the costly and needless exercise of deposing Plaintiff's expert, or identifying our own "Title IX expert" to rebut any such testimony would clearly not be proportional to the needs of what is left in this case.

---

[5] The fact that Plaintiff is bringing claims under New York State and City human rights laws makes no difference. Although those statutes "entitle a successful plaintiff to compensatory damages for pain and suffering," *Garcia v. Comprehensive Center, LLC*, 2019 WL 8274296, at *6 (S.D.N.Y. Nov. 21, 2019), the same proximate causation obstacles that would preclude damages under Title IX would preclude it under these statutes: Plaintiff cannot show that applying the Title IX policy to the Chair Investigation would have led to a different result.

      Finally, Defendants respectfully request that the Court resolve these disputes concerning the proper scope of discovery now, rather than later. Resolving these issues now will conserve judicial economy as well as the parties' resources by allowing the parties to avoid spending unnecessary time and money on obtaining evidence that ultimately turns out to be irrelevant and inadmissible. Although expert issues are often addressed through motions in limine, waiting until that stage would be needlessly costly given the narrow scope of this case prior to trial. And conserving resources by properly tailoring discovery at the outset will be particularly beneficial here, given the limited nature of the remaining claims.

*   *   *

      The parties thank the Court for its consideration of this letter and are prepared to address these issues further at the case management conference scheduled for Wednesday, December 3, 2025, at 10:30 a.m.

Respectfully submitted,

*/s/ Christopher K. Connolly*
Roberta A. Kaplan
Christopher K. Connolly
Kaplan Martin LLP
1133 Avenue of the Americas
Suite 1500
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
cconnolly@kaplanmartin.com

cc: Counsel of record (by ECF)