**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KAMRAN KHODAKHAH,

              *Plaintiff*,

    v.

MONTEFIORE MEDICINE ACADEMIC HEALTH
SYSTEM, INC., et al.,

              *Defendants*.

No. 1:24-cv-00839-LAK-RFT

---

## EINSTEIN DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Roberta A. Kaplan
Christopher K. Connolly
KAPLAN MARTIN LLP
1133 Avenue of the Americas
Suite 1500
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
cconnolly@kaplanmartin.com

Gabrielle E. Tenzer
Anna Collins Peterson
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
gtenzer@heckerfink.com
apeterson@heckerfink.com

December 8, 2025

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

   A.   Standard of Review ................................................................................................. 3

   B.   Plaintiff's Proposed Second Amended Complaint Does Not Cure the Defects
       in His Title IX Claims ............................................................................................ 5

     1.   Deliberate Indifference ................................................................................. 5

     2.   Erroneous Outcome ...................................................................................... 6

     3.   Retaliation .................................................................................................... 10

   C.   Plaintiff Fails to Cure the Deficiencies in His NYSHRL and NYCHRL Claims ............. 12

   D.   Plaintiff's Contract Claims Are Also Materially Unchanged ............................................ 13

CONCLUSION ..................................................................................................................... 16

## TABLE OF AUTHORITIES

**CASES**                                                                     *Page(s)*

*Arag-A Ltd. v. Republic of Argentina*,
    178 F. Supp. 3d 192 (S.D.N.Y. 2016) ..................................................................... 14

*Attestor Value Master Fund v. Republic of Argentina*,
    940 F.3d 825 (2d Cir. 2019) ..................................................................................... 14

*Bank of New York Corp. Forex Transactions Litig.*,
    No. 12-md-2335 (LAK), 2014 WL 4494158 (S.D.N.Y. Sept. 4, 2014) ................... 15

*Budhani v. Monster Energy Co.*,
    No. 20 Civ. 1409 (LJL), 2021 WL 5761902 (S.D.N.Y. Dec. 3, 2021) ...................... 6

*Carroll v. Trump*,
    590 F. Supp. 3d 575 (S.D.N.Y. 2022) ................................................................. 4, 10

*Carroll v. Trump*,
    680 F. Supp. 3d 491 (S.D.N.Y. 2023) ....................................................................... 4

*Cedar Swamp Holdings, Inc. v. Zaman*,
    487 F. Supp. 2d 444 (S.D.N.Y. 2007) ....................................................................... 4

*Doe v. Columbia Univ.*,
    551 F. Supp. 3d 433 (S.D.N.Y. 2021) ....................................................................... 6

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................................................... 4

*Health-Chem Corp. v. Baker*,
    915 F.2d 805 (2d Cir. 1990) ...................................................................................... 4

*Lucente v. Int'l Business Machines Corp.*,
    310 F.3d 243 (2d Cir. 2002) ...................................................................................... 4

*Lindberg v. Dow Jones & Co., Inc.*,
    No. 20 Civ. 8231 (LAK), 2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021) ................... 6

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007) ........................................................................ 4

*Network Apps, LLC v. AT&T Mobility LLC*,
    778 F. Supp. 3d 610 (S.D.N.Y. 2025) ..............................11, 14, 15, 16

*Papelino v. Albany Coll. of Pharmacy*,
    633 F.3d 81 (2d Cir. 2011) ..........................................................................11

*In re Parmalat Sec. Litig.*,
    501 F. Supp. 2d 560 (S.D.N.Y. 2007) ........................................................ 4

*Roe v. St. John's Univ.*,
    91 F.4th 643 (2d Cir. 2024) .......................................................................... 8

*Ruffolo v. Oppenheimer & Co.*,
    987 F.2d 129 (2d Cir. 1993) ........................................................................ 4

*Ruiz v. County of Rockland*,
    609 F.3d 486 (2d Cir. 2010) ...................................................................... 12

*Rukoro v. Fed. Republic of Germany*,
    976 F.3d 218 (2d Cir. 2020) ........................................................................ 4

*S.G. v. Bank of China Ltd.*,
    No. 23 Civ. 2866 (LAK), 2024 WL 1861158 (S.D.N.Y. Apr. 29, 2024)................................ 15

*Shumway v. United Parcel Service, Inc.*,
    118 F.3d 60 (2d Cir. 1997) ........................................................................ 12

*Ware v. Univ. of Vermont & State Agric. Coll.*,
    722 F. Supp. 3d 379 (D. Vt. 2024).............................................................. 10

**RULES**

Fed. R. Civ. P. 15(a)(1) .................................................................................... 3

Fed. R. Civ. P. 15(a)(2) .................................................................................... 3

Defendants Montefiore Medicine Academic Health System, Inc., Albert Einstein College of Medicine, Dr. Pablo Castillo, and Dr. Bryen Jordan (the "Einstein Defendants") respectfully submit this memorandum of law in opposition to Plaintiff Kamran Khodakhah's motion for leave to file a second amended complaint.

## PRELIMINARY STATEMENT

Plaintiff commenced this action almost two years ago, asserting Title IX and analogous state and city human rights law claims against the Einstein Defendants and other individuals arising out of investigations into allegations of Plaintiff's harassment and mistreatment of Einstein graduate students and junior faculty members. One such investigation (which is now the basis for the only claims left in this case) resulted in Plaintiff's removal from his position as Chair of Einstein's Neuroscience Department, although he continues to serve as a member of Einstein's faculty.

Several months later, following discussions in which the Einstein Defendants pointed out various deficiencies in his claims, Plaintiff filed a first amended complaint as of right. Both the Einstein Defendants and the individual defendants moved to dismiss the first amended complaint in its entirety. Following oral argument, this Court determined, in a thorough Report and Recommendation ("R&R"), that virtually all of Plaintiff's claims failed as a matter of law. Judge Kaplan subsequently adopted the R&R in every material respect.

Plaintiff now requests what is effectively a third bite at the apple, seeking leave to file an even longer (118-page, 656-paragraph) second amended complaint. But when it comes to Plaintiff's proposed amended complaint, "there is nothing new under the sun." Ecclesiastes 1:9. Plaintiff's proposed new pleading does not cure any of the defects that both this Court and Judge Kaplan pointed out as fatal to his prior pleading. All that the proposed second amended complaint

1

does instead is add hyperbole, conjecture, and immaterial detail—not to mention disagreements with this Court's legal rulings. As a result, the proposed second amended complaint only serves to underscore the fact that Plaintiff lacks any viable claims for relief with respect to the causes of action that this Court and Judge Kaplan have already dismissed. Because permitting Plaintiff to file his proposed second amended complaint would be nothing more than an exercise in futility, his motion for leave to amend should be denied.

## **BACKGROUND**

Plaintiff filed his initial complaint on February 5, 2024. ECF 1. Following preliminary discussions in which the Einstein Defendants indicated that they intended to move to dismiss the complaint, Plaintiff agreed to consider amending his pleading. ECF 30. By letter dated April 30, 2024, Plaintiff informed the Court that "[f]ollowing the parties' meet and confer on April 25th and again on April 29th, Plaintiff wishes to file an Amended Complaint." ECF 33. He subsequently filed his first amended complaint as of right on September 23, 2024. ECF 48 ("FAC").

All the defendants named in the first amended complaint moved to dismiss. ECF 53-58. In the R&R dated July 31, 2025, this Court recommended dismissing nearly every claim that Plaintiff had alleged. ECF 79 ("R&R"). The R&R determined that the only claim that should be permitted to proceed concerns Plaintiff's allegation that Einstein should have applied its Title IX policy to the "Chair Investigation" that was conducted by outside, third-party investigators. *See id.* at 27-29. That investigation resulted in Plaintiff's removal from his position as Chair of the Neuroscience Department, a decision which even Plaintiff concedes was completely at the discretion of Dean Gordan Tomaselli. *See* ECF 60 at 28. With respect to that claim, the Court concluded that "[d]rawing all inferences in Plaintiff's favor, as I must *at this stage*," Plaintiff had stated a claim that Einstein's Title IX policy should have applied to that investigation. R&R at 28-

29 (citation omitted; emphasis added).[1]  The R&R also recommended that Plaintiff be given leave to replead.  *Id.* at 78-79.

In an order dated September 16, 2025, Judge Kaplan adopted the R&R's "thorough" analysis.  ECF 88 ("Order") at 1.  Although Judge Kaplan "agree[d] with the R&R that amendment . . . would not be necessarily futile," he could not "conclude that such amendment would not be futile because plaintiff ha[d] not specified how amendment would cure the pleading defects set forth above." *Id.* at 12.  Accordingly, Judge Kaplan's Order permitted the instant motion to replead, but directed Plaintiff to "include[] a version of the proposed amended complaint showing all changes and a memorandum addressing why the amendments would not be futile." *Id.*

On October 24, 2025, Plaintiff filed his anticipated motion for leave to amend.  ECF 93. In compliance with Judge Kaplan's Order, Plaintiff submitted both a redline version of his proposed second amended complaint reflecting changes, ECF 94-2 ("SAC"), as well as a brief purporting to demonstrate why his proposed amendment would not be futile, ECF 95 ("Pl.'s Br.").

## ARGUMENT

### PLAINTIFF'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED

**A.    Standard of Review**

While a plaintiff may timely amend his complaint once as of right, Fed. R. Civ. P. 15(a)(1), after that, amendment is only permissible with "the court's leave," and only "when justice so requires," Fed. R. Civ. P. 15(a)(2).  And although leave to amend under Rule 15(a)(2) generally

---

[1] Pursuant to this Court's scheduling order dated November 3, 2025, ECF 101, on November 26, 2025, the parties submitted a proposed case management plan for proceedings concerning the limited issue remaining in the case, ECF 102, as well as a joint letter presenting their respective positions on the scope of discovery necessary to address that remaining issue, ECF 103.  By order dated December 3, 2025, the Court set a schedule for limited fact discovery through February 2, 2026, and directed the parties to appear for a status conference on February 9, 2026. ECF 104.

should be "freely given," *id.*, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also Carroll v. Trump*, 590 F. Supp. 3d 575, 578 (S.D.N.Y. 2022) (Kaplan, J.) ("futility of amendment is a ground upon which leave to amend properly may be denied").

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies." *Rukoro v. Fed. Republic of Germany*, 976 F.3d 218, 228 (2d Cir. 2020) (quotation marks omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (denial of leave to amend proper "[w]here it appears that granting leave to amend is unlikely to be productive"); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here, as here, there is no merit in the proposed amendments, leave to amend should be denied."). "[I]t is unexceptional for federal courts to deny leave to amend on the basis of futility where the proposed amended pleading would not withstand a motion to dismiss." *Carroll v. Trump*, 680 F. Supp. 3d 491, 504 (S.D.N.Y. 2023) (Kaplan, J.) (quotation marks omitted).

Leave to amend is also properly denied based on a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 592-93 (S.D.N.Y. 2007) (Kaplan, J.) (denying leave to amend where "plaintiffs have had more than sufficient opportunity to file sufficient complaints," including with "the benefit of . . . rulings by the Court," but still "did little to cure" pleading defects); *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 453 (S.D.N.Y. 2007) (Kaplan, J.) ("Plaintiffs already have had two opportunities to plead a proper

RICO claim.  As they have pointed to no new allegations that would permit them to do so on a third attempt, the Court concludes that leave to amend would be futile.").

**B.      Plaintiff's Proposed Second Amended Complaint Does Not Cure the Defects  in  His Title IX Claims**

Plaintiff's motion for leave to amend should be denied as futile because, as his memorandum of law and proposed second amended complaint demonstrate, his proposed amendments do not cure his prior pleading defects.  For starters, Plaintiff's proposed amendments do nothing to fix the deficiencies in his Title IX claims against the Einstein Defendants under theories of deliberate indifference, erroneous outcome, or retaliation.

**1.      Deliberate Indifference**

In his brief, Plaintiff contends that the Title IX investigation was a "sham."  Pl.'s Br. at 6. Therefore, according to Plaintiff, his "proposed amendments to his deliberate indifference claim are not futile." *Id.*  Plaintiff's proposed second amended complaint, however, like his first amended complaint, does not actually plead or even mention a deliberate indifference claim. *Compare id*. at 5-8 (describing Title IX claims as "deliberate indifference" claims), *with* SAC ¶¶ 523-38 (alleging an erroneous outcome claim under Title IX).

The same thing happened in the last round of briefing.  Previously, Plaintiff attempted to amend his complaint to include a deliberate indifference claim solely by virtue of arguments he made in his brief, since in his first amended complaint he brought only an erroneous outcome claim.  FAC ¶¶ 434-49.  In opposition to the Einstein Defendants' motion to dismiss, Plaintiff argued that he had somehow also stated a claim for deliberate indifference under Title IX, despite the absence of the words "deliberate indifference" anywhere in his pleading.  *See* ECF 60 at 16-20.  The Einstein Defendants identified this defect in their reply.  *See* ECF 64 at 3-4 (citing *Doe v.*

*Columbia Univ.*, 551 F. Supp. 3d 433, 458 (S.D.N.Y. 2021) ("It is well established in this district that a plaintiff cannot amend his pleadings in his opposition briefs.")).

Now, despite having had the opportunity to include a deliberate indifference claim in his proposed second amended complaint, Plaintiff has again pleaded *only* a claim for erroneous outcome, failing yet again to mention deliberate indifference in his proposed second amended complaint. *See* SAC ¶¶ 523-38. But a plaintiff is required to state his actual causes of action in his complaint (not just in his brief). *See, e.g.*, *Budhani v. Monster Energy Co.*, No. 20 Civ. 1409 (LJL), 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021) (declining to "address the substance" of an argument that "is not pleaded"; "[a] plaintiff cannot amend his or her complaint through their briefing"). Plaintiff has failed again to do so here.

### 2.    Erroneous Outcome

With respect to an erroneous outcome claim, Plaintiff's proposed second amended complaint does not cure the deficiencies previously identified by this Court and Judge Kaplan either.

Plaintiff's first argument—that the "proposed amended complaint clarifies that the 2018 Title IX policy was inapplicable to the Title IX complaints filed by the Title IX office on July 11, 2022," Pl.'s Br. at 6—simply rehashes a contention that both this Court and Judge Kaplan have already considered and rejected. Plaintiff's brief fails to identify any paragraphs in the proposed second amended complaint that purportedly "clarif[y]" which policy applied. *Cf. Lindberg v. Dow Jones & Co., Inc.*, No. 20 Civ. 8231 (LAK), 2021 WL 3605621, at *10 (S.D.N.Y. Aug. 11, 2021) (Kaplan, J.) ("Where a request to amend makes no specific argument as to how an amended complaint would cure prior deficiencies or pass muster under Rule 12(b)(6), it is properly denied as futile." (quotation marks omitted)). In fact, the part of the proposed pleading that appears to

deal with this issue, *see* SAC ¶¶ 228-36, does not clarify the applicability of any policy; it merely asserts that it was "procedurally unusual and out of normal practice" for Einstein to apply the 2018 policy in this context, *id.* ¶ 235. But as this Court already concluded, Einstein was not required to apply the later policy by the language of the policy itself, R&R at 29, and which Title IX policy applies is a question guided by the applicable Department of Education ("DOE") regulations and based on the timeframe during which the challenged actions occurred, *see* R&R at 29-30; Order at 2-5. On that basis, Einstein properly applied its 2018 policy,

Plaintiff does not (and cannot) identify any new facts to disturb this legal determination. He does not, for example, plead that any challenged actions occurred during a different timeframe that would render the 2022 Title IX policy applicable. His new allegations concerning his subjective expectation that the 2022 Title IX policy would apply, *see* SAC ¶¶ 229-31, 235, have no bearing on the issue given guidance provided by the DOE regulations, *see* Order at 3 ("[Plaintiff] has not demonstrated how his expectations regarding which policy would apply are relevant."). He merely asserts, for example, that he "had not even been aware that any policy other than the 2022 Title IX Policy at Einstein would or could have been applicable to any investigation in 2022," SAC ¶ 231, and that "Einstein did not display, discuss, or otherwise make available for review and consideration any Title IX policy other than the 2022 Title IX Policy," *id.* ¶ 232. Nor is it relevant that Einstein allegedly deviated from past practice in applying the Title IX policy since both this Court and Judge Kaplan held it was permitted to apply by federal regulations. *See* R&R at 30; Order at 3-4; *contra* Pl.'s Br. at 6.

Plaintiff's second argument—that the Title IX investigator failed to interview witnesses who "would have provided information" that "could have resulted in a different outcome," Pl.'s Br. at 6—was also considered and rejected. Again, Plaintiff's brief fails to point to which (if any)

new allegations in the proposed second amended complaint would support this claim.  The parts of the new pleading that address this issue are largely unchanged from the first amended complaint. *Compare* SAC ¶¶ 328-39, *with* FAC ¶¶ 258-64. And none of those paragraphs identify specific witnesses or information that would have affected the outcome of the Title IX proceedings.  *See* SAC ¶¶ 328-39.  At most, Plaintiff refers in passing to his "attempt[] to contact someone he believed to be a witness," *id.* ¶ 329, but that falls well short of curing the defects both this Court and Judge Kaplan identified in Plaintiff's earlier pleading.  In any event, as this Court already correctly determined, "[u]nder Einstein's Title IX Policy, the investigator in a Title IX matter has discretion to decide what is relevant."  R&R at 35.  And Plaintiff's new pleading, like his old one, fails to identify "what other potential witnesses the investigator neglected to contact . . . or what information . . . any other potential witnesses would have provided."  *Id.*

Plaintiff's third contention—"that several members of Einstein's Title IX Office, as well as the individual defendants, orchestrated and/or knew of the falsity of the allegations against" him, yet continued with the Title IX proceedings anyway, Pl.'s Br. at 6-7—also misses the mark.  Again, Plaintiff's brief does not identify any new and specific allegations in the proposed second amended complaint that would support this argument. As the Court previously observed, "[t]here is a difference between ignoring a plaintiff's allegations that the accuser has lied and considering such allegations but concluding that the weight of the evidence indicates that the accuser was truthful." R&R at 42.  The parts of the new pleading that appear to speak to this issue fall well short of what is required to state an erroneous outcome claim.  *See Roe v. St. John's Univ.*, 91 F.4th 643, 657 (2d Cir. 2024) (requiring, for purposes of erroneous outcome claim, "*clear* procedural irregularities" (emphasis in original)).

Indeed, Plaintiff frames his "new" allegations using sensational verbs in a conclusory fashion: he asserts that Dean Tomaselli "*weaponized* the power of Einstein's Title IX office," SAC ¶ 3, and "*conspired . . . to devise a plan to target and hurt* [Plaintiff]," *id.* ¶ 106 (emphases added). But nothing in the proposed second amended complaint calls into question this Court's well-reasoned determination that "Plaintiff here has not alleged facts suggesting that the investigator ignored witness statements that the allegations against him were false." R&R at 42.

Plaintiff's allegations about the procedures used in the Title IX investigation fare no better than the ones this Court previously considered and rejected. *See, e.g.*, *id.* at 39 ("Plaintiff suggests that the investigator was biased against him because she was female . . . and makes conclusory assertions that she was hostile towards him during the interview, without describing how she expressed the alleged hostility other than noting that she reminded him of the directive not to contact witnesses about the investigations."). Plaintiff's proposed amendment therefore constitutes a textbook example of futility.

While it is unclear whether Plaintiff believes his allegations about delay sound in erroneous outcome or deliberate indifference, *see supra* pp. 5-6, his assertion that "Einstein had no valid reason for its two-year delay in investigating and adjudicating [his] retaliation complaint" lacks merit, Pl.'s Br. at 7. This Court paid particular attention to this allegation in the R&R, properly rejecting it by explaining that the "nearly two-year delay was significant," but "Plaintiff here has not alleged that the school failed to apprise him of his right to lodge a complaint or delayed opening an investigation into Tomaselli's conduct." R&R at 41. Accordingly, the delay did not support "a conclusion that the investigation was a sham or that Einstein and Montefiore were deliberately indifferent to the truth." *Id.* And Judge Kaplan, in turn, fully adopted the R&R's reasoning on this: "As set forth in the R&R . . . '[p]laintiff here has not alleged that the school failed to apprise

9

him of his right to lodge a complaint or delayed opening an investigation into [his complaint].'"
*See* Order at 7 (quoting R&R at 41).

Nothing in Plaintiff's proposed second amended complaint disturbs these well-reasoned conclusions. The paragraphs of the proposed pleading that Plaintiff cites do not address the purported delay at all. *See* SAC ¶¶ 265, 268, 269. There are no new factual allegations that would show that the delay negatively impacted Plaintiff's right to file a complaint or delayed the opening of an investigation—precisely the failure that this Court previously determined was fatal to the first amended complaint. Instead, Plaintiff again merely asserts that "the delay made it impossible to properly investigate Plaintiff's claim," Pl.'s Br. at 7—the exact allegation that both the R&R and the Order rejected. Moreover, in making this argument for a second time, Plaintiff relies on the same cases that Judge Kaplan already concluded did not support his position. *Compare* Pl.'s Br. at 7 (citing *Ware v. Univ. of Vermont & State Agric. Coll.*, 722 F. Supp. 3d 379, 426 (D. Vt. 2024)), *with* Order at 7 & nn. 19, 21 (*Ware* and other authorities on which Plaintiff relied "do not . . . hold" that an unreasonable delay in adjudication can amount to deliberate indifference). Because Plaintiff "raises no new facts," and the "new argument[s]" he presents are "without merit," amendment on this ground would be futile. *Carroll*, 590 F. Supp. 3d at 582.

### 3.    Retaliation

Plaintiff's proposed amendment to his Title IX retaliation claim is likewise deficient since it merely repackages the allegations and arguments that this Court and Judge Kaplan already rejected. *See* Pl.'s Br. at 8-10.

The proposed second amended complaint fails to fix the fundamental problem both this Court and Judge Kaplan identified with the first amended complaint: Plaintiff cannot sustain a retaliation claim because he does not allege that he engaged in a protected activity. *See* R&R at

44-48; Order at 8; *see also Papelino v. Albany Coll. of Pharmacy*, 633 F.3d 81, 91 (2d Cir. 2011) (Title IX retaliation claim requires, among other things, "protected activity by the plaintiff"). Plaintiff primarily alleges that his protected activity was seeking "to identify and secure potential witnesses in his Title IX investigations."  Pl.'s Br. at 8; *see, e.g.*, SAC ¶ 237 (alleging Plaintiff "exercised his right to participate in the Title IX process by reaching out to colleagues who might serve as witnesses").  But that is the same argument he made before, and this Court (correctly) concluded that "Plaintiff's witness outreach based on regulations does not qualify as protected activity."  R&R at 47.  Plaintiff does not identify any new facts bearing on this question, and he cannot rely on new Title VII (as opposed to Title IX) cases cited in his brief to make the exact same argument again.  *See, e.g.*, *Network Apps, LLC v. AT&T Mobility LLC*, 778 F. Supp. 3d 610, 619 (S.D.N.Y. 2025) ("The mere filing of an amended complaint does not entitle a plaintiff to relitigate his claims absent new factual allegations." (quotation marks omitted; cleaned up)); *see also* R&R at 46-47 (recognizing that Title VII, unlike Title IX, establishes "participation and opposition" rights based on statutory text).

Plaintiff's theory that he "engaged in protected activity by filing a [T]itle IX Complaint himself against Dean Tomaselli," Pl.'s Br. at 9-10, suffers from a different significant and fatal flaw.  Although he alleges that his suspension constituted an adverse action, *see* SAC ¶¶ 166-80, and points to his Title IX claim against Dean Tomaselli as the reason for it, *see id.* ¶¶ 275-89, as the proposed second amended complaint makes clear, Plaintiff was suspended *before* he brought his claim against Dean Tomaselli, *compare id.* ¶ 239 (Plaintiff suspended from campus in July 2022), *with id.* ¶ 277 (claim against Dean Tomaselli brought in August 2022).  Consequently, this "new" factual allegation cannot save Plaintiff's Title IX retaliation claim either.

**C.**    **Plaintiff Fails to Cure the Deficiencies in His NYSHRL and NYCHRL Claims**

The proposed second amended complaint is also insufficient to revive Plaintiff's state and local law claims. *See* Pl.'s Br. at 10-11. As Plaintiff recognizes, the R&R recommended dismissal of these claims because, among other things, "Plaintiff had not alleged that Einstein and Montefiore treated him less well than other similarly situated employees." *Id.* at 10 (citing R&R at 53-55). Judge Kaplan adopted this reasoning, holding that because Plaintiff "did not allege that Einstein and Montefiore treated him less well than similarly situated employees . . . the R&R correctly concluded that plaintiff failed to allege adequately NYSHRL and NYCHRL claims." Order at 8-9.

Plaintiff now asserts that his "Second Amended Complaint clarifies that similarly situated female respondents were treated more favorably than Plaintiff in other cases." Pl.'s Br. at 10-11. In support, he relies on paragraphs concerning "Complainants 1 and 2," the female junior faculty members Plaintiff was accused of harassing, whom he named in his own retaliation complaint. SAC ¶¶ 639, 652. Plaintiff alleges that these women "were not subject to adverse actions such as the shutting off of their e-mail, suspension, or dismissal." *Id.* ¶ 639.

But this argument ignores the applicable standard. "To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). "An employee is similarly situated to co-employees if they were," among other things, "engaged in comparable conduct." *Ruiz v. County of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010) (quotation marks omitted). Here, Plaintiff does not and cannot show that the two complainants—who held different positions than Plaintiff, were not subject to sexual harassment allegations like Plaintiff, and did not engage in the same alleged conduct (sharing details of sexual harassment allegations

with department colleagues) that caused Einstein to bar Plaintiff from campus—are similarly situated to Plaintiff. The proposed amended pleading should be dismissed for precisely the same reasons as the prior complaint. *See* Order at 8 ("Plaintiff's bare claim to the contrary does not overcome the R&R's thorough and well-reasoned analysis.").

Plaintiff's alternative argument—his contention "that he has adequately alleged that the Title IX process was irregular," Pl.'s Br. at 11—is even weaker. Indeed, this Court rejected it on the ground that "Plaintiff has not alleged facts supporting an inference that the process he was afforded in the Title IX Investigations was irregular," R&R at 54, and Judge Kaplan adopted the R&R's analysis, *see* Order at 8-9. Plaintiff does not point to any new allegations in the proposed second amended complaint that would change this outcome; rather, he continues to claim that "the delay was lengthy and unjustified" and that the investigator "fail[ed] to interview key witnesses." Pl.'s Br. at 11; *see, e.g.*, SAC ¶ 356 ("The investigator did not appear to have interviewed any of the many other students who were present at the annual meeting."). As described above, the proposed second amended complaint still would be insufficient to survive a motion to dismiss. *See supra*, Point B.1.

## D.    Plaintiff's Contract Claims Are Also Materially Unchanged

Permitting Plaintiff to amend his contract claims would also be futile because his new allegations once again mirror his old ones in nearly every respect. Plaintiff's breach of contract claim is again premised on his theories that Einstein breached his employment contract by (a) violating the terms of its Title IX policies, (b) removing him as Chair, and (c) failing to provide interim funding to his lab. *See* Pl.'s Br. at 13-14. These are the exact same arguments that he made before, and both this Court and Judge Kaplan properly rejected them.

As to Plaintiff's breach of contract theory based on Einstein's Title IX policies, Judge Kaplan previously dismissed Plaintiff's claim on the ground that "those policies were not incorporated by reference into the employment contract, nor were they implied contracts." Order at 10 (citing R&R 61-64). The new allegations in the proposed second amended complaint simply reassert that "employment policies incorporated by reference in an appointment letter constitute a contract which is binding on the employer," SAC ¶ 561, without addressing—let alone fixing— the deficiencies both the R&R and the Order identified. Moreover, Plaintiff's citation to additional case law purportedly supporting his position, *see* SAC ¶ 562—thus effectively seeking reconsideration of this Court's and Judge Kaplan's prior determinations—is an improper basis on which to permit amendment, *see Network Apps*, 778 F. Supp. 3d at 619 (amendment is not an opportunity to relitigate claims absent new factual allegations).

Plaintiff's other breach of contract theories concerning his removal as Chair and interim funding for his laboratory likewise remain flawed. Because Plaintiff's brief does not cite any part of the proposed second amended complaint asserting new facts regarding those claims, beyond adding minor details concerning the purportedly "perpetu[al]" nature of Einstein's funding of his lab, *see* Pl.'s Br. at 13-14; SAC ¶¶ 440-42, he does not "address[] why the amendments would not be futile," Order at 12. And nothing in the proposed second amended complaint materially alters the gravamen of these claims, *see* SAC ¶¶ 570-76, 592-98, which this Court thoroughly analyzed in its R&R, *see* R&R at 64-66, and Judge Kaplan correctly dismissed in his Order, *see* Order at 10-11; *see also Arag-A Ltd. v. Republic of Argentina*, 178 F. Supp. 3d 192, 203 (S.D.N.Y. 2016) ("[W]here an unambiguous document requires dismissal in a contract case, further amendment will often be futile."), *aff'd sub nom. Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825 (2d Cir. 2019).

14

Plaintiff's tortious interference with contract claim against Drs. Castillo and Jordan, *see* Pl.'s Br. at 14-15, fares no better.  As this Court and Judge Kaplan recognized, this claim rises and falls with the breach of contract claim.  *See* R&R at 72-73; Order at 11.  In other words, because the proposed second amended complaint does not adequately allege a breach of contract, permitting amendment of Plaintiff's tortious interference claim would also be futile.  *Cf. S.G. v. Bank of China Ltd.*, No. 23 Civ. 2866 (LAK), 2024 WL 1861158, at *5 (S.D.N.Y. Apr. 29, 2024) (Kaplan, J.) ("[P]ermitting plaintiffs to add their second proposed claim—for 'aiding and abetting breach of fiduciary duty'—would be futile because it would not allege an underlying breach of fiduciary duty.").

Finally, Plaintiff does not even try to connect his implied covenant of good faith and fair dealing and promissory estoppel claims to any new allegations in the second amended complaint. *See* Pl.'s Br. at 15-16.  Instead, he makes a completely new *legal* argument: that "it is premature to dismiss claims merely because they are duplicative of plaintiff's other claims" before "discovery clarifies the extent of Plaintiff's losses and the appropriate remedies."  *Id.*  While a court may consider "new claims or factual allegations that arguably address the deficiencies the Court previously identified," it must nonetheless "apply the law of the case doctrine to recurring issues that do not involve new factual allegations."  *Network Apps*, 778 F. Supp. 3d at 619-20 (quotation marks omitted); *see also In re Bank of New York Corp. Forex Transactions Litig.*, No. 12-md-2335 (LAK), 2014 WL 4494158, at *4 (S.D.N.Y. Sept. 4, 2014) (Kaplan, J.) ("[T]he only proposed amendment . . . is in the form of an argument, not an assertion of fact.  There would not be good cause for such an amendment, nor would it survive a motion to dismiss.").  The proper way to assert that argument (which Plaintiff has waived) would have been in opposition to the motions to dismiss or in a motion for reconsideration, since legal arguments untethered to any new factual

15

allegations are improper on a motion for leave to amend. *See Network Apps*, 778 F. Supp. 3d at 619.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion for leave to file a second amended complaint should be denied.

Respectfully submitted,

Dated:  December 8, 2025
       New York, New York

By: _____

Roberta A. Kaplan
Christopher K. Connolly
Kaplan Martin LLP
1133 Avenue of the Americas
Suite 1500
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
cconnolly@kaplanmartin.com

Gabrielle E. Tenzer
Anna Collins Peterson
Hecker Fink LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
gtenzer@heckerfink.com
apeterson@heckerfink.com

*Counsel for Defendants Montefiore Medicine Academic Health System, Inc., Albert Einstein College of Medicine, Dr. Pablo Castillo, and Dr. Bryen Jordan*

16

**Certificate of Compliance**

I, Roberta A. Kaplan, pursuant to Local Civil Rule 7.1(c), certify that this memorandum of law complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, the memorandum contains 4,914 words.

Dated: December 8, 2025
      New York, New York

                                               Roberta A. Kaplan