UNITED STATES DISRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAMRAN KHODAKHAH,

        *Plaintiff*,

   -against-

MONTEFIORE MEDICINE ACADEMIC
HEALTH SYSTEM, INC., et al.,

        *Defendant*.

No. 24 Civ. 839 (LAK) (RFT)

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000

## TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ...................................................................................................ii-iv

PRELIMINARY STATEMENT ................................................................................................1

PROCEDURAL HISTORY........................................................................................................3

FACTS .........................................................................................................................................5

LEGAL STANDARD.................................................................................................................11

ARGUMENT ..............................................................................................................................12

    I.      PLAINTIFF'S PROPOSED AMENDMENTS FAIL TO ALLEGE A TORTIOUS
           INTERFERENCE CLAIM .........................................................................................12

           A.     Plaintiff's Amendments Are Insufficient to Plead a Breach of Contract...........12

           B.     The Proposed SAC Alleges Dean Tomaselli Was Acting Within the Scope of
               His Employment, Barring Plaintiff's Tortious Interference Claim....................12

           C.     Plaintiff Again Fails to Plead that Dean Tomaselli's Conduct Fell Within the
               Narrow Exception Under Which Agents May Be Liable for Their Employers'
               Conduct ..............................................................................................................15

    II.     PLAINTIFF'S AMENDMENTS ARE INSUFFICIENT TO PLEAD HIS
           DISCRIMATION CLAIMS .......................................................................................19

           A.     Plaintiff's Direct Discrimination Claim Fails Because the Proposed SAC Does
               Not Allege Gender Animus.................................................................................19

           B.     Plaintiff Has Not Alleged Dean Tomaselli "Actually Participated" in the
               Underlying (Purportedly) Discriminatory Conduct ..........................................23

CONCLUSION.............................................................................................................................25

TABLE OF AUTHORITIES

**Cases**

*Ashby v. ALM Media, LLC,*
    110 A.D.3d 459 (1st Dep't 2013) ................................................................. 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................... 11, 22

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007) ..................................................................... 5

*Babcock v. N.Y. State Off. of Mental Health,*
    2009 WL 1598796 (S.D.N.Y. June 8, 2009) ...................................... 21

*Bradbury v. Woller Cope-Schwarz,*
    20 A.D.3d 657 (3d Dep't 2005) ................................................................. 15

*Canon U.S.A., Inc. v. F & E Trading LLC,*
    2017 WL 4357339 (E.D.N.Y. Sept. 29, 2017) ................................. 17

*Dashdevs LLC v. Cap. Mkts. Placement, Inc.,*
    210 A.D.3d 525 (1st Dep't 2022) ......................................................... 12

*Finley v. Giacobbe,*
    79 F.3d 1285 (2d Cir. 1996) ................................................................. 13

*Fried v. LVI Servs., Inc.,*
    2011 WL 2119748 (S.D.N.Y. May 23, 2011) ................................. 24

*Harrison v. SUNY Downstate Med. Ctr.,*
    2017 WL 4326507 (E.D.N.Y. Sept. 25, 2017) ................................. 23

*Henry v. Fox News Network LLC,*
    629 F. Supp. 3d 136 (S.D.N.Y. 2022) ............................................. 18

*In re Lehman Bros. Mortg.-Backed Sec. Litig.,*
    650 F.3d 167 (2d Cir. 2011) ............................................................... 11

*Israel v. Wood Dolson Co.,*
    1 N.Y.2d 116 (1956) ............................................................................. 13

*Kartiganer Assocs., P.C. v. Town of New Windsor,*
    108 A.D.2d 898 (2d Dep't 1985) ................................................... 13, 15

*Koret, Inc. v. Christian Dior, S.A.,*
    161 A.D.2d 156 (1st Dep't 1990) ..................................................... 13

*Lama Holding Co. v. Smith Barney Inc.*,
    88 N.Y.2d 413 (1996) ................................................................... 12

*Lucente v. Int'l Bus. Machs. Corp.*,
    310 F.3d 243 (2d Cir. 2002) ......................................................... 11

*Marino v. Vunk*,
    39 A.D.3d 339 (1st Dep't 2007) ................................................... 16

*Mayorga v. Greenberg*,
    2023 WL 6307994 (E.D.N.Y. Sept. 28, 2023) ............................. 19

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ......................................................... 20

*Murtha v. Yonkers Child Care Ass'n Inc.*,
    45 N.Y.2d 913 (1978) ................................................................... 17

*Nezaj v. PS450 Bar & Rest.*,
    719 F. Supp. 3d 318 (S.D.N.Y. 2024) ..................................... 19, 24

*Petkanas v. Kooyman*,
    303 A.D.2d 303 (1st Dep't 2003) ............................................ 15, 16

*Protic v. Dengler*,
    46 F. Supp. 2d 277 (S.D.N.Y.)
    *aff'd*, 205 F.3d 1324 (2d Cir. 1999) ........................................... 16

*Ruha v. Guior*,
    277 A.D.2d 116 (1st Dep't 2000) ................................................. 16

*Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*,
    158 F. Supp. 2d 335 (S.D.N.Y. 2001) .......................................... 23

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015) ........................................................... 19

*Vogt v. Witmeyer*,
    87 N.Y.2d 998 (1996) ................................................................... 18

*Vogt v. Witmeyer*,
    212 A.D.2d 1013 (4th Dep't 1995) ............................................... 17

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
    401 U.S. 321 (1971) ..................................................................... 11

**Statutes**

N.Y. Exec. L. § 296(1)(a) ............................................................................................ 19

N.Y.C. Admin. Code § 8–107(1)(a) ............................................................................ 19

## PRELIMINARY STATEMENT

Plaintiff Kamran Khodakhah's latest effort to assign liability to anyone but himself for the consequences of his own misconduct fares no better than the numerous failed attempts that came before it. First, he amended his complaint after Defendants previewed their proposed motion to dismiss arguments. Then, a Report and Recommendation issued, recommending dismissal of all of Plaintiff's claims against Defendant Dean Gordon Tomaselli ("Dean Tomaselli" or the "Dean"). Over Plaintiff's objections, the District Court adopted the Report and Recommendation and dismissed the claims against Dean Tomaselli. In the face of two court orders, Plaintiff's proposed amendment still pursues the very same claims. But the proposed complaint does little to address the numerous deficiencies identified in the Report and Recommendation and the District Court order adopting it. Plaintiff simply revives rejected arguments, at best tinkering with his earlier inadequate pleading to add barebones, conclusory allegations. Because Plaintiff's "new" allegations do not alter the Report and Recommendation or the District Court order's well-founded legal analysis, Plaintiff's motion should be denied.

In his proposed second amended complaint, Plaintiff admits, again, that numerous students and faculty at the Albert Einstein College of Medicine ("Einstein" or the "College") complained about his wrongdoing, ranging from "persistent general mistreatment" and use of discriminatory nicknames, to "inappropriate and unwanted physical touching" and sexual misconduct, among other claims. Faced with these myriad complaints, from various sources, Dean Tomaselli in his role as dean of the College, did what anyone in his shoes should do: investigate the claims and protect his faculty, students, and staff for both the short and long terms.

Despite Plaintiff's dissatisfaction with the outcome of the investigations that followed, Dean Tomaselli's handling of these sensitive human resource issues does not give rise

1

to liability. Specifically, Plaintiff's amended pleading does not cure the deficiencies which resulted in the dismissal of his prior complaint.

First, and as the Report and Recommendation and Dismissal Order concluded, Plaintiff's tortious interference with contract claim fails because, again, Plaintiff has not alleged the breach of a valid contract. Moreover, Dean Tomaselli cannot be held individually liable for conduct undertaken in his capacity as an Einstein employee; Plaintiff does not allege that Dean Tomaselli's conduct was malicious or for "purely personal gain," as the Report and Recommendation recognized is required to impose liability on an employee for his employer's contract breach. ECF. No. 79 (the "Report and Recommendation" or "R&R") at 75–79. Plaintiff's new vague and conclusory allegations that Dean Tomaselli was "in cahoots" with Defendants Dr. Pablo Castillo and Dr. Bryen Jordan—who Plaintiff alleges fabricated complaints against him—do not change the analysis. Dr. Castillo and Dr. Jordan's alleged conduct cannot be attributed to Dean Tomaselli simply by adding conclusory allegations that Dean Tomaselli was involved in their scheme without any factual support for this claim. Moreover, Dean Tomaselli's decision to suspend and dismiss Plaintiff from his chairmanship and to direct him to stay off campus were not "purely" malicious; rather, as the SAC alleges, the Dean acted in response to serious allegations from Einstein students, faculty, and staff.

Next, Plaintiff's discrimination claims against Dean Tomaselli under the New York City and New York State Human Rights laws again fail. The direct discrimination claims fail because it is fundamental to sex discrimination claims that the conduct at issue be discriminatory, *i.e.*, based on gender. And Plaintiff does not allege any facts to support an inference of gender animus. Moreover, Dean Tomaselli must have "actually participated" in any discriminatory conduct to sustain an aiding and abetting claim, as the Report and

Recommendation explained. Plaintiff's vague and conclusory allegations that Dean Tomaselli "weaponized" the Title IX office do not address the deficiencies the Report and Recommendation previously identified. Plaintiff does not allege how Dean Tomaselli was involved with the adjudication of the Title IX claims he insists were mishandled, nor does he allege Dean Tomaselli could have stopped the investigation which ultimately led to Plaintiff's dismissal as Chair of the Neuroscience Department, all allegations which the Report and Recommendation explained would be required to allege "actual participation."

Plaintiff's proposed amendments again fail to state claims against Dean Tomaselli for tortious interference with contract and sex discrimination. Plaintiff has had ample opportunity to assert viable claims and his failure to do so, after three bites at the apple, makes clear that his claims lack factual support entirely. For the reasons set forth below, the motion should be denied.

## PROCEDURAL HISTORY

After Plaintiff commenced this action in February 2024, the parties met and conferred regarding an anticipated motion to dismiss. As a result, Plaintiff subsequently amended his complaint on September 23, 2024. ECF No. 48. Defendants all filed motions to dismiss on November 15, 2025. ECF Nos. 53, 56.

This court issued a report and recommendation recommending dismissing all claims against Dean Tomaselli. The Report and Recommendation recommended dismissal of most other claims, too, with the exception of a discrimination claim under Title IX, the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NYCHRL") against only Defendants Einstein and Montefiore concerning the investigation that resulted in Plaintiff's dismissal as Chair of the Neuroscience Department (the "Chair Investigation"). *See generally* R&R.

Specifically, as to the claims against Dean Tomaselli, the Report and Recommendation concluded that Plaintiff's NYSHRL and NYCHRL aiding and abetting discrimination claims (to the dubious extent Plaintiff could advance claims raised for the first time in his opposition brief) failed to state a claim in large part because Plaintiff had not alleged discrimination by a principal. R&R at 52, 55. Insofar as a single theory of discrimination survived against Defendant Einstein and Montefiore concerning the Chair Investigation, Plaintiff had not adequately pled aiding and abetting liability against Dean Tomaselli because he did not plausibly allege that Dean Tomaselli "actually participated" in the alleged discrimination. *Id.* at 57. Likewise, the Report and Recommendation recommended dismissing the tortious interference claim against Dean Tomaselli because Plaintiff had not adequately pled a breach of contract. *Id.* at 72–73. The Court further explained that Plaintiff failed to allege that (i) Dean Tomaselli's acts fell outside the scope of his employment, *id*. at 75, that (ii) Dean Tomaselli's conduct was not incidental to a lawful purpose, *id*. at 77, or that (iii) his acts were for purely personal gain, *id*. at 78.

The District Court adopted the Report and Recommendation on September 16, 2025, and granted the motions to dismiss, except again, with respect to certain limited discrimination claims against Defendants Einstein and Montefiore. ECF No. 88 (the "Dismissal Order"). With respect to the claims against Dean Tomaselli, the Court held that "the R&R correctly concluded that plaintiff failed to allege adequately NYSHRL and NYCHRL claims against Tomaselli." Dismissal Order at 10. Likewise, the Court dismissed the tortious interference claim against Dean Tomaselli because Plaintiff failed to plead a breach of contract. *Id*. at 11.

Despite these conclusions, Plaintiff's Second Amended Complaint (the "SAC") has not narrowed a single theory or withdrawn a single claim. *See generally* ECF No. 94-2. Instead, Plaintiff's proposed amendment repeats the same errors which both the Report and Recommendation and Dismissal Order identified. Accordingly, Plaintiff's new conclusory allegations would be futile as they do not plausibly allege any of his claims.

## FACTS[1]

The factual allegations in the proposed SAC remain largely the same as those alleged in the first amended complaint. At a high level, the SAC again brings claims that Dean Tomaselli tortiously interfered with Plaintiff's purported employment contract and discriminated against him based on Dean Tomaselli's responses to various complaints from Einstein students, faculty, and staff regarding Plaintiff's offensive, inappropriate, and abusive conduct.

### *Einstein Faculty Raise Concerns About Plaintiff*

In February 2022, Einstein neuroscience faculty raised concerns about Dr. Khodakhah, who was at that time the Chair of the Neuroscience Department at Einstein. SAC ¶¶ 126–28. In a letter sent to Dr. Khodakhah (the "Letter of Concern"), thirteen faculty members expressed concern about his "demeaning and unprofessional comments" to staff and his "autocratic behaviors" raised by staff, students, and faculty. *Id.* ¶ 111.

Plaintiff newly claims that Dean Tomaselli "was aware of the falsity of the allegations against Dr. Khodakhah" in the Letter of Concern, *id.* ¶ 142, but notably does not allege that Dean Tomaselli participated in drafting the letter, *see id.* ¶¶ 109, 113–14. Likewise,

---

[1] While Dean Tomaselli again disputes many of Plaintiff's allegations, consistent with the standard on motions to dismiss, these facts are taken from the proposed SAC. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

while Plaintiff alleges that Dean Tomaselli "used the opportunity to attack Plaintiff," he does not

provide any factual allegations to support this conclusory allegation. *Id*. ¶ 143.

Along with the Letter of Concern, the head of the Neuroscience Graduate Student

Organization, Dr. Jordan, sent to the Associate Dean for Graduate Programs in Biomedical

Sciences, Victoria Freedman, a "'student survey' that contained purported anonymous 'student

comments,'" with which Plaintiff disagrees as to substance, but in which "students had alleged

mistreatment, including discriminatory and sexist comments, by Dr. Khodakhah." *Id*. ¶¶ 118–19.

The SAC adds duplicative allegations regarding the alleged falsity of the claims contained in the

student survey. *Id*. ¶¶ 122–24. Notably, these additions do not mention Dean Tomaselli or allege

that Dean Tomaselli took any part in fabricating complaints against Plaintiff. *Id*.

As a result of the Letter of Concern, Einstein launched an independent

confidential investigation of these allegations. *Id*. ¶¶ 146–47. The investigation was conducted

by an independent third party. *Id*. ¶ 147.

### *Dean Tomaselli Suspends Plaintiff as Chair of the Neuroscience Department*

On March 10, 2022, Dean Tomaselli, in his capacity as dean, notified Dr.

Khodakhah of this investigation and suspended him as department chair pending the results of

the investigation. *Id*. ¶¶ 146–48. Dean Tomaselli specified that this decision was because he

needed "'to protect all parties from fear of retaliation,' citing a 'power differential.'" *Id*. ¶ 148.

Plaintiff alleges that Dean Tomaselli's March 10, 2022 letter was drafted "with the assistance of

Ms. Ramirez, Einstein's Title IX Coordinator." *Id*. ¶ 147. The letter concluded by reminding Dr.

Khodakhah of the College's anti-retaliation policy and instructed him "not to communicate with

the faculty and students about the investigation."[2] *Id*. ¶ 157.

---

[2] Plaintiff newly alleges that this instruction "served to ostracize and isolate Plaintiff from the Einstein community." SAC ¶ 161.

Plaintiff alleges that Dean Tomaselli "cherry picked" the information Plaintiff received. *Id.* ¶ 153. But while Plaintiff insists he was not provided a copy of the policy he was alleged to have violated or specific information regarding the concerns raised in the Letter of Concern, *id.* ¶¶ 149–50, he simultaneously admits that he was given a copy of the Letter of Concern, *id.* ¶ 128, and that Einstein publicly and internally made its Title IX policy available, *see id.* ¶ 152.

Later, on March 10, 2022, Dean Tomaselli sent an email to the Einstein Neuroscience Department faculty "to inform them that, based on the 'information received' in a 'letter of concern from faculty and results of student surveys,' Dr. Khodakhah was under 'investigation,' and inviting individuals to contact investigators with 'any information.'" *Id.* ¶ 158. Dean Tomaselli also explained that, during the investigation, "Dr. Khodakhah will step down from his role as chair." *Id.* ¶ 159.

"Over the next several months, an investigation conducted by an external investigator commissioned by Einstein ensued." *Id.* ¶ 190. The SAC newly alleges that Dean Tomaselli "made clear to those within the Department that he did not intend to bring Dr. Khodakhah back as Chair." *Id.* ¶ 197. As an example, Plaintiff asserts that a secretary in the Neuroscience Department had stated that "Dr. Khodakhah had made her uncomfortable, [and] inquired as to her continuing to work with [him] after the investigation." *Id.* ¶ 198. When another faculty member told her "Plaintiff would be re-instated as Chair," the secretary said "she was told by other interviewers . . . that Dean Tomaselli had already made assurances that Dr. Khodakhah would not be returning." *Id.* ¶¶ 198–99.

*After the Investigation, Dean Tomaselli Permanently Dismisses Plaintiff as Chair*

On July 11, 2022, Dean Tomaselli notified Dr. Khodakhah that the investigation had concluded and that Dr. Khodakhah "was being immediately dismissed from his appointment as Chair for misconduct." *Id.* ¶ 200. Dean Tomaselli wrote that Plaintiff's "'behavior' 'violates Einstein policies' and was cause for his dismissal as Chair." *Id.* ¶ 206. The letter further stated that the investigation had confirmed Plaintiff's varied highly disturbing behaviors including:

> 1) Persistent general mistreatment of students;
> 2) Persistent and inappropriate use of discriminatory nicknames;
> 3) Repeated instances of racist, disability, and gender-based comments and insensitive and politically incorrect comments;
> 4) Repeated references to students and others as "morons" in front of both students and faculty;
> 5) Repeated inappropriate and unwanted physical touching, including pulling female students' ponytails, stomach touching, shoulder touching, and pushing;
> 6) Repeated instances of serving alcohol to and drinking alcohol with students in classes and in the lab, which is in direct violation of Einstein's Drug and Alcohol Policy;
> 7) Inappropriate behavior at on- and off-campus Einstein events, believed to be due to intoxication; and
> 8) Persistent mistreatment, intimidation, and abuse of staff, including by threatening the loss of their jobs and privileges such as vacation and personal time.

*Id.* ¶ 201.

Plaintiff alleges that the Title IX policy should have been applied to this third-party investigation. *Id.* ¶ 204. While the SAC does not plead facts about how the investigation was overseen, Plaintiff alleges that Dean Tomaselli and Einstein "intentional[ly] refus[ed] to apply the required policies." *Id.* ¶ 205. Notably, Plaintiff does not allege what role Dean Tomaselli played in "refusing" to apply the Title IX policy or whether he could have prevented the investigation from going forward. *See id.* ¶ 203. Nor does Plaintiff allege that Dean Tomaselli interfered with or had any influence over the third-party investigator. *Id.* ¶¶ 190–196, 200-201. Elsewhere, the SAC contradicts the claim that Dean Tomaselli refused to apply a Title

IX policy by alleging Dean Tomaselli "chose to use the Title IX office to continue the investigation." *Id*. ¶ 185. Likewise, the SAC additionally alleges that it was Einstein's decision—not Dean Tomaselli's—whether to apply the Title IX policy to this investigation.[3] *See, e.g.*, *id*. ¶¶ 187–89.

### Einstein Commences Two Title IX Investigations

On July 11, 2022, Einstein notified Dr. Khodakhah that it was commencing a separate investigation concerning potential Title IX violations concerning two women faculty members. *Id.* ¶ 214. As summarized in Plaintiff's allegations:

> 214. [Notice of Investigation] 1 informed Dr. Khodakhah that Complainant 1 alleged that, in 2017, during a job interview, Dr. Khodakhah had (i) asked her "impermissible questions" about her husband's occupation and placed his hand on her bare knee when he greeted her and (ii) greeted her with a kiss at a professional social gathering. Complainant 1 further alleged that, during her visit to campus before she was hired by Einstein, Dr. Khodahah had pointed out his house to her after picking her up from the train station and offered her wine during dinner with colleagues.

> 216. [Notice of Investigation] 2 informed Dr. Khodakhah that Complainant 2 alleged that, during a 2018 professional reception, Dr. Khodakhah had (i) placed his hand on her back as they waited in line to be served and that, (ii) at a 2018 annual meeting of the Society for Neuroscience, while engaged in conversation with others, (a) placed his hands on her breastbone and (b) "also called her a 'moron' as [he] rushed her and slapped her upper thigh."

*Id.* ¶¶ 214–16. The next day, Dr. Khodakhah reached out to colleagues regarding these complaints. *Id.* ¶ 237. While Plaintiff does not quote from this email and self-servingly characterizes it as "reaching out to colleagues who might serve as witnesses," *id.*, the SAC later acknowledges that this supposedly harmless email prompted an investigation into whether Plaintiff had violated Einstein's no-retaliation policy by sending it, *see id.* ¶¶ 420, 599.

---

[3] Similarly, insofar as Plaintiff insists the wrong Title IX policy was applied to the Title IX complaints against him, he alleges the decision regarding which policy to apply was *Einstein's*. SAC ¶¶ 228, 230, 236.

On December 23, 2023, Plaintiff was found responsible for sexual harassment in Complainant 2's case, and not responsible for sexual harassment in Complainant 1's case. *Id.* ¶¶ 320–21.

### Dean Tomaselli Removes Plaintiff from Campus After Plaintiff Appears to Violate No-Retaliation Policy

On July 13, 2022, "Dean Tomaselli informed Dr. Khodakhah that, he was being 'immediately removed from campus until final determinations are complete regarding [his] flagrant disregard of Einstein's no retaliation policy.'" *Id.* ¶ 239. The suspension included deactivating Dr. Khodakhah's active directory, email accounts, and associated linked accounts. *Id.* ¶ 241.

On August 12, 2022, Dean Tomaselli provided a further update to Neuroscience Department faculty by email. His email stated, "in part": "'Following the conclusion of the investigation of Dr. Khodakhah's fitness to serve as chair and his removal from that leadership position, in July 2022, [Einstein] notified Dr. Khodakhah that it was commencing separate investigations of other additional allegations that Dr. Khodakhah had engaged in conduct that may violate additional Einstein policies.'" *Id.* ¶ 269–270. Plaintiff alleges that Mr. Ramirez was the true drafter of the statement Dean Tomaselli sent. *Id.* ¶ 269.

### Plaintiff Perverts the Title IX Process by Filing His Own Complaint against Dean Tomaselli

After Dean Tomaselli's August 12, 2022 email to the Neuroscience faculty at Einstein, Dr. Khodakhah filed his own Title IX complaint against Dean Tomaselli on August 17, 2022, alleging that Dean Tomaselli had "breach[ed] his rights of confidentiality and his right not to be retaliated against based on (i) Dean Tomaselli's August 12, 2022 email to the Neuroscience Department; and (ii) Dean Tomaselli's July 13, 2022 decision to suspend him from his faculty position and ban him from campus." *Id.* ¶ 277. Plaintiff alleges his complaint was not

adjudicated for nearly two years, that "there was no good cause" for the delay, and "upon information and belief, Dean Tomaselli used his position of power at Einstein to stall the complaint." *Id.* ¶¶ 281–283. Nevertheless, the SAC also alleges that the delay in adjudicating Plaintiff's complaint was "Einstein's" not Dean Tomaselli's. *Id.* ¶ 284–85, 289. Likewise, the SAC alleges that Dean Tomaselli's "counter-complaint" against Plaintiff was *also* delayed for over two years. *Id.* ¶ 288–89.

### Dean Tomaselli Is Found "Not Responsible" for a Title IX Violation

On May 21, 2024, a third-party adjudicator concluded that "Dean Tomaselli was 'not responsible' for retaliation against Plaintiff." *Id.* ¶ 417. On June 4, 2024, Plaintiff filed an appeal of that decision. *Id.* ¶ 430.

## LEGAL STANDARD

"It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971). Denial of leave to amend is proper where, as here, a plaintiff's proposed amendment would be futile. *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011) ("[A] denial of leave to amend is not an abuse of discretion if amendment would be futile."). Amendment would be futile where the plaintiff's proposed amendments would not withstand a motion to dismiss for failure to state a claim. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Accordingly, a motion for leave to amend is appropriately denied where the proposed complaint lacks "facial plausibility" because the plaintiff has failed to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

## I.    PLAINTIFF'S PROPOSED AMENDMENTS FAIL TO ALLEGE A TORTIOUS INTERFERENCE CLAIM

Plaintiff again fails to plead a claim for tortious interference with contract because the proposed SAC does not plausibly allege each of the claim's elements: (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996).

### A.    Plaintiff's Amendments Are Insufficient to Plead a Breach of Contract

For the reasons set forth in the Einstein Defendants' brief, incorporated here, Plaintiff has failed to address the deficiencies identified by this Court's Report and Recommendation, adopted by Judge Kaplan. *See* Dismissal Order at 10–11 (citing R&R at 61–66). Specifically, Plaintiff again fails to plead the breach of a valid contract. *See* Einstein Defs.' Br. at 13–14. This alone is sufficient to defeat Plaintiff's tortious interference claim. *Dashdevs LLC v. Cap. Mkts. Placement, Inc.*, 210 A.D.3d 525, 525 (1st Dep't 2022) ("Defendant failed to state a cause of action for tortious interference with contract, as it failed to allege the existence of a contract between defendant and its clients that had been breached.").

### B.    The Proposed SAC Alleges Dean Tomaselli Was Acting Within the Scope of His Employment, Barring Plaintiff's Tortious Interference Claim

Moreover, as the Report and Recommendation concluded, R&R at 75–76, Plaintiff's claims also fail because he alleges that Dean Tomaselli's actions were within the scope of his employment as dean insofar as they were in response to complaints regarding Plaintiff's misconduct. *E.g.*, SAC ¶¶ 146–148, 213, 239. Plaintiff does not address the Report and Recommendation's finding on this point and only argues that the claim should be restored

because the "amendments adequately plead the existence of a contract and breach." Pl.'s Br. at 14–15.

Because the Report and Recommendation's conclusion that the Dean acted within the scope of his employment when he supposedly "interfered" with Plaintiff's alleged contracts was well-founded, Plaintiff's proposed amendment would be futile.

It is axiomatic that "only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract." *Koret, Inc. v. Christian Dior, S.A.*, 161 A.D.2d 156, 157 (1st Dep't 1990); *see also Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996) ("[A] plaintiff bringing a tortious interference claim must show that the defendants *were not parties to the contract*." (citing *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120 (1956))). As the Report and Recommendation concluded, R&R at 79, and consistent with this principle, "[a]n agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he is acting on behalf of his principal and within the scope of his authority," *Kartiganer Assocs., P.C. v. Town of New Windsor*, 108 A.D.2d 898, 899 (2d Dep't 1985); *Ashby v. ALM Media, LLC*, 110 A.D.3d 459, 459 (1st Dep't 2013) (affirming dismissal of tortious interference claim where defendant "was not a stranger to plaintiff's contract with [the employer] as he was one of [the employer's] executives.").

Here, the proposed SAC again alleges that Dean Tomaselli was acting within the scope of his employment when he purportedly "interfered" with Plaintiff's employment contract. Plaintiff alleges that Dean Tomaselli was "formerly the Dean of the School of Medicine at Einstein," SAC ¶ 17, that he maintained a leadership position and was responsible for securing funding and overseeing Einstein's budget, *see id.* ¶¶ 65–69, and that he had discretion over Plaintiff's chairmanship, *id.* ¶¶ 59, 179–180, 588. In other words, the SAC alleges that it was

13

Dean Tomaselli's job to oversee Plaintiff's performance. Each of the adverse actions which Plaintiff alleges comprise Dean Tomaselli's tortious interference, SAC ¶ 630, were within the scope of this job. First, Dean Tomaselli's decision to "suspen[d] and subsequent[ly] dismiss[] . . . Plaintiff from his Chairmanship," *id.*, were a response to complaints about Dr. Khodakah's own misconduct. The SAC again alleges that, on March 10, 2022, Plaintiff received a letter from Dean Tomaselli suspending him as chair in response to "concerns from the Neuroscience faculty and students" and "concerning behavior that borders on student mistreatment." *Id.* ¶ 146. Then, on July 11, 2022, Plaintiff alleges that Dean Tomaselli sent him a letter dismissing him from his appointment as chair, explaining that a confidential investigation had confirmed Plaintiff's "[p]ersistent general mistreatment of students," "[p]ersistent and inappropriate use of discriminatory nicknames," "[r]epeated instances of racist, disability, and gender-based comments," and "[r]epeated inappropriate and unwanted physical touching," among other disturbing conduct. *Id.* ¶ 201. Next, Plaintiff alleges that on July 13, 2022, Dean Tomaselli informed him that "he was being 'immediately removed from campus until final determinations are complete regarding [his] flagrant disregard of Einstein's no retaliation policy.'" *Id.* ¶ 239.

Rather than make out a tortious interference claim, these allegations establish only that Dean Tomaselli was acting in his leadership role at Einstein when he suspended, dismissed, and removed Plaintiff. As the Report and Recommendation concluded:

> Tomaselli's suspension and then dismissal of Plaintiff as Chair in response to concerns raised by faculty and students, later confirmed by a confidential investigation, and Tomaselli's removal of Plaintiff from campus following what Tomaselli viewed as Plaintiff's violation of Einstein's policy against retaliation . . . fell within the scope of Tomaselli's employment responsibilities – even if, as Plaintiff suggests, that Tomaselli's actions were motivated at least partially by professional disagreements with Plaintiff or personal animosity.

R&R at 75.

The proposed SAC does nothing to address this finding. The SAC admits that Dean Tomaselli's actions were a response to "concerns from faculty and students," findings of "mistreatment" and "unwanted physical touching," and Plaintiff's own misconduct. *Id.* ¶¶ 146, 201, 239. As the SAC alleges and common sense confirms, Dean Tomaselli was responding to faculty and students because of his role as Dean of Einstein. Such allegations fail to state a claim because "[a]n agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he is acting on behalf of his principal and within the scope of his authority." *Kartiganer Assocs.*, 108 A.D.2d at 899.

### C. Plaintiff Again Fails to Plead that Dean Tomaselli's Conduct Fell Within the Narrow Exception Under Which Agents May Be Liable for Their Employers' Conduct

The Report and Recommendation held that Plaintiff did not satisfy the "narrow exception" under which an employee may be liable for tortious interference. R&R at 76 ("Plaintiff has not alleged that Tomaselli 'acted purely from malice or self-interest' as required to plausibly allege that Tomaselli was acting outside the scope of his employment."). Under well-established principles of New York law, an employee cannot be liable for his employer's breach of a contract, unless the employee "acted in bad faith and committed 'independent torts or predatory acts directed at another for personal pecuniary gain.'" *Bradbury v. Woller Cope-Schwarz*, 20 A.D.3d 657, 659 (3d Dep't 2005). New York courts have "construed personal gain [to mean] that the challenged acts were undertaken 'with malice and were calculated to impair the plaintiff's business for the personal profit of the [individual] defendant.'" *Petkanas v. Kooyman,* 303 A.D.2d 303, 305 (1st Dep't 2003).

Instead of "purely malicious," "independently tortious," or "profit-motivated conduct," the SAC again alleges in conclusory terms that "[i]t is known that Dean Tomaselli

resented and felt threatened by Dr. Khodakhah's persistent and outspoken criticism of his performance as dean." SAC ¶ 80. But harboring resentment and acting with malice are not the same. *See* R&R at 75 (concluding Dean Tomaselli's alleged acts "fell within the scope of Tomaselli's employment responsibilities – even if, as Plaintiff suggests, that Tomaselli's actions were motivated at least partially by professional disagreements with Plaintiff or personal animosity"). Likewise, "conclusory allegations that the individual defendant[] acted with malice, without more, are insufficient." *See Marino v. Vunk*, 39 A.D.3d 339, 340 (1st Dep't 2007).

Moreover, Plaintiff also fails to allege that Dean Tomaselli "personally benefitted" from his alleged interference with Plaintiff's "employment contract." *See Petkanas*, 303 A.D.2d at 305 (dismissal was warranted where the complaint "fails to allege that defendants personally benefitted from these actions and that such was their motivating intent"). In concluding that Plaintiff did not adequately allege that Dean Tomaselli was acting "for purely personal gain," the Report and Recommendation relied on the fact that: "Plaintiff's allegations about Tomaselli's motivations are conclusory and therefore are insufficient to support a claim of tortious interference against Tomaselli." R&R at 78. The SAC again does nothing to address this deficiency.

Nor does Plaintiff allege Dean Tomaselli acted for "purely malicious" reasons as required to state a claim for tortious interference. *Ruha v. Guior*, 277 A.D.2d 116, 116 (1st Dep't 2000) ("[B]are allegations of malice do not suffice, particularly where such allegations are contradicted by plaintiffs' own claims that defendants' actions were financially motivated."); *cf. Protic v. Dengler*, 46 F. Supp. 2d 277, 279 (S.D.N.Y.), *aff'd*, 205 F.3d 1324 (2d Cir. 1999) ("[T]he presence of any other motive, even coupled with an intention to inflict harm, is fatal to a claim."). As the Report and Recommendation concluded, "Tomaselli correctly argues that his

16

behavior was incidental to a lawful purpose, namely investigating alleged misconduct and protecting Einstein's students and staff, which defeats Plaintiff's claim." R&R at 77. By pleading that Dean Tomaselli's conduct was a response to complaints, the SAC (like the First Amended Complaint) alleges that Dean Tomaselli was motivated, at least in part, by other factors. This alone is fatal to his tortious interference claim. *Id.*

Similarly, Plaintiff's new allegation that "Dean Tomaselli engaged in a campaign against Dr. Khodakhah with the intended purpose of ruining Plaintiff's reputation and stature at Einstein and beyond" also misses the mark. SAC ¶ 81. For one thing, intending to "ruin Plaintiff's reputation" is not "independently tortious" conduct. *See, e.g.*, *Murtha v. Yonkers Child Care Ass'n Inc.*, 45 N.Y.2d 913, 915 (1978). (affirming dismissal of tortious interference claim where "[t]here is no evidence in this record of any independently tortious conduct on the part of any of the individual defendants"). Nor does Plaintiff's use of the vague word "campaign" amount to a specific factual allegation about Dean Tomaselli. SAC ¶ 81. To the extent Plaintiff attempts to bootstrap Dean Tomaselli to Dr. Jordan and Dr. Castillo, his pleading again falls short. It is not enough to allege Dean Tomaselli was "in cahoots" with Dr. Jordan and Dr. Castillo. *Id.* ¶ 82. Rather, Plaintiff must allege specific, tortious acts taken by Dean Tomaselli himself. *See, e.g.*, *Canon U.S.A., Inc. v. F & E Trading LLC*, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017) ("It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes."). The SAC alleges that Dr. Castillo and Dr. Jordan "led two other Einstein faculty members (together, the 'Gang of Four') in a concerted effort to obtain Dr. Khodakhah's ouster as Chair." SAC ¶¶ 108, 115, 117–124. But a "concerted effort" against another person is not "independently tortious." *See, e.g.*, *Vogt v. Witmeyer*, 212 A.D.2d 1013, 1013 (4th Dep't 1995) ("There is no cause of action in New York for the substantive tort

of conspiracy."), *aff'd*, 87 N.Y.2d 998 (1996). Moreover, apart from Dean Tomaselli simply

hearing about their plans, SAC ¶ 107 (alleging "Dr. Castillo and Dr. Jordan met with Dean

Tomaselli and advised the dean that they believed they could 'come up with something' to bring

against Dr. Khodakhah"), Plaintiff does not allege Dean Tomaselli was an active participant in

the "campaign," except in conclusory terms, *id*. ¶ 106; *see also Vogt v. Witmeyer*, 87 N.Y.2d

998, 999 (1996) (affirming dismissal of tortious interference claim where "[e]xcept for purely

conclusory assertions, plaintiff failed to plead any tortious acts by defendants causing the

[alleged breach]"). Likewise, Plaintiff again fails to allege that Dean Tomaselli "personally

benefitted" from purportedly joining the "campaign" against him.

      *Henry v. Fox News Network LLC* provides a helpful example of these principles at

play. 629 F. Supp. 3d 136 (S.D.N.Y. 2022). There, a former Fox News employee brought suit

against Fox News' CEO for tortious interference, among other things, alleging that his

termination for sexual misconduct was based on false claims and intended to advance the CEO's

career. The court dismissed the tortious interference claim against the CEO, explaining that

while the complaint "alleges that [the CEO] terminated [the plaintiff] in order to advance her

own career at his expense . . . the complaint is lacking in allegations that support a reasonable

inference that termination of an employee who was found to have engaged in willful sexual

misconduct was 'purely from malice or self-interest.'" *Id*. at 152. In other words, the fact that an

investigation concluded the plaintiff had engaged in misconduct, as here, undermined the

plaintiff's allegations that his boss acted "purely from malice or self-interest" in terminating him.

      Accordingly, because the proposed SAC does not allege "purely malicious,"

"independently tortious," or "profit-motivated" conduct on Dean Tomselli's part, Plaintiff's

proposed amendment does not satisfy the narrow exception to the rule that employees cannot be

liable for tortious interference for their employer's breach. Having failed to adequately allege this claim, Plaintiff's amendment would be futile and his motion should be denied.

## II. PLAINTIFF'S AMENDMENTS ARE INSUFFICIENT TO PLEAD HIS DISCRIMATION CLAIMS

### A. Plaintiff's Direct Discrimination Claim Fails Because the Proposed SAC Does Not Allege Gender Animus

Plaintiff's proposed gender discrimination claims under the state and city human rights laws fail because he does not allege gender animus and, as to the state statute, he does not allege the Dean "aided and abetted" any discriminatory conduct.

As an initial matter, the claim under the NYSHRL fails because, as the R&R made clear, "the [New York State Human Rights Law] does not provide for individual liability other than for aiding and abetting." R&R at 51. Plaintiff's proposed SAC neither addresses nor cures this error, and proceeds exclusively on a direct discrimination theory. Because there is no individual liability outside aiding and abetting liability under the NYSHRL, amendment would be futile. *See* R&R at 51 (citing *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 329 (S.D.N.Y. 2024)).

Plaintiff's direct sex discrimination claim under the NYCHRL fails because he has not alleged that any of Dean Tomaselli's conduct was motivated by Plaintiff's gender.[4] The NYCHRL prohibits employers from taking adverse action against employees "because of" several protected characteristics, including gender. N.Y.C. Admin. Code § 8–107(1)(a). To state a sex discrimination claim under the NYCHRL, therefore, Plaintiff must allege that he "was

---

[4] Plaintiff's NYSHRL claim against Dean Tomaselli fails for this reason, too, as the NYSHRL also requires that the alleged misconduct be motivated by a protected characteristic. N.Y. Exec. L. § 296(1)(a); *Mayorga v. Greenberg*, 2023 WL 6307994, at *6 (E.D.N.Y. Sept. 28, 2023) ("A plaintiff pleads an inference of discrimination when she alleges that she suffered an adverse employment action 'because of' her protected characteristics." (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015))).

treated less well than other employees because of [his] gender." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). Plaintiff fails to satisfy this standard.

Plaintiff's allegations here do not give rise to an inference that Dean Tomaselli discriminated against him. Rather, the proposed SAC repeatedly alleges that Dean Tomaselli dismissed Plaintiff as chair, suspended him, and directed his removal from campus because of Plaintiff's misconduct—not his gender. *See, e.g.*, SAC ¶ 146 (Dean Tomaselli's March 10, 2022 letter suspending Plaintiff cited "distressing anonymous feedback from students"); ¶¶ 200–201 (Dean Tomaselli's July 11, 2022 letter dismissing Plaintiff as chair explained that an investigation confirmed Plaintiff's "repeated inappropriate and unwanted physical touching," among other things); ¶ 239 (Dean Tomaselli's July 13, 2022 letter noted Plaintiff was to be immediately removed from campus until a final determination was complete "regarding [Plaintiff's] flagrant disregard of Einstein's no retaliation policy."). Nowhere does Plaintiff allege any facts indicating that Dean Tomaselli treated him "less well" because of his gender. *Mihalik*, 715 F.3d at 110 ("[Plaintiff] must show that she has been treated less well at least in part *because of* her gender." (internal quotations omitted) (emphasis in original)).

In conclusory fashion, Plaintiff asserts that Dean Tomaselli "knew that accusations against Plaintiff were false, and that Plaintiff had not been afforded the procedural protections provided for in his employer's written sexual harassment policy." SAC ¶¶ 636, 649 (citations omitted).[5] Plaintiff also claims that Defendants, including Dean Tomaselli, "distorted and deviated from the stated purpose of Defendant Einstein's sexual harassment policy, by

---

[5] Despite prior briefing pointing out this error, ECF No. 55, Defendant Tomaselli's Mem. of Law in Supp. of Mot. to Dismiss at 15 n.3, Paragraph 649 again appears to contain the same typographical error as in the former Paragraph 557 of the FAC, by not alleging that "Defendants knew that accusations against Plaintiff were false." For purposes of this motion, Dean Tomaselli assumes Plaintiff meant to include this claim as he did in the parallel Paragraph 636 under the NYSHRL.

deferring to invidious gender and/or sexual stereotypes and crediting malicious accusations against Plaintiff which they knew were false." *Id.* ¶¶ 637, 650 (citations omitted). However, even a well-supported allegation (which this is not) that a manager credited complaints he knew were false does not give rise to a gender discrimination claim. *Cf. Babcock v. N.Y. State Off. of Mental Health*, 2009 WL 1598796, at *15 (S.D.N.Y. June 8, 2009) ("The fact that [a plaintiff's employer] may have relied on incorrect information is immaterial to [the plaintiff's] gender-based discrimination claim.").

Likewise, Plaintiff's conclusory claim that Dean Tomaselli "deferred to invidious gender and/or sexual stereotypes" is not supported by the factual allegations in the SAC. *See* SAC ¶¶ 637, 650. Plaintiff does not allege Dean Tomaselli said anything perpetuating gender stereotypes or even said anything hinting he held stereotypical views.

Plaintiff's new allegation that "Defendants treated Plaintiff less well than his similarly situated female comparators, namely Complainants 1 and 2," does nothing to support his direct discrimination claim against Dean Tomaselli. *See id.* ¶¶ 639, 652. Critically, Plaintiff again does not allege that Dean Tomaselli took part in the adjudication of Complainant 1 and Complainant 2's complaints. *See id.* ¶¶ 214–236. Rather, Plaintiff alleges that *Einstein* "broke with its own policy and practice to apply the obsolete 2018 Title IX Policy," *id.* ¶ 228, and that "*Ms. Ramirez* issued two decisions on the two pending Title IX cases against Dr. Khodakhah," *id.* ¶ 319 (emphasis added), but no similar allegation is made regarding Dean Tomaselli, *see generally id.* ¶¶ 319–397 (alleging the investigator of Complainant 2's complaint[6] was "biased,"

---

[6] Plaintiff does not allege there were errors in the adjudication of Complainant 1's complaint, in which "Ms. Ramirez adopted a male investigator's finding that Dr. Khodakhah was not responsible for 'sexual harassment.'" SAC ¶ 320.

the conclusions were unfounded, Ms. Ramirez was a conflicted decision-maker, and the discipline imposed was unduly harsh, among other things).

The only allegations Plaintiff adds to remotely tie Dean Tomaselli to this conduct are implausible and conclusory. Specifically, in two additional paragraphs in the SAC, Plaintiff alleges in general terms that "Ms. Ramirez freely permitted Dean Tomaselli to use the power and authority of the Title IX Office as a weapon against Plaintiff to better serve Dean Tomaselli's own interests," *id.* ¶ 378, and "Ms. Ramirez acted as the mouthpiece of Dean Tomaselli and routinely endorsed and enabled Dean Tomaselli's weaponization of the Title IX Office and procedures to target and harm Plaintiff," *id.* ¶ 394. These allegations are implausible because they are inconsistent with Plaintiff's other allegations that Dean Tomaselli acted at the direction of others, not the other way around. *See, e.g.*, *id.* ¶ 431 (alleging Ms. Ramirez and Einstein's senior counsel "demonstrated their bias against Plaintiff by orchestrating and implementing Dean Tomaselli's punitive actions against Plaintiff"); ¶ 147 (alleging Dean Tomaselli's March 10, 2022 letter was "drafted with the assistance of Ms. Ramirez"), ¶ 269 (alleging an August 12, 2022 email from Dean Tomaselli was "drafted by Ms. Ramirez"). Moreover, the conclusory allegation that Dean Tomaselli "weaponized" the Title IX office does not support the claims that Dean Tomaselli treated Dr. Khodakhah less well than Complainants 1 and 2. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

The SAC is also devoid of any factual allegations regarding Dean Tomaselli's involvement in the adjudication of Complaint 1 and Complainant 2's complaints, nor does

Plaintiff allege Dean Tomaselli was involved in adjudicating Plaintiff's claim against him.[7] *See* SAC ¶¶ 275-289.

Lastly, not only is the SAC devoid of allegations that Dean Tomaselli's conduct towards Plaintiff had anything to do with gender, but Plaintiff alleges a contrary motive: personal animus. *See, e.g.*, *id.* ¶ 374 (alleging Dean Tomaselli's "actions against Dr. Khodakhah were motivated by his own personal and retaliatory animus"). On this ground, too, Plaintiff's proposed amendment would be futile because "personal animus . . . is insufficient to establish a claim under Title VII, the NYSHRL, or the NYCHRL." *Harrison v. SUNY Downstate Med. Ctr.*, 2017 WL 4326507, at *7 (E.D.N.Y. Sept. 25, 2017).

## B.    Plaintiff Has Not Alleged Dean Tomaselli "Actually Participated" in the Underlying (Purportedly) Discriminatory Conduct

Plaintiff has again failed to plead an aiding and abetting discrimination claim in the proposed SAC and the claim should not be considered, given the ample opportunity Plaintiff has now had to properly bring this claim. *Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*, 158 F. Supp. 2d 335, 344 n.18 (S.D.N.Y. 2001) ("As the amended complaint includes no 'aiding and abetting' claim, plaintiff may not raise one now.").

Nevertheless, Plaintiff has notably failed to correct the errors identified as to his theoretical aiding and abetting claim, which he references in his brief, but is nowhere in the SAC. *Compare* Pl.'s Br. at 12 *with* SAC ¶¶ 632–656. First, as Judge Kaplan concluded, Dismissal Order at 10 n.31, "as a predicate to claiming aiding and abetting discrimination, a plaintiff must have pled discrimination by a principal," *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp.

---

[7] Again, Plaintiff adds a single conclusory allegation to this section in an effort to rope Dean Tomaselli into events that did not involve him. *See* SAC ¶ 283 ("Upon information and belief, Dean Tomaselli used his position of power at Einstein to stall the complaint against him and conspired with Ms. Ramirez to bring a counter-claim of retaliation against Dr. Khodakhah in response to Plaintiff's August 17th complaint."). But again, the conclusory assertion, notably alleged "upon information and belief," that Dean Tomaselli "used his position of power at Einstein to stall the complaint" is unsupported by factual allegations about how he did this.

3d 318, 333 (S.D.N.Y. 2024). For the reasons set forth in the Einstein Defendants' Brief,

Plaintiff has failed to plead the majority of his discrimination claims asserted against Einstein.

*See* Einstein Defs.' Br. at 5-13.

Additionally, Plaintiff has not alleged that Dean Tomaselli "shared some

allegedly discriminatory animus with other defendants." *Fried v. LVI Servs., Inc.*, 2011 WL

2119748, at *8 (S.D.N.Y. May 23, 2011) (dismissing aiding and abetting NYCHRL claim).

Here, for the reasons set forth above, Plaintiff has not alleged Dean Tomaselli harbored any

gender animus, and the aiding and abetting claims must be dismissed.

Lastly, as the Report and Recommendation concluded, Plaintiff failed to allege

Dean Tomaselli "actually participated in Einstein and Montefiore's unlawful conduct in

connection with the Chair Investigation." R&R at 56. The Report and Recommendation

explained that "Plaintiff has not made any concrete factual allegations suggesting that Tomaselli

could have prevented the Chair Investigation once the school was presented with the Letter of

Concern; or that Tomaselli had any input into or control over the decision not to conduct the

Chair Investigation under the 2018 Title IX Policy; or that Tomaselli influenced the third-party

investigator's conclusions." R&R at 57.

The new allegations do nothing to address these pleading failures because they do

not allege Dean Tomaselli "could have prevented the Chair Investigation," or that he "had any

input into or control" over whether to apply a Title IX policy to that investigation, or that he

"influenced the third-party investigator's conclusions." *See* R&R at 57. Plaintiff insists that his

discrimination claim is cured by his conclusory allegations that: "Tomaselli used the power and

authority of the Title IX Office as a weapon against Plaintiff" and that "Ms. Ramirez routinely

endorsed and enabled Dean Tomaselli's weaponization of the Title IX Office and procedures to

target and harm Plaintiff." Pl.'s Br. at 12 (citing SAC ¶¶ 353, 368). But Plaintiff's new allegations that Dean Tomaselli "intentional[ly] refus[ed] to apply the required policies," SAC ¶ 205, and that "Einstein's failure to follow any Title IX process or even advise Dr. Khodakhah of the implication of the Title IX Policy permitted Einstein and Dean Tomaselli to conduct a rogue investigation," *id*. ¶ 155, are all conclusory. While they attempt to address the failure to allege that "Tomaselli had any input into or control over the decision not to conduct the Chair Investigation under the 2018 Title IX Policy," the new allegations only create a specter of control on a general level, with no other factual support. Nor do they plausibly allege the level of involvement the R&R identified was lacking. R&R at 57.

Even if the Court considers the aiding and abetting claims which are not pled in the SAC but only discussed in Plaintiff's brief, the aiding and abetting claims do not cure the deficiencies previously identified and amendment would be futile.

## CONCLUSION

For the forgoing reasons, Dean Tomaselli respectfully requests Plaintiff's motion for leave to amend be denied.

Dated: December 8, 2025
      New York, New York

                                     EMERY CELLI BRINCKERHOFF
                                     ABADY WARD & MAAZEL LLP

                                     /s/
                                     Andrew G. Celli, Jr.
                                     Debra Greenberger
                                     Sara Luz Estela

                                     One Rockefeller Plaza, 8th Floor
                                   New York, New York 10020

                                   (212) 763-5000

                                   *Attorneys for Defendant Gordon*
                                   *Tomaselli*

## **<u>WORD COUNT CERTIFICATION</u>**

I hereby certify that the portions of the foregoing memorandum of law that must be included in a word count pursuant to Local Civil Rules 7.1 contain 7,641 words, which complies with the word count limit.

Dated: New York, NY
      December 8, 2025

                                  /s/
                              Sara Luz Estela