UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                              :
                                         Docket #24cv839
 KHODAKHAH,                         :

                 Plaintiff,         :

   - against -                      :

 MONTEFIORE, et al.,                : New York, New York
                                      December 3, 2025
                 Defendants.        :

--------------------------------------- :
```

PROCEEDINGS BEFORE
THE HONORABLE ROBYN F. TARNOFSKY,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

```
For Plaintiff:              NESENOFF & MILTENBERG, LLP
                            BY:  STUART BERNSTEIN, ESQ.
                                 GABRIELLE VINCI, ESQ.
                            363 Seventh Avenue, 5th Floor
                            New York, New York 10001

For Defendant Einstein:     KAPLAN MARTIN LLP
                            BY:  ROBERTA KAPLAN, ESQ.
                            1133 Avenue of the Americas
                            Suite 1500
                            New York, New York 10119

For Defendant Tomaselli:    EMERY CELLI BRINCKERHOFF ABADY
                               WARD & MAAZEL LLP
                            BY:  SARA ESTELA, ESQ.
                            One Rockefeller Plaza, 8th Floor
                            New York, New York 10020


Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Email:  Transcription420@aol.com
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

2

**INDEX**


**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-<br>Direct | Re-<br>Cross |
|---------|--------|-------|---------------|--------------|
| None | | | | |


**E X H I B I T S**

| Exhibit<br>Number | Description | ID | In | Voir<br>Dire |
|-------------------|-------------|----|----|--------------|
| None | | | | |

PROCEEDING                    3

THE CLERK:  Good morning, Judge Robyn Tarnofsky is now presiding over 24cv839, Khodakhah v. Montefiore Health Systems.  Please state your name for the record starting with counsel for plaintiff.

MR. STUART BERNSTEIN:  Stuart Bernstein, Nesenoff & Miltenberg, for the plaintiff.  Good morning, Your Honor.

THE COURT:  Good morning.

MS. ROBERTA KAPLAN:  For the defendant Einstein, Your Honor, it's Robbie Kaplan.

THE COURT:  Good morning.

MS. KAPLAN:  And I think Sara's on –

MS. SARA ESTELA:  Yes, for defendant Gordon Tomaselli, this is Sara Estela from Emery Celli Brinckerhoff Abady Ward & Mazel, good morning.

THE COURT:  Good morning, thanks, everyone, for being here.  I just wanted to chat a bit about the proposed case management plan.  I understand that there are different perspectives on the amount of discovery that's appropriate which obviously affects what kind of schedule makes sense.  And I think that will be largely cleared up once there's either reporting recommendation or order on the motion to amend.  Thus, I'm not ready to issue that yet, and I do want to get discovery started,

PROCEEDING                    4

and so I wanted to discuss with the parties the possibility of what it would make sense to start now without knowing whether discovery's going to be broader or less broad.  And we can set an interim schedule that can then get expanded or not, depending on what the complaint ultimately looks like.  Why don't I hear first from plaintiff, Mr. Bernstein?

MR. BERNSTEIN:  Yes, Your Honor, thank you.  I think when the parties met and conferred, we kind of took what you had just started with in consideration, and I think the two issues I guess are open right now is the amount of discovery for the cause of actions that are open right now which is the Title IX as to the chair and to the two State, New York State and New York City human rights causes of action which, you know, Your Honor and Judge Kaplan has allowed to go forward.  And I think the only, and Ms. Kaplan will so correct me, but the two real main open issues is that defendants are looking to cap depositions at five and said there should be no expert testimony.

And we are not, as we put in our letter, we're not looking to do expansive discovery and just waste time and money, that's not something we're doing.  We're just not prepared at this time to say that we only need

PROCEEDING                5

five depositions.  It's very likely that we may not need five, like I said, as in our letter, I think we've identified three or four possible witnesses right now. So it's not like we're prepared and just want to take eight depositions for the sake of taking depositions.  I just don't think that we need to tie our hands at this point having not seen any written discovery including this alleged report which stemmed from the chair's investigation.  So I just don't think that plaintiff, we should be limited to the number of depositions at this point on that issue.

Also, I know that counsel had indicated, well, then if we wanted more, we can meet and confer and then come back.  I just don't think that's the, I don't know that's the best use of resources.  I think the Federal Rules allow ten depositions each side.  Again, that's including good faith is the underpinning of all of that, and we have no, like I said, no intention of just do depositions for the sake of doing depositions.  And I think even Your Honor in the recommendation identified two or three witnesses yourself who would be potentially involved in that Chair's investigation.

And then counsel for defendants, you know, take the position this case is only what policy, you know,

PROCEEDING                6

use the policy, use the policy, and that there's no need for expert depositions. Quite honestly, the New York State and the New York City human rights certainly allow for compensatory damages including, you know, reputational harm damages and emotional damages. So clearly expert testimony in those areas as respectfully are certainly available at this time in discovery, and so we'd be looking to do some type of discovery, expert discovery in that area.

Whether or not we would seek an expert in terms of Title IX, I don't know that. I know it's, you know, I know it's been used I the past, and I know that certain courts have struck down certain types of experts, but I'm not saying to the Court right now that we're going to retain a Title IX expert, but I don't think we should be precluded especially when discovery is supposed to be broad and expansive to allow for potential admissible evidence. And so at this juncture I think defendants' view of the case is extremely limited, and I appreciate what their position is, but, respectfully, we just should not be limited to the number of depositions, and we certainly should not be limited not to do expert discovery.

THE COURT: Thank you very much, counsel. Let

PROCEEDING                    7

me just respond briefly, and then I'll hear from you, Ms. Kaplan, and you, Ms. Estella.  And I'm just doing that because I want to take it in parts, and I want to talk first about experts.

My initial view is there's not a reason to set a deadline for expert discovery right now.  We can leave that open and come back together in two months.  Beginning of February should give you plenty of time, and everyone will have a clearer sense of what the case is looking like, and you'll have had the benefit of some initial fact discovery.  So that's my initial view, but I do want to hear from Ms. Kaplan, Ms. Estela, and then, again, from Mr. Bernstein just now on the topic of expert discovery.

MR. BERNSTEIN:  Your Honor, I'm sorry, this is Stuart.  If that helps, plaintiff is okay with obviously something of that nature to, you know, to come back to you in February at that point.  We don't object to that.

THE COURT:  Ms. Kaplan, Ms. Estela.

MS. KAPLAN:  Sure.  So, Your Honor, let me try to answer the question which I think you were asking which is what discovery could be done now on the claim that remains in this case as opposed to the original complaint which you have to decide on a report and

PROCEEDING                8

recommendation.  I believe our opposition is due on the 8th.  And that'll make good sense to me.

In terms of the remaining, the only claim that's left in the case now, what I think would be relevant and productive would be for us, assuming we can arrange appropriate confidentiality order with Stuart's firm, and I can't imagine that we cannot do that, to produce the documents relevant to the deemed investigation which is right now the only issue in the case.  And I think that's a relatively small group of documents, at least on Einstein's part because Einstein, as Your Honor may recall, did not conduct an investigation, they hired a third-party outside investigator to do that.  So that seems to me certainly a logical place to start.

I think, I don't know what kind of documents the investigator has kept, I have no idea what their retention policies are, but presumably Mr. Bernstein could serve subpoena on them for their documents.  And then if we got that far, and I don't think we'll get that far, Your Honor, before a decision or R&R on the motion to amend is done, but if we were to get that far, what would make sense to me is the deposition of I think it's probably only one, maybe at most two people at

PROCEEDING                    9

Einstein who made the decision as to what policies should apply, although I'll be frank with Your Honor, I think what the testimony will be is it never even occurred to them to use the Title IX policy, this is the policy the way they thought was the right way to do it on this one.

But that seems to me a good place to start because I understand Your Honor's problem which is it's not entirely clear right now, although I'm confident the case will remain this size, but it's not entirely clear it will remain this size.

THE COURT:  Thank you, Ms. Kaplan.  So I agree that it makes sense to stage discovery, and full transparency, once I clear my January list, this is going to be the first thing I turn to, but as a practical matter that's not going to be until mid-January.  So, and there's a lot that even with the holidays can be accomplished between now and mid-January.  So would it make sense to issue an order that says that between now and let's say January 31, February 1 the parties will produce documents about Einstein's dean's investigation.  Discovery can proceed from third parties on that subject.  Depositions can take place on that subject, up to five per side.  And we can then

PROCEEDING                        10

reconvene on February 1 hopefully with a clear sense of what makes sense beyond that.  Is that something that plaintiff is amenable to?

MR. BERNSTEIN:  Judge, the only issue I would take is the limiting of five.  Again, I don't know what documents we're going to take.  I could probably, like I said, name, sitting right here, I could probably name four witnesses that we would take without seeing any documents.  So I just don't understand why we're being, respectfully, why we're being handcuffed at that point with that number and then we have to come back to you, we'd have to meet and confer saying, look, I need these two more, and then come back to you.  I think there is some good faith, and obviously if Ms. Kaplan or anyone thinks that we're abusing or just taking depositions for the sake of it, we can have a meet and confer, but we have no interest in doing that.

I would just, you know, just don't think that we should be, you know, that that arbitrary number five, I just don't think we should be, that should be handcuffed at this juncture on that.  Other than that, I agree wholeheartedly and let's move forward with discovery.

THE COURT:  Okay, well, I guess, as a practical

PROCEEDING                    11

matter, do you really think that you're going to get the documents and take more than five depositions between now and February 1?

MR. BERNSTEIN:  Probably not, Your Honor.  I just – probably not.  I just – probably not.

THE COURT:  So this is really just stage one from my perspective, and on February 1 I am entirely open to permitting additional depositions if that's what makes sense.  I just don't know that we need to say that is going to make sense as we sit here today since it won't hinder you in any way to have this limit for now.

MR. BERNSTEIN:  Okay, Your Honor.

THE COURT:  The last thing I want to do, and I'm sure the last thing that defendants want to do is in any way limit discovery such that you then have an argument that you didn't get what you need to litigate this case because that's just going to prolong things. Right?

MR. BERNSTEIN:  Right.

THE COURT:  But we can take it in bites.  Why don't we set a date for a next status conference.  Let's me see what February looks like.

MS. ESTELA:  Judge.

THE COURT:  Yeah.

PROCEEDING                    12

MS. ESTELA:  This is Sara.  I just wanted to make clear our position on behalf of Dean Tomaselli which is that there are currently no live claim spending against him.  And so I'm understanding from this back and forth that there's going to be a stage one of discovery before the pending motion to amend is resolved, and our position is that we would not participate as a party in that discovery.  Obviously, you know, plaintiff is, or either side is free to serve non-party discovery, and we would like respond and object to that at the time.  But in the interim our position is that we're not parties, and so we're not a party so we're not going to participate.

THE COURT:  So, look, I understand that position.  Again, as a practical matter, your client is going to be an important witness.  As a practical matter, your client is still employed by Einstein, is that correct?

MS. ESTELA:  He's not, Your Honor.

THE COURT:  Okay, he's not anymore.  All right, he's still going to be an important witness.  I understand your position that as a non-party who's employed by Einstein anymore that he shouldn't be required to go through the formalities of – he should be

PROCEEDING                    13

excused from the formalities of a third-party deposition.  Nevertheless, I would encourage you to be reasonable --

MS. ESTELA:  Sure.

THE COURT:  -- in approaching and, you know, think about whether those formalities are really necessary and what is necessary to protect his substantive interests.

MR. BERNSTEIN:  Your Honor --

MS. ESTELA:  Understood.

MR. BERNSTEIN:  -- this is – Your Honor, this is Stuart Bernstein.  If I may, I hate to get you involved in this --

THE COURT:  Could you speak up?  I'm sorry, I can't hear you right now.  And there's an echo --

MR. BERNSTEIN:  Sorry, Your Honor.  Okay, I'm so sorry, what happened was Ms. Vinci was stuck on the train, just actually walked in my office.  I put it on speaker, but I just took us off speaker.  Okay.

So I just want to clear up that issue. Obviously, Dean Tomaselli is an important witness on the chair's, you know, and so is counsel going to accept the subpoena or do I have to serve him?  Is Einstein going to produce him?  I don't want to waste, you know, we

PROCEEDING                        14

have a small window here.  I don't want to waste time trying to secure his appearance at his deposition.  So I don't want --

THE COURT:  No, and let me be clear if I wasn't in what I said to Ms. Estela.  I would expect that if you're going to insist on a subpoena, that you would accept service for Dr. Tomaselli.

MS. ESTELA:  Yes, absolutely.  That's not, yeah, we are not going to be difficult about participating.  Obviously, like we're not going to waive any objections that we might have to the scope of the subpoena and all that stuff, and I'm simply saying just that we are not participating in making discovery demands and serving our deposition notices at the moment because we're not a party, we've been dismissed, and then maybe that remains the case.  But I'm not saying at all that we intend to be obstructionist for the sake of it.

THE COURT:  And I appreciate that, and that's what I would expect.  If there's, you know, the first – if there are any disputes on those types of issues, I would ask that you bring them to me promptly.  But I would hope that there shouldn't be any.

MS. ESTELA:  Sure.  Thanks, Judge.

PROCEEDING                        15

THE COURT:  Is there anything further?  I'm going to set a next status conference from the morning of February 2 which is the first Monday in February.

MS. KAPLAN:  A couple of issues from me, Your Honor, if that's not too much trouble.

THE COURT:  Yes.  Of course.

MS. KAPLAN:  So, first, Your Honor, we totally agree with you on not wanting them to have a 56(f) argument.  We fully believe that these are the only claims in the case, and this case will be amenable to decision on summary judgment, and we agree with you, we don't want them to be able to argue that they haven't gotten sufficient discovery.  So I'm totally on board with that.

Two, with respect to confidentiality, Your Honor, I'm not right now completely aware of the facts and circumstances, but we may ask Mr. Bernstein on confidentiality, we may do something attorney's eyes only or something like that.  We're concerned about his client calling, my understanding is that there were dozens of witnesses on this calling them and harassing them when the interviews – I don't want to say harassed – asking them questions when the interviews were done I believe with the promise of confidentiality.  So I have

PROCEEDING                    16

to look at the details to be sure about that, but I'm concerned about his client who's done things like this in the past, contacting all, call it 50 people and starting to nudge them about what they said in the dean's investigation.

THE COURT:  Mr. Bernstein.

MR. BERNSTEIN:  (no response)

THE COURT:  You know, on some level, look, I will say it, I understand the concern, and certainly you can ask that contact information be confidential.  I would imagine that Dr. Khodakhah has access to the contact information of the folks in question, and he needs to know who the witnesses are.  Right?  So I'm not sure what that would look like.

MR. BERNSTEIN:  I'm so sorry, Judge, apparently I was on mute.  I am sorry if you didn't hear anything I said.

THE COURT:  Okay.

MR. BERNSTEIN:  I apologize.  I'm sorry.  Yeah, what I was saying just, no disrespect to Ms. Kaplan, but I take offense to the insinuation that my client is going to do anything.  What my client did was completely found completely appropriate under Einstein's rules and found not responsible for any retaliation under

PROCEEDING                    17

Einstein's rules.  So I, you know, were there facts Einstein without any basis told people that things are going to be confidential, that's, you know, that's something they, that's a cross they have to bear.  But my client has no intention of, you know, quote/unquote, "harassing" or doing anything.  All we're going to do is protect his rights, and if we have to depose certain people, you know, we will.  But I, you know, I think some of those insinuations are just, you know, not warranted, I'm sorry for saying this, Your Honor.

THE COURT:  Well, you know, different folks can take different views about what happened in the past. I'm really concerned about what would be appropriate to happen in the future, and as I was saying, I don't think that you can keep from Dr. Khodakhah who the witnesses are.  I imagine that even if you redact or make attorney's eyes only the contact information of the witnesses, Dr. Khodakhah could reach out to them because I imagine he has their contact information, you know, personally.

I guess I would encourage the parties to talk about and meet and confer on the issue of whether it's appropriate to ask Mr. Khodakhah not to contact witnesses, to speak to them before their depositions.  I

PROCEEDING                    18

think there are a lot of good reasons why he wouldn't do that.  And that it wouldn't be unreasonable to agree that he, in fact, won't.  But I think that's something that the parties should be able to work out.

MS. KAPLAN:  That's very helpful, Your Honor, thank you.  I have one more issue, although I think it's more of a theoretical question than anything else.  Which is for these things Your Honor mentioned, I think it's highly unlikely that we will do any depositions or certainly more than one before February, Your Honor, but obviously if somehow there was a miracle and a lot of depositions were taken, I think we're going to have to figure out ways that witnesses don't have to come back twice.  Again, I think this is more of a theoretical than a practical problem, but obviously Dr. Tomaselli, his deposition, you know, when it happens, should probably happen after Your Honor has issued the R&R so he's not in the problem of potentially having to come back for a second time.

THE COURT:  Sure, I mean the last thing we want to do is to burden folks with multiple depositions, and, you know, given (indiscernible) and that paper discovery hasn't yet happened, I think that you're right, this is more of a theoretical than a practical issue.  If it

PROCEEDING                    19

comes to the point where you're ready to start taking depositions and I haven't issued an R&R order, then come back to me and, well, meet and confer and see if you can come up with a (indiscernible), and if you can't and you really want to proceed, come back to me and we'll figure something out.

MS. KAPLAN:  Of course, Your Honor, thank you.

THE COURT:  Is there anything else?

MR. BERNSTEIN:  No, Your Honor, not from the plaintiff at this point.

THE COURT:  Okay.  Then I will issue an order consistent with our discussion, and I will see you in February unless there's an issue which I hope there isn't.  Have a great rest of the day.

MR. BERNSTEIN:  Thank you, Your Honor.

MS. KAPLAN:  Thank you.

MR. BERNSTEIN:  Have a great holiday.

THE COURT:  Thanks very much.  You too.

MR. BERNSTEIN:  Okay, bye bye.

THE COURT:  Bye.

MS. ESTELA:  Thank you.

(Whereupon, the matter is adjourned.)

20

<u>C E R T I F I C A T E</u>

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of KHODAKHAH v. MONTEFIORE, et al., Docket #24cv839, was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature_____*Carole Ludwig*_____

Carole Ludwig

Date:    December 5, 2025