UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| KAMRAN KHODAKHAH,<br><br>*Plaintiff,*<br><br>v.<br><br>MONTEFIORE HEALTH SYSTEM, INC., MONTEFIORE MEDICAL CENTER, MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC., ALBERT EINSTEIN COLLEGE OF MEDICINE, GORDON TOMASELLI, PABLO CASTILLO, BRYEN JORDAN, and JOHN and JANE DOES 1-10,<br><br>*Defendants.* | Civil Action No. 1:24-cv-00839 |

**PLAINTIFF KAMRAN KHODAKHAH'S REPLY TO EINSTEIN DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

NESENOFF & MILTENBERG, LLP
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Gabrielle M. Vinci, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
gvinci@nmllplaw.com

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    A.    Plaintiff's Proposed Amendments to the Second Amended Complaint Sets Forth Facts to Support a Plausible Inference of Deliberate Indifference .................................................... 1

    B.    Plaintiff's Proposed Amendments to Erroneous Outcome Claim Not Futile Because the Investigation Deviated From Governing Procedure in a Way That Plausibly Affected the Outcome ................................................................................................................................ 4

    C.    Plaintiff's Proposed Amendments Sufficiently Allege that Plaintiff Participated in Protected Activity ................................................................................................................... 5

II.    PLAINTIFF'S PROPOSED AMENDMENTS TO HIS NEW YORK STATE HUMAN RIGHTS LAW ("NYSHRL") AND NEW YORK CITY HUMAN RIGHTS LAW ("NYCHRL") CLAIMS ARE NOT FUTILE. .................................................................................. 7

III.    PLAINTIFF'S PROPOSED AMENDMENTS TO HIS CONTRACT CLAIMS ARE NOT FUTILE ................................................................................................................................ 9

    A.    Plaintiff's Proposed Amendments Set Forth Additional Factual Allegations to Establish the Existence of a Contract ....................................................................................................... 9

    B.    Plaintiff's Proposed Amendments Support a Claim for Tortious Interference with Contract ................................................................................................................................. 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Allen et al v. City of New York*,
   2025 WL 3152723 (2d Cir. Nov. 12, 2025) ............................................................................. 9

*Baylis v. Marriott Corp.*,
   906 F.2d (2d Cir. 1990) ......................................................................................................... 10

*Dalton v. Educ. Testing Serv.*,
   87 N.Y. 2d (1995) ................................................................................................................. 10

*Doe v. Columbia Univ.*,
   831 F.3d 46, 56 (2d Cir. 2016) ............................................................................................ 1, 6

*Doe v. New York Univ.*,
   438 F. Supp. (S.D.N.Y. 2020) ................................................................................................ 4

*Hicks v. Baines*,
   593 F.3d (2d Cir. 2010) .......................................................................................................... 7

*Jackson v. Birmingham Bd. Of Educ.*,
   544 U.S. (2005) ....................................................................................................................... 6

*Joshi v. Trs. of Columbia Univ.*,
   2018 WL 2417846 (S.D.N.Y. May 29, 2018 ......................................................................... 9

*Lama Holding Co. v. Smith Barney Inc.*,
   88 N.Y.2d (1996) .................................................................................................................. 10

*Littlejohn v. City of New York*,
   795 F.3d (2d Cir. 2015) .......................................................................................................... 8

*Mandell v. County of Suffolk*,
   316 F.3d (2d Cir. 2003) .......................................................................................................... 9

*Menaker v. Hofstra Univ.*,
   935 F.3d (2d Cir. 2019) ................................................................................................. 2, 3, 5

*Network Apps, Inc v. AT&T Corp.*,
   778 F. Supp. 3d (S.D.N.Y 2023) ......................................................................................... 10

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
   633 F.3d (2d Cir. 2011) .......................................................................................................... 9

*Radwan v. Manuel*,
   55 F.4th (2nd Cir. 2022) ......................................................................................................... 8

*Roe v. St. John's Univ.*,
   91 F.4th (2d Cir. 2024) ........................................................................................................... 5

*Schiebel v. Schoharie Cent. Sch. Dist.*,
   120 F.4th (2nd Cir. 2024) ....................................................................................................... 4

*Shumway v. United Parcel Serv., Inc.*,
   118 F.3d (2d Cir. 1997) .......................................................................................................... 8

*St. John's Univ., N.Y. v. Bolton*,
   757 F. Supp. 2d (E.D.N.Y. 2010) ........................................................................................ 10

*Vengalattore v. Cornell Univ.*,
   36 F.4th (2d Cir. 2022) ............................................................................................. 2, 3, 4, 5

*Williams v. N.Y.C. Hous. Auth.*,
   61 A.D.3d (1st Dep't 2009) .................................................................................................. 9

*Wright v. White Plains Hosp. Med. Ctr.*,
   232 N.Y.S.3d (2d Dep't 2025) .............................................................................................. 9

*Yusuf v. Vassar Coll.*,
   35 F.3d (2d Cir. 1994) .......................................................................................................... 6

**INTRODUCTION**

Plaintiff Kamran Khodakhah ("Plaintiff" or "Dr. Khodakhah") respectfully submits this reply memorandum in in support of his Motion for Leave to File a Second Amended Complaint ("SAC"). Defendants Einstein, Montefiore Medicine Academic Health System, Inc. ("Montefiore"), Pablo Castillo ("Castillo"), and Bryen Jordan ("Jordan") (collectively the "Einstein Defendants"), argue that Plaintiff's proposed amendments are futile as they fail to cure the defects previously identified by the Court. While the Einstein Defendants, quoting Scripture rather than legal precedent, contend that the proposed SAC "merely adds hyperbole and immaterial details without addressing legal deficiencies," as Plaintiff outlines herein and in his moving memorandum of law (ECF No. 95), the proposed amendments are not futile and Plaintiff should be granted leave to amend.

**ARGUMENT**

**I.    PLAINTIFF'S PROPOSED AMENDMENTS TO HIS TITLE IX CLAIMS ARE NOT FUTILE.**

**A.    Plaintiff's Proposed Amendments to the Second Amended Complaint Sets Forth Facts to Support a Plausible Inference of Deliberate Indifference**

The Einstein Defendants' contention that the Second Amended Complaint fails to plead deliberate indifference misreads Plaintiff's allegations. Moreover, at the motion to dismiss stage, a plaintiff only needs to allege facts to support a minimal plausible inference of the claim. *See Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016). At the first stage of the litigation, the complaint must be viewed in light of the plaintiff's minimal burden to state a claim. *See id.*

The Second Amended Complaint sets forth additional factual allegations to show there were clear procedural irregularities in the investigation and treatment of Plaintiff's sexual misconduct process, thus supporting an inference of gender discrimination. *See, e.g.*, SAC ¶ 536.

1

*See Vengalattore v. Cornell Univ.*, 36 F.4th 87, 106–07 (2d Cir. 2022); (citation and punctuation omitted); *see also Menaker v. Hofstra Univ.*, 935 F.3d at 31-32 (2d Cir. 2019). "Procedural irregularity alone may suggest some form of bias, when there are clear procedural irregularities in a university's response to allegations of sexual misconduct" *See id.* (internal citations and punctuation omitted) (citing *Menaker*, 935 F.3d at 33 & n.48.).

Indeed, Plaintiff alleges that University officials were aware of procedural irregularities, credibility problems, and exculpatory evidence but disregarded these issues in favor of a predetermined outcome. *See* SAC ¶ 205 (Plaintiff deprived of his rights to review evidence, confront complaining witnesses, respond to any report of investigator, or appeal determination of responsibility."); *see Id.* ¶¶ 222, 223, 224 ("Procedurally irregular, both NOIAs informed Dr. Khodakhah that his alleged behavior met the definition for 'sexual harassment' described in Einstein's then obsolete 2018 Title IX Policy.") It was procedurally unusual for Einstein to rely on the 2018 Title IX Policy rather than Einstein's then-current 2022 Title IX Policy and the Einstein Defendants were aware of these irregularities. *See Id.* ¶¶ 230, 233 (2018 Title IX Policy was erased from Einstein's website and employment handbooks on or about August 14, 2020). *See Id.* ¶¶ 235, 236 (this decision "was particularly concerning in light of the fact that doing so deprived Plaintiff of the due process and procedural protections mandated by Title IX in the year 2022, as well as any opportunity to substantively oppose use of the 2018 Title IX Policy.")

Furthermore, the Einstein Defendants ignored material inconsistencies in the complainants' accounts, refused to interview key witnesses, and deviated from established policies in a way that harmed Plaintiff. For instance, the decision-maker wrongly applied the preponderance of the evidence standard by erroneously finding that Plaintiff lacked credibility based on nothing more than her acceptance of Complainant 2's word over Dr. Khodakhah's. *See SAC* ¶¶ 347-369. The

2

investigator did not speak with all of Dr. Khodakhah's witnesses and declined to seek out witnesses identified by Plaintiff who could have provided exculpatory evidence favorable to him. *See Id.* ¶¶ 259, 262. The decision-maker further adopted the investigator's recommended findings which wrongfully ignored relevant, exculpatory evidence, resulting in findings of fact and credibility determinations that were incorrect and contrary to the weight of the evidence, as both the investigator and the decision-maker were motivated to favor the accusing female over the accused male. *See Id.* ¶¶ 325-339, 364-378. Moreover, only two days after Plaintiff was notified of the Title IX complaints, Tomaselli suspended and removed him from campus in retaliation for reaching out to potential witnesses, an action that was prohibited under Einstein's Title IX policy and procedures. *See Id.* ¶¶ 214, 237-241, 245, 255-260. Einstein and Tomaselli took these actions, despite multiple members of the faculty, as well as a former member of Plaintiff's laboratory, reported to the Title IX Office that there was reason to believe that the Title IX complaints against Dr. Khodakhah contained false allegations, made in bad faith, but the Title IX Office did not look into these allegations, despite provisions in its procedures prohibiting the submission of false information. *See id.* ¶¶ 261-267, 290-303. These factual allegations are characteristic examples of deliberate indifference under Title IX. *See Vengalattore*, 36 F.4th at 106–07; *Menaker*, at 33 & n.48.

The Einstein Defendants' attempt to conflate these allegations with Plaintiff's erroneous outcome claim overlooks the fact that the same set of facts may support overlapping theories of liability, particularly when the allegations suggest an incorrect result and a failure to adequately respond to sex-based discrimination during the investigation.[1] Courts have recognized that

---

[1] The Einstein Defendants' contention that Plaintiff previously characterized the claim differently is irrelevant—the operative pleading controls and the Second Amended Complaint expands the factual allegations to support a deliberate indifference claim.

3

procedural irregularities, sex-based bias, and inadequate responses to allegations of discrimination can give rise to multiple theories of liability, including deliberate indifference, erroneous outcome, and selective enforcement. *See Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082 (2nd Cir. 2024) (holding that a male educator plausibly alleged deliberate indifference under Title IX where the school district's investigation was procedurally deficient and its reasoning dubious); *see also Vengalattore*, at 106 (procedural irregularities, failure to follow university procedures, and findings contrary to the weight of evidence could support a plausible inference of sex-based bias, particularly when combined with evidence of pressure on university to favor one gender over another). *Doe v. New York Univ.*, 438 F. Supp. 3d 172, 181 (S.D.N.Y. 2020) (applying the *McDonnell-Douglas* burden-shifting framework requiring only a minimal plausible inference of discriminatory intent at the motion to dismiss stage on Title IX claim). Accordingly, the Second Amended Complaint adequately sets forth a claim for deliberate indifference. *See Id.*

    **B**. **Plaintiff's Proposed Amendments to Erroneous Outcome Claim Not Futile Because the Investigation Deviated From Governing Procedure in a Way That Plausibly Affected the Outcome**

The Einstein Defendants once again misconstrue Plaintiff's proposed amendments and arguments in favor thereof as a mere rehash of arguments previously rejected. The proposed Second Amended Complaint alleges additional facts clarifying that the 2018 Title IX Policy was inapplicable to the July 11, 2022, complaint, and that the investigation deviated from governing procedures in ways that plausibly affected the outcome. *See* SAC ¶¶ 223, 224 (applying 2018 Title IX Policy to Plaintiff's case). *See Id.* ¶¶ 228—233 (alleging that Einstein broke with its own policy to apply 2018 Title IX Policy in procedurally irregular way). Furthermore, it was procedurally unusual for Einstein to rely on the 2018 Title IX Policy rather than Einstein's then-current 2022 Title IX Policy and the Einstein Defendants were aware of these irregularities.

4

Contrary to the Einstein Defendants' assertion, Plaintiff does not rely solely on an alleged disagreement with the investigator's credibility determinations. Rather, the proposed amendments make clear that the investigator failed to meaningfully pursue exculpatory evidence and disregarded witness information that would have undermined the accusations—the type of conduct that expressly constitutes procedural irregularities sufficient to support an erroneous outcome claim at the pleading stage. *See* SAC ¶¶ 259, 262. The investigator did not speak with all of Dr. Khodakhah's witnesses and declined to seek out witnesses identified by Plaintiff who could have provided exculpatory evidence favorable to him. *See id.* A claim is plausible, precluding dismissal for failure to state claim, when plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Roe v. St. John's Univ.*, 91 F.4th 643, 657 (2d Cir. 2024). (Title IX complaint sufficiently alleges that university acted with discriminatory intent where facts support plausible inference of discrimination).

Furthermore, the Einstein Defendants' attempt to frame this case as one involving only the "weighing of evidence" ignores Plaintiff's allegations that the process itself was flawed. At the pleading stage, Plaintiff is only required to allege irregularities casting doubt on the accuracy of the outcome, not proving that the investigator deliberately ignored evidence or that the accusations were false. *See Vengalattore*, at 106–07; *Menaker*, at 33 & n.48. Accordingly, Plaintiff has adequately pled an erroneous outcome claim, and amendment should not be denied as futile.

### C. Plaintiff's Proposed Amendments Sufficiently Allege that Plaintiff Participated in Protected Activity

The Einstein Defendants argue that Plaintiff cannot sustain a retaliation claim because he does not allege that he engaged in a protected activity. In the Second Amended Complaint, Plaintiff alleges that he engaged in a protected activity when he "exercised his right to participate in the Title IX process by reaching out to colleagues who might serve as witnesses." SAC ¶ 237.

5

What constitutes a protected activity under Title IX is not limited to the formal filing of a complaint; it may also include participation in an investigation and efforts to oppose sex discrimination, including by identifying witnesses and gathering information relevant to the Title IX proceeding. *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 180 (2005) (holding that Title IX protects individuals from retaliation who speak out about sex discrimination). In the SAC, Plaintiff has plausibly alleged that he exercised his rights under Title IX by participating in the Title IX process and communicating with his colleagues who could serve as witnesses in those investigations. SAC ¶ 237. Such conduct falls squarely within Title IX's broad protection against retaliation.

Moreover, the Einstein Defendants' argument that Plaintiff cannot rely on Title VII case law to support his argument is flawed. *See* ECF No. 105 at 15. It is well-established that because Title VII and Title IX "share the same goals and because Title IX mirrors the substantive provisions of Title VII courts have interpreted Title IX by looking to the body of law developed under Title VII, as well as the caselaw interpreting Title VII." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (internal citation omitted). *See also Doe v. Columbia Univ.*, 831 F.3d at 55 (explaining that "claims [under Title VII and Title IX] have so much in common that, at least on certain sorts of facts, rules the Supreme Court established for Title VII litigation appear to apply also to such similar claims of sex discrimination under Title IX."). Plaintiff is not required to identify any new facts in order to rely on additional legal authority that supports the arguments he has already made i.e., that his efforts to defend himself and secure witnesses in the Title IX process constitute protected activity. And the Einstein Defendants' subsequent actions—suspending Plaintiff, cutting off his Einstein e-mail address, removing him from campus, and interfering with his research—reasonably support an inference of retaliation related to the underlying allegations.

6

The Einstein Defendants' second contention that Plaintiff's theory that he engaged in protected activity by filing a Title IX Complaint himself against Tomaselli "suffers from a different significant and fatal flaw" mischaracterizes the allegations. First, Plaintiff has alleged a retaliatory course of conduct. Simply because the suspension happened before Plaintiff filed his claim against Dean Tomaselli does not erase the pattern and retaliatory motive alleged in the SAC. Where, as here, a plaintiff plausibly alleges retaliatory motive, a retaliation claim may be based on escalating adverse actions before and after the protected activity. *See Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (holding that "[p]roof of a causal connection between protected activity and adverse employment action, as required to establish *prima facie* case of retaliation under Title VII, can be shown . . . indirectly, by showing that the protected activity was followed closely by retaliatory treatment"). The same holds true on a Title IX claim for retaliation. *See Id.*

In sum, at this stage, Plaintiff only needs to allege facts to support a minimal plausible inference of retaliatory intent, which he has done here by clarifying the nature of his protected activity and the sequence of retaliatory events. *See* SAC ¶¶ 166-80; 237 (alleging Plaintiff "exercised his right to participate in the Title IX process by reaching out to colleagues who might serve as witnesses").

II. **PLAINTIFF'S PROPOSED AMENDMENTS TO HIS NEW YORK STATE HUMAN RIGHTS LAW ("NYSHRL") AND NEW YORK CITY HUMAN RIGHTS LAW ("NYCHRL") CLAIMS ARE NOT FUTILE.**

The Einstein Defendants' argument that Plaintiff failed to allege differential treatment of similarly situated employees misapplies the pleading standard required at this stage. To revive his claims under the NYSHRL and the NYCHRL, Plaintiff is only required to plausibly allege facts that give rise to an inference of discrimination. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The SAC alleges that similarly situated female respondents who were accused

7

of comparable misconduct were treated more favorably—by not being suspended, terminated, or stripped of institutional access. SAC ¶¶ 639, 652 ("Complainants 1 and 2 were not subject to adverse actions such as the shutting off of their e-mail, suspension, or dismissal.") Compare SAC ¶¶ 227, 340-346, 358, 386-395 ("Einstein arbitrarily imposed overly harsh and punitive sanctions, including a sanction to bar Dr. Khodakhah for three years from working with students for alleged conduct that does not constitute 'Title IX sexual harassment' under Einstein's current and applicable 2022 Title IX Policy."), *with* SAC ¶¶ 395 ("Ms. Ramrez's sanction determination was overly harsh and out of line with sanctions issued to others at Einstein found responsible for far more heinous and serious allegations.")

The Einstein Defendants' insistence that these claims should be dismissed merely because they are not "similarly situated in all material respects" raises factual disputes premature at the pleading stage. *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64-65 (2d Cir. 1997) (affirming grant of summary judgment because employee's "sweeping allegations unsupported by admissible evidence do not raise a genuine issue of material fact" because she failed to allege facts to show that similarly situated males were treated differently). The determination of whether parties are "similarly situated" is generally considered a fact-intensive inquiry. *See Radwan v. Manuel*, 55 F.4th 101, 132 (2nd Cir. 2022); *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury.")

Furthermore, the Einstein Defendants overlook that the NYCHRL and the post-2019 amended NYSHRL apply a liberal construction requiring Plaintiff to plead merely that he was treated "less well" due to a protected characteristic. *See Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009); *Allen et al v. City of New York*, 2025 WL 3152723, at *3 (2d Cir. Nov. 12,

8

2025); *Wright v. White Plains Hosp. Med. Ctr.*, 232 N.Y.S.3d 594, 5996 (2d Dep't 2025). Plaintiff's amended pleading clearly meets that standard.

### III. PLAINTIFF'S PROPOSED AMENDMENTS TO HIS CONTRACT CLAIMS ARE NOT FUTILE.

#### A. Plaintiff's Proposed Amendments Set Forth Additional Factual Allegations to Establish the Existence of a Contract

Unlike prior pleadings, in the SAC Plaintiff has set forth additional factual allegations to establish that Einstein's Title IX policies, the 2016 Chair Appointment Letter, and the 2014 Retention Letter together formed a binding contract. Courts routinely recognize that a university's policies containing mandatory language and specific promises may constitute a contract, whether incorporated by reference or implied in fact. *See Joshi v. Trs. of Columbia Univ.*, 2018 WL 2417846 *6-7 (S.D.N.Y. May 29, 2018) (distinguishing between aspirational university policies and those that contain specific, mandatory promises to support breach of contract claim); *see also, Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011).

The additional factual allegations materially differ from those previously dismissed. Plaintiff now pleads that his demotion as chair was expressly disciplinary, which triggered the procedural assurances made by the University guaranteeing notice, access to investigative materials and adjudication. The proposed amendments also make clear that the 2014 Retention Letter was understood by both parties to guarantee ongoing and indefinite funding. Thus, dismissal at the pleading stage is inappropriate and any ambiguity should be resolved in Plaintiff's favor. *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) ("Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims."). At a minimum, Defendants' arguments regarding Plaintiff's breach of contract claims raise factual disputes concerning the incorporation, mutual intent, and scope of the contract—issue which

9

cannot be decided on a motion to dismiss unless the court, improperly, takes into account Defendants' assertions and claimed evidence outside of the pleadings. As such, given these newly pleaded factual allegations, amendment would not be futile.

### B. Plaintiff's Proposed Amendments Support a Claim for Tortious Interference with Contract

The Einstein Defendants' argument that Plaintiff's amendments to the Tortious Interference with Contract claim would be futile presumes that Plaintiff did not allege a breach of contract claim. The proposed Second Amended Complaint cures that defect by pleading specific contractual obligations and concrete facts to show a breach. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996); *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990). Moreover, where a plaintiff relies on newly pleaded facts to address the precise deficiencies identified by the Court, the law of the case doctrine does not apply. *See Network Apps, Inc v. AT&T Corp.*, 778 F. Supp. 3d 611, 619-20 (S.D.N.Y 2023). Finally, Plaintiff's implied covenant of fair dealing and promissory estoppel claims are not duplicative—these allegations are based on bad faith conduct that deprived Plaintiff of the benefit of his contract and may be pleaded in the alternative. *Dalton v. Educ. Testing Serv.*, 87 N.Y. 2d 384, 389 (1995).

### CONCLUSION

Based on the foregoing, the Court should grant Plaintiff's Motion to Amend and for leave to file the Proposed Second Amended Complaint.

**Dated: December 19, 2025**

        Respectfully submitted,

        **NESENOFF & MILTENBERG, LLP**

        By: /s/ *Stuart Bernstein*
        **Stuart Bernstein, Esq.**

**Andrew T. Miltenberg, Esq.**
**Gabrielle M. Vinci, Esq.**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**amiltenberg@nmllplaw.com**
**sbernstein@nmllplaw.com**
**gvinci@nmllplaw.com**

## CERTIFICATE OF SERVICE

I certify that on December 19, 2025, this document was filed through the ECF System of the United States District Court for the Southern District of New York and will be served electronically on the Registered Participants in the notice of Electronic Filing.

*/s/ Stuart Bernstein*
Stuart Bernstein, Esq.