**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KAMRAN KHODAKHAH,

*Plaintiff,*

v.

MONTEFIORE MEDICINE ACADEMIC
HEALTH SYSTEM, INC., ALBERT EINSTEIN
COLLEGE OF MEDICINE, GORDAN
TOMASELLI, PABLO CASTILLO, BRYEN
JORDAN, and JOHN-JANE DOES 1-10,

*Defendants.*

No. 1:24-cv-00839-LAK-RFT

---

**STIPULATION REGARDING**
**ELECTRONIC DISCOVERY AND [PROPOSED] ORDER**

     Defendants Montefiore Medicine Academic Health System, Inc. and Albert Einstein College of Medicine and Plaintiff Kamran Khodakhah (collectively the "Parties" and each a "Party") hereby stipulate to the following procedures, protocols, and obligations for the production of documents and electronically stored information by any Party in the above-captioned litigation (the "Action").

**I.**    **DEFINITIONS**

     A.  "Bates Number" has the meaning given in Section III.I of this Stipulation and Order ("Stipulation").

     B.  "Claw-Back Notice" has the meaning given in Section VII.C of this Stipulation.

     C.  "Clawed-Back Documents" has the meaning given in Section VII.C of this Stipulation.

     D.  "Custodian" means the Person who is responsible for, has administrative control over, or has access to potentially responsive ESI.

E. "Discovery Material" includes information of any kind produced or disclosed in the course of discovery in this Action.

F. "Document" is defined as set forth in Local Civil Rule 26.3(c)(2)—that is: (1) "synonymous in meaning and equal in scope to the usage of the term 'documents or electronically stored information' in Fed. R. Civ. P. 34(a)(1)(A)"; and (2) "a draft or non-identical copy is a separate document within the meaning of this term." For the avoidance of doubt, the term "Document" as used herein includes Hard-Copy Documents and ESI.

G. "Electronic Communication" means a message transmitted electronically or digitally and includes emails, as well as any file (document, photo, video, audio, or otherwise) incorporated as an attachment or Embedded File or sent or received independently (that is, not accompanied by an electronic message containing text).

H. "Electronically Stored Information" or "ESI" is equal in scope to "electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and includes information stored or recorded in or on electronic, digital, magnetic, or similar Media. For the avoidance of doubt, ESI includes Electronic Communications.

I. "Embedded File" means any Document contained in or linked to another Document, images embedded in Documents, and Documents referenced via links to internal Document sources.

J. "Exception Files" has the meaning given in Section II.F of this Stipulation.

K. "Extracted Text" means text extracted from a Native Format file using standard e-discovery processing tools.

L. "Family Group" has the meaning given in Section III.G of this Stipulation.

M. "Family Relationship" means the association between an attachment and its parent

document or between embedded documents or linked internal or non-public documents and their parents.

N. "Hard-Copy Document" means a document existing in paper or other tangible form at the time of collection.

O. "JPEG" refers to the Joint Photographic Experts Group file format.

P. "Load File" means the electronic file that is used to import all required production information into a document database, including, as applicable: document images; Extracted Text or OCR Text; Native Format files where required by this Stipulation; Metadata; information related to the embedded content of a document; and information indicating document breaks and document relationships, such as the relationship between an Electronic Communication and its attachments.

Q. "Local Civil Rules" means the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, effective January 2, 2026.

R. "Media" means an object or device, real or virtual, on which information or data is stored, including but not limited to digital or analog machine-readable devices, computers, Internet sites, portable storage media, servers, networks, cloud-based storage, discs, and tapes.

S. "Metadata" means (i) structured, i.e., fielded, information embedded in a Native Format file which describes, *inter alia*, the characteristics, origins, usage, and/or validity of the electronic file; and (ii) information generated automatically by the operation of a file system or application when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

T. "Native Format" means the file format of ESI in the application in which such ESI was originally created.

3

U. "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, Searchable Text (the native text extracted or generated from a Document) within an image of a document. The latter text is also referred to as "OCR Text".

V. "Person" is defined as set forth in Local Civil Rule 26.3(c)(6)—that is, "any natural person or any legal entity, including, without limitation, any business or governmental entity or association."

W. "Privileged Information" means Documents protected from production or disclosure (in whole or in part) by the attorney-client privilege, attorney work product protection, common-interest privilege, or any other legal privilege or immunity.

X. "Producing Party" means a Party that produces Discovery Material in this Action.

Y. "Protective Order" means the protective order governing the disclosure of confidential Discovery Material entered by the Court in this Action.

Z. "Requesting Party" means a Party requesting Discovery Material through written discovery.

AA. "Receiving Party" means a Party that receives Discovery Material from a Producing Party in this Action.

BB. "Searchable Text" means the native text extracted or generated from a Document, including text generated from an electronic image of a Hard-Copy Document through OCR.

CC. "TIFF" or Tagged Image File Format refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or scanned Hard-Copy Documents.

## II.    GENERAL PROVISIONS

A. Construction of Certain Terms in this Stipulation. The rules of construction detailed in Local Civil Rule 26.3(d) shall apply to the construction of this Stipulation.

B. Confidentiality. Discovery Material shall be subject to the terms of the Protective

Order, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

C. Preservation of Objections. By entering into the Stipulation, no Party waives any right it otherwise might have to object to disclosing or producing any information or item on any ground, including confidentiality, attorney-client privilege, attorney work product doctrine, or any other applicable and legally cognizable protection, privilege, or immunity. Similarly, no Party waives any right to object on any ground to the discoverability, authenticity, admissibility, or use in evidence of any of the material covered by this Stipulation.

D. Exception Files. The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI, and rendering to TIFF images) ("Exception Files").

E. Costs. Without prejudice to any application for costs or award of a reasonable attorney's fee, or to any subsequent agreement between the Parties regarding the allocation of costs, each Party agrees to bear its own costs of producing Documents in this Action. The Parties expressly reserve their rights to seek their costs in connection with any dispute the resolution of which is unaddressed by or departs from the terms of this Stipulation, and to seek recovery of a reasonable attorney's fee incurred in connection with discovery to the extent permitted under 42 U.S.C. § 1988(b).

F. Disputes. The Parties acknowledge their obligations under Local Civil Rule 37.2, including to attempt to confer in good faith in an effort to resolve any discovery dispute prior to seeking judicial resolution of such a dispute. The Parties agree that the obligations under Local Civil Rule 37.2 extends to any disputes that arise under or in relation to this Stipulation. As such, in the event the Parties cannot reach agreement on a disputed matter, the Parties may submit the

matter to the Court in accordance with the procedures and requirements outlined in Local Civil Rule 37.2.

III.    **PRODUCTION FORMAT**

A. Format Guidelines. The Parties shall, to the extent reasonably and technically possible, produce Documents according to the specifications provided in this Stipulation and in Exhibit A.

B. De-NISTing. ESI shall be filtered for file type to remove system files, program files, and other non-user created data files that are on the industry standard list of such files maintained by the National Institute of Standards & Technology ("NIST"). The Parties recognize that to reduce the document review population, additional file types may need to be excluded.

C. Deduplication. A Party is required to produce only a single copy of a Responsive Family Group. Each Party may remove exact duplicate Family Groups (i.e., identical copies of the same Document(s)), to reduce the unnecessary cost of reviewing and producing exact duplicate Documents. If a Party chooses to remove exact duplicate Documents, the Party shall make reasonable efforts to remove exact duplicate ESI according to the MD5 or SHA-1 hashing method and additional information regarding the Family Relationship and shall identify in the All Custodians field of each Document the name(s) of the custodians who had duplicates of the Document removed during processing. Moreover: (1) if a Document is a duplicate of another Document but the Documents have different family members, they will not be de-duplicated, although each family member shall be hashed separately for purposes of populating the "MD5 or SHA-1 Hash" field in Exhibit A; (2) responsive non-privileged attachments to Documents shall not be disassociated from the parent Document even if they are exact duplicates of another Document in the production; and (3) Hard-Copy Documents shall not be eliminated as duplicates of responsive ESI. ESI that is not an exact duplicate according to the MD5 or SHA-1 hashing method may not be removed. However, a Producing Party may use email threading—that is, to

enable the Producing Party to produce the most inclusive subset of emails in a responsive population—to defensibly exclude, from both review and production, duplicative content within the Producing Party's Documents. Both de-duplication and email threading shall be performed with careful consideration of full Family Groups, and as such, neither process will suppress unique content found in an attachment. The Producing Party shall produce separate inclusive emails where a thread splits into different conversation "branches."

D. Encrypted Documents. The Parties will make reasonable efforts to ensure that any responsive Documents identified that are encrypted or password-protected are successfully processed for review and production under the requirements of this Stipulation, and if produced in Native Format, the decrypted Document is produced. To the extent responsive encrypted or password-protected Documents are successfully processed according to the requirements of this Stipulation, the Parties have no duty to identify the prior encrypted status of such Documents. To the extent such responsive Documents are not successfully processed despite use of reasonable efforts, including reasonable technical efforts to obtain passwords, a placeholder TIFF image may be produced in place of each such Document indicating that security protection could not be removed. Upon request from the Receiving Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms that could be undertaken to remove such security protection or the production of available Metadata.

E. Documents to Be Produced in Native Format. As provided in Exhibit A:

1. Microsoft Excel, other spreadsheet files, and multi-media files shall be produced in Native Format, if available.

2. Photographs, PowerPoint, and other presentation files may be produced either in Native Format or as color images in TIFF format.

7

3. The Parties agree to meet and confer regarding the ability to produce other file types in Native Format.

4. If a Document to be produced in Native Format contains Privileged Information or information subject to any other applicable protection, the Document will be produced either in Native Format with redactions or by producing the Document in TIFF format with redactions, in accordance with Section VII of this Stipulation.

5. The production Load Files shall contain a link to the produced Native Format files as specified in the "NativePath" Metadata field described in Exhibit A. Each electronic file produced in Native Format shall be assigned a unique Bates Number, as set forth in Section V.I, and the database record for that file shall include a single page Bates-stamped TIFF image slip-sheet bearing the phrase "PRODUCED IN NATIVE FORMAT" (or similar language). To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Protective Order shall appear on the associated TIFF slip-sheet. Files produced in Native Format shall be given file names that include the Bates Number and the file extension.

F. Production of Additional Documents in Native Format. Each Party reserves the right to request production in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A and, upon a showing of reasonable need, such requests will not be unreasonably denied.

G. Family Relationships and Family Groups.

1. A Document and all other Documents in its attachment range, emails with attachments, and email, Electronic Communications, or other Documents together with any Documents referenced by Document stubs or via links to internal document sources within those emails, Electronic Communications or other Documents all constitute "Family Groups."

2. If any member of a Family Group is produced, all members of that Family Group must be also be produced, except (1) any Documents withheld or redacted on the basis of privilege or other applicable legally cognizable protection; and (2) any nonresponsive attachments that contain Confidential or Highly Confidential — Attorneys' Eyes Only material, including those materials that may be subject to third-party notice provisions. If the Producing Party withholds or redacts a Document under (1), the Producing Party shall comply with Section VII of this Stipulation. If nonresponsive attachments are withheld under (2), the Producing Party must produce a placeholder TIFF image in place of each such Document indicating that the Document is nonresponsive.

3. All Documents within a Family Group shall be produced together. Family Group relationships shall be preserved. Child files shall follow parent files in sequential Bates Number order, including in the case of Embedded Files produced separately from their parent.

H. <u>Scanning Hard-Copy Documents</u>. In scanning Hard-Copy Documents, each page should be output to a single page TIFF file.

I. <u>Bates Numbers</u>. Each page of a Document produced in TIFF format and each electronic file produced in Native Format shall have a unique fixed-length numeric identifier ("<u>Bates Number</u>") containing at least eight (8) digits. The Bates Number for each page of a Document shall be created so as to identify the Producing Party and the Bates Number (e.g., "EINSTEIN_00000001" or "KHODAKHAH_00000001"). The Producing Party may choose its own alpha prefix but that prefix shall not change across productions. Bates Numbers shall be electronically "burned" onto the image following the formatting requirements in Exhibit A. Unless it would obscure, conceal, or interfere with any information originally appearing in the underlying image, the Bates Number shall be burned on the lower right-hand corner of each image.

J.  <u>Confidentiality Designations for TIFF Images</u>. Unless it would obscure, conceal, or interfere with any information originally appearing in the underlying image, any confidentiality designation pursuant to the Protective Order shall appear on the lower left-hand side of each image.

K.  <u>Metadata Fields and Processing</u>. Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Exhibit A if such fields cannot be extracted from a Document using reasonable means, with the exception of the following, if available: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, and (f) MD5 Hash or SHA-1 Hash. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and standard delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist or is not reasonably or technically accessible.

L.  <u>Production Media</u>. The Producing Party shall produce Document images, Native Format files, Load Files, and Metadata via secure FTP or other mutually agreeable Media ("<u>Production Media</u>"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media, and the Bates Number ranges of the Documents in that production (e.g., "Defs.' Production January 1, 2026, ABC_00000123-ABC_00000456"). To the extent that the Production Media includes any confidential information protected under the Protective Order, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of such order. Production Media shall also include text referencing the case name and number. Further, any replacement Production Media shall clearly

identify that it is a replacement and cross-reference the Bates Number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media shall be encrypted, with the Producing Party to provide a decryption key at the time of production. Productions should be accompanied by a cover letter identifying the Bates Numbers for Documents produced. All electronic transmissions of produced materials must be effected via a secure file transfer system.

IV.     **PROCESSING SPECIFICATIONS**

A.  The Producing Party will generate and preserve the MD5 or SHA-1 hash values of all ESI based on the native file.

B.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production: Where Documents are not otherwise produced natively, all TIFF images shall display "track changes" (and similar in-line editing), comments, PowerPoint speaker notes, and other hidden text, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible.

C.  Each Producing Party shall make reasonable efforts to process all ESI with the following time zone: Coordinated Universal Time (UTC).

V.     **REDACTED AND WITHHELD DOCUMENTS**

A.  <u>Redaction and Withholding of Certain Documents</u>. If a claim of privilege or other legally cognizable protection applies to only a portion of a Document, the Document should be produced (in Native Format or TIFF image) with the portion claimed to be privileged or protected obscured and the redacted area stamped with a label containing the reason for the redaction, for example "Redacted—Privileged" or similar. Any redacted material must be clearly labeled as having been redacted. To the extent responsive Documents contain privileged or protected information and cannot be redacted or produced in TIFF format, such Documents may be wholly

withheld.

B. <u>Redaction of Certain Non-Responsive Information</u>. A Producing Party may redact irrelevant and/or non-responsive information.

C. <u>Redaction of Students' Personally Identifying Information</u>. Defendants may redact students' personally identifying information, as defined by 34 C.F.R. § 99.3, as needed to comply with the Protective Order.

D. <u>Privilege Logs</u>. The Parties agree to use categorical Privilege Logs. The Producing Party shall provide the Receiving Party with a log of the categories of documents withheld or redacted for privilege or any other basis, from that production consistent with Federal Rule of Civil Procedure 26(b)(5), Local Civil Rule 26.2, and any other applicable law ("<u>Privilege Log</u>").

E. <u>Metadata for Redacted Documents</u>. The Parties agree that for redacted documents, all Metadata fields can be withheld except: BegBates; EndBates; BegAttach; EndAttach; and PageCount.

F. <u>Content of Privilege Log for Redacted Documents</u>. The Producing Party shall indicate the basis for the redaction on a separate log, consistent with the requirements of Local Civil Rule 26.2.

## VI.    VARIATION OF STIPULATION'S REQUIREMENTS

Nothing in this Stipulation shall preclude any Party from seeking to amend any procedure or requirement set forth herein. Any procedure or requirement of this Stipulation may be varied by agreement of the Parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of ESI or other covered Discovery Material.

## VII.    CLAW-BACK MECHANISMS FOR INADVERTENT ESI DISCLOSURE

A. <u>No Waiver</u>. The Parties agree that inadvertent disclosure of Privileged Information or otherwise protected Documents will not constitute a waiver of any such privilege or legally

cognizable protection. In the event of an inadvertent failure to properly designate Discovery Material as "Confidential" or "Highly Confidential — Attorneys' Eyes Only" the provisions of the Protective Order shall apply. In all other cases of inadvertent disclosure, the Parties agree to adhere to the following procedures.

B. Notice by Receiving Party. In the event that any Receiving Party receives Discovery Material that it believes is Privileged Information or information otherwise subject to legally cognizable protection, such Receiving Party shall immediately refrain from examining the affected Discovery Material and shall promptly notify the applicable Producing Party in writing that the Receiving Party possesses potentially Privileged Information or potentially protected information, as applicable. Each Producing Party shall have twenty-one (21) days after receiving such notice to assert privilege or other legally cognizable protection over the identified Discovery Material.

C. Notice by Producing Party. If a Producing Party discovers that it has inadvertently disclosed privileged or protected ESI, it shall promptly notify any applicable Receiving Parties of the production in writing, which notice shall identify the inadvertent disclosure(s) (the specified Documents being "Clawed-Back Documents") and may direct the Receiving Party to promptly return, destroy, or make inaccessible the Clawed-Back Documents and all copies thereof ("Claw-Back Notice").

D. Receiving Party's Obligations on Receipt of Claw-Back Notice. Within seven (7) days of receipt of a Claw-Back Notice, the Receiving Party shall inform the Producing Party that compliance will be effectuated or otherwise challenge the Claw-Back Notice in writing. The Receiving Party shall: (i) neither use nor disclose the Clawed-Back Documents (except as is necessary for the purpose of challenging the Claw-Back Notice and otherwise only in the event that the challenge is resolved against the Producing Party's claim of privilege or legally cognizable

protection); and (ii) within twenty-one (21) days of receipt of a Claw-Back Notice, and in accordance with the Producing Party's reasonable instructions, destroy, return, or disable all access to the Clawed-Back Documents (but in the case of a challenge to the Claw-Back Notice, the Receiving Party may retain one copy for the purpose of challenging the privilege or legally cognizable protection claimed or the inadvertency of the disclosure). In all cases, the Receiving Party will endeavor in good faith to retrieve any copies of the Clawed-Back Documents, to return, destroy, or otherwise dispose of the materials, and take all steps necessary to prevent disclosure by the Receiving Party of the Clawed-Back Documents.

E. <u>Replacement Production Media</u>. Where the inadvertent disclosure is in the form of a disc or on a password-protected server, the Producing Party shall provide, upon receipt of intent to comply with the Claw-Back Notice, a replacement of the Production Media containing all Documents except the Clawed-Back Documents.

F. <u>Challenged Claw-Back Notices</u>. If the Claw-Back Notice is challenged, the Parties will meet and confer within fourteen (14) days to attempt to resolve the dispute. Under all circumstances, the Producing Party must preserve all Clawed-Back Documents until any dispute has been resolved by the Parties' agreement or the Court.

G. <u>Use of Clawed-Back Documents Prior to Claw-Back Notice</u>. Any use of the Clawed-Back Documents prior to receipt of a Claw-Back Notice covering those documents is not a violation of this Stipulation but may be subject to the provisions of the Protective Order.

H. <u>Right to Review Preserved</u>. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of Discovery Material for relevance, responsiveness, and segregation of either privileged or protected information before production.

**IT IS HEREBY AGREED** by the undersigned as of January 8th, 2026.

Gabrielle E. Tenzer
Anna Collins Peterson
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
gtenzer@heckerfink.com
apeterson@heckerfink.com

Roberta A. Kaplan
Christopher K. Connolly
KAPLAN MARTIN LLP
1133 Avenue of the Americas
Suite 1500
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
cconnolly@kaplanmartin.com

*Counsel for Defendants Montefiore Medicine*
*Academic Health System, Inc. and Albert*
*Einstein College of Medicine*

Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Gabrielle Vinci, Esq.
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
gvinci@nmllplaw.com

*Counsel for Plaintiff*

SO ORDERED

Dated: __January 9, 2026_____
New York, New York

SO ORDERED

**ROBYN F. TARNOFSKY**
**UNITED STATES MAGISTRATE JUDGE**

**EXHIBIT A**

**DOCUMENT PRODUCTION FORMATS**

**I.     OVERVIEW**

A. All Documents shall be produced: (1) as (i) Bates-stamped tagged image file format ("TIFF") images, or (ii) where expressly required or permitted by this Exhibit, Native Format files compliant with the Native Format requirements detailed in Section IV of this Exhibit; and (2) along with (i) an image load/cross reference file, (ii) a data Load File with fielded Metadata, and (iii) document-level Extracted Text for ESI or OCR Text for scanned Hard-Copy Documents.

B. All produced Documents shall comply with the applicable requirements set out in this Exhibit and in the Stipulation.

**II.     IMAGE REQUIREMENTS**

A. Except as otherwise provided in this Stipulation, all Documents shall be produced as TIFF images in 300 dpi Group IV single-page monochrome format.

B. All images shall be sequentially Bates-stamped, in accordance with the requirements set out in Section III of this Exhibit.

C. Images shall include the following content where present:

    1.    For word processing files (e.g., Microsoft Word): Comments and "track changes" (and similar in-line editing).

    2.    For presentation files (e.g., Microsoft PowerPoint): Speaker notes and comments.

D. Reasonable care shall be taken not to degrade the legibility of Documents during the imaging process. If legibility is found to have been degraded, the Receiving Party may make reasonable requests for re-production of affected Documents.

E. If particular Documents warrant departure from these image requirements (e.g., production of color images instead of monochrome), the Parties shall cooperate to arrange for the

mutually acceptable reasonable production of such Documents.

III.    **BATES STAMPING REQUIREMENTS**

A. Each page of a Document produced in image format shall have its Bates Number electronically "burned" onto the image, using a consistent length with leading zeros in the number, and consistent font and type size. The format of the Bates Numbers shall not change across productions.

B. Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, the Bates Number shall be burned on the lower right-hand corner of the Document.

IV.    **NATIVE FORMAT REQUIREMENTS**

A. Spreadsheet files

1.    Spreadsheet files (e.g., Microsoft Excel) shall be provided in Native Format.

2.    In lieu of a TIFF image version of each spreadsheet file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the Native Format version of each file. The TIFF Placeholder should read "Document Produced Natively."

3.    Spreadsheet files shall include the following content where present: hidden columns, rows, and sheets; comments; and "track changes" (and similar in-line editing).

4.    When redaction is necessary, a redacted TIFF image version shall be produced. The Parties reserve the right to request access to the Native Format versions of such files.

B. Multi-media files

1.    Multi-media files (e.g., audio or video files) shall be provided in Native Format.

\

2.    In lieu of a TIFF image version of each multi-media file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the Native Format version of each file. The TIFF Placeholder should read "Document Produced Natively."

C.  Other files

In limited circumstances, it may be necessary to obtain or view the Native Format versions of files, including color Documents/images and dynamic files. The Parties reserve the right to request access to the Native Format versions of such files and/or an image format that supports viewing color Documents.

V.    **IMAGE LOAD/CROSS REFERENCE FILE REQUIREMENTS**

A. A single-page image load/cross-reference file shall be provided with each production.

B. The file should use the Concordance Image Viewer (.OPT) format, as in the sample below. Note, the volume label information ("MSC001" in the sample .opt file) is optional:

> *Sample Concordance Image Viewer .opt file:*
>
> MSC000001,MSC001,MSC\0000\00000001.TIF,Y,,,3
>
> MSC000002,MSC001,MSC\0000\00000002.TIF,,,,
>
> MSC000003,MSC001,MSC\0000\00000003.TIF,,,,
>
> MSC000004,MSC001,MSC\0000\00000004.TIF,Y,,,2
>
> MSC000005,MSC001,MSC\0000\00000005.TIF,,,,

VI.    **EXTRACTED TEXT/OCR TEXT REQUIREMENTS**

A. Extracted Text and/or OCR Text shall be provided for all Documents as separate, Document-level text files; Extracted Text and/or OCR Text shall not be embedded in the .DAT file. Document-level text shall be produced.TXT format for each Document, and filenames for .TXT files will be the Bates Number of the TIFF image of the first page of the corresponding

\

Document.

B.  OCR Text shall be provided for all redacted Documents in lieu of Extracted Text.

C.  If a Document is provided in Native Format with a single-page placeholder TIFF image (e.g., spreadsheet files), the text file shall contain the full Extracted Text of the native file.

D.  With respect to produced text files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language Documents.

E.  The Parties agree not to knowingly degrade the searchability of Documents as part of the Document production process. For example, Extracted Text should not be replaced by OCR Text except where appropriate (e.g., OCR for redacted Documents).

## VII.  **DATA LOAD FILE REQUIREMENTS**

A.  A data Load File shall be provided with each production.

B.  The file shall be a Concordance-loadable data file (".DAT" file) and contain Bates-stamp and Metadata information as detailed below.

C.  The delimiters and qualifiers to be used in the .DAT file are:

- *Record delimiter:* Windows newline/Hard return (ASCII 010 followed by ASCII 13)

- *Field delimiter:* Pilcrow ¶ (ASCII 020)

- *Multi-value delimiter:* Semicolon (do not follow with space) ; (ASCII 059)

- *Text qualifier:* Small thorn þ (ASCII 254)

- *Substitute Carriage Return or New Line in data:* Registered Trademark ® (ASCII 174)

D.  With respect to .DAT files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language Documents.

\

E. The .DAT file shall have a header line with the below listed field names and shall include the corresponding information per each applicable field:

| Field | Comments | Document Types |
|---|---|---|
| Production:: Begin Bates | Beginning Bates Number. | All. |
| Production:: End Bates | Ending Bates Number. | All. |
| Production:: Begin Attach | Bates Number from the first page of each attachment. | Email only. |
| Production:: End Attach | Bates Number from the first page of each attachment. | Email only. |
| Production:: Image Count | Number of TIFF image pages in the produced Document. | All. |
| Number of Attachments | Number of attachments to an e-mail. | Email only. |
| File Extension | File extension of the original Document (e.g., .msg, .docx, .jpg). | All. |
| FileSize | File size of the original Document. Format: kilobytes. | All. |
| Unified Title | Subject of the document. If the document is an email, this field contains the email subject. If the document is not an email, this field contains the document's file name. | Non-Email files. |
| Custodian | Email: Mailbox in which the file was located. Other: Individual who originated the document. Format: LASTNAME, FIRSTNAME. | All. |
| All Custodian | For globally de-duplicated productions only. Full name of all custodians for whom the Document is being produced. Format: LASTNAME, FIRSTNAME; LASTNAME, FIRSTNAME. | All. |
| Author | Author of Document from available Metadata. | Loose files and attachments. |
| Email From | Electronic Communication author. | Electronic Communications only. |
| Email To | Electronic Communication addressee(s)/recipients. | Electronic Communications only. |
| Email CC | Email addressee(s), carbon copy. | Email only. |
| Email BCC | Email addressee(s), blind carbon copy. | Email only. |
| Email Subject | Email subject. | Email only. |

| Field | Comments | Document Types |
|---|---|---|
| Created Date/Time | File creation date. Format: MM/DD/YYYY HH:MM AM/PM. | All. |
| Last Modified Date/Time | File modification date. Format: MM/DD/YYYY HH:MM AM/PM. | All. |
| Sent Date/Time | Electronic Communication sent date. Format: MM/DD/YYYY HH:MM AM/PM. | Electronic Communications only. |
| Sort Date/Time | Primary date field MM/DD/YYYY HHMM AM/PM. This is the parent date copied down to attachments. | All. |
| MeetingStartDate | Start date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingStartTime | Start time of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| MeetingEndDate | End date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingEndTime | End date of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| TimeZone | The time zone in which files were standardized during processing (e.g., UTC). | All. |
| MessageID | Globally unique identifier for a message assigned by the host email system. This value is extracted from parent message during processing and typically includes messageid and a domain name (e.g., <0E6648D558F338179524D555@m1p.contoso.net). | Email only. |
| ConversationIndex | Email thread identification. | Email only. |
| Importance | Email flag indicating priority level set for message. | Email only. |
| Sensitivity | Sensitivity field from Email messages. | Email only. |
| Record Type | Descriptor for the type of document at the time of collection: "**Email**" for all e-mails; "**Attachment**" for files that were attachments to e-mails; "**Audio**" "**Video**" or "**Photograph**" for the applicable type of multi-media file; "**Electronic Communication**" for all files meeting the definition given in this Stipulation; "**E-Document**" for all other documents and files collected electronically; and "**Hard-Copy Document**" for Hard-Copy Documents that have been scanned and converted to an electronic image. | All. |
| FileName | Name of file as maintained in the ordinary course of business, at the time of collection. | Loose files and attachments. |
| Has Hidden Data | Denotes if file contains hidden content. Format: **Yes/No** value. | Loose files and attachments. |

| Field | Comments | Document Types |
|-------|----------|----------------|
| MD5 or SHA-1 hash | Unique file identifier. | All. |
| TextPath | The production deliverable path to the Extracted Text or OCR Text for the Document, including the file name. | All. |
| NativePath | The production deliverable path to the Native Format file for the Document, including the file name (if a Native Format file is provided). | Loose files and attachments. |
| ProdVol | Volume label information for the volume in which the document was produced. | All. |
| Confidential | Confidentiality level if assigned pursuant to the Protective Order. "**Whole**" for wholly confidential documents; "**Part**" for documents marked as partly confidential. | All. |

F. In globally de-duplicated, incremental productions, there will be instances when production of Documents from additional custodians will include Documents previously produced. A Custodian Append overlay Load File using the Load File format described above shall be provided with an updated AllCustodian field (BegBates and EndBates fields may be used as the unique identifiers). For globally and within custodian de-duplicated productions, a similar append overlay Load File shall be provided with an updated AllFilePaths field.