UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAMRAN KHODAKHAH,

                        Plaintiff,

        -v-                                              CIVIL ACTION NO. 24 Civ. 0839 (LAK) (RFT)

                                                         **REPORT & RECOMMENDATION**

MONTEFIORE MEDICINE ACADEMIC HEALTH
SYSTEM, INC., et al.,

                        Defendants.

**TO THE HONORABLE LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE:**

**INTRODUCTION**

        Plaintiff Kamran Khodakhah filed a motion to amend the first amended complaint (the

"FAC") (ECF 48) in this matter. The proposed second amended complaint ("PSAC") alleges Title

IX claims against Defendants Albert Einstein College of Medicine ("Einstein") and Montefiore

Medicine Academic Health System, Inc. ("Montefiore"); New York State Human Rights Law

("NYSHRL") and New York City Human Rights Law ("NYCHRL") claims against Einstein,

Montefiore, and Dr. Gordon Tomaselli; contract and quasi-contract claims under New York law

against Einstein and Montefiore; and claims of tortious interference with contract against Drs.

Tomaselli, Pablo Castillo, and Bryen Jordan. (*See* ECF 94-1, PSAC ¶¶ 434-563.) Together,

Defendants Einstein, Montefiore, Castillo, and Jordan are the "Einstein Defendants." Pending

before the Court is Plaintiff's fully briefed motion to amend. Having carefully reviewed the

parties' filings on the docket, and for the reasons that follow, I respectfully recommend that Your Honor should DENY the motion to amend.[1]

**I.**

**BACKGROUND**

**A.      Factual Background**

This report and recommendation assumes familiarity with the allegations in the FAC, which are described in my July 31, 2025 report and recommendation that certain of the claims in the FAC should be dismissed (the "First R&R") (ECF 79), which Your Honor adopted. (*See* ECF 88, Order.) I highlight the new allegations in the PSAC below, in the sections that address the claims to which, according to Plaintiff, particular new allegations relate.

**B.      Procedural Background**

Plaintiff filed this action on February 5, 2024. (*See* ECF 1, Compl.) Plaintiff filed the FAC on September 23, 2024, bringing Title IX claims against Einstein and Montefiore; NYSHRL and NYCHRL claims against Einstein, Montefiore, and Tomaselli; contract and quasi-contract claims under New York law against Einstein and Montefiore; and claims of tortious interference with contract against Tomaselli, Castillo, and Jordan. (*See* ECF 48, FAC ¶¶ 70, 76, 79, 88, 91, 93-94, 96.)

---

[1]      While a magistrate judge may grant a motion to amend outright, it must issue a recommendation when denying a motion to amend if the denial has dispositive effects on a claim or defense. In such cases, the denial is treated as a dispositive matter, requiring the magistrate judge to submit a recommendation to the district court for de novo review. *See Jean-Laurent v. Wilkerson*, 461 F App'x 18 (2d Cir. 2012); *see also Dacosta v. City of N.Y.*, 296 F. Supp. 3d 569, 578 (E.D.N.Y. 2017).

This matter was referred to me on February 8, 2024, for general pretrial supervision and dispositive motions. (*See* ECF 19, Order of Ref.) Defendants filed motions to dismiss. (*See* ECF 53, Tomaselli Mot. To Dismiss; ECF 56, Einstein Defs.' Mot. To Dismiss.) I issued a report and recommendation that the motions to dismiss should be granted in part and denied in part. Specifically, I recommended that Your Honor should deny the motion to dismiss the claims against Montefiore based on the group pleading doctrine; deny in part the motion to dismiss the Title IX discrimination claims against Einstein and Montefiore to the extent that the claims arise out of the Chair Investigation, but otherwise grant in part the motion to dismiss the Title IX discrimination claims against Einstein and Montefiore; grant the motion to dismiss the Title IX retaliation claims against Einstein and Montefiore; deny in part the motion to dismiss the NYSHRL and NYCHRL claims against Einstein and Montefiore to the extent those claims arise out of the Chair Investigation, but otherwise grant in part the motion to dismiss those claims; grant the motion to dismiss the NYSHRL and NYCHRL claims against Tomaselli; grant the motion to dismiss the contract and quasi-contract claims under New York law against Einstein and Montefiore; and grant the motions to dismiss the tortious interference with contract claims under New York law against Tomaselli, Castillo, and Jordan. (*See* ECF 79, First R&R).

On September 16, 2025, Your Honor adopted the report and recommendation over the objections of Plaintiff (ECF 82), holding that, if Plaintiff wished to amend the FAC to replead the dismissed claims, he should file a motion to amend. (*See* ECF 88, Order at 12.) Plaintiff duly filed the pending motion to amend along with the PSAC, which includes repleaded versions of the dismissed claims. (*See* ECF 93, Pl.'s Mot. To Am.; ECF 94-1, PSAC.) Defendants oppose the

motion to amend, which was fully briefed by December 8, 2025. (*See* ECF 105, Einstein Defs.'
Opp.; ECF 106, Tomaselli Opp.; ECF 109, Pl.'s Einstein Reply; ECF 110, Pl.'s Tomaselli Reply.)

**II.**

**LEGAL STANDARD FOR MOTIONS TO AMEND**

As relevant here, "a party may amend its pleading only with the opposing party's
written consent or the court's leave. The court should freely give leave when justice so
requires." Fed. R. Civ. P. 15(a)(2).[2] The Second Circuit has held that "[t]his permissive standard
is consistent with our strong preference for resolving disputes on the merits." *Williams v.
Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). Under Rule 15, leave to amend should be
given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant,
undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d
275, 283 (2d Cir. 2000). "Generally, amendment is treated as futile if the proposed claim could
not withstand a motion to dismiss." *United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-
9107 (JPO), 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018).

**III.**

**DISCUSSION**

This report and recommendation assumes familiarity with the analyses in Your Honor's
order dismissing certain of Plaintiff's claims (ECF 88) and in the First R&R (ECF 79).

---

[2]    Unless stated otherwise, this report and recommendation omits internal quotation
marks, citations, and alterations from quoted text.

**A.      Title IX Deliberate Indifference Claims**[3]

A plaintiff generally may plead deliberate indifference in one of two ways: by pointing to significant procedural irregularities, "such as the [school]'s failure to comply with its own grievance policies or with applicable Title IX regulations," *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1095 (2d Cir. 2024), or a grievance process that was so "objectively deficient" that it cannot be said to have aimed at uncovering the truth, *Roe v. St. John's Univ.*, 91 F.4th 643, 655 (2d Cir. 2024); or, alternatively, by pleading that the decision was "inexplicable," *id.*, such as when the school "ignored [the plaintiff's] allegations that the accuser had lied*," Schiebel,* 120 F. 4th at 1097-98.

As relevant to Plaintiff's deliberate indifference claims, Plaintiff identifies four purportedly new sets of allegations in the PSAC, but those allegations are not fundamentally different from the allegations in the FAC. First, Plaintiff argues that the PSAC adds allegations that the 2018 Title IX policy was inapplicable to the Title IX complaints filed by the Title IX office on July 11, 2022 (*see* ECF 95, Pl.'s Mem. at 11); the FAC also alleged that the Title IX investigations were procedurally irregular due to the application of the 2018 Title IX Policy (*see* ECF 48, FAC ¶ 94), an argument that the Court rejected in concluding that, as a matter of law, application of the 2018 Title IX Policy was appropriate. (*See* ECF 88, Order at 5; ECF 79, First R&R at 30.)

Second, Plaintiff argues that the PSAC adds allegations that, had the Title IX investigator interviewed the witnesses identified by Plaintiff, those witnesses would have provided

---

[3]      Plaintiff does not appear to contend that any of the new allegations in the PSAC relate to his Title VII erroneous outcome claim. (*See generally* ECF 95 Pl.'s Mem.)

information refuting the allegations in the Title IX complaints and could have resulted in a different outcome. (*See* ECF 95, Pl.'s Mem. at 11.) The FAC similarly alleged that Plaintiff's wife was not fully interviewed and that other witnesses identified by Plaintiff were not contacted (*see* ECF 48, FAC ¶¶ 259, 280), which the Court concluded was insufficient to support his Title IX claims because he did not specify what information the investigator had failed to elicit. (*See* ECF 88, Order at 7; ECF 79, First R&R at 34-35.) Despite the Court's ruling, the PSAC does not supply the specific information that the investigator would have learned if he had conducted the interviews desired by Plaintiff.

Third, Plaintiff argues that the PSAC adds allegations that members of Einstein's Title IX Office, as well as Drs. Tomaselli, Castillo, and Jordan, "orchestrated and/or knew of the falsity of the allegations against Plaintiff yet continued with the Title IX procedure against him . . . ." (ECF 95, Pl.'s Mem. at 11-12); the FAC similarly alleged that Einstein staff members told him that they knew the allegations leading to the Chair Investigation (some of which were reprised in the Title IX Investigations) were false (*see* ECF 48, FAC ¶¶ 125, 206) and that the school and its investigator ignored statements by multiple witnesses that the two complainants' allegations against Plaintiff were false (*see id.* ¶¶ 154-55). The Court decided that these conclusory assertions were insufficient to support claims under Title IX in the absence of concrete factual allegations supporting a determination that the investigator had ignored witness statements that the allegations against Plaintiff were false. (*See* ECF 88, Order at 6-7; ECF 79, First R&R at 42.) While the PSAC includes new allegations that two senior faculty members told Ms. Ramirez and Dr. Burns that the complaints against Plaintiff were false (*see* ECF 94-1, PSAC ¶¶ 298-300), the PSAC conspicuously does not say that the investigator charged with carrying out the

investigation ignored the statements by those faculty members; nor does the PSAC allege that

Ms. Ramirez and Dr. Burns ignored the views expressed by those faculty members. Instead, the

PSAC states that Ms. Ramirez and Dr. Burns told the faculty members that their observations

would be considered but also urged them to try to persuade Plaintiff to step down as Chair.

(*See id.* ¶ 300.) The new allegations in the PSAC do not provide the specificity needed to

support Plaintiff's contention that Einstein acted against him with deliberate indifference to

whether the claims against him were false.

Fourth, Plaintiff argues that the PSAC adds allegations that Einstein had no valid reason

for its two-year delay in resolving Plaintiff's retaliation complaint other than to hinder his

defense of the Title IX claims against him. (ECF 95, Pl.'s Mem. at 12 (citing PSAC ¶¶ 265-69).)

The First R&R contains an extensive analysis of the substantively similar allegations in the FAC

that the investigation of Plaintiff's complaint against Tomaselli took nearly two years to

complete (*see* ECF 48, FAC ¶ 333) even though the 2022 Title IX Policy, which Einstein used to

conduct that investigation, provided that Einstein was supposed to complete the investigation

within 60 days of Plaintiff's filing of a complaint (*see id.* ¶ 222). (*See* ECF 79, First R&R at 40-41.)

The First R&R noted that a "lengthy and unjustified" delay in completing an investigation can

constitute deliberate indifference, but concluded that the delay in completing the investigation

of Plaintiff's retaliation claim did not indicate that the investigation was designed to avoid

uncovering the truth, because the FAC contained no allegations that the school had taken steps

to prevent Plaintiff from pursuing his complaint. (*See* ECF 79, First R&R at 40 (quoting *Ware v.*

*Univ. of Vermont & State Agric. Coll.*, 722 F. Supp. 3d 379, 426 (D. Vt. 2024)).) The PSAC likewise

does not contain any allegations that the school tried to impede the investigation; the

allegations that the school downplayed the significance of the accusations against Plaintiff and cherrypicked the information they initially shared with him (*see* ECF 94-1, PSAC ¶¶ 148-46, 203-04) do not support a conclusion that the school prevented Plaintiff from defending himself. Thus, while the two-year delay in completing the investigation into Tomaselli's conduct was a clear flaw in the process, the delay still does not in my view support a deliberate indifference claim.

The PSAC, like the FAC before it, does not depict a Title IX grievance process that was a "sham," *Schiebel,* 120 F.4th at 1095, or one that was so "objectively deficient" that it cannot be said to have aimed at uncovering the truth, *Roe v. St. John's Univ.*, 91 F.4th at 655. The PSAC describes an imperfect process that nevertheless provided adequate procedural protections, including a formal adjudication process (*see* ECF 94-1, PSAC ¶ 86) conducted by a third-party investigator (*see id.* ¶ 325) who interviewed witnesses (*see id.* ¶¶ 195-96) and shared with Plaintiff a written preliminary investigative report (*see id.* ¶ 333). The PSAC therefore could not survive a motion to dismiss Plaintiff's Title IX discrimination claims, and so the proposed amendments to those claims would be futile.

## B.    Title IX Retaliation Claim

The Court dismissed the Title IX retaliation claims in the FAC because Plaintiff's outreach to potential witnesses for his defense in the Title IX investigations did not qualify as protected activity. (*See* ECF 88, Order at 8; ECF 79, First R&R at 44-48.) Plaintiff alleges in the PSAC that he also engaged in protected activity by filing a Title IX retaliation complaint against Dr. Tomaselli on August 17, 2022. (*See* ECF 94-1, PSAC ¶ 277; ECF 95, Pl.'s Mem. at 14-15.) However, as the Einstein Defendants point out, Plaintiff did not file his complaint against Dr. Tomaselli until after

he was suspended from his position as Chair and removed from campus. (*See* ECF 105, Einstein Defs.' Opp. at 11.)

Thus, Plaintiff's newly claimed protected activity could not have caused the adverse treatment about which he complains, which is fatal to his Title IX retaliation claims and renders his proposed amendments to those claims futile.

C.    **State and Local Law Claims**

1.    NYSHRL and NYCHRL Claims

a.  Against Einstein and Montefiore

The Court dismissed the FAC's NYSHRL and NYCHRL claims against Einstein and Montefiore because Plaintiff failed to allege that they "treated him less well than similarly situated employees . . . ." (ECF 88, Order at 8-9.) Plaintiff claims that the PSAC addresses this defect by adding allegations "that similarly situated female respondents were treated more favorably than Plaintiff . . . ." (ECF 95, Pl.'s Mem. at 10-11.) Specifically, the PSAC alleges that Complainants 1 and 2, the female junior faculty members who accused Plaintiff of harassment and whom Plaintiff named in his Title IX retaliation complaint, "were not subject to adverse actions such as the shutting off of their e-mail, suspension, or dismissal." (ECF 94-1, PSAC ¶¶ 639, 652.)

These supplemental allegations do not rescue the NYSHRL and NYCHRL claims against Einstein and Montefiore, because the PSAC makes conclusory assertions but fails adequately to plead that Complainants 1 and 2 were similarly situated to Plaintiff. "To be similarly situated, the individuals with whom [a plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir. 1997). "An

employee is similarly situated to co-employees if they were," among other requirements, "engaged in comparable conduct." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010). Complainants 1 and 2 held different positions than Plaintiff; and unlike Plaintiff, they were not accused of engaging in sexual harassment or of sharing details of sexual harassment allegations with colleagues.

b. Against Tomaselli

The Court dismissed the FAC's claims against Dr. Tomaselli for aiding and abetting under the NYSHRL and the NYCHRL primarily for failure to plead that he "actually participated" in the employer's "unlawful conduct." (ECF 88, Order at 9-10; ECF 79, First R&R at 55-57). The PSAC includes new allegations that Tomaselli "use[d] the power and authority of the Title IX Office as a weapon against Plaintiff to better serve Dean Tomaselli's own interests"; that "Ms. Ramirez acted as the mouthpiece of Dean Tomaselli and routinely endorsed and enabled Dean Tomaselli's weaponization of the Title IX Office and procedures to target and harm Plaintiff"; and that Tomaselli was identified as the "Responsible Executive" for "the management" of Einstein's Title IX Policy." (ECF 94-1, PSAC ¶¶ 153, 394, 378.) These new allegations are conclusory; they also are not significantly different from the allegations in the FAC that Tomaselli "participated as the principal decision-maker" in the Chair Investigation and removed Plaintiff as Chair while the investigation was pending based on the claims of "anonymous accusers," notwithstanding Plaintiff's denial and statements by Ms. Ramirez and Dr. Burns to Plaintiff that the charges were "nonsense." (ECF 48, FAC ¶¶ 125-36, 159, 207, 224-33.) The PSAC, like the FAC, contains no concrete factual allegations suggesting that Tomaselli could have prevented the Chair Investigation once the school was presented with the Letter of

10

Concern; or that Tomaselli had any input into or control over the decision not to conduct the

Chair Investigation under the school's then-current Title IX Policy; or that Tomaselli influenced

the third-party investigator's conclusions. As such, the PSAC does not adequately allege that

Tomaselli actually participated in any unlawful conduct by Einstein and Montefiore.

***

For the foregoing reasons, the allegations in the PSAC would not survive a motion to

dismiss the NYSHRL and NYCHRL discrimination and retaliation claims against Einstein and

Montefiore or a motion to dismiss the NYSHRL and NYCHRL aiding and abetting discrimination

and retaliation claims against Tomaselli, and as a result, the proposed amendments to those

claims would be futile.

<blockquote>2.    <u>Breach of Contract</u></blockquote>

Plaintiff asserts that all Einstein's policies pertaining to employment, the 2014 Retention

Agreement, and the 2016 Chair Appointment Letter are binding contracts. (*See* ECF 109, Pl.'s

Einstein Reply at 9.)

He argues that the PSAC contains new allegations that demonstrate that Einstein's Title

IX policies constituted an implied contract because those policies contained specific procedural

promises. (*See* ECF 95, Pl.'s Mem. at 18.) But Plaintiff does not specify the procedures that

supposedly are guaranteed by the Title IX policies that would make those policies an implied

contract, and I saw no such specific procedures identified in the PSAC. As such, Plaintiff's

citation to *Joshi v. Trustees of Columbia University in the City of New York*, No. 17-CV-4112

(JGK), 2018 WL 2417846 (S.D.N.Y. May 29, 2018), for the proposition that university policies

containing specific procedural protections are enforceable contracts is not relevant to whether

11

Einstein's Title IX policies constituted an implied contract. Plaintiff's conclusory assertion that the policies contained specific procedural promises, without any supporting concrete particulars, is not sufficient to support Plaintiff's breach of contract claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that conclusory allegations "are not entitled to the assumption of truth" and must be supported by well-pleaded factual content); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007) (explaining that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and that labels, conclusions, and a formulaic recitation of elements are insufficient).

Plaintiff next contends that the PSAC adds allegations that the parties understood that the funding promised in the 2014 Retention Agreement would be provided in perpetuity, so that the 2014 Retention Agreement does not unambiguously indicate that the funding would be provided on a temporary basis only. (*See* ECF 95, Pl.'s Mem. at 19.) Plaintiff misapprehends the way that contracts are interpreted: if the contract is unambiguous as written, there is no basis to consider parole evidence to the contrary; a court looks to parole evidence only if the plain language of the contract is subject to different interpretations. Where, as here, the written agreement is unambiguous, the Court looks no further. *See Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 361 (S.D.N.Y. 2016) ("Extrinsic evidence of the parties' intent may only be considered where an agreement is ambiguous.").

And Plaintiff asserts that the PSAC contains new allegations that the Chair Investigation breached the 2016 Chair Appointment Letter because he was removed from his position as Chair for disciplinary reasons, which required procedural protections that he was not afforded, rather than for performance. (*See* ECF 95, Pl.'s Mem. at 18.) But Plaintiff argued that his

demotion was disciplinary rather than performance based in opposition to the motion to

dismiss the FAC, and the Court rejected his argument. (*See* ECF 88, Order at 10-11; ECF 79, First

R&R at 64-65). The argument is not improved by repackaging it as a conclusory allegation in the

PSAC. *See* N*etwork Apps, LLC v. AT&T Mobility LLC*, 778 F. Supp. 3d 610, 619 (S.D.N.Y. 2025)

(explaining that amendment is not an opportunity to relitigate claims absent new factual

allegations).

* * *

For the foregoing reasons, the allegations in the PSAC would not survive a motion to

dismiss a claim for breach of any contract, and the proposed amendments to the breach of

contract claims would therefore be futile.

3.      Breach of the Implied Covenant of
        Good Faith and Fair Dealing and Promissory Estoppel

Plaintiff does not argue that any new allegations in the PSAC remedy deficiencies in his

claims for breach of the implied covenant of good faith and fair dealing and for promissory

estoppel. He instead raises a new legal argument, untethered to any new factual allegations –

that dismissal of these claims as duplicative is premature. (*See* ECF 95, Pl.'s Mem. at 20-21.) In

so doing, Plaintiff improperly raises issues now that he could have raised in opposition to the

motion to dismiss the FAC. The Court must "apply the law of the case doctrine to recurring

issues that do not involve new factual allegations." *Network Apps*, 778 F. Supp. 3d at 619-20;

*see also In re Bank of New York Mellon Corp. Forex Transactions Litig*., No. 12-MD-2335 (LAK),

2014 WL 4494158, at *4 (S.D.N.Y. Sept. 4, 2014) ("[T]he only proposed amendment . . . is in the

form of an argument, not an assertion of fact. There would not be good cause for such an

amendment, nor would it survive a motion to dismiss."). Accordingly, Plaintiff's claims of breach of the implied covenant of good faith and fair dealing and promissory estoppel would meet the same fate – dismissal – on a renewed motion to dismiss, and so allowing Plaintiff to resurrect those claims would be futile.

       4.      <u>Tortious Interference Claims Against Drs. Tomaselli, Castillo, and Jordan</u>

Because the PSAC does not state a claim for breach of any contract, the PSAC also fails adequately to plead tortious interference by Drs. Tomaselli, Castillo, and Jordan. *See, e.g., Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990) ("Under traditional principles of New York law, a party may not recover for tortious inducement of breach of a contract without proving that the underlying contract has been breached."). Nothing in the PSAC changes this conclusion, and so allowing Plaintiff to proceed on those claims in the PSAC would be futile.

<u>**CONCLUSION**</u>

For the foregoing reasons, I respectfully recommend that Your Honor should DENY Plaintiff's motion to amend (ECF 93), because the proposed amendments would not survive a motion to dismiss and therefore would be futile.

DATED:      January 29, 2026
               New York, New York

                                Respectfully Submitted,

                                **ROBYN F. TARNOFSKY**
                                **United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Kaplan.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).