UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KAMRAN KHODAKHAH,

*Plaintiff*,

v.

MONTEFIORE HEALTH SYSTEM,
INC., MONTEFIORE MEDICAL CENTER,
MONTEFIORE MEDICINE ACADEMIC
HEALTH SYSTEM, INC., ALBERT
EINSTEIN COLLEGE OF MEDICINE,
GORDAN TOMASELLI, PABLO
CASTILLO, BRYEN JORDAN, JOHN—
JANE DOES 1-10,

*Defendants*.

Case No.: 1:24-cv-00839-LAK-RFT

**PLAINTIFF KAMRAN KHODAKHAH'S OBJECTIONS TO MAGISTRATE
JUDGE TARNOFSKY'S REPORT AND RECOMMENDATION REGARDING
PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

**NESENOFF & MILTENBERG, LLP**
**363 Seventh Avenue, Fifth Floor**
**New York, New York**
**(212) 736-4500**

***Attorneys for Plaintiff***

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

CHANGES IN THE PROPOSED SECOND AMENDED COMPLAINT ................................. 2

STANDARDS OF REVIEW ............................................................................................... 4

    I.   Review of a Report and Recommendation .......................................................... 4

    II.  Leave to Amend ................................................................................................. 4

PLAINTIFF'S OBJECTIONS .............................................................................................. 5

    I.   The R&R Improperly Imposes the Onus on Plaintiff to Prove His Causes of Action at the Pleading Stage, In Violation of Well-Settled Second Circuit Precedent. ................................. 5

    II.  The R&R Erroneously Concludes Plaintiff's Amendments to his Title IX – Deliberate Indifference Claim would Be Futile. ........................................................................ 6

    III.  The R&R Erroneously Concludes Plaintiff's Amendments to his Title IX – Retaliation Claim would Be Futile. .............................................................................. 9

    IV.  The R&R Erroneously Concludes Plaintiff's Amendments to his NYSHRL and NYCHRL Claims Would Be Futile .......................................................................... 10

    V.  The R&R Erroneously Concludes Plaintiff's Amendments to his NYSHRL and NYCHRL Claims Against Tomaselli would Be Futile ............................................................ 11

    VI.  The R&R Erroneously Concludes Plaintiff's Amendments to his Breach of Contract Claim would Be Futile ........................................................................................ 12

    VII.  The R&R Erroneously Concludes Plaintiff's Amendments to his Tortious Interference Claim would Be Futile ........................................................................................ 13

    VIII.  The PSAC Plausibly Alleges a Claim for Breach of the Covenant of Good Faith and Fair Dealing and Promissory Estoppel ..................................................................... 14

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Adia v. Grandeur Mgmt., Inc.*,
    933 F.3d 89 (2d Cir. 2019) ......................................................................................... 5

*Adler v. Pataki*,
    185 F.3d 35 (2d Cir. 1999) ......................................................................................... 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 5

*Atane Eng'rs, Architects & Land Surveyors, D.P.C. v. Nassau Cnty.*,
    227 A.D.3d 708 (2d Dep't 2024) .............................................................................. 12

*Baylis v. Marriott Corp.*,
    906 F.2d 874 (2d Cir. 1990) ....................................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, (2007) ..................................................................................................... 5

*Beth Israel Medical Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*,
    448 F.3d 573 (2d Cir. 2006) ....................................................................................... 15

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996) ........................................................................................... 15

*Caldwell v. Crosset*,
    2017 WL 236330 (N.D.N.Y. June 9, 2010) ................................................................ 4

*Cardwell v. Davis Polk & Wardwell LLP*,
    2021 WL 4434935 (S.D.N.Y. Sept. 23, 2021) ......................................................... 10

*Crowley v. Billboard Mag.*,
    576 F. Supp. 3d 132 (S.D.N.Y. 2021) ....................................................................... 10

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*,
    47 F.3d 39 (2d Cir. 1995) ........................................................................................... 14

*Davis v. Monroe County Bd. of Educ.*,
    526 U.S. 629 (1999) ..................................................................................................... 6

*Deravin v. Kerik*,
    335 F.3d 195 (2d Cir. 2003) ........................................................................................... 9

*Doe v. New York Univ.*,
    2021 WL 1226384 (S.D.N.Y. Mar. 31, 2021) ............................................................... 10

*Doe v. Vassar Coll.*,
    2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019) ................................................................. 7

*Feingold v. New York*,
    366 F.3d 138 (2d Cir. 2004) ......................................................................................... 12

*Foman v. Davis*,
    371 U.S. 178 (1963) ....................................................................................................... 5

*Goldberg v. Cablevision Sys. Corp.*,
    193 F. Supp. 2d 588 (E.D.N.Y. 2002) ........................................................................... 5

*Gurary v. Winehouse*,
    235 F.3d 792 (2d Cir. 2000) ........................................................................................... 4

*Hatounian v. Colvin*,
    2017 WL 605294 (N.D.N.Y. Feb. 15, 2017) ................................................................... 4

*Hayut v. State Univ. of New York*,
    352 F.3d 733 (2d Cir. 2003). .......................................................................................... 6

*Hicks v. IBM*,
    44 F.Supp.2d 593 (S.D.N.Y. 1999) .............................................................................. 12

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) ....................................................................................................... 9

*Joshi v. Trs. of Columbia Univ. in City of New York*,
    2018 WL 2417846 (S.D.N.Y. May 29, 2018) ............................................................... 13

*Kittay v. Kornstein*,
    230 F.3d 531 (2d Cir. 2000) ....................................................................................... 5, 6

*Lama Holding Co. v. Smith Barney Inc.*,
    88 N.Y.2d 413 (1996) ................................................................................................... 13

*Langenkamp v. Olson,*
   628 F. App'x 50 (2d Cir. 2015) ................................................................. 13

*Lefkowitz v. Bank of New York,*
   679 F.Supp.2d 229 (S.D.N.Y. 2009) ........................................................... 5

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC.,*
   797 F.3d 160 (2d Cir. 2015) ................................................................... 4

*Lynch v. City of New York,*
   952 F.3d 67 (2d Cir. 2020) ..................................................................... 5

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ........................................................................... 10

*Medical Research Assocs., P.C. v. Medcon Fin. Servs., Inc.,*
   253 F.Supp.2d 643 (S.D.N.Y. 2003) .......................................................... 15

*Monaco v. New York Univ.,*
   204 A.D.3d 51 (1st Dep't 2022) ............................................................. 13

*Nezaj v. PS450 Bar and Restaurant,*
   719 F.Supp.3d 318 (S.D.N.Y. 2024) .......................................................... 11

*Pearson v. Walden Univ.,*
   144 F. Supp. 3d 503 (S.D.N.Y. 2015) ........................................................ 13

*Ricciuti v. N.Y.C. Transit Auth.,*
   941 F.2d 119 (2d Cir. 1991) ................................................................... 5

*Ruotolo v. City of N.Y.,*
   514 F.3d 184 (2d Cir. 2008) ................................................................... 5

*Schiebel v Schoharie Cent. School Dist.,*
   120 F4th 1082 (2d Cir 2024) ................................................................... 7

*St. John's Univ., New York v. Bolton,*
   757 F. Supp. 2d 144 (E.D.N.Y. 2010) ........................................................ 14

*State Tchrs. Ret. Bd. v. Fluor Corp.,*
   654 F.2d 843 (2d Cir. 1981) ................................................................... 5

*Trump v. Simon & Schustern Inc.*,
  2025 WL 2017888 (S.D.N.Y. July 18, 2025) ............................................................... 4

*Uttarwar v. Lazard Asset Mgmt. LLC*,
  2025 WL 704278 (2d Cir. Mar. 5, 2025) ................................................................. 10

*Ware v. Univ. of Vermont & State Agric. Coll.*,
  722 F. Supp. 3d 379 (D. Vt. 2024) ........................................................................ 8

**Statutes**

28 U.S.C. § 636 ....................................................................................................... 4

Fed. R. Civ. P. 15 ................................................................................................... 4

Fed. R. Civ. P. 72 ................................................................................................... 4

## INTRODUCTION

Plaintiff Kamran Khodakhah ("Plaintiff") submits this memorandum of law in support of Plaintiff's Objections to the Report and Recommendation ("R&R") of the Honorable Robyn F. Tarnofsky (hereafter "Magistrate Judge" or "Judge Tarnofsky"), entered January 29, 2026 (ECF 116).

In this action, Plaintiff alleged claims against Defendants Albert Einstein College of Medicine ("Einstein") and Montefiore Medicine Academic Health System, Inc. ("Montefiore") for Title IX discrimination (Count I) and retaliation (Count II), breach of contract (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), and promissory estoppel (Count V). Plaintiff also alleged claims against Defendants Pablo Castillo ("Castillo"), Bryen Jordan ("Jordan"), and Gordon Tomaselli ("Tomaselli") (collectively the "Individual Defendants") for tortious interference with contractual relations (Count VI) and claims against Tomaselli, Einstein, and Montefiore for sex discrimination under the New York State Human Rights Law ("NYSHRL") (Count VII) and the New York City Human Rights Law ("NYCHRL") (Count VIII).

Following motion practice, all claims were dismissed except for Plaintiff's Title IX, NYSHRL, and NYCHRL claims against Einstein and Montefiore stemming from a disciplinary investigation instituted by Tomaselli (hereinafter, the "Chair Investigation"). Plaintiff was granted leave to file a motion for leave to amend, which was fully briefed and submitted to Judge Tarnofsky on December 19, 2025.

Judge Tarnofsky's R&R recommends that Plaintiff's motion for leave to amend be denied in its entirety. As explained below, in reaching this recommendation, Judge Tarnofsky improperly holds Plaintiff to a more onerous standard than applicable by either Rule 15 or Rule 12. Relying heavily on Judge Tarnofsky's and Judge Kaplan's prior orders affirming the partial dismissal of

1

Plaintiff's claims, the R&R dismisses the new allegations in Plaintiff's proposed second amended complaint (the "PSAC") as conclusory, and improperly accuses Plaintiff of failing to prove his claims at the pleading stage.

Accordingly, Plaintiff respectfully objects to the R&R in its entirety and maintains that Plaintiff's motion for leave to file the PSAC should be granted.

## CHANGES IN THE PROPOSED SECOND AMENDED COMPLAINT

Plaintiff assumes the Court's familiarity with the Court's analysis in Hon. Judge Lewis Kaplan's order partially dismissing Plaintiff's claims (ECF 88) and Judge Tarnofsky's R&R related to Defendants' motions to dismiss (ECF 79).

In the PSAC, Plaintiff asserts the following amended allegations to address the Court's prior noted deficiencies in Plaintiff's operative pleading:

- Asserting allegations that Tomaselli, in coordination with Castillo and Jordan, weaponized the Title IX office and process in an effort to attack Plaintiff in a manner that Tomaselli knew would cause the most amount of damage, *See* ECF 94-1 ¶¶ 3, 81-82, 106, 142-45, 268-69.

- The Individual Defendants intentionally manipulated and fabricated complaints of sexual misconduct against Plaintiff, *See* ECF 94-1 ¶¶ 107-08, 117, 120-26, 142-44.

- Einstein's Title IX office was aware of the falsity of the sexual misconduct allegations against Plaintiff, *See* ECF 94-1 ¶¶ 124, 377-78.

- Defendants' written and verbal representations created an expectation that the 2022 Title IX Policy was the only applicable policy and procedure applicable to Title IX related claims and Plaintiff reasonably relief, ultimately to his detriment, on such representations, *See* ECF 94-1 ¶¶ 150-55, 228-36.

- Tomaselli intentionally withheld information from Plaintiff regarding the nature of the complaints against him and the policy and procedures implicated by said complaints, *See* ECF 94-1 ¶¶ 153-55.

- The policies at issue did not permit any interim sanction or discipline pending investigation which was known to Tomaselli and the Title IX Office yet ignored when reprimanding Plaintiff without the benefit of a full investigation, *See* ECF 94-1 ¶¶ 172-75, 178.

- Personnel within Einstein complained to Tomaselli that his actions were unnecessarily cruel, yet Tomaselli, wanting to cause the most damage to Plaintiff, insisted on using the Title IX process as a means to destroy Plaintiff, *See* ECF 94-1 ¶¶ 184-85.

- Einstein actively worked to limit, if not entirely eliminate, Plaintiff's ability to fairly and substantively defend himself against the fabricated claims against him, *See* ECF 94-1 ¶¶ 186-89.

- The investigator in the Chair Investigation admitted that there was no evidence of wrongdoing as of April 2022, yet Tomaselli insisted to personnel at Einstein that Plaintiff would not be returning as Chair, *See* ECF 94-1 ¶¶ 195-99.

- Tomaselli breached Plaintiff's privacy and confidentiality rights under Title IX by sharing the existence of the Title IX investigations against Plaintiff with the Neuroscience faculty, *See* ECF 94-1 ¶¶ 261-62.

- Einstein intentionally failed to adjudicate Plaintiff's retaliation claim for nearly two years and permitted Tomaselli to use his power and authority to stall the investigation against policy and normal operating procedures, *See* ECF 94-1 ¶¶ 281-89.

- Witnesses reported to Einstein's Title IX office that the claims against Plaintiff were false and were met with pressure to convince Plaintiff to step down from his position, *See* ECF 94-1 ¶¶ 298-300.

- One of the Title IX investigators showed a bias against Plaintiff by, among other things, accusing Plaintiff of misconduct for attempting to communicate with a potential witness-without having shared any details as to the reason for the contact, and barring Plaintiff from speaking with anyone about the investigation, *See* ECF 94-1 ¶¶ 328-32, 346, 363.

- Einstein used the findings in the unlawful and procedurally deficient Chair Investigation as a basis to issue harsher sanctions against Plaintiff in the Title IX Investigation, *See* ECF 94-1 ¶¶ 385, 394-95.

- Einstein, by and through its agents and employees, confirmed that there was a meeting of the minds regarding the scope of Einstein's "interim support" to Plaintiff and that Einstein agreed, in writing, that Defendant had promised to provide support "in perpetuity", *See* ECF 94-1 ¶¶ 440-442. Despite this, Einstein has refused to abide by its contractual obligations and withheld support from Plaintiff causing Plaintiff and his lab immense damage. *See* ECF 94-1 ¶¶ 460-62.

Despite the numerous changes to Plaintiff's complaint, the R&R still finds that Plaintiff has failed to allege plausible claims against Defendants under Title IX, the NYSHRL, the

NYCHRL, and state common law. Respectfully, the R&R's findings and recommended determinations should be rejected.

## STANDARDS OF REVIEW

### I.    Review of a Report and Recommendation

When reviewing a Magistrate Judge's Report and Recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *Hatounian v. Colvin*, 2017 WL 605294, at *2 (N.D.N.Y. Feb. 15, 2017). Where an objection is made to a magistrate's judge's recommendation, the district judge "shall make a *de novo* determination of those portions of the report and recommendation to which objection is made.'" 28 U.S.C. § 636(b)(1)(C); accord Fed. R. Civ. P. 72(b)(2). "Where, however, an objecting party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Hatounian*, 2017 WL 605294, at *2 (quoting *Caldwell v. Crosset,* 2017 WL 236330, at *1 (N.D.N.Y. June 9, 2010)) (internal quotation marks omitted).

### II.    Leave to Amend

Pursuant to Fed. R. Civ. P. 15, the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This "liberal" and "permissive standard" is consistent with the court's "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC.*, 797 F.3d 160, 190 (2d Cir. 2015).

District Courts have "broad discretion in determining whether to grant leave to amend." *Trump v. Simon & Schustern Inc.*, No. 23-cv-6883 (PGG), 2025 WL 2017888, at *29 (S.D.N.Y. July 18, 2025) (citing *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000)). However, leave to amend is not guaranteed; circumstances such as "undue delay, bad faith, futility of the amendment,

4

and . . . the resulting prejudice to the opposing party" justifies denial of leave to amend. *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1963)); *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008).

Where a plaintiff's motion for leave to amend is filed in response to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Goldberg v. Cablevision Sys. Corp.*, 193 F. Supp. 2d 588, 598 (E.D.N.Y. 2002); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). In determining whether amendment would be futile, courts may consider all possible amendments that could be made to the pleading. *See id.*

## PLAINTIFF'S OBJECTIONS

**I.    The R&R Improperly Imposes the Onus on Plaintiff to Prove His Causes of Action at the Pleading Stage, In Violation of Well-Settled Second Circuit Precedent.**

It is well-settled that the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 92 (2d Cir. 2019) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

This standard "does not impose a probability requirement" and a plaintiff is not required to prove every element of his causes of action to overcome a challenge under Rule 12(b)(6). *See Lynch v. City of New York,* 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly,* 550 U.S. at 556); *Lefkowitz v. Bank of New York*, 679 F.Supp.2d 229, 248 (S.D.N.Y. 2009); *Kittay v. Kornstein*, 230 F.3d 531, 542 (2d Cir. 2000) (opining as to the impropriety of the District Court's dismissal of a complaint based upon plaintiff's failure to prove the ultimate issue in the case).

Here, the R&R imposes upon Plaintiff an improper pleading standard whereby Judge Tarnofsky reviewed Plaintiff's PSAC not for the plausibility of the claims asserted but for the probability of Plaintiff's success on the claims asserted. Specifically, Judge Tarnofsky takes Plaintiff's amended allegations and almost wholesale deems them conclusory and therefore, unworthy of consideration. In essence, Judge Tarnofsky holds Plaintiff to a much higher and improper burden of establishing each and every allegation with evidentiary support at the pleading stage and, even where examples or specific behavior is alleged, finds the PSAC lacking for not proving the ultimate issue applicable to Plaintiff's claims. The application of this heightened pleading standard is inappropriate at the pleading stage. *See Kittay v. Kornstein*, 230 F.3d 531, 542 (2d Cir. 2000). As such, it is respectfully submitted that the R&R e rejected by this Honorable Court.

## II. The R&R Erroneously Concludes Plaintiff's Amendments to his Title IX – Deliberate Indifference Claim Would Be Futile.

To state a plausible claim for deliberate indifference under Title IX, a plaintiff must demonstrate that he was subject to harassment or discrimination on the basis of sex; that someone with the authority to address the conduct had actual knowledge of the harassment or discrimination; and that the institution responded with deliberate indifference. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999).

The Second Circuit has clarified that deliberate indifference may be found "when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances," and when remedial action only follows after "a lengthy and unjustified delay." *Hayut v. State Univ. of New York*, 352 F.3d 733, 751 (2d Cir. 2003) A plaintiff may also allege deliberate indifference by demonstrating that the grievance process undertook by the university

was so irregular, that the process was a sham. *Schiebel v Schoharie Cent. School Dist.*, 120 F4th 1082, 1095 (2d Cir 2024).

Contrary to the R&R's proposed findings, Plaintiff's proposed amendments to his deliberate indifference claim are not futile. The PSAC sets forth additional factual allegations that, taken in the light most favorable to Plaintiff, as required at this stage, would survive a motion to dismiss. First, the PSAC clarifies that the 2018 Title IX policy was inapplicable to the Title IX complaints filed by the Title IX office on July 11, 2022. This clarification is based on the language of the policy and the parties' custom interpretation and practice.

The Court previously held that Plaintiff had not pleaded facts to support his allegation that use of the 2018 Title IX Policy to govern the Title IX Investigations was procedurally improper or irregular. However, the PSAC makes clear that it was procedurally improper and irregular for Einstein to apply the defunct and less protective 2018 Title IX Policy, particularly in light of Defendants' representations that the 2022 Title IX Policy was the only enforceable policy.

Second, the PSAC makes clear that Defendants had knowledge of the falsity of the allegations against Plaintiff and actively worked to prevent Plaintiff's knowledge of the true nature of the complaints against him or mount a defense to same. While disagreement with the outcome of an investigation is generally insufficient to establish that the process was a sham, Plaintiff has plausibly alleged that Einstein's failure to conduct an objective and unbiased investigation, coupled with bias from Einstein's Title IX Office and Tomaselli, prevented a fair and thorough inquiry into the allegations against Plaintiff. *See Doe v. Vassar Coll.*, No. 19-CV-9601 (NSR), 2019 WL 6222918, at *8 (S.D.N.Y. Nov. 21, 2019); *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

Third, the PSAC makes clear that several members of Einstein's Title IX Office, as well as the Individual Defendants, orchestrated and/or knew of the falsity of the allegations against Plaintiff yet continued with the Title IX procedure against him with the intent to cause the most professional, personal, and reputational damage possible to Plaintiff.

Fourth, Plaintiff's proposed amendments demonstrate that Einstein had no valid reason for its two-year delay in investigating and adjudicating Plaintiff's retaliation complaint. Einstein failed to provide any rational basis for its failure to take any investigative steps in response to Plaintiff's retaliation complaint within the sixty (60) day time frame called for by Title IX and Einstein's own policies. While mere delay may not necessarily constitute deliberate indifference, the PSAC clearly demonstrates that the delay here was lengthy and unjustified under the circumstances. *See Ware v. Univ. of Vermont & State Agric. Coll.*, 722 F. Supp. 3d 379, 426 (D. Vt. 2024) ("While delayed investigation does not necessarily qualify as deliberate indifference, it can when that delay is lengthy and unjustified."); *see also Hayut,* 352 F.3d at 751 (concluding that deliberate indifference may be found after "a lengthy and unjustified delay").

Moreover, the PSAC sets forth additional factual allegations to demonstrate that the investigation itself was fundamentally flawed due to procedural irregularities. These irregularities, plausibly demonstrate that Einstein's Title IX process was a sham because it prohibited a fair adjudication of the allegations against Plaintiff, prohibited Plaintiff from mounting a sufficient and fulsome defense to the claims, and was conducted with the knowledge and understanding that the allegations against Plaintiff were false.

When viewed in the light most favorable to Plaintiff, the PSAC states a plausible claim that Einstein acted with deliberate indifference and Plaintiff should be granted leave to amend.

8

**III.    The R&R Erroneously Concludes Plaintiff's Amendments to his Title IX –
Retaliation Claim Would Be Futile.**

The Court dismissed Plaintiff's Title IX retaliation claim based upon the Court's finding
that Plaintiff failed to adequately plead engagement in protected activity. Under Title IX, a plaintiff
engages in a protected activity when they report or otherwise complain about sex-based
discrimination or harassment, including formal or informal complaints, participation in a Title IX
investigation, or request for adherence to Title IX procedures. *Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167, 174 (2005). The PSAC plausibly alleges Plaintiff's engagement in protected activity.

The Second Circuit has held that an employee's act of defending himself against charges
of discrimination qualifies as an act of protected activity. *See Deravin v. Kerik*, 335 F.3d 195, 205
(2d Cir. 2003) (holding that that defending oneself against charges of discrimination by testifying
in a Title VII proceeding qualifies as protected activity under 42 U.S.C. § 2000e–3(a)).

Here, the PSAC plausibly alleges that Plaintiff engaged in protected activity by
participating in efforts to defend himself in the Chair and Title IX Investigations, and secuinge
witnesses in the Title IX process. Moreover, the PSAC alleges that Plaintiff engaged in protected
activity by filing his Title IX retaliation complaint against Tomaselli. The R&R finds that since
this act of protected activity occurred after Plaintiff's suspension and removal from campus, it
cannot be used as a basis for retaliation. This finding, however, ignores the allegations in the PSAC
that Einstein improperly stalled the investigation into Plaintiff's retaliation complaint to the
advantage and benefit of Tomaselli, and thereafter issued Plaintiff unduly harsh sanctions in
connection with the Title IX Investigations against him, which were improperly prioritized over
adjudication of Plaintiff's retaliation complaint. Accordingly, the PSAC properly alleged
engagement in protected activity.

**IV.    The R&R Erroneously Concludes Plaintiff's Amendments to his NYSHRL and NYCHRL Claims Would Be Futile**

Claims brought under the NYSHRL and the NYCHRL are "analyzed using the three-step burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *See Uttarwar v. Lazard Asset Mgmt. LLC*, No. 24-1085-CV, 2025 WL 704278, at *2 (2d Cir. Mar. 5, 2025). The question under the NYSHRL and the NYCHRL is whether the plaintiff can demonstrate that their employer treated them "less well, at least in part of a discriminatory reason." *Crowley v. Billboard Mag.*, 576 F. Supp. 3d 132, 142 (S.D.N.Y. 2021).

Courts have held that procedural irregularities can be sufficient for an employee to show that they were subject to disparate treatment based on their protected characteristic. *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256 (GHW), 2021 WL 4434935, at *27 (S.D.N.Y. Sept. 23, 2021); *Doe v. New York Univ.*, No. 20-CV-1343 (GHW), 2021 WL 1226384, at *25 (S.D.N.Y. Mar. 31, 2021).

The R&R finds that the allegations in the PSAC that Plaintiff was treated less well than his similarly situated female comparators did not save Plaintiff's NYSHRL and NYCHRL claims because the comparators were not similarly situated to Plaintiff. However, in the PSAC demonstrates that Plaintiff and the two female complainants were subject to the same disciplinary process yet afforded significantly different treatment. Specifically, ss alleged in the PSAC, Plaintiff's female accusers could speak freely with the campus community regarding their complaints. Moreover, the PSAC alleges that Plaintiff was treated less well than his similarly situated female complainants in that unlike Plaintiff, the female complainants, when they themselves became respondents, did not have their e-mail access cut off and were not subject to suspension or removal.

Moreover, the PSAC includes additional allegations outlining the procedural irregularities in Einstein's processes with respect to the complaints against Plaintiff plausibly alleging discrimination. *See Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256 (GHW), 2021 WL 4434935, at \*27 (S.D.N.Y. Sept. 23, 2021); *Doe v. New York Univ.*, No. 20-CV-1343 (GHW), 2021 WL 1226384, at \*25 (S.D.N.Y. Mar. 31, 2021) (plaintiff's allegations of procedural irregularities gave rise "to a minimal inference of discriminatory intent").

Specifically, as noted in Plaintiff's moving brief and *supra*, the PSAC alleges that the delay was lengthy and unjustified under the circumstances and that the investigation itself was fundamentally flawed due to procedural irregularities and the investigator's failure to properly collect evidence and permit Plaintiff his full rights to mount a defense against the claims asserted against him.

## V. The R&R Erroneously Concludes Plaintiff's Amendments to his NYSHRL and NYCHRL Claims Against Tomaselli Would Be Futile

The R&R recommends denial of amendment to Plaintiff's NYSHRL and NYCHRL aiding and abetting claims against Tomaselli for failure to allege Tomaselli's actual participation in Einstein's unlawful conduct. Respectfully, the R&R's recommendation should be rejected.

Employees of a corporate defendant may be held liable for aiding and abetting discrimination under both the NYSHRL and the NYCHRL. *Nezaj v. PS450 Bar and Restaurant*, 719 F.Supp.3d 318, 329-30 (S.D.N.Y. 2024). A motion to dismiss an aiding and abetting claim should be denied where, as here, the plaintiff has pled an individual defendant "actually participated in the unlawful conduct" and "share[d] the intent or purpose of the principal actor," *Nezaj*, at 333, or "failed to take adequate action to correct the discrimination." *Hicks v. IBM*, 44 F.Supp.2d 593, 600 (S.D.N.Y. 1999).

11

The PSAC plausibly alleges that Tomaselli used the power and authority of the Title IX Office as a weapon against Plaintiff to better serve his interests. Specifically, the PSAC alleges that Ms. Ramirez routinely endorsed and enabled Dean Tomaselli's weaponization of the Title IX Office and procedures to target and harm Plaintiff, Tomaselli weaponized the Title IX process and intentionally used the stigma attached to allegations of sexual misconduct to harass and attack Plaintiff, Tomaselli worked with Title IX to facilitate the investigations and documents regarding the investigations to prevent fair notice to Plaintiff of the allegations against him. And worked with Jordan and Castillo to bring and force through adjudication false claims against Plaintiff.

Plaintiff submits that the PSAC sufficiently alleges Tomaselli's active participation in and facilitation of discriminatory conduct through his misuse of the Title IX office. By weaponizing the Office's procedures, Tomaselli directly aided and abetted the discriminatory conduct against Plaintiff. These actions go beyond mere supervisory inaction and establish an affirmative pattern of misconduct which states a claim under the NYSHRL and the NYCHRL. *See Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) ("The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is 'virtually identical.'")

## VI.    The R&R Erroneously Concludes Plaintiff's Amendments to his Breach of Contract Claim Would Be Futile

Under New York law, a breach of contract claim requires that a plaintiff must allege "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and resulting damages." *Atane Eng'rs, Architects & Land Surveyors, D.P.C. v. Nassau Cnty.*, 227 A.D.3d 708, 709-10 (2 Dep't 2024). *See also*, *Langenkamp v. Olson*, 628 F. App'x 50, 52 (2d Cir. 2015); *Kaloyeros v. Rsch. Found. of State Univ. of New York*, 71 Misc.

3d 1219(A), 144 N.Y.S.3d 557 (N.Y. Sup. Ct. 2021) (same) *Pearson v. Walden Univ.*, 144 F. Supp.
3d 503, 509 (S.D.N.Y. 2015); *Monaco v. New York Univ.,* 204 A.D.3d 51, 62 (1st Dep't 2022).

The PSAC makes clear that Einstein's Title IX policies made specific promises as to
procedure, not just general principles, and Einstein breached those promises in the investigation
and adjudication of complaints against Plaintiff. *See Joshi v. Trs. of Columbia Univ. in City of New
York*, No. 17-CV-4112 (JGK), 2018 WL 2417846 (S.D.N.Y. May 29, 2018). The R&R finds that
Plaintiff has failed to allege specific procedures that were guaranteed by the Title IX policies.
However, the PSAC has alleged that, in violation of Einstein's Title IX policy, Einstein, among
other things, subjected Plaintiff to an interim sanction, failed to provide Plaintiff with requisite
notice and chance to defend himself against the specific allegations against him in the Chair
Investigation in violation of the Title IX Policy, and noted additional specific procedural
protections afforded respondents in the Title IX policies that were not provided to Plaintiff. (ECF
94-1 at 559-608).

Moreover, the PSAC alleges that, contrary to Defendants' and the Court's reading of
Einstein's promise of interim support in Plaintiff's 2014 Retention Agreement, the parties did not
intend the regular meaning of the word "interim" to apply to the parties' agreement. Rather, as
alleged in the PSAC, documentary evidence confirms that the parties intended the promise of
support to be in perpetuity and indefinite. Einstein violated the terms of this agreement when, as
alleged in the PSAC, it ceased financially supporting Plaintiff's lab, permitting it to fall into ruin.

## VII.    The R&R Erroneously Concludes Plaintiff's Amendments to his Tortious Interference Claim Would Be Futile

A claim for tortious interference requires a plaintiff to allege (1) "the existence of a valid
contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract";
(3) the "defendant's intentional procurement of the third-party's breach of the contract without

justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996). A party may not recover for tortious interference with contract without proving that the underlying contract has been breached." *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990).

Here, the R&R recommends that Plaintiff's tortious interference claim should be dismissed based upon Plaintiff's failure to allege a breach of contract. As discussed above, Plaintiff has sufficiently alleged a claim for breach of contract in the PSAC and therefore, Plaintiff's claim for tortious interference against the Individual Defendants would survive a motion to dismiss.

### VIII.    The PSAC Plausibly Alleges a Claim for Breach of the Covenant of Good Faith and Fair Dealing and Promissory Estoppel

The R&R recommends denial of Plaintiff's motion to amend Plaintiff's claim for breach of good faith and fair dealing and promissory estoppel on the basis of the "law of the case" doctrine. Respectfully, Plaintiff maintains that the prior dismissal of these claims as duplicative cannot simply be cured by amendment. Thus, Plaintiff re-asserts that he has sufficiently alleged a claim for breach of the implied covenant of good faith and fair dealing and for promissory estoppel.

To re-iterate, under New York Law, to adequately plead a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) the existence of a contract between the parties; (2) that the defendant acted in a manner that, although not expressly forbidden by the contract, deprived the plaintiff of the benefit of the bargain; and (3) that damages resulted from that conduct. *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995). A claim for promissory estoppel in New York requires (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the plaintiff on that promise; and (3) injury or detriment suffered because of the plaintiff's reliance. *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995).

Dismissal of these claims cannot be cured by amendment as they were not dismissed based on a defect in Plaintiff's pleadings. Accordingly, Plaintiff maintains that he should be permitted to assert these claims as their dismissal as duplicative was inappropriate. At the pleading stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010). Furthermore, the Second Circuit has explained that "[Rule 8(d)] offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as we must do in reviewing orders granting motions to dismiss." *Adler v. Pataki,* 185 F.3d 35, 41 (2d Cir. 1999). Dismissal for duplicity is better reserved for a later stage of the proceedings, after discovery clarifies the extent of Plaintiff's losses and the appropriate remedies. *See, e.g., Beth Israel Medical Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 578–579 (2d Cir. 2006) (appeal from summary judgment); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 16–17 (2d Cir. 1996); *Medical Research Assocs., P.C. v. Medcon Fin. Servs., Inc.*, 253 F.Supp.2d 643, 649–50 (S.D.N.Y. 2003) (holding that plaintiff's fiduciary duty and tortious interference claims were duplicative on motion for summary judgment).

## CONCLUSION

For the foregoing reasons, Plaintiff Kamran Khodakhah respectfully requests that the Court reject the findings of the R&R and grant Plaintiff's motion for leave to amend.

Dated: February 19, 2026
　　　New York, New York

Respectfully submitted,

NESENOFF & MILTENBERG, LLP
*Attorneys for Plaintiff*

By: */s/ Andrew T. Miltenberg*

15

Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Gabrielle Vinci, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
gvinci@nmllplaw.com