**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KAMRAN KHODAKHAH,

*Plaintiff*,

v.

MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC. and ALBERT EINSTEIN COLLEGE OF MEDICINE,

*Defendants*.

No. 24 Civ. 839 (LAK) (RFT)

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO PRECLUDE PLAINTIFF'S PROFFERED EXPERT TESTIMONY OF DR. MARC JANOSON

Roberta A. Kaplan
Christopher R. Le Coney
Tasha N. Thompson
KAPLAN MARTIN LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
cleconey@kaplanmartin.com
tthompson@kaplanmartin.com

October 27, 2026

## TABLE OF CONTENTS


**Page**

ARGUMENT .......... 1

I. PLAINTIFF HAS NOT DEMONSTRATED THAT JANOSON IS QUALIFIED .......... 1

II. NARROWING JANOSON'S OPINIONS DOES NOT RENDER HIS METHODOLOGY RELIABLE .......... 4

A. Dr. Rizvi's Records Do Not Validate Janoson's Methodology .......... 4

B. Janoson's "Multi-Source Method" Had One Source: The Khodakhahs .......... 6

C. Interpreting an Invalid MMPI-2 Protocol Is Not a "Permissible Methodology" .......... 7

D. Janoson's Use of the DAPS Is Equally Unreliable .......... 8

III. JANOSON'S TESTIMONY IS NOT HELPFUL AND SHOULD BE EXCLUDED .......... 9

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Cases** *Pages*

*Accely v. Consol. Edison Co. of N.Y.*,
2023 WL 3025436 (S.D.N.Y. Apr. 20, 2023)........ 9

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)........ 5, 8

*Danaby Rentals, Inc. v. Mt. Hawley Ins. Co.*,
2026 WL 125634 (S.D.N.Y. Jan. 16, 2026)........ 7

*Discepolo v. Gorgone*,
399 F. Supp. 2d 123 (D. Conn. 2005)........ 7

*Goldstein v. Montefiore Med. Ctr.*,
2025 WL 2726791 (S.D.N.Y. Sept. 25, 2025)........ 3

*Guerrero v. Loiacono*,
769 F. Supp. 3d 158 (E.D.N.Y. 2024)........ 5

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
982 F.3d 113 (2d Cir. 2020)........ 8

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)........ 2

*Jackson v. Tellado*,
2018 WL 4043150 (E.D.N.Y. Aug. 24, 2018)........ 3

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)........ 1

*Liberty Mut. Ins. Co. v. Day to Day Imports Inc.*,
2025 WL 2117897 (S.D.N.Y. July 29, 2025)........ 3

*Lore v. City of Syracuse*,
670 F.3d 127 (2d Cir. 2012)........ 10

*Matthews v. Hewlett-Packard Co.*,
2017 WL 6804075 (S.D.N.Y. Dec. 22, 2017)........ 10

*Noonan v. Becker*,
2018 WL 1738746 (S.D.N.Y. Apr. 10, 2018)........ 3

*Stagl v. Delta Air Lines, Inc.*,
117 F.3d 76 (2d Cir. 1997)........................................................................................ 1, 3

*Tardif v. City of New York,*
344 F. Supp. 3d 579 (S.D.N.Y. 2018)...................................................................... 3, 10

*United States v. Robertson,*
2015 WL 520220 (E.D.N.Y. Feb. 9, 2015)................................................................ 3, 7

*United States v. Smith*,
806 F. Supp. 3d 382 (S.D.N.Y. 2025)........................................................................ 2, 3

*Williams v. E. Meadow Union Free Sch. Dist.*,
2026 WL 790580 (E.D.N.Y. Mar. 20, 2026)............................................................... 5, 9

**Other Authorities**

Kraft & Keeley, *Sign versus Symptom*, *in* Encyclopedia of Clinical Psychology (2015). ............ 1

**Rules**

Fed. R. Civ. P. 26(a)(2)................................................................................................... 5
Fed. R. Civ. P. 37(c)(1)............................................................................................... 5, 10
Fed. R. Evid. 403 ........................................................................................................ 9, 10
Fed. R. Evid. 702 ....................................................................................................... *passim*

Rather than defend the opinions Janoson actually offered, Plaintiff's opposition (ECF 206, the "Opposition" or "Opp.") tries to sidestep the problem by abandoning nearly all of them. Janoson's Report[1] purported to diagnose [redacted], attributed both to Einstein, and announced that a personality test proved "[redacted]." Janoson Rep. at 1-2, 6-7. As narrowed in the Opposition, Janoson's testimony now includes no diagnoses, no causation conclusions, and, indeed, no expert opinions at all. Plaintiff now offers Janoson only to (i) describe his interviews of Plaintiff and his wife and the computerized assessments he administered; (ii) recount Plaintiff's symptoms "as of June 2026"—that is, Plaintiff's own description of how he felt;[2] and (iii) speculate as to "when those symptoms emerged," even though the Opposition concedes that Janoson's sole basis for doing so is Plaintiff's own self-report. Opp. at 3, 14. Janoson, in other words, would serve only to parrot what Plaintiff and his wife told him. This marked retreat does not cure the problems with his testimony; it confirms them. Janoson is still unqualified. The narrowed testimony rests on the same unreliable methodology as the withdrawn opinions. And listening to Janoson repeat an account he made no effort to verify would not assist the jury at all.

## ARGUMENT

## I. PLAINTIFF HAS NOT DEMONSTRATED THAT JANOSON IS QUALIFIED

Plaintiff bears the burden of establishing that Janoson is "qualified as an expert by knowledge, skill, experience, training, or education" to offer the opinions at issue. Fed. R. Evid. 702. That inquiry is specific to the witness and the case, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999), and a witness whose expertise is "too general or too deficient" for the opinions offered is not qualified, *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997).

---

[1] Capitalized terms not otherwise defined herein have the meanings assigned to them in the opening brief, ECF 173 ("Mot.").

[2] Clinically speaking, "symptoms" are self-reported by the patient, whereas "signs" are "observable indications" of a disorder. Kraft & Keeley, *Sign versus Symptom*, *in* Encyclopedia of Clinical Psychology (2015). Janoson observed nothing; he "[redacted]." Dep. at 119:18-120:18.

The Opposition does not dispute a single fact in Defendants' account of Janoson's training: that he holds no certification in trauma-related disorders, Dep. at 50:11-15; that he has no formal training in the DAPS, *id.* at 53:19-54:2; and that he answered "No" when asked whether he had formal training in interpreting the MMPI-2's validity scales, *id.* at 53:11-18. Plaintiff claims it is enough that Janoson is "a psychologist describing a psychological evaluation" because Second Circuit courts "liberally construe the expert qualifications requirement," and any further questions about his qualifications go to weight rather than admissibility. Opp. at 11-12. But Plaintiff's own caselaw says otherwise: "*Daubert* nevertheless requires district judges to determine whether the experience of a particular witness warrants placing that individual's view before the trier of fact." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004) (Kaplan, J.).

Here, Janoson's asserted qualifications do not survive even the slightest scrutiny. When experience is the asserted basis for expertise, the witness "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. The Opposition does not even try, because Janoson's own testimony forecloses it. The "postgraduate forensic psychology program," Opp. at 10, taught child custody and termination of parental rights, not criminal or personal-injury psychology, Dep. at 17:15-19:6. The "four years of individual supervision," Opp. at 5, 9-10, 13, meant that Dr. Lazzaro "would email or fax" Janoson his reports, "because [Janoson] was not trained in the MMPI . . . [and] was not trained in the other forensic instruments." Dep. at 21:11-19. And the claimed "mentorship" was "strictly" and "exclusively" about the MMPI-2—nothing about trauma, the DAPS, or dating symptoms to workplace events. *Id.* at 24:3-21, 44:2-12. None of it supplies specialized knowledge about adult posttraumatic symptoms, their measurement, or their onset. *See United States v. Smith*, 806 F. Supp. 3d 382, 394-97 (S.D.N.Y. 2025) (specialist whose work "centered on supporting children and

students, not adults" not qualified to diagnose an adult).

Plaintiff's own caselaw makes the point. The anesthesiologist in *Goldstein* could opine on medical-school promotions because he had chaired a medical school's promotions committee. 2025 WL 2726791, at *8 (S.D.N.Y. Sept. 25, 2025). The expert in *Liberty Mutual* could opine on claims handling because he had "long experience in insurance claims handling." 2025 WL 2117897, at *18 (S.D.N.Y. July 29, 2025). The engineer in *Stagl* could opine on a baggage-claim injury because human-machine interaction was "clearly of the sort that [he] has worked with in depth." 117 F.3d at 81-82. And the *Tardif* psychologist held the same school-community doctorate as Janoson, but he was the supervising psychologist of a county jail's mental health unit and, critically, had "experience treating individuals with PTSD." 344 F. Supp. 3d 579, 597-98 (S.D.N.Y. 2018). Even then, he was qualified "but just barely." *Id.* at 597.

Nor does the fact that courts have received Janoson's testimony before, Opp. at 5, 10, satisfy Plaintiff's burden. Rule 702 asks whether this witness is qualified to offer *these* opinions in *this* case; it is not satisfied by a list of other courtrooms in which he has appeared. *See Smith*, 806 F. Supp. 3d at 396-97 (discounting claim that expert had been qualified "[i]n 'more than 70 cases'" because it did not "specify the propositions to which she testified"). Testifying on unrelated issues in unrelated contexts does not qualify Janoson to discuss the psychological effects of a workplace event, a topic he testified he had never analyzed before this case. Mot. at 7.[3]

[3] Plaintiff's cases are inapposite. Opp. at 5. In *Robertson*, Janoson was qualified to testify about a criminal defendant's competency, which was directly relevant to the "primarily criminal" work in which he was trained. Dep. at 20:13-15. Even so, the court rejected his diagnosis because he had interpreted MMPI-2 protocols the scoring system marked invalid "against what appears to be the prevailing opinion in the profession." 2015 WL 520220, at *7 (E.D.N.Y. Feb. 9, 2015). And *Jackson* and *Noonan* involved no Rule 702 challenge at all: one was a motion for remittitur after a jury trial at which Janoson's testimony went unchallenged, 2018 WL 4043150, at *3-5, *7 (E.D.N.Y. Aug. 24, 2018), and the other a damages inquest after default, at which no one appeared to object, 2018 WL 1738746, at *2-3, *5 (S.D.N.Y. Apr. 10, 2018).

## II. NARROWING JANOSON'S OPINIONS DOES NOT RENDER HIS METHODOLOGY RELIABLE

Plaintiff's Opposition also fails to establish that Janoson's methodology was reliable. The Opposition does not dispute that the scoring service Janoson chose declared his MMPI-2 protocol "INVALID" and warned against using it, or that Janoson "overrode it [him]self." Mot. at 2, 11-12, 21-22. It does not dispute that the DAPS called for a follow-up clinical interview that Janoson never conducted. *Id.* at 12, 23-24. And it does not dispute that Janoson reviewed no records, took no medical, family, or trauma history, and never learned of [redacted] during the very period to which he dates Plaintiff's symptoms.[4] *Id.* at 14-15, 26-29. Plaintiff offers instead records that Janoson never read, a purported "multi-source method" that Janoson did not use, and the refrain that everything else "goes to weight." Opp. at 10, 18. That refrain is not a response. The 2023 amendment to Rule 702 was adopted because "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility," and "[t]hese rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note to 2023 amendments. Plaintiff quotes the same note for the proposition that courts need not "nitpick," Opp. at 9, but omits the sentences that matter.

### A. Dr. Rizvi's Records Do Not Validate Janoson's Methodology

Ironically, the Opposition defends Janoson's methodology by looking to some of the very basic records that Janoson failed to review. Plaintiff acknowledges that Janoson failed to make contact with Plaintiff's treating psychologist, Dr. Rizvi, and that his "findings therefore do not rest

[4] Plaintiff purports to address [redacted] by arguing, through counsel, that his symptoms began in July 2022, six months before [redacted]. Opp. at 23; Mot. at 15. That is the differential analysis Rule 702 requires but which Janoson did not perform because he never asked—he "didn't think [Plaintiff] was [redacted]" because Plaintiff was "a professor of neuroscience." Dep. at 131:14-19, 143:8-15. A brief cannot "adequately account[] for obvious alternative explanations," Opp. at 22 (alteration in original), on an expert's behalf, and the chronology counsel constructs rests entirely on Mrs. Khodakhah's unverified recollection. Opp. at 23.

on Dr. Rizvi's records." Opp. at 16. Plaintiff cites this as an excuse but omits that Janoson never asked for Dr. Rizvi's records and testified that he did not intend to, even had he reached her. Dep. at 102:22-103:25. Undeterred, Plaintiff argues that cherry-picked entries from those records "confirm[] that Dr. Janoson was correct" to interpret the invalid MMPI-2 results, to verify nothing Plaintiff or his wife told him, and to disregard the procedures of the DAPS. Opp. at 17.[5]

Dr. Rizvi's records do no such thing. More fundamentally, Plaintiff misunderstands the *Daubert* inquiry, which asks whether the expert's methodology is reliable, not whether he happened upon an answer Plaintiff deems correct. Plaintiff relies on *Amorgianos* for the proposition that "[a]n evaluation whose findings are confirmed by independent clinical data rests on 'good grounds.'" Opp. at 17. To the contrary, in *Amorgianos*, the Second Circuit advised that "it is critical that an expert's analysis be reliable at every step," and the "district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266-67 (2d Cir. 2002). This makes sense. Broken clocks and fortunetellers may occasionally get it right, but neither should be relied upon. *See id.* at 268; *Williams v. E. Meadow Union Free Sch. Dist.*, 2026 WL 790580, at *13 (E.D.N.Y. Mar. 20, 2026) (psychologist's post-deposition declaration that later-reviewed treatment records confirmed her diagnoses "does not address the deficiencies in any of the unreliable opinions set forth in [her] expert report"); *Guerrero v. Loiacono*, 769 F. Supp. 3d 158, 174 (E.D.N.Y. 2024).

If anything, Plaintiff's reliance on Dr. Rizvi's records only underscores that Janoson's failure to speak with her or review any medical records prior to reaching his opinions was fatal. *See*

[5] The Rizvi Declaration, submitted for the first time with the Opposition, should not be considered. It is at best an expert opinion from a witness Plaintiff never disclosed under Rule 26(a)(2), *see* ECF 187-188, which Plaintiff therefore is "not allowed to use." Fed. R. Civ. P. 37(c)(1). In any event, Plaintiff listed Dr. Rizvi on his witness list. ECF 203 at 9. Although her testimony should be excluded for other reasons, *see* ECF 188, there is no basis for Janoson to be called to vouch for her records or opinions. That testimony should come in through Dr. Rizvi or not at all.

Mot. at 27. Much of Dr. Rizvi's records and the other medical records Janoson did not review either contradict Janoson's Report or describe alternative explanations that Janoson admitted were "relevant" to his Report. Mot. at 26-27; Dep. at 132:15-18. Janoson knew that reviewing those records and speaking with Dr. Rizvi mattered—and issued his Report without doing either.

### B. Janoson's "Multi-Source Method" Had One Source: The Khodakhahs

Plaintiff acknowledges that "[d]iagnostic assessments are most reliable when they draw on multiple sources," and describes Janoson's method as "clinical interviews, a collateral interview . . ., an attempt to consult the treating psychologist, and two standardized instruments." Opp. at 1. Each claimed step, however, wilts on inspection. The "interviews of Dr. Khodakhah over two days," *id.*, were, by Janoson's own account, perhaps one: June 17 and 18 were testing days for which he has no interview notes, and "[i]t may be that there was only one interview," Dep. at 117:17-119:6. The "collateral interview" was a single telephone call with Plaintiff's wife in which he asked her nothing about "other medical, family, professional, or personal stressors" and verified nothing she said. *Id.* at 145:2-146:23. The "attempt to consult" Dr. Rizvi produced nothing, and an attempt is not a "source." And the "two standardized instruments" are the invalid MMPI-2 and the unconfirmed DAPS addressed below. He had "no other independent source" for Plaintiff's functioning before 2022, *id.* at 143:16-24, and none for the symptoms he now proposes to describe: everything came from Plaintiff's or his wife's account, nothing was checked by Janoson himself, and the records Janoson did not review contradict Plaintiff's recounting, Mot. at 13-15.

And what Janoson did learn, he did not pursue. Plaintiff's MMPI-2 answers flagged [redacted] as items that "may serve as a source of hypotheses for further investigation"; Janoson asked about none of them. Dep. at 134:18-135:21. His notes of the collateral interview record [redacted] in the same period; Janoson considered it "in only the most general way," omitted it from his Report, and never raised it with Plaintiff. *Id.* at 146:21-23,

189:8-190:3. *Discepolo v. Gorgone*, Plaintiff's lone authority, Opp. at 18, shows what a multi-source evaluation looks like: three collateral interviews, "medical, counseling, and psychotherapy records," school records, depositions, and three instruments whose validity scales were all "within the normal range." 399 F. Supp. 2d 123, 125 (D. Conn. 2005). Janoson, by contrast, reviewed no treatment records and failed to evaluate the issues that even his limited work turned up.

**C. Interpreting an Invalid MMPI-2 Protocol Is Not a "Permissible Methodology"**

Plaintiff argues that Janoson's use of the invalid MMPI-2 result "goes to the weight rather than the admissibility of the testimony" because it is at most a question of whether his "permissible methodology could have been improved" and because Dr. Rizvi's records "show that Dr. Janoson's judgment was sound." Opp. at 19. To be clear, interpreting invalid results is not a "permissible methodology." The Minnesota Report declared "THIS IS AN INVALID PROFILE," warned "[redacted]; Janoson did neither. Ex. F at 2, 6; Dep. at 160:13-163:9, 167:12-13. As Judge Matsumoto observed when Janoson did the same thing in *Robertson*, "interpret[ing] the results anyway" is "against what appears to be the prevailing opinion in the profession that treating the defendant's scores as valid 'would be misleading if not unethical.'" 2015 WL 520220, at *7; *accord* Baranoski Rep. at 8 (interpreting a profile "after the standard program has determined that the protocol is invalid is inconsistent with accepted practice").[6]

Nor is Janoson's reliance on an invalid protocol a "gap[] in supporting literature." Opp. at 19. It is a flawed methodology. A "lack of textual support may 'go to the weight, not the admissibility' of the expert's testimony" only "[w]here an expert otherwise reliably utilizes

[6] Plaintiff's reliance on *Danaby Rentals* is misplaced. That case concerned the cause of water damage, and the challenge was that the expert "should have done more to investigate"; the Court found his conclusions "based on more than subjective beliefs or unsupported speculation" because he "photographed and observed" the damage himself. 2026 WL 125634, at *9-10 (S.D.N.Y. Jan. 16, 2026). None of that has anything to do with interpreting results the governing instrument has declared invalid, and the Court excluded as "subjective ipse dixit" an opinion that applied no method to the facts at all. *Id.* at *18-19.

scientific methods to reach a conclusion." *Amorgianos*, 303 F.3d at 266-67. Where he does not, exclusion is proper regardless of whether his conclusions find support elsewhere. *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 124 (2d Cir. 2020).

Janoson's "explanation" that seven of the eight validity scales were "within interpretable limits," Opp. at 19, is a non sequitur. Those scales measure over- and under-reporting, Dep. at 164:12-165:11, while VRIN measures whether the respondent answered consistently enough for *any other scale* to mean anything, *id.* at 161:7-13. That is why the sentence Plaintiff selectively quotes from Dr. Baranoski (Opp. at 2, 19) continues: "An elevated score does not, by itself, indicate malingering. . . . But it does mean that the rest of the test results cannot be validly interpreted." Baranoski Rep. at 7. That Janoson "overrule[s]" MMPI invalidations "quite frequently," Dep. at 166:15-22, is not a methodology. Nor is the fact that he "did it in the Tomei case," *id.* at 167:15-16, in which the court found his "use of the MMPI was unethical, egregious," Ex. J at 9.

**D. Janoson's Use of the DAPS Is Equally Unreliable**

Conceding, in effect, that the MMPI-2 cannot be saved, Plaintiff argues that Janoson's DAPS-based opinions "stand independently." Opp. at 20. But the DAPS application was flawed in its own right, even setting aside the resulting diagnosis as Plaintiff proposes. The DAPS "should be followed up with a face-to-face, DSM-IV-TR based clinical interview," Ex. F at 55, and its results "should always be integrated with a diagnostic interview," *id.* at 37. Janoson admitted he "did not follow up with a DSM-IV-TR-based clinical interview" and conducted no [redacted]. Dep. at 176:5-11. Nor can the DAPS scores be severed from the instrument's design. The DAPS, by Janoson's account, is "the only instrument" that "attempts to make the connection between the . . . [redacted] . . . and the causative factors," *id.* at 54:6-18, and its scales were keyed to the Einstein events as the "index event." Opp. at 14. Plaintiff cannot disclaim causation, Opp. at 24, and then offer a causation questionnaire.

Plaintiff's fallback, that the required Criterion A trauma event "goes at most to the diagnostic label, not to the symptoms the DAPS measured," Opp. at 21, throws out the diagnosis but does not save the testimony. Dr. Baranoski's full sentence is that [redacted]" Baranoski Rep. at 11. If Janoson may not testify that Plaintiff has [redacted], he may not testify that Plaintiff has "[redacted]" anything. The *Williams* court, Opp. at 23, admitted symptom testimony only because the defendants there had not challenged the expert's application of the tests, and only on the condition that she "not opine that these symptoms were caused by or are consistent with trauma, PTSD, or MDD." 2026 WL 790580, at *12, *14. Defendants challenge Janoson's application of both instruments here, and "[redacted]," Opp. at 6, is trauma-related testimony by definition.

## III. JANOSON'S TESTIMONY IS NOT HELPFUL AND SHOULD BE EXCLUDED

*Accely* is fatal to Plaintiff's position. There, as here, Janoson was retained to support an emotional-distress claim in an employment case, administered the MMPI-2, and produced a report that recited the plaintiff's allegations but did "not purport to draw any connection" between the challenged conduct and the claimed harm. *Accely v. Consol. Edison Co. of N.Y.*, 2023 WL 3025436, at *2 (S.D.N.Y. Apr. 20, 2023). Judge Chin held that a report that "merely reiterates" the plaintiff's allegations would not assist the factfinder and that its "probative value . . . is low and is substantially outweighed by the risk of unfair prejudice, confusion, and delay" under Rule 403. *Id.*

Plaintiff tries to distinguish *Accely* on the ground that Janoson's Report here "addresses the emotional injury itself." Opp. at 15. But Janoson's opinion was deficient in *Accely* because it did not connect the emotional harm it purported to describe to the defendant's actions. Here, Plaintiff has expressly disclaimed any opinion connecting the two, *id.* at 24, and has withdrawn the diagnoses that were the point of the Report, *id.* at 3. What is left is exactly what *Accely* excluded: a mere

recitation. Testimony asserting an emotional injury untethered to Defendants' actions is unhelpful to the factfinder under Rule 702 and unfairly prejudicial under Rule 403. And there is nothing left to "limit," *id.* at 24 n.4, because what remains is not expert testimony at all.

Nor can a party avoid a Rule 702 ruling by redescribing the same opinions in narrower terms. *See Tardif*, 344 F. Supp. 3d at 602 (rejecting attempt to recast excluded causation opinion as limited "exacerbation" testimony). The symptom "findings" Plaintiff proposes to offer are the invalid MMPI-2 and unconfirmed DAPS results under a different name. And testimony about "when those symptoms emerged," Opp. at 24, is not expert testimony at all. Janoson's Report contains no analysis of their onset, only the Khodakhahs' attributions. Janoson said so himself: "I'm not saying that I know the cause. [Plaintiff] says he knows the cause . . . . He's saying it and his wife is saying it." Dep. at 156:21-157:8. An "onset" opinion that does not appear in the Report is precluded by Rule 37(c)(1), and a recitation of what the Khodakhahs said is "a conduit for another witness's testimony in the guise of an expert's opinion." *Matthews v. Hewlett-Packard Co.*, 2017 WL 6804075, at *4 (S.D.N.Y. Dec. 22, 2017).

Finally, even as narrowed, the testimony does not fit the surviving claim. Janoson cannot distinguish the Chair Investigation from the dismissed Title IX proceedings. He did not know which proceeding the [redacted] accusation in his Report came from, Dep. at 99:7-101:14, and the "index trauma," Ex. F at 55, to which the DAPS keyed Plaintiff's symptoms, was the campus suspension and [redacted] allegations that are no longer in this case, alongside his removal as Chair, Janoson Rep. at 6. Plaintiff's answer that apportionment "is for the jury," Opp. at 15-16, ignores the expert's role. Plaintiff cites *Lore* for the uncontroversial proposition that juries can apportion damages, Opp. at 15-16, but that case has nothing to do with whether an expert's testimony would be helpful to the jury charged with doing so. 670 F.3d 127, 179 (2d Cir. 2012). An expert who never tried to draw that line cannot help the jury draw it.

**CONCLUSION**

For these reasons and those stated in the Motion, the Court should preclude Janoson.

Dated: October 27, 2026
New York, New York

*/s/ Roberta A. Kaplan*

Roberta A. Kaplan
Christopher R. Le Coney
Tasha N. Thompson
KAPLAN MARTIN LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
cleconey@kaplanmartin.com
tthompson@kaplanmartin.com

*Counsel for Defendants Montefiore Medicine Academic Health System, Inc. and Albert Einstein College of Medicine*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the page and type-volume limitations in Judge Kaplan's Individual Rules of Practice and Local Rule 7.1. Exclusive of the exempted portions of the brief, the brief contains 10 pages, which complies with the 10-page limit applicable to a brief under Judge Kaplan's Individual Rules of Practice where the Court expresses a limit in pages. This brief has been prepared in proportionally spaced typeface using Microsoft Word in 12-point Times New Roman font.

Dated: October 27, 2026
New York, New York

*/s/ Roberta A. Kaplan*
Roberta A. Kaplan

*Counsel for Defendants Montefiore Medicine Academic Health System, Inc. and Albert Einstein College of Medicine*