**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KAMRAN KHODAKHAH,

*Plaintiff*,

v.

MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC. and ALBERT EINSTEIN COLLEGE OF MEDICINE,

*Defendants*.

No. 24 Civ. 839 (LAK) (RFT)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DAMAGES**

Roberta A. Kaplan
Christopher R. Le Coney
Tasha N. Thompson
KAPLAN MARTIN LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
cleconey@kaplanmartin.com
tthompson@kaplanmartin.com

October 28, 2026

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. PLAINTIFF CANNOT RECOVER DAMAGES THAT HE CANNOT TIE TO THE ALLEGED DISCRIMINATION ........ 2

A. Procedural Flaws Are Relevant Only to Discriminatory Intent and Are Not a Basis for Recovery ........ 2

B. The Showing Plaintiff Calls "Misplaced" Is Simply Causation, and He Has No Evidence of It ........ 3

C. Even Under the Due Process Framework Plaintiff Invokes, He Could Recover No More Than Nominal Damages ........ 6

II. RULE 403 INDEPENDENTLY REQUIRES EXCLUSION ........ 7

III. PLAINTIFF'S UNDISCLOSED ECONOMIC DAMAGES MUST BE PRECLUDED UNDER RULE 37 ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**CASES** *Page(s)*

*Cardwell v. Davis Polk & Wardwell LLP*,
2021 WL 4434935 (S.D.N.Y. Sept. 23, 2021) .......... 2

*Carey v. Piphus*,
435 U.S. 247 (1978) .......... 4, 7

*Danaby Rentals, Inc. v. Mt. Hawley Ins. Co.*,
2026 WL 125634 (S.D.N.Y. Jan. 16, 2026) .......... 8

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 8

*Design Strategy, Inc. v. Davis*,
469 F.3d 284 (2d Cir. 2006) .......... 9

*Doe v. New York Univ.*,
2021 WL 1226384 (S.D.N.Y. Mar. 31, 2021) .......... 2

*Doe v. Trs. of Columbia Univ.*,
2022 WL 3666997 (S.D.N.Y. Aug. 25, 2022) .......... 2

*Draper v. Coombs*,
792 F.2d 915 (9th Cir. 1986) .......... 7

*Felske v. Hirschmann*,
2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) .......... 9

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998) .......... 2

*Harden v. Pataki*,
320 F.3d 1289 (11th Cir. 2003) .......... 1, 7

*Long v. Shillinger*,
927 F.2d 525 (10th Cir. 1991) .......... 1, 7

*McCullock v. H.B. Fuller Co.*,
61 F.3d 1038 (2d Cir. 1995) .......... 8

*Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*,
746 F. Supp. 2d 575 (S.D.N.Y. 2010) .......... 3, 5, 6

*Patterson v. City of Utica*,
370 F.3d 322 (2d Cir. 2004)........................................................................................ 3, 7

*Qorrolli v. Metro. Dental Assocs.*,
124 F.4th 115 (2d Cir. 2024) ........................................................................................ 8

*Qube Films, Ltd. v. Padell*,
2016 WL 888791 (S.D.N.Y. Mar. 1, 2016) ................................................................... 8

*Revella v. Kohl's Dep't Stores, Inc.*,
439 F. App'x 18 (2d Cir. 2011) ..................................................................................... 5

*Rodriguez v. Vill. of Port Chester*,
535 F. Supp. 3d 202 (S.D.N.Y. 2021)........................................................................... 9

*Schiebel v. Schoharie Cent. Sch. Dist.*,
120 F.4th 1082 (2d Cir. 2024) ....................................................................................... 2

*Tse v. UBS Fin. Servs., Inc.*,
568 F. Supp. 2d 274 (S.D.N.Y. 2008)........................................................................... 9

*Warren v. Pataki*,
823 F.3d 125 (2d Cir. 2016)........................................................................................... 6

**RULES**

Fed. R. Civ. P. 26 ........................................................................................................ 9, 10

Fed. R. Civ. P. 37 ........................................................................................................ 9, 10

Fed. R. Evid. 403 ........................................................................................................ 7, 8, 9

Fed. R. Evid. 702 ........................................................................................................... 7

## PRELIMINARY STATEMENT

Plaintiff's opposition (ECF 218, "Opp.") concedes the premise of Defendants' motion (ECF 193, "Mot."):[1] "Plaintiff does not dispute that any alleged damages must be causally connected to gender discrimination in the Chair Investigation." Opp. at 6. Having conceded causation, Plaintiff tries to redefine the injury. The harm he pleaded, disclosed, and testified to was the loss of his chairmanship. Now, on the eve of trial, he proposes a different one: "emotional distress . . . caused by the deprivation of the proper process under Title IX." Opp. at 7. That theory is borrowed from procedural due process cases that have no application to the statutes at issue, and it describes an injury that no pleading, witness, document, or expert in this case has ever identified.

Title IX, the NYSHRL, and the NYCHRL prohibit discrimination, not deficient procedure. Under each, a procedural irregularity may be evidence that an outcome was the product of discrimination. Plaintiff does not cite a single case in which a procedural irregularity alone supported the damages he seeks to put before a jury. His own due process authorities prove the opposite. Even where procedure is itself the protected right, a plaintiff whose deprivation was justified "cannot recover for any injury caused by" it and may recover only for injury "caused by the deprivation of due process itself." *Long v. Shillinger*, 927 F.2d 525, 528 (10th Cir. 1991); *accord Harden v. Pataki*, 320 F.3d 1289, 1300 (11th Cir. 2003). Every injury Plaintiff has identified is of the first kind. That is why he must show that a Title IX process would have changed the result—not because Defendants have imposed some "misplaced" standard, Opp. at 6, but because that is what "causation" means for the only injuries he has ever claimed. The motion should be granted.

---

[1] Citations to "56.1" follow the conventions in Defendants' opening memorandum. Mot. at 1 n.1. Capitalized terms not otherwise defined herein have the definitions assigned in Defendants' opening memorandum.

## ARGUMENT

### I. PLAINTIFF CANNOT RECOVER DAMAGES THAT HE CANNOT TIE TO THE ALLEGED DISCRIMINATION

#### A. Procedural Flaws Are Relevant Only to Discriminatory Intent and Are Not a Basis for Recovery

Plaintiff's only surviving claims arise under Title IX, the NYSHRL, and the NYCHRL, and only "to the extent that those claims arise out of the chair investigation." ECF 88 at 12. None of those statutes creates a right to any particular procedure. *See, e.g.*, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) (Supreme Court has "never held . . . that the implied private right of action under Title IX allows recovery in damages for violation of" the regulations' procedural requirements); *Doe v. Trs. of Columbia Univ.*, 2022 WL 3666997, at *15 (S.D.N.Y. Aug. 25, 2022) ("[e]rroneous outcome claims rest on allegations" that the plaintiff did not commit the conduct at issue). Under each statute, "procedural flaws" are relevant because they may "suggest that the discipline was erroneously or selectively imposed." *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1096-97 (2d Cir. 2024); *Cardwell v. Davis Polk & Wardwell LLP*, 2021 WL 4434935, at *26 (S.D.N.Y. Sept. 23, 2021) (similar as to NYSHRL); *Doe v. New York Univ.*, 2021 WL 1226384, at *25 (S.D.N.Y. Mar. 31, 2021) (similar as to NYCHRL). In other words, procedural flaws are evidence of bias, not injuries in themselves.

Indeed, this Court allowed Plaintiff to proceed on an erroneous outcome theory because he adequately alleged "procedural irregularities" and "discriminatory motive." ECF 79 at 28-29, 54; *see* ECF 88 at 3. Plaintiff's own pleading says the same thing: the Amended Complaint cites the "procedural irregularities" in the Chair Investigation as evidence that "gender bias was a motivating factor behind the erroneous findings and the decision to impose an unjustly severe penalty upon Plaintiff," ECF 48 ¶¶ 447-48, and the injuries it pleads are "the multiple adverse employment actions," "[t]he stigma attached to the adverse employment actions," "his lost

Chairmanship," and "his dismissal from his appointment as Chair." *Id.* ¶¶ 411, 414, 416, 544, 556. Nowhere does Plaintiff allege that the process itself, apart from its outcome, injured him.

**B. The Showing Plaintiff Calls "Misplaced" Is Simply Causation, and He Has No Evidence of It**

Because the statutes compensate discrimination rather than procedure, Plaintiff's damages must flow from the discrimination. Plaintiff concedes as much. Opp. at 6 ("any alleged damages must be causally connected to gender discrimination in the Chair Investigation"). His only quarrel is with what that concession means: he calls it "misplaced" to say that causation "requires Plaintiff to prove that the outcome of the Chair Investigation would have been different." *Id.* But that is not a standard Defendants invented; it is what "causation" means for the injuries Plaintiff actually claims here. "Under Title VII, NYSHRL and NYCHRL, a plaintiff's recovery of damages for mental anguish is limited to compensation for actual and proven injury." *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 600 (S.D.N.Y. 2010). The injuries Plaintiff claims—[redacted] Janoson Rep. at 6—are injuries from the removal, not from the choice of procedure. They were caused by discrimination in the Chair Investigation only if the discrimination caused *the removal*—that is, only if a Title IX process would have produced a different result. Plaintiff's own authorities say so. *See Patterson v. City of Utica*, 370 F.3d 322, 338 (2d Cir. 2004) (cleaned up) (plaintiff bears the "burden to show that the property or liberty deprivation for which he sought compensation would not have occurred had proper procedure been observed"). That leaves Plaintiff two ways to connect his claimed injuries to the alleged discrimination: (i) he can show that a Title IX process would have produced a different outcome, so that the removal and the losses that followed are attributable to the discrimination; or (ii) assuming the procedural defects were themselves actionable, he can show that he suffered injury

"because of the denial of procedural due process itself," as distinct from distress "attributable to the justified deprivation." *Carey v. Piphus*, 435 U.S. 247, 263 (1978). Either way the injury must be proven, not presumed, *id.* at 263-64, and awarding Plaintiff the consequences of a removal that would have occurred in any event "would constitute a windfall, rather than compensation," *id.* at 260. Plaintiff has no evidence for either route.

***There is no evidence that a Title IX process would have changed the outcome.*** Plaintiff's answer is that he has "at a minimum raised issues of fact," because a juror could conclude that had Einstein "properly investigated reports that the gender *and non-gender-based* allegations against Plaintiff were false and manipulated," the outcome "would have been different." Opp. at 7-8. But that finding would require the jury to find that the non-gender-based allegations—those that were undisputedly not subject to Title IX—also came out the wrong way. That question is not even before the jury in this case. As this Court has held, Plaintiff "was found to have engaged in significant misconduct that was unrelated to gender (or any other protected class) discrimination: student mistreatment and name-calling, violations of Einstein's Drug and Alcohol Policy, intimidation and abuse of staff, and inappropriate behavior at Einstein events, believed to be due to intoxication. Those findings did not require the process set out in any Einstein Title IX Policy." ECF 88 at 6 n.16 (quoting ECF 79 at 33). Discovery has only reinforced that holding: six of the eight grounds on which the Dean removed Plaintiff had nothing to do with sex, 56.1 ¶ 59, Plaintiff has admitted much of the relevant conduct under oath, ECF 210 ¶¶ 8-10, and the record confirms that his appointment was "subject to performance as determined by the Dean," *id.* ¶ 6. In any event, as this Court has already held, "both the interim demotion and the ultimate removal of Plaintiff as Chair were permissible under the 2018 Title IX Policy." ECF 79 at 58; *see id.* at 28 n.7. Because any Title IX investigation would have led to the same outcome as the investigation of the non-

gender-related allegations that occurred, Plaintiff cannot establish that the removal outcome itself was the result of any discrimination he experienced in the application of the procedures.[2]

***There is no evidence of injury from the investigation process itself.*** Plaintiff's effort to recast his injuries as the product of the alleged procedural irregularities fails for a simpler reason: no evidence supports it. *See, e.g.*, *Mendez*, 746 F. Supp. 2d at 601-02 (remitting $1 million award to $10,000 where plaintiff "did not attribute depression, anxiety or any other indicium of non-economic damage" to the one act found unlawful). To the contrary, Plaintiff concedes that the damages evidence will include "reference to other stressors in Plaintiff's life" and he proposes shouldering the jury with the burden of assessing, somehow, "the extent to which the Chair Investigation, as opposed to other factors, caused Plaintiff's claimed emotional distress," even though he fails to identify a single piece of evidence or expert testimony that would serve as the basis for the jury's determination. Opp. at 9. Plaintiff's proposal would allow him to present evidence of every injury he has suffered since 2022 in the hopes that that the jury can sift through and determine which were properly compensable under the plaintiff's theory of harm and which were not (none are). That is not a damages case; it is an invitation to guess.

Plaintiff has never alleged, and nothing in the record even suggests, that his damages are tied to the alleged procedural irregularities except to the extent that those irregularities supposedly changed the "consequences" of the Chair Investigation. *See, e.g.*, Opp. at 4. Asked at his deposition what damages he suffered "in connection with the chair investigation," he described his lost Chair salary, the shrinking of his laboratory, lost grants "because the entire world thinks I'm a rapist," and lost advisory-board positions and paid lectures. ECF 174-9 at 339:13-345:17; *see also id.* at

[2] Plaintiff also cites the wrong standard. Whether there are "issues of fact," Opp. at 7, is irrelevant. The question is whether evidence of damages that were not caused by the alleged wrongdoing is admissible, Mot. at 9-10 (citing *Revella v. Kohl's Dep't Stores, Inc.*, 439 F. App'x 18, 21 (2d Cir. 2011)); *see* ECF 129 at 9:2-4.

207:13-208:7, 265:12-268:2 (attributing "sexual molester" stigma to rumors spread by a faculty colleague and students). None of those harms flows from the alleged procedural irregularities; each flows from the outcome. The expert and treatment evidence is the same. Dr. Janoson was retained to assess [redacted] Janoson Rep. at 1; the "Index Trauma" on which he built his evaluation was Plaintiff's self-report that "[redacted]" ECF 176-6 at 43—nothing about procedure; and asked whether he was offering a causation opinion at all, Janoson answered, "[redacted]" Janoson Dep. 156:17-157:3. Dr. Rizvi's records similarly say nothing about the procedures used. Mot. at 9. Plaintiff cannot defeat a relevance objection by articulating a theory of injury that no evidence supports, and presenting removal-based harm to the jury anyway would invite exactly the award *Mendez* set aside: one "motivated by sympathy rather than by evidence of harm." 746 F. Supp. 2d at 601.

**C. Even Under the Due Process Framework Plaintiff Invokes, He Could Recover No More Than Nominal Damages**

None of the cases Plaintiff relies on awards or permits compensatory damages for a procedural wrong under Title IX, the NYSHRL, or the NYCHRL. The cases he cites for his due process framework are Section 1983 cases in which the procedure was itself the constitutional right, and even there, compensatory damages are available only for injury the denial of process itself caused. "If the outcome would not have been different, the plaintiff is presumptively entitled to no more than nominal damages." *Warren v. Pataki*, 823 F.3d 125, 143 (2d Cir. 2016).

Plaintiff's reading of those cases omits the sentence that decides this motion. He says *Carey* bars recovery only for a "justified" deprivation, Opp. at 7, implying that his removal was not. But *Carey* explains why that distinction is Plaintiff's problem, not his answer: "where a deprivation is

justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure." 435 U.S. at 263. That is why the plaintiff bears the "burden to show that the property or liberty deprivation for which he sought compensation would not have occurred had proper procedure been observed," *Patterson*, 370 F.3d at 338 (cleaned up)—a burden Plaintiff cannot carry here. *See supra* Part I.B. In *Long*, because "the extradition itself was justified, even though the procedures used to accomplish it were deficient," the plaintiff could not "recover for any injury caused by the extradition"; his attorney's fees, his expenses, and even the emotional distress of defending the charges "flowed from the extradition, not the deprivation of due process," and were "not recoverable." 927 F.2d at 528. Because he "did not allege, much less prove, that he suffered any injury as a result of the deprivation of due process alone, he was entitled to receive only nominal damages." *Id. Harden* adopted *Long*'s formulation, 320 F.3d at 1300, and *Draper* holds only that such a plaintiff may still recover nominal damages. *Draper v. Coombs*, 792 F.2d 915, 921-22 (9th Cir. 1986).

Plaintiff calls his entitlement to damages "glaringly obvious." Opp. at 1. No one disputes that compensatory damages, including for emotional distress, are available under the NYSHRL and the NYCHRL in a proper case. Opp. at 6, 8. What is not obvious—and what Plaintiff makes no effort to show—is that the damages he proposes to prove flow from the wrong he has pleaded, a discriminatory choice of procedure, and he cites no evidence that they do. And nominal damages, which Plaintiff invokes as a fallback, Opp. at 6, require no proof of injury at all, *Carey*, 435 U.S. at 266-67, so their availability is no basis to admit evidence of harm.

## II. RULE 403 INDEPENDENTLY REQUIRES EXCLUSION

Plaintiff's answer under Rule 403 is that the "other stressors" reflected in his treatment and expert evidence are a matter for cross-examination. Opp. at 9. The cases he cites say no such thing. *Daubert*, *McCullock*, *Qube Films*, and *Danaby Rentals* are Rule 702 decisions holding that

challenges to an expert's methodology or factual assumptions go to weight, because "[v]igorous cross-examination" is the means "of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993); *see also McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995); *Qube Films, Ltd. v. Padell*, 2016 WL 888791, at *2 (S.D.N.Y. Mar. 1, 2016); *Danaby Rentals, Inc. v. Mt. Hawley Ins. Co.*, 2026 WL 125634, at *9-11 (S.D.N.Y. Jan. 16, 2026). Each presupposes an opinion relevant to a disputed issue; none holds that evidence of an injury the plaintiff cannot connect to actionable conduct becomes admissible because the defendant may cross-examine about it. *Qorrolli*, which Plaintiff cites for the corroboration a larger award requires, Opp. at 9, cuts the other way: the Second Circuit affirmed the exclusion under Rule 403 of psychiatric records whose descriptions of the plaintiff's condition "did not include any attribution to causes or precipitating incidents." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 127-28 (2d Cir. 2024). Here, the attributed causes and precipitating incidents—being "[redacted]" ECF 176-6 at 43—either presuppose that a Title IX process would have reached a different outcome or have nothing to do with the surviving claims.

Nor does exclusion rest on "nothing more than the time it would take." Opp. at 10. Defendants' Rule 403 argument is that this evidence invites the jury to compensate the removal without ever deciding whether the challenged policy choice caused it, and to do so out of sympathy rather than proof. Mot. at 15. By his own estimate, the damages evidence would consume "a full day or two at trial," Opp. at 10, in a case the parties expect to take "approximately five to seven days," ECF 203 at 7. And it is Plaintiff's theory, not this motion, that would require a "trial-within-a-trial," Opp. at 1, because a jury could find that a Title IX process would have changed the outcome only by retrying all eight grounds for Plaintiff's removal. Two days of testimony from

Plaintiff, his wife, his treating psychologist, his retained expert, and Defendants' two rebuttal experts about an injury his sole surviving claim cannot reach is not a "danger" that "pales," Opp. at 10; it is the "sideshow" Rule 403 exists to prevent. Mot. at 15-16.

## III. PLAINTIFF'S UNDISCLOSED ECONOMIC DAMAGES MUST BE PRECLUDED UNDER RULE 37

Plaintiff's response to Defendants' Rule 37 argument addresses only emotional distress. He "concedes that he did not provide a calculation of his claimed emotional distress damages," Opp. at 11, and argues that none was required. But he says nothing in his Rule 37 response about his claimed economic damages, even though the Joint Pretrial Order lists "backpay damages for loss of compensation stemming from Plaintiff's suspension and dismissal as Chair" among the relief he will seek, ECF 203 at 11, and even though he testified to lost advisory-board fees, lectures, and grant support. ECF 174-9 at 342:12-345:17. By failing to address economic damages in his opposition, Plaintiff has conceded the point. *See Felske v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012).

The concession is well taken, because Plaintiff's own authorities draw the line he ignores. Those cases excuse a computation of pain and suffering because "any calculation that might be provided would not be of much use to anyone." *Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 221 (S.D.N.Y. 2021) (cleaned up). But "out-of-pocket losses can be tied to a dollar amount," and a litigant uncertain of its economic damages "still has the responsibility to provide each category of required disclosures based on the information it has at the time, and to supplement." *Id.* That is the rule of Rule 26(a)(1)(A)(iii), which "requires a 'computation,' supported by documents," provided "without awaiting a discovery request," *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006), and the sanction for ignoring it is "near automatic," *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 307 (S.D.N.Y. 2008) (vacating economic

damages award in discrimination case where calculation was not disclosed). *See* Mot. at 16-18. Thus, at minimum, Plaintiff should be prohibited from entering any evidence or testimony regarding economic damages pursuant to Rule 37, because he concedes he has failed to provide any calculation of them in violation of Rule 26, and does not even attempt to excuse that failure, much less establish that his noncompliance was "substantially justified" and "harmless." Mot. at 17.

Evidence of emotional distress damages should be precluded for the same reason. Such damages may be harder to quantify, but Plaintiff does not even claim to have tried, despite promising early on to retain an expert for that computation. *Id.* Without an expert or even an attempted calculation, Defendants go to trial blind as to what Plaintiff will seek, with no chance to have probed it in discovery—exactly the prejudice Rule 37 addresses.

**CONCLUSION**

For the foregoing reasons and those stated in the Motion, the Court should exclude all evidence, expert and lay, of financial, psychological, or emotional harm attributable to Plaintiff's suspension and removal as Chair and their consequences.

Dated: October 28, 2026
New York, New York

*/s/ Roberta A. Kaplan*

Roberta A. Kaplan
Christopher R. Le Coney
Tasha N. Thompson
KAPLAN MARTIN LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
cleconey@kaplanmartin.com
tthompson@kaplanmartin.com

*Counsel for Defendants Montefiore Medicine Academic Health System, Inc. and Albert Einstein College of Medicine*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the page and type-volume limitations in Judge Kaplan's Individual Rules of Practice and Local Rule 7.1. Exclusive of the exempted portions of the brief, the brief contains 10 pages, which complies with the 10-page limit applicable to a brief under Judge Kaplan's Individual Rules of Practice where the Court expresses a limit in pages. This brief has been prepared in proportionally spaced typeface using Microsoft Word in 12-point Times New Roman font.

Dated: October 28, 2026
New York, New York

*/s/ Roberta A. Kaplan*
Roberta A. Kaplan

*Counsel for Defendants Montefiore Medicine Academic Health System, Inc. and Albert Einstein College of Medicine*