**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAMRAN KHODAKHAH,<br><br>*Plaintiff*,<br><br>v.<br><br>MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC. and ALBERT EINSTEIN COLLEGE OF MEDICINE,<br><br>*Defendants*. | No. 24 Civ. 839 (LAK) (RFT) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS MONTEFIORE MEDICINE ACADEMIC HEALTH SYSTEM, INC., AND ALBERT EINSTEIN COLLEGE OF MEDICINE'S MOTION FOR SUMMARY JUDGMENT**

Roberta A. Kaplan
Christopher R. Le Coney
Tasha N. Thompson
KAPLAN MARTIN LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
cleconey@kaplanmartin.com
tthompson@kaplanmartin.com

Gabrielle E. Tenzer
Anna Collins Peterson
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
gtenzer@heckerfink.com
apeterson@heckerfink.com

October 30, 2026

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. PLAINTIFF HAS NOT RAISED A TRIABLE ISSUE ON HIS ERRONEOUS OUTCOME CLAIM ........ 3

A. The "Outcome" Was a Discretionary Judgment Based on Admitted Conduct ...... 3

B. Nothing Connects Einstein's Challenged Actions to Plaintiff's Sex ........ 6

II. THE DELIBERATE INDIFFERENCE THEORY FAILS TOO ........ 8

III. THE NYSHRL AND NYCHRL CLAIMS FALL WITH THE FEDERAL CLAIM ........ 9

IV. PLAINTIFF OFFERS NO EVIDENCE AGAINST MONTEFIORE ........ 10

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**CASES** *Page(s)*

*Corbin v. Triborough Bridge & Tunnel Auth.*,
2026 WL 2240726 (S.D.N.Y. Aug. 4, 2026) ........ 10

*Doe v. Colgate Univ.*,
760 F. App'x 22 (2d Cir. 2019) ........ 3, 7

*Doe v. Columbia Univ.*,
831 F.3d 46 (2d Cir. 2016) ........ 6

*Ebadi v. Diamond Standard, Inc.*,
2026 WL 591569 (S.D.N.Y. Mar. 3, 2026) ........ 10

*Edelman v. NYU Langone Health System*,
141 F.4th 28 (2d Cir. 2025) ........ 8

*Felder v. U.S. Tennis Ass'n*,
27 F.4th 834 (2d Cir. 2022) ........ 10

*Henry v. Wyeth Pharms., Inc.*,
616 F.3d 134 (2d Cir. 2010) ........ 7

*McPherson v. N.Y.C. Dep't of Educ.*,
457 F.3d 211 (2d Cir. 2006) ........ 8

*Menaker v. Hofstra Univ.*,
935 F.3d 20 (2d Cir. 2019) ........ *passim*

*Nambiar v. Cent. Orthopedic Grp.*,
158 F.4th 349 (2d Cir. 2025) ........ 8

*Quinones v. Montefiore Med. Ctr.*,
2026 WL 1831862 (S.D.N.Y. June 25, 2026) ........ 9

*Roe v. Icahn Sch. of Med.*,
2026 WL 2655470 (S.D.N.Y. Sept. 9, 2026) ........ 3

*Schiebel v. Schoharie Cent. Sch. Dist.*,
120 F.4th 1082 (2d Cir. 2024) ........ 9

*Taddeo v. L.M. Berry & Co.*,
526 F. App'x 121 (2d Cir. 2013) ........ 3

*Valerio v. Metro. Transp. Auth.*,
2025 WL 686028 (2d Cir. Mar. 4, 2025) .......... 10

*Vengalattore v. Cornell Univ.*,
2024 WL 4135875 (N.D.N.Y. Sept. 10, 2024) .......... 5

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000) .......... 2, 3

*Wellner v. City of New York*,
2019 WL 1511022 (S.D.N.Y. Mar. 22, 2019) .......... 8

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) .......... 8

*Yusuf v. Vassar Coll.*,
35 F.3d 709 (2d Cir. 1994) .......... 4, 6

**RULES**

Fed. R. Civ. P. 56 .......... 3, 9, 10

Fed. R. Evid. 404 .......... 5

Fed. R. Evid. 602 .......... 5

Fed. R. Evid. 701 .......... 5

## PRELIMINARY STATEMENT

In July 2022, after an outside investigation that Plaintiff himself had demanded, Einstein's Dean removed Plaintiff as Chair of the Neuroscience Department for conduct that Plaintiff admitted then and admits now: calling students "morons," calling one on crutches "Hobble" and a younger woman "Barely Legal," and drinking with students in his classroom and his lab. 56.1 Resp. ¶¶ 8-10; Ex. NN at 5-6.[1] Plaintiff's Opposition disputes none of this. Nor does it dispute that he held the chairmanship "subject to performance as determined by the Dean," 56.1 Resp. ¶ 6; that the Dean who removed him never said a negative word about men, Ex. D at 323:12-16; that the Dean replaced him with another man, ¶ 62; or that Plaintiff has "no reason" to believe the four colleagues he blames for his ouster opposed him because of his sex, Ex. D at 133:22-134:2; 56.1 Resp. ¶ 66.

What the Opposition offers instead is the story Plaintiff has advanced since this case began: colleagues "concoct[ed]" the complaints against him, Einstein should have investigated those complaints under its Title IX Policy, and the choice of a different process—together with a remark about #MeToo—shows that he was removed because he is a man. Opp. at 4, 16-21. But allegations of departmental hostility and a dispute about the applicable procedures do not establish that *sex* motivated the decision. The Court held at the pleading stage that the #MeToo remark, "without more," does not show the influence of gender. ECF 79 at 24. Discovery has closed, and there is no "more." The only witness to recall the alleged remark is Plaintiff himself, who conceded under oath that he did not think the comment reflected "a bias against me." Ex. D at 222:16-23.

Plaintiff's attack on Einstein's choice of process likewise fails to connect either the investigation or its outcome to his sex. The combination of procedural irregularity and pressure to

---

[1] Citations to "¶ _" and "Ex. _" are to Defendants' Rule 56.1 Statement (ECF 175) and the exhibits to the Tenzer Declaration (ECF 174); "56.1 Resp." refers to Plaintiff's response and counterstatement (ECF 210); "Mot." is Defendants' opening brief (ECF 171); "Opp." is Plaintiff's opposition (ECF 209); and "Miltenberg Ex. _" refers to the exhibits to the Supplemental Declaration of Andrew T. Miltenberg (ECF 209-1). Capitalized terms not otherwise defined herein have the definitions assigned in Defendants' opening memorandum.

discriminate invoked in *Doe v. Columbia* and *Menaker* is absent here. Einstein contemporaneously explained why the complaints warranted a review of Plaintiff's performance as Chair, commissioned the outside investigation he demanded, and referred allegations warranting Title IX treatment for adjudication under its Title IX Policy. ¶¶ 24, 35, 39, 41, 63-65. Indeed, Einstein twice used that Policy to investigate Plaintiff; he offers no evidence that his sex explains the different process used for the Chair Investigation. Nor does the alleged #MeToo remark fill the gap. Even crediting Plaintiff's account, pressure to investigate does not establish a determination to find against him regardless of the evidence, much less because he is a man. The outside investigator considered testimony from Plaintiff and his supporters, and the Dean's decision rested on highly inappropriate conduct Plaintiff admits. ¶¶ 48-57; 56.1 Resp. ¶¶ 8-10. His account of departmental rivalries supplies no evidence of sex bias, and relabeling the record "pretext" does not supply the missing discriminatory motive. Opp. at 22. No reasonable jury could infer that Plaintiff's sex motivated either Einstein's choice of process or the Dean's decision.

As for the "deliberate indifference" theory that Plaintiff never pleaded, that theory fails because Plaintiff testified that his accusers were not motivated by his sex, and Einstein's response to the allegations that he calls a "sham" was a fifty-nine-witness investigation in which he participated by answering the investigator's questions for more than four hours with counsel at his side. Opp. at 23; ¶¶ 41, 44-45. The state and city claims rise or fall with the federal one. The two paragraphs on Montefiore, meanwhile, cite no evidence at all for keeping it in the case. Opp. at 27.

**ARGUMENT**

Plaintiff describes summary judgment as a "drastic remedy" to be used "sparingly" in discrimination cases. Opp. at 13-15. But "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). Plaintiff's own

authority, *Taddeo v. L.M. Berry & Co.*, affirmed summary judgment because the plaintiff "clearly did not proffer evidence from which a jury could reasonably find the discrimination she claims." 526 F. App'x 121, 123 (2d Cir. 2013). Under the applicable standard, Plaintiff must identify "specific facts showing that there is a genuine issue for trial," *Weinstock*, 224 F.3d at 41, supported by admissible evidence, Fed. R. Civ. P. 56(c)(1). He cannot do so here.[2]

## I. PLAINTIFF HAS NOT RAISED A TRIABLE ISSUE ON HIS ERRONEOUS OUTCOME CLAIM

An erroneous outcome claim requires both "articulable doubt [as to] the accuracy of the outcome of the disciplinary proceeding" and evidence that "gender bias was a motivating factor behind the erroneous finding." *Doe v. Colgate Univ.*, 760 F. App'x 22, 30 (2d Cir. 2019). The Opposition fails to raise a genuine dispute of material fact on either element.

### A. The "Outcome" Was a Discretionary Judgment Based on Admitted Conduct

To start, the "outcome" of the Chair Investigation was the Dean's judgment about Plaintiff's fitness to lead—a decision committed to the Dean's discretion that is not a "finding" that is capable of being "erroneous." Mot. at 19-20; *Roe v. Icahn Sch. of Med.*, 2026 WL 2655470, at *3 (S.D.N.Y. Sept. 9, 2026). Plaintiff does not dispute that he served "subject to performance as determined by the Dean," 56.1 Resp. ¶ 6; he identifies no policy that constrained that judgment; and he never explains how a discretionary assessment of his leadership skills can be factually wrong.

Plaintiff's response to this is that the argument "entirely misses the mark." Opp. at 16. But that is not an answer. The Dean may not discriminate in exercising his discretion. But Plaintiff must still identify erroneous findings and evidence that sex bias drove the outcome here. *Colgate*, 760 F. App'x at 30. Disagreement with the Dean's assessment of admitted conduct does not make that showing. Mot. at 19-20.

[2] For example, the assertions that Einstein "acknowledged" the allegations against Plaintiff were false, Opp. at 17, 20, 24; that it used them "as a springboard to garner additional accusations," *id.* at 20; and that it reached a "pre-determined conclusion," *id.* at 2, carry no record citation at all and may be disregarded by this Court. Fed. R. Civ. P. 56(c)(1), (e).

This claim would fail even if the Dean's eight stated grounds for removing Plaintiff as Chair were treated as findings, because Plaintiff admits to much of the conduct underlying them: calling students "morons" (which he used, he says, for "everybody"), the offensive nicknames, and the drinking with students in class and lab. 56.1 Resp. ¶¶ 8-10; Ex. D at 215:5-216:10. His responses defend and minimize that conduct, 56.1 Resp. ¶¶ 8-9.1, but a dispute about how much weight the Dean should have given to admitted conduct is not "articulable doubt" that Plaintiff was "wrongly found to have committed an offense." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).[3]

In response, Plaintiff asserts (again) that the complaints were "concoct[ed]" by his academic rivals, so everything that followed was tainted. Opp. at 4, 16-17, 24. But *first*, this theory does not touch the admitted conduct. *Second*, Plaintiff has never identified a false allegation among the Dean's grounds. Asked at his deposition, he named one survey comment—that he told a student she was "just focused on the orgasm"—and then admitted that he did tell her she "should enjoy making love, not just the climax." Ex. J at 44-45; Ex. D at 210:23-213:3; Mot. at 32. *Third*, the one "manipulated" statement, Opp. at 17, his declarants describe—Dr. Krzyspiak's comments about an allegation that Plaintiff touched a woman's knee that she claims Dr. Jordan mischaracterized, Krzyspiak Decl. ¶¶ 4-7—was not a ground for removal at all. By Plaintiff's own telling, that allegation "was later used as the basis for a Title IX investigation," Opp. at 4; that is, it was adjudicated under the Title IX Policy. ¶¶ 39, 63-65. What remains of the "conspiracy," Opp. at 25, is Drs. Hebert's and Radulovic's account of departmental politics and "personal vendettas." Hebert Decl. ¶¶ 10-12; Radulovic Decl. ¶¶ 7-9. That is not evidence that any allegation was false; if anything, it is evidence that whatever motivated Plaintiff's colleagues, it was not his sex—which

[3] Plaintiff has withdrawn his motion to preclude evidence of the Chair Investigation, ECF 183, *see* ECF 205, and lists the Investigative Summary prepared by the outside investigator, T&M USA, LLC ("T&M"), as his own trial exhibit, ECF 203, App. A (PX-42). Its account of what Plaintiff admitted to the investigator, ¶¶ 51, 54, 57, is before the Court without objection.

Plaintiff himself concedes. 56.1 Resp. ¶ 66.[4]

Nor do imagined "procedural flaws" supply the missing link. Opp. at 25. Every case Plaintiff cites involved a school that adjudicated an accusation of sexual misconduct and, in doing so, departed from its own procedures. Opp. at 17-19 (citing *Vengalattore*, *Menaker*, *Columbia*, and *Schiebel*). That did not happen here. The Dean assessed Plaintiff's performance as Chair—a decision no policy constrained, 56.1 Resp. ¶ 6—and the accusations that did clearly implicate Title IX were referred to, and decided under, the Title IX Policy. ¶¶ 63-65. Plaintiff's list of the "safeguards" he was denied (a presumption of innocence, written charges, access to the evidence and the Report, an appeal), Opp. at 18, is a list of Title IX Policy procedures. The Title IX proceedings that followed the referrals were conducted under that Policy, ¶ 65; ECF 79 at 29-35, and *Menaker*'s warning against "recharacterizing accusations of sexual misconduct in more generic terms," *Menaker v. Hofstra Univ.*, 935 F.3d 20, 37 (2d Cir. 2019), is beside the point here, because the accusations of sexual misconduct were not recharacterized, but referred.

To be sure, Plaintiff argues that certain allegations covered by the Chair Investigation required Title IX procedures. Opp. at 17-19. But the developed record supplies a contemporaneous explanation for Einstein's choice of process. It does not support an inference that the choice was driven by sex. Plaintiff points to Ms. Ramirez's supposed "admission" that some survey comments "implicated Title IX" and that she "did not take any steps to further inquire." Opp. at 17-18. The transcript says otherwise. Ms. Ramirez testified that certain comments "could have" implicated Title IX, that she "needed more information," and that she then took the steps she described: she conferred with Dr. Burns, met with Plaintiff, and recommended "a full investigation"—the one

[4] The four declarations (ECF 209-12, -16, -17, -18) do not change the analysis. None of the declarants played any role in the Chair Investigation's design or the Dean's decision; their views about Einstein's "motivations" are inadmissible lay opinion, Fed. R. Evid. 602, 701; their accounts of what others said (*e.g.*, Alpert Decl. ¶¶ 17-19, relaying a remark by Mr. Prusan made weeks before Plaintiff's interview) are hearsay; and praise for Plaintiff's professionalism is character evidence, Fed. R. Evid. 404(a). *See* ECF 191 at 3-5 & nn.2-3; ECF 227 at 2-3. In any event, not one of the four says a word about Plaintiff's sex or attests that sex bias motivated the events giving rise to this litigation.

Plaintiff was demanding. Ex. L at 55:15-24, 93:15-94:22, 96:2-8. She put this assessment in writing before the investigation began, Ex. N at 2; Ex. S at 2; Einstein instructed the investigator to refer any Title IX allegation he encountered, ¶¶ 39, 41; and the referral happened, ¶¶ 63-64. That is the opposite of the "post-hoc rationalization" *Menaker* condemns. *See* 935 F.3d at 36-37. And the process Plaintiff received was robust: his own counterstatement confirms that Ms. Ramirez showed him the NGSO comments, 56.1 Resp. ¶ 126; he had the GEC Survey summary and the Letter of Concern, ¶¶ 13, 19; he responded in writing three times before the investigation began, ¶¶ 22-23, 30; and he answered questions about each category of allegation for more than four hours with counsel present, then submitted dozens of documents, ¶¶ 44-45.

**B. Nothing Connects Einstein's Challenged Actions to Plaintiff's Sex**

Even an erroneous outcome is actionable only upon "circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf*, 35 F.3d at 715. The Opposition tries to supply that missing link by asserting a combination of alleged procedural irregularity and the kind of "public pressure" recognized in *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016), and *Menaker*, 935 F.3d at 31. Opp. at 18-21. The effort fails for three independent reasons.

*First*, there was no procedural irregularity. *Supra* Section I.A. *Second*, Plaintiff's evidence of "pressure" is a single remark, recounted only by Plaintiff, that the Court has already held to be insufficient "without more." ECF 79 at 23-24. The "more" promised at the pleading stage—including a 2021 student presentation—has vanished from the case. Mot. at 27. What remains is Plaintiff's recollection that Dr. Burns said Einstein had to "appear to be responsive to certain groups." Opp. at 20. He identified the "groups" referenced in his March 8 email to Dr. Burns as staff, students, and faculty, not groups defined by sex. Ex. W at 1; Ex. D at 230:7-25. Plaintiff himself glossed Dr. Burns's message as a call for "a proper investigation," and testified, "I don't think it was a bias against me." Ex. D at 164:20-165:2, 222:16-23. Dr. Burns does not recall the

remark and denied telling Plaintiff that he disbelieved the allegations but had to pursue them because of #MeToo, Ex. U at 65:17-66:12, and Ms. Ramirez testified that she did not say it, Ex. L at 111:15-112:2. Tellingly, Plaintiff's claim that both administrators told him the allegations were "baseless," Opp. at 20, has no citation in the record; Ms. Ramirez testified that she did not think she "had the information necessary to make that determination," Ex. L at 112:3-8, and Dr. Burns testified that he hoped that the investigation would clear Plaintiff, Ex. U at 83:7-84:3, 85:4-18. Even crediting Plaintiff's account in full, it does not establish a determination to credit complaints regardless of the evidence, much less because of his sex. *See Colgate*, 760 F. App'x at 30.

*Third*, Einstein's actual treatment of Plaintiff undermines the inference he asks the Court to draw: it twice investigated him under its Title IX Policy when that was warranted, ¶¶ 63-65, and there is no evidence that Plaintiff's sex explains Einstein's use of a different process for the Chair Investigation. Indeed, the record completely contradicts his theory. Plaintiff himself recalls no negative statement about men by the Dean, Ex. D at 323:12-16, or by the outside investigator, T&M, *id.* at 308:13-310:11; the Dean's remark that "either gender could be offended" by the inappropriate and offensive comments Plaintiff was reported to have made, Opp. at 10, is gender-neutral on its own terms; and Plaintiff identifies no female chair—or indeed, anyone else—treated differently because of their sex. Mot. at 34. Calling that evidence "pretext" does not supply the missing discriminatory motive. Opp. at 21-22. *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 149 (2d Cir. 2010), calls for evaluating a remark's speaker, timing, content, and relation to the decision. Even assuming the alleged #MeToo remark was connected to the challenged decision, that connection does not transform a call to investigate into evidence of an intent to discriminate.

Plaintiff's "collusion" theory suffers from the same defect. By his own account, the supposed campaign was waged by four men for reasons unrelated to sex. 56.1 Resp. ¶ 66. His lead authority, *Nambiar v. Cent. Orthopedic Grp.*, reinforces the distinction between setting up a process

to investigate what turned out to be valid complaints and manufacturing a justification: it affirmed summary judgment where the complaints came from "patients and staff," the plaintiff "ha[d] not suggested that they were falsified," and "[n]othing in the record suggest[ed] that defendants colluded to produce or create this evidence." 158 F.4th 349, 366-367 (2d Cir. 2025).[5]

Moreover, Plaintiff's insistence that the original student complaints were "false" does not establish that Einstein's reliance on them was discriminatory. The question is what "motivated the employer," not "the truth of the allegations against plaintiff." *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (alterations omitted). Plaintiff disputes the complaints without pointing to any evidence from which a jury could infer that his sex motivated either the choice of process or the Dean's ultimate decision.

## II. THE DELIBERATE INDIFFERENCE THEORY FAILS TOO

Plaintiff concedes that his only Title IX count pleads erroneous outcome. Opp. at 22. He argues that Defendants nonetheless had "notice" of a deliberate indifference theory from his motion-to-dismiss brief, his interrogatory responses, and the FAC's allegations. *Id.* at 22-23. But "a party is not entitled to amend its complaint through statements made in motion papers," *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *see also Wellner v. City of New York*, 2019 WL 1511022, at *2 & n.3 (S.D.N.Y. Mar. 22, 2019). The R&R expressly declined to reach it as to the Chair Investigation, ECF 79 at 37 n.9, and Plaintiff's proposed Second Amended Complaint—drafted after that ruling—still pleaded only "erroneous outcome," ECF 94-1 at 82-87. A theory that Plaintiff chose not to plead, twice, is not properly before the Court.

But the "deliberate indifference" theory fails on the merits in any event. Plaintiff's deliberate indifference claim requires him to show that he was "targeted by a discriminatory

[5] *Edelman v. NYU Langone Health System* is inapposite because it involved evidence that managers compiled a "log" of grievances to terminate the plaintiff in retaliation for her discrimination complaints. 141 F.4th 28, 50 (2d Cir. 2025).

accusation"—one motivated by sex—and that the school "knowingly 'shut[] [its] eyes to [the] risk' that it was imposing sanctions based on a malicious and therefore discriminatory accusation." *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1097-98 (2d Cir. 2024). Plaintiff cannot satisfy the first element because he testified that his accusers were not motivated by his sex. Ex. D at 133:22-134:2; *see Schiebel*, 120 F.4th at 1097; *Menaker*, 935 F.3d at 38 n.88 ("If the allegations would have been leveled regardless of the plaintiff's sex, no sex discrimination has occurred.").

Nor can Plaintiff satisfy the second prong: Einstein's "sham" response was an investigation he demanded, conducted by an independent firm that interviewed fifty-nine witnesses, which questioned Plaintiff for more than four hours with counsel present, received dozens of his documents, and recorded his explanations and denials in its summary. ¶¶ 40-47, 56-57. Einstein clearly did not "shut its eyes" to Plaintiff's concerns about his accusers; it sent everyone who raised them, including Plaintiff, to the investigator. ¶ 47. And a decision resting on admitted conduct is the antithesis of "inexplicable." *Schiebel*, 120 F.4th at 1097-98.

Plaintiff replies by arguing that Einstein imposed a "gag order" on its employees, so his own hearsay must do. Opp. at 25. There was no such order. Although he cites one professor, who he did not depose, declining his counsel's request for a statement, Miltenberg Ex. 18, he obtained declarations from three Einstein faculty members and a former student. A witness's refusal to provide a voluntary statement neither establishes the existence of an institutional gag order nor excuses Plaintiff from relying on evidence that would be admissible at trial. Fed. R. Civ. P. 56(c)(2), (4); *Quinones v. Montefiore Med. Ctr.*, 2026 WL 1831862, at *4 (S.D.N.Y. June 25, 2026).

## III. THE NYSHRL AND NYCHRL CLAIMS FALL WITH THE FEDERAL CLAIM

Plaintiff's argument for his city and state law claims consists of a block quotation from *Menaker* and the proposition that a complaint stating a Title IX claim also states a NYCHRL claim. Opp. at 26. This is summary judgment. Even under the NYCHRL's more lenient standard, Plaintiff

must offer evidence that sex played some role in the treatment he challenges, Mot. at 34; *Valerio v. Metro. Transp. Auth.*, 2025 WL 686028, at *4 (2d Cir. Mar. 4, 2025); *Ebadi v. Diamond Standard, Inc.*, 2026 WL 591569, at *9 (S.D.N.Y. Mar. 3, 2026). He cannot do so without a single comparator, having sought discovery about none. Mot. at 34. All he offers is the same #MeToo recollection and complaints about process addressed above, which fail for the same reasons.

## IV. PLAINTIFF OFFERS NO EVIDENCE AGAINST MONTEFIORE

Finally, Plaintiff asserts that Montefiore's "chief legal counsel had oversight over Plaintiff's disciplinary decisions," that its CEO had "a direct influence on Plaintiff's employment," and that its human-resources and legal personnel "were involved in" the Chair Investigation. Opp. at 27. He cites no evidence for any of it. That alone is dispositive. Fed. R. Civ. P. 56(c)(1).

The record shows the opposite. Ms. Ramirez testified that Montefiore's Chief HRO was "an advisor," not a supervisor; that Ms. Ramirez did not report to her on investigations; that she had no authority over their outcome; and that the one conversation about the Chair Investigation "was just an FYI." Ex. L at 28:15-29:10, 134:4-135:14. No witness identified anyone but the Dean as the decision-maker, Ex. O at 95:5-8; Ex. L at 161:16-25; Ex. U at 88:22-89:4—including Plaintiff, Ex. D at 317:19-23. Keeping Montefiore's CEO informed is notice, not control; Dr. Ozuah's persuading Plaintiff to withdraw his 2021 resignation does not establish employment authority, Ex. D at 68:13-69:12; and the Dean's dual titles show overlapping management, which is not enough. *Corbin v. Triborough Bridge & Tunnel Auth.*, 2026 WL 2240726, at *9 (S.D.N.Y. Aug. 4, 2026). There is zero evidence of the degree of "significant control" required for joint-employer liability here. *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 843-845 (2d Cir. 2022).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment on all remaining claims.

Dated: October 30, 2026
New York, New York

*<u>/s/ Roberta A. Kaplan</u>*
Roberta A. Kaplan
Christopher R. Le Coney
Tasha N. Thompson
KAPLAN MARTIN LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
cleconey@kaplanmartin.com
tthompson@kaplanmartin.com

Gabrielle E. Tenzer
Anna Collins Peterson
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
gtenzer@heckerfink.com
apeterson@heckerfink.com

*Counsel for Defendants Montefiore Medicine Academic Health System, Inc. and Albert Einstein College of Medicine*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the page and type-volume limitations in Judge Kaplan's Individual Rules of Practice and Local Rule 7.1. Exclusive of the exempted portions of the brief, the brief contains 10 pages, which complies with the 10-page limit applicable to a brief under Judge Kaplan's Individual Rules of Practice where the Court expresses a limit in pages. This brief has been prepared in proportionally spaced typeface using Microsoft Word in 12-point Times New Roman font.

Dated: October 30, 2026
New York, New York

*/s/ Roberta A. Kaplan*
Roberta A. Kaplan

*Counsel for Defendants Montefiore Medicine Academic Health System, Inc. and Albert Einstein College of Medicine*